PAGES 1 - 31

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE BETH LABSON FREEMAN

```
ARISTA NETWORKS, INC.,          )
                                )
             PLAINTIFF,         )
                                )
  VS.                           ) NO. C 16-CV-00923 BLF
                                )
CISCO SYSTEMS,                  )
                                )  SAN JOSE, CALIFORNIA
             DEFENDANT.         )  THURSDAY
                                )  MAY 26, 2016
_____ )
```

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  11:17 A.M. - 11:53 A.M.**

**APPEARANCES:**

**FOR PLAINTIFF**            WILSON, SONSINI, GOODRICH & ROSATI
                             1301 AVENUE OF THE AMERICAS
                             40TH FLOOR
                             NEW YORK, NEW YORK  10019
                     BY:  **JONATHAN M. JACOBSON, ESQUIRE**
                          **CHUL PAK, ESQUIRE**

                             KEKER & VAN NEST, LLP
                             633 BATTERY STREET
                             SAN FRANCISCO, CALIFORNIA  94111
                     BY:  **DAVID J. SILBERT, ESQUIRE**

(FURTHER APPEARANCES ON FOLLOWING PAGE)

*REPORTED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
              *RETIRED OFFICIAL COURT REPORTER, USDC*

**APPEARANCES (CONTINUED):**

**FOR DEFENDANT:**          DESMARAIS LLP
                           230 PARK AVENUE
                           NEW YORK, NEW YORK  10169
                   BY:  **JOHN M. DESMARAIS, ESQUIRE**
                        **PAUL A. BONDOR, ESQUIRE**
                        **TAMIR PACKIN, ESQUIRE**


**ALSO PRESENT:**          MARK TAXAY, ARISTA GENERAL COUNSEL

```
 1   THURSDAY, MAY 26, 2016                          11:17 A.M.

 2   (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSEL'S FAILURE TO

 3   IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER

 4   ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

 5

 6                         PROCEEDINGS

 7                         ---OOO---

 8            THE CLERK:  CALLING CASE 16-0923, ARISTA NETWORKS

 9   VERSUS CISCO SYSTEMS.

10            COUNSEL, PLEASE COME FORWARD AND STATE YOUR

11   APPEARANCES.

12            MR. DESMARAIS:  GOOD MORNING, YOUR HONOR.  JOHN

13   DESMARAIS ON BEHALF OF CISCO SYSTEMS.

14            THE COURT:  HELLO, MR. DESMARAIS.

15            MR. JACOBSON:  JONATHAN JACOBSON, WILSON SONSINI, FOR

16   ARISTA.  AND I'M JOINED TODAY BY MY PARTNER CHUL PAK.  MARC

17   TAXAY FROM THE COMPANY, AND DAVID SILBERT WHO I BELIEVE YOU

18   KNOW FROM ANOTHER CASE.

19            THE COURT:  YES, THAT'S RIGHT.  GOOD MORNING TO ALL

20   OF YOU.

21            (SIMULTANEOUS SPEAKING.)

22            THE COURT:  ALL RIGHT.  BEFORE I GET STARTED, LET ME

23   JUST -- I DON'T ACTUALLY THINK THIS IS AN ISSUE OF CONCERN, BUT

24   I BELIEVE IN DISCLOSURE.  THE LAW CLERK WHO GENERALLY WORKS

25   WITH ME ON THIS CASE CAME TO ME A YEAR AGO FROM COVINGTON &
```

1    BURLING, AND I KNOW THAT COVINGTON HAS BEEN ASSOCIATED ON THE

2    CASE.  AND HE'S GOING ON TO ANOTHER CLERKSHIP, SO HE'S NOT

3    GOING RIGHT BACK TO COVINGTON AND I WANTED TO MAKE SURE NO ONE

4    HAD ANY CONCERN ABOUT HIM WORKING ON THE CASE DURING THE LAST

5    FEW WEEKS OF HIS TERM WITH ME.

6              **MR. DESMARAIS:**  NO CONCERN, YOUR HONOR.

7              **MR. JACOBSON:**  NO, NO, YOUR HONOR.

8              **THE COURT:**  OKAY.  THANK YOU.  ALL RIGHT.  THIS IS

9    THE OTHER SIDE OF THE COIN HERE, AND YOU'VE TRADED PLACES AT

10   THE PODIUM THERE, BUT I HAVE.

11             **MR. DESMARAIS:**  JUST TEMPORARILY.

12             **THE COURT:**  I KNOW, I KNOW.  TRUST ME.

13             THIS CASE, I DON'T SEE ANY REASON IN GIVING PRIORITY

14   TO IT THE WAY I DID FOR THE PATENT AND COPYRIGHT CASE.

15             **MR. JACOBSON:**  CAN I ADDRESS YOUR HONOR?

16             **THE COURT:**  SURE.  WELL -- AND I HAVE NO ROOM IN MY

17   SCHEDULE, BECAUSE -- YOU ABSOLUTELY CAN, MR. JACOBSON, BUT I

18   TURNED MYSELF INSIDE OUT AND BUMPED OTHER CASES THAT ARE MUCH

19   OLDER IN ORDER TO HAVE ONE CASE HEARD QUICKLY.  SO LET ME

20   HEAR --

21             **MR. JACOBSON:**  I UNDERSTAND, BUT THAT WAS AT ARISTA'S

22   EXPENSE, YOUR HONOR.  THAT WAS NOT AT OUR REQUEST.  AND THE

23   URGENCY THAT CISCO URGED TO GET YOU TO DO THAT IS REALLY NOT

24   THE CASE, BUT WHETHER IT IS OR NOT, THE URGENCY FOR ARISTA IS

25   OVERWHELMING.

1          CISCO, AS IT MAKES CLEAR FROM ITS PAPERS, IS TRYING

2    TO PUT ARISTA OUT OF BUSINESS.

3          **THE COURT:**  YEAH.

4          **MR. JACOBSON:**  THIS IS NOT SOMETHING THAT THE COMPANY

5    REALLY CAN HAVE HANGING OVER ITS HEAD FOR AN INDEFINITE PERIOD

6    OF TIME.  THE STAY REQUEST IS PART OF THAT, BUT WHETHER -- YOU

7    KNOW, IF -- AND I HEARD YOU SAY, YOU KNOW, YOU WERE LOOKING AT

8    AUGUST 2018.

9          **THE COURT:**  I AM, YEAH.

10         **MR. JACOBSON:**  WE THINK THIS CASE CAN BE ADJUDICATED

11   QUICKLY.  THE SCHEDULE WE'VE PUT TOGETHER IS A 23-MONTH

12   SCHEDULE FROM THE FILING OF THE COMPLAINT.  CISCO, IN THE

13   COPYRIGHT CASE, GOT 13 MONTHS, AND WHAT THEY'RE PROPOSING HERE

14   IS 29 MONTHS.  AND THE DIFFERENCE IS, CANDIDLY, UNFAIR TO

15   ARISTA, AND THERE'S NO REASON WHY OUR CASE SHOULD BE TREATED,

16   YOU KNOW, FUNDAMENTALLY DIFFERENTLY THAN THE CASE THAT CISCO

17   HAS BROUGHT.

18         THIS IS A CASE, YOUR HONOR -- THIS IS THE FIRST TIME

19   I'VE BEEN BEFORE YOU.

20         **THE COURT:**  YEAH.

21         **MR. JACOBSON:**  THIS IS A CASE, YOUR HONOR, WHERE

22   THERE IS INJURY, NOT ONLY TO ARISTA, WHICH IS BEING THREATENED

23   BY BEING PUT OUT OF BUSINESS, BUT ALSO TO THE PUBLIC AS A

24   WHOLE.

25         YESTERDAY -- I DON'T KNOW IF YOUR HONOR HAS HAD A

1    CHANCE TO LOOK AT THE DOCUMENT -- AN AMICUS BRIEF WAS FILED BY

2    STANFORD AND PUBLIC KNOWLEDGE TALKING ABOUT THE PUBLIC INTEREST

3    IN THE CASE.  AND IF THE INDUSTRY STANDARD CLI AND THE BUNDLING

4    AND INTIMIDATION THREATS ARE ALLOWED TO CONTINUE AND ARISTA CAN

5    NO LONGER COMPETE EFFECTIVELY, THEN THE ONLY EFFECTIVE

6    COMPETITION FOR CISCO IS GOING TO BE THE OTHER SIX DWARVES WHO

7    ARE GOING TO BE THREATENED WITH SIMILAR ACTIVITY BECAUSE, OTHER

8    THAN JUNIPER, PRETTY MUCH EVERYONE IN THE INDUSTRY USES

9    CISCO-LIKE CLI.

10            WE PUT IN OUR PAPERS, YOUR HONOR, THE FACT THAT

11   CISCO-LIKE CLI IS OFTEN FOUND IN REQUESTS FOR PROPOSALS THAT

12   FIRMS THAT ARE CONSIDERING ACQUIRING, YOU KNOW, ADDITIONAL

13   SWITCHES.

14            SO, YOUR HONOR, WE DON'T THINK THERE'S ANY BASIS FOR

15   A STAY.  THE STAY HAS BEEN BRIEFED BY OUR SIDE.  WE HAVE NOT

16   YET GOTTEN COUNSEL'S REPLY BRIEF ON THE OTHER SIDE, BUT I THINK

17   IF YOU CAN -- IF YOUR HONOR CAN SEE FIT TO GIVE US THE EARLIEST

18   TRIAL DATE POSSIBLE, I'M KIND OF --

19            **THE COURT:**  SO, MR. JACOBSON, WHAT WOULD BE YOUR

20   IDEAL DATE FOR -- MONTH FOR TRIAL OF THIS CASE?

21            **MR. JACOBSON:**  SO THE ONE THAT WE PUT IN OUR PORTION

22   OF THE CMC.

23            **THE COURT:**  I WAS LOOKING FOR IT.  I COULDN'T -- I

24   KEEP FLIPPING THROUGH --

25            **MR. JACOBSON:**  JANUARY 2018, YOUR HONOR.

1          **THE COURT:**  JANUARY 2018?

2          **MR. JACOBSON:**  IT'S IN THE SCHEDULE AT THE VERY END

3   OF THE DOCUMENT.

4          **THE COURT:**  I KNOW.  THAT'S WHAT I WAS LOOKING FOR.

5          **MR. DESMARAIS:**  THERE IT IS, EXHIBIT A, YOUR HONOR.

6          **THE COURT:**  OH, I'M SORRY.  IT'S EXHIBIT A.  I JUST

7   DIDN'T GET QUITE -- I SAW THE SIGNATURE LINE, AND -- I KNEW I

8   READ IT LAST NIGHT.  OKAY.

9          **MR. JACOBSON:**  JANUARY 15TH.

10         **MR. DESMARAIS:**  I'D LIKE TO BE HEARD ON THAT, YOUR

11   HONOR.

12         **THE COURT:**  OKAY.

13         **MR. DESMARAIS:**  SO I THINK THE ARGUMENT THAT WAS JUST

14   MADE HAS NO MERIT FOR SEVERAL FUNDAMENTAL REASONS.

15         NUMBER ONE, IF THIS CASE WAS SO IMPORTANT TO ARISTA,

16   WHY DID THEY WAIT SO LONG TO FILE IT?  WHEN YOU LOOK AT WHAT

17   THE MERITS OF THE COMPLAINT ARE, THEY'RE ARGUING THAT CISCO'S

18   ENFORCEMENT OF ITS COPYRIGHTS IS WHAT GIVES THE BASIS FOR THE

19   CHANGE OF POSITION.  IT'S THE WHOLE FOUNDATION OF THE ANTITRUST

20   CLAIM.

21         WE SUED THEM YEARS AGO ON A COPYRIGHT.  THE COPYRIGHT

22   CASE HAS BEEN PENDING FOR A LONG TIME.  THE PATENT CASE HAS

23   BEEN PENDING FOR EVEN LONGER.  THIS ISN'T A NEW CLAIM.  IT'S AN

24   OLD CLAIM THAT THEY JUST MADE SO IF IT WAS URGENT, THEY SHOULD

25   HAVE FILED IT WHEN THEY HAD NOTICE OF CISCO'S ALLEGED CHANGE OF

1    POSITION.

2              BUT EVEN MORE FUNDAMENTALLY, IN THE COPYRIGHT CASE,

3    WHICH YOUR HONOR IS GOING TO TRY IN NOVEMBER --

4              **THE COURT:**  YEAH.

5              **MR. DESMARAIS:**  -- THEIR AFFIRMATIVE DEFENSE OF

6    EQUITABLE ESTOPPEL WILL PROTECT THEM IF THERE'S ANY MERIT TO

7    THIS CLAIM.

8              **THE COURT:**  YEAH.

9              **MR. DESMARAIS:**  THIS CLAIM SAYS THAT CISCO DID ONE

10   THING, ARISTA RELIED ON IT, AND THEN CISCO SWITCHED.  THAT IS

11   THEIR EQUITABLE ESTOPPEL DEFENSE.  SO THEY WILL GET ALL THE

12   RELIEF THEY NEED FROM THE COPYRIGHT CLAIM IN YOUR TRIAL IN

13   NOVEMBER IF THERE'S ANY MERIT TO IT.

14             ALL THIS IS IS GOING TO ADD DAMAGES ON TOP OF THAT.

15   IT'S NOT URGENT.  THEY DON'T NEED THE DAMAGES NOW.  AND THEY'VE

16   WAITED A LONG TIME TO FILE THIS CASE.

17             BUT THERE'S ALSO A THIRD REASON, WHICH IS, YOU KNOW,

18   NOT JUST THEIR DELAY, NOT JUST (UNINTELLIGIBLE) ISSUE IN

19   NOVEMBER, BUT THE THIRD REASON IS THEY'RE FULLY BRIEFED IN OUR

20   MOTION TO STAY, WHICH IS IF THE COPYRIGHT CASE IS SUCCESSFUL OR

21   IF THE ITC ORDERS BECOME FILE, THEY HAVE NO BASES FOR THEIR

22   ANTITRUST CLAIM AT ALL, BECAUSE THEY'RE NOT PROPERLY ON THE

23   MARKET, AND THIS HAS ALL BEEN BRIEFED.  I DON'T WANT TO ARGUE

24   THE STAY MOTION.

25             **THE COURT:**  AND, YOU KNOW, THE STAY MOTION DOESN'T

1    COME UP TILL AUGUST.

2            **MR. DESMARAIS:**  THAT'S CORRECT.

3            **THE COURT:**  AND I'M NOT HEARING THAT TODAY, ALTHOUGH

4    I CERTAINLY APPRECIATE THAT THAT IS ON MY DOCKET.

5            **MR. DESMARAIS:**  THERE IS ONE THING I WANTED TO SAY

6    ABOUT THAT.

7            **THE COURT:**  YEAH.

8            **MR. DESMARAIS:**  WHICH IS I WOULD LIKE TO ASK TODAY

9    FORMALLY TO HAVE THE COURT -- SO DISCOVERY HAS ALREADY GOT

10   UNDERWAY.

11           **THE COURT:**  GOOD.

12           **MR. DESMARAIS:**  WE EXCHANGED INITIAL DISCLOSURES.  WE

13   SERVED DOCUMENT REQUESTS AND INTERROGATORIES.  BUT THAT WILL BE

14   A COLOSSAL WASTE OF RESOURCES FOR BOTH COMPANIES.  AND THERE IS

15   GOING TO BE DISCOVERY DISPUTES, SO IT WILL BE A WASTE OF THE

16   COURT'S RESOURCES.

17           WE WOULD ARGUE TODAY AND ASK THE COURT'S INDULGENCE

18   TO STAY THAT DOCUMENT DISCOVERY AND (UNINTELLIGIBLE) DISCOVERY

19   UNTIL YOU HEAR THE FORMAL STAY MOTION IN AUGUST, WHICH IS ONLY

20   TWO MONTHS FROM NOW.  AND IT'S GOING TO BE A COLOSSAL WASTE OF

21   RESOURCES IF THE COMPANY IS -- THESE TWO COMPANIES ARE

22   COLLECTING DOCUMENTS YET AGAIN AND HAVING US WRITE

23   (UNINTELLIGIBLE) AND NOTICING DEPOSITIONS, AND THERE'S GOING TO

24   BE DISPUTES ABOUT THE SCOPE.

25           AND I CAN TELL YOU IN JUST TWO SECONDS THE NATURE OF

1    THE STAY MOTION?  IN JUNE THE ITC ORDER WILL BECOME FINAL.

2    ARISTA WILL BE BARRED FROM THE MARKET IN THE UNITED STATES.

3              **THE COURT:**  WELL, THAT WILL CHANGE THINGS, WON'T IT,

4    IF THAT HAPPENS.

5              **MR. DESMARAIS:**  THERE'S NO ANTITRUST ACTION IF THAT

6    HAPPENS.

7              SECONDARILY, YOU'RE TRYING IN NOVEMBER THE CLI CASE.

8    AND IF THEY'RE FOUND LIABLE THERE, THERE'S NO BASIS FOR -- SO

9    THE IDEA THAT WE WOULD START WASTING MONEY ON THIS ANTITRUST

10   CLAIM WHEN IT'S NOT AN ORIGINAL CLAIM, BECAUSE YOU'RE GOING TO

11   RESOLVE EQUITABLE ESTOPPEL AT THE TRIAL, WHICH IS THE SAME BASE

12   OF FACT.

13             WHAT ARE WE DOING?  WHY ARE WE WASTING YOUR TIME, OUR

14   TIME, OUR CLIENT'S MONEY?  WHY?  IT SEEMS SILLY TO UNDERTAKE

15   THIS NOW WHEN WE'RE JUST ASKING FOR A FEW MONTHS.  SO WE SET UP

16   OUR SCHEDULE WITH -- WE KNEW YOUR HONOR'S TRIAL DATE WAS SUMMER

17   OF 2018.

18             **THE COURT:**  YEAH.

19             **MR. DESMARAIS:**  AND YOU'LL NOTICE THE WAY WE LAID OUT

20   OUR SCHEDULE, WE DON'T -- AND THIS IS THE SCHEDULE THAT'S

21   DEFENDANTS MADE -- WE DON'T START DISCOVERY UNTIL JANUARY.  SO

22   WE LAID OUT ALL THE DATES, BUT WE START THE DISCOVERY IN

23   JANUARY.  THAT GIVES TIME FOR THE ITC TO BECOME FINAL.  IT

24   GIVES TIME FOR YOUR NOVEMBER TRIAL TO BECOME FINAL.  AND AT

25   THAT POINT, WE CAN ALL TAKE A BREATH AND SEE IF THERE IS ANY

1    ANTITRUST CLAIM.

2          WE START DISCOVERY IN JANUARY.  AND WE'VE GIVEN THE

3    SAME AMOUNT OF DISCOVERY HERE THAT THEY GIVE IN THEIR SCHEDULE,

4    SO WE'RE NOT CONDENSING THE DISCOVERY AMOUNT OF TIME, AND IT

5    WORKS OUT NICELY SO THAT THE TRIAL WILL THEN BE IN JULY.

6          SO WE THINK THAT FROM A JUDICIAL ECONOMY POINT OF

7    VIEW, FROM A PARTIES' RESOURCES POINT OF VIEW, IT GETS THE JOB

8    DONE, AND THEY'RE GOING TO ADJUDICATE THEIR EQUITABLE ESTOPPEL

9    IN NOVEMBER WHEN WE'RE HERE.

10         **MR. JACOBSON:**  YOUR HONOR, CAN I RESPOND?

11         **THE COURT:**  SURE.

12         **MR. JACOBSON:**  I KNOW YOUR HONOR HAS A QUESTION, AND

13   I'LL BE HAPPY TO ANSWER IT, TOO.

14         **THE COURT:**  I'LL PROBABLY FORGET IT BY THE TIME...

15         **MR. JACOBSON:**  EVERYTHING YOU JUST HEARD, EVERYTHING

16   IS COMPLETELY WRONG AND LET ME EXPLAIN WHY.

17         WHY DID WE WAIT SO LONG TO BRING THE CASE?  THE

18   DISCOVERY IN THE CLI CASE WAS IMPORTANT.  CERTAINLY, WE

19   COULDN'T BRING IT UNTIL WE HAD HAD THAT.  BUT MUCH MORE

20   IMPORTANTLY, THE DECISION TO BRING AN ANTITRUST CASE IS A MAJOR

21   CORPORATE DECISION.

22         **THE COURT:**  SURE.

23         **MR. JACOBSON:**  IT IS AN INVESTMENT OF MANY MILLIONS

24   OF DOLLARS.  IT IS NOT DONE LIGHTLY.

25         IN THIS CASE, IT WAS DONE ONLY AFTER THE FAR MORE

1    RECENT DISCOVERY OF THE SMARTNET BUNDLED PRICING AND THE

2    INTIMIDATION OF OUR CUSTOMERS AND SUPPLIERS.  THAT'S WHAT MADE

3    IT URGENT.  THAT'S WHY IT WAS FILED WHEN IT WAS.  THAT IS THE

4    SAME URGENCY THAT I MENTIONED BEFORE.

5              SECOND, EQUITABLE ESTOPPEL.  YOUR HONOR MAY NEVER

6    REACH EQUITABLE ESTOPPEL IN THAT CASE, AND EVEN IF YOU DO, FOR

7    REASONS THAT WE LAY OUT IN OUR BRIEF, THERE IS NO WAY THAT THE

8    DETERMINATION ON EQUITABLE ESTOPPEL CAN BE COLLATERAL ESTOPPEL

9    IN THE ANTITRUST CASE.

10             AND, VERY BRIEFLY -- AND YOUR HONOR WILL GO INTO

11   THIS, I KNOW, IN AUGUST OF 2018.  EQUITABLE ESTOPPEL IS

12   BASICALLY FOOLING ARISTA.  THE ANTITRUST CLAIM IS FOOLING THE

13   INDUSTRY.  FUNDAMENTALLY DIFFERENT.  AND WE HAVE A JURY TRIAL

14   RIGHT ON THAT CLAIM THAT REALLY CANNOT FAIRLY BE REMOVED

15   THROUGH AN EQUITABLE DETERMINATION ON EQUITABLE ESTOPPEL.  SO

16   THERE'S NO CHANCE OF THAT.

17             THE ITC CASES, THEY'RE ASSUMING THAT WE DON'T HAVE

18   WORKAROUNDS ON THEIR PATENTS.

19             **THE COURT:**  THEY DIDN'T MENTION THAT IN THEIR PAPERS.

20             **MR. JACOBSON:**  AND WE DO.  WE DO.  THERE'S NO WAY THE

21   ITC CASE IS GOING TO PUT ARISTA OUT OF BUSINESS.

22             THE COPYRIGHT CASE, LET'S SAY THEY WIN THE COPYRIGHT

23   CASE.  THAT'S NOT A DEFENSE IN THE ANTITRUST CASE.  THAT IS THE

24   SQUARE HOLDING OF THE *MICROSOFT* DECISION THE EN BANC DECISION

25   OF THE D.C. CIRCUIT.

1        SO NONE OF -- THIS CASE IS GOING TO PROCEED, YOU

2   KNOW, SUBJECT TO DISPOSITIVE MOTIONS, WHICH WE'RE CONFIDENT OF

3   PREVAILING ON, BUT THERE'S NO -- THERE'S NO WAY TO SAY THAT THE

4   INTELLECTUAL PROPERTY CASES ARE GOING TO BE THE END OF THIS

5   CASE, THEY'RE JUST NOT.

6        **MR. DESMARAIS:**  I HAVE A RESPONSE TO THAT ON

7   (UNINTELLIGIBLE) GROUND, YOUR HONOR.

8        (SIMULTANEOUS SPEAKING.)

9        **MR. JACOBSON:**  BUT --

10       **MR. DESMARAIS:**  I'M SORRY --

11       **MR. JACOBSON:**  I'M JUST IN THE MIDDLE OF MY RESPONSE.

12       **MR. DESMARAIS:**  I DIDN'T MEAN TO INTERRUPT YOU.  YOU

13   WERE TAKING A BREATH.

14       **MR. JACOBSON:**  SO THE PAPER DISCOVERY, IF WE'RE GOING

15   TO HAVE A TRIAL DATE IN THE SUMMER, WHICH, YOU KNOW, WE REALLY

16   DON'T WANT FOR ALL THE REASONS I'M TALKING ABOUT, EVEN IF THAT

17   IS THE TRIAL DATE, WE NEED TO COMMENCE THE DISCOVERY NOW.  THE

18   DISCOVERY IS PAPER DISCOVERY.  OF COURSE THERE ARE GOING TO BE

19   DISPUTES, BUT BOTH SIDES PROVIDED YOUR HONOR WITH QUITE

20   COMPRESSED SCHEDULES.  WE DID SO TO GET AN EARLY TRIAL DATE.

21   CISCO DID SO TO ACCOMMODATE THE STAY THAT IT'S SEEKING AND THE

22   JULY 2018 TRIAL DATE.

23       IF THE TRIAL DATE IS NOT GOING TO BE IN JANUARY,

24   THERE'S STILL NO REASON -- IT'S WRITTEN DISCOVERY.  ALL RIGHT?

25   THE DEPOSITIONS AREN'T GOING TO TAKE PLACE UNTIL BOTH SIDES

1  HAVE SEEN THE DOCUMENTS.  THE WRITTEN DISCOVERY IS GOING TO

2  PROCEED.  THERE'S NO REASON TO DELAY IT.  AT THIS POINT, IT'S

3  PURELY PREJUDICIAL TO ARISTA.  AND A LOT OF THE DISCOVERY --

4  THEY'VE BEEN TAKING DISCOVERY ON THE ANTITRUST ISSUES IN THE

5  COPYRIGHT CASE.  THEY'VE TAKEN --

6          **THE COURT:**  WELL, THAT ALWAYS HAPPENS.

7          **MR. JACOBSON:**  BUT THESE ARE ISSUES THAT HAVE NO

8  RELATIONSHIP TO THE CLI.  THEY'VE BEEN ASKING OUR FOLKS ABOUT

9  THE BUNDLING CLAIM, ABOUT THE SMARTNET CLAIM, AND YET THEY'RE

10 TRYING TO PREVENT US FROM TAKING DISCOVERY ON THOSE ISSUES HERE

11 IT.  JUST DOESN'T MAKE ANY SENSE.  IT'S COMPLETELY UNFAIR.

12         **THE COURT:**  WELL, I'M NOT GOING TO IMPOSE ANY STAY

13 UNTIL THE MOTION IS HEARD.  I'M JUST NOT PREPARED TO DO THAT.

14         **MR. JACOBSON:**  THANK YOU.

15         **THE COURT:**  I'M NOT GOING TO PREJUDGE THE

16 APPROPRIATENESS OF THE STAY WHEN I HEAR THAT MOTION.

17         MR. JACOBSON, I WISH MY CALENDAR WEREN'T SO IMPACTED.

18 AND I -- IF I WERE TO GIVE YOU A JANUARY DATE, YOU'D BE THE

19 THIRD TRIAL SET, AND I CAN'T GUARANTEE YOU'D GO OUT TO TRIAL.

20 AND THEN IF YOU LOSE THAT TRIAL DATE, YOU MIGHT BE A YEAR AND A

21 HALF BEFORE I GET YOU BACK IN.  THAT'S THE REALITY OF MY

22 CALENDAR, AND THAT'S WHAT I LOOK AT.

23         WHAT I WAS PLANNING TO DO WAS TO GIVE YOU A DATE IN

24 AUGUST.  SO THAT'S EIGHT MONTHS LATER.  I RECOGNIZE THAT'S A

25 LONG TIME.  BUT THEN TO SET NO OTHER CASES ON THE TWO WEEKS I

1    WOULD ALLOW FOR THIS TRIAL.

2              SO, YOU KNOW, THAT'S -- YOU KNOW, TO BE ASSURED OF A

3    TRIAL DATE THAT'S YOURS ALONE, AND IF YOU SETTLE, OF COURSE NO

4    OFFENSE TAKEN.

5              BUT I ACTUALLY HAVE CONCERN THAT -- AND I JUST HAD A

6    CASE THAT WAS TWO CASES SET FOR TRIAL THE SAME DAY, THE OLDER

7    CASE WENT, BUMPED OUT THE OTHER ONE.  I WAS ABLE TO OFFER THEM

8    A DATE IN JUNE.  THEY WEREN'T AVAILABLE.  I HAVEN'T RESET THE

9    TRIAL DATE, AND THEY MAY BE DELAYED A YEAR BEFORE I CAN GET

10   THEM IN REASONABLY TO BE THE FIRST ONE UP BUT NEVER TO HAVE THE

11   DATE THEMSELVES.

12             AND SO, YOU KNOW, I'M LOOKING AT MY JANUARY CALENDAR,

13   AND I SEE CASES, CIVIL RIGHTS CASES, THAT ARE, FRANKLY, MORE

14   IMPORTANT, BECAUSE THEY'RE OLD AND BECAUSE INDIVIDUALS WHO HAVE

15   BEEN HARMED ARE WAITING FOR THEIR TRIAL DATE.  AND SO, YOU

16   KNOW, I DON'T SEE A DATE IN JANUARY, FEBRUARY WHERE YOUR CASE

17   WOULD COME UP FIRST, BECAUSE I CAN'T GIVE IT TO YOU ALONE.

18   THAT'S MY PROBLEM.  AND, FRANKLY, THE COST TO YOUR CLIENTS OF

19   BEING READY FOR TRIAL AND THEN BEING BUMPED FOR SIX MONTHS IS

20   PRETTY SIGNIFICANT.

21             **MR. DESMARAIS:**  YOUR HONOR, THIS IS THE KIND OF CASE

22   THAT'S GOING TO HAVE A LOT EXPERT TESTIMONY, AND THESE EXPERTS,

23   A LOT OF THEM ARE PROFESSORS.  AND, YOU KNOW, TO HAVE A DATE

24   AND THEN MOVE THE DATE AND THEN MOVE THE DATE -- TO FIND A NEW

25   DATE WILL BE IMPOSSIBLE.

1          **THE COURT:**  WELL, I RECOGNIZE THAT, AND I AM -- I TRY

2     TO BE GENEROUS IN MY RESETTING OF THE CASE BECAUSE YOU HAVE SO

3     MANY MOVING PARTS.  BUT, YOU KNOW, GONE ARE THE DAYS WHEN YOU

4     JUST SAT IN THE COURTHOUSE DAY AFTER DAY UNTIL THE CASE BEFORE

5     YOU WAS FINISHED.  SO, WHAT I WAS INCLINED TO DO WAS TO SET

6     THIS FOR AUGUST 6TH OF 2018, AND THEN I WOULD SET NO OTHER

7     CASES.

8          **MR. DESMARAIS:**  THAT WORKS FOR CISCO, YOUR HONOR.

9          **THE COURT:**  OKAY.

10          **MR. JACOBSON:**  IT REALLY DOESN'T FOR ARISTA, YOUR

11     HONOR, FOR THE REASONS THAT I ARTICULATED BEFORE.  YES, WE

12     UNDERSTAND THAT THERE'S A RISK, AND THAT IS CERTAINLY

13     COUNTERBALANCED BY THE CERTAINTY OF AN AUGUST '18 TRIAL DATE.

14     BUT THE HARM TO MY CLIENT IS CONTINUING.

15          AND, YOUR HONOR, I'VE SPENT QUITE A BIT OF MY CAREER

16     DOING CIVIL CASES PRO BONO.

17          **THE COURT:**  YEAH.

18          **MR. JACOBSON:**  I COMPLETELY SUPPORT THE PROPOSITION

19     THAT THOSE CASES ARE IMPORTANT, AND THE RIGHTS OF THE

20     INDIVIDUALS ARE FUNDAMENTAL TO OUR JUDICIAL SYSTEM, BUT THIS IS

21     A CASE -- I REALLY DON'T WANT TO LEAVE YOU WITH ANY OTHER

22     IMPRESSION.  THIS AFFECTS SILICON VALLEY.  RIGHT?  THIS CASE --

23     NETWORKING IS CENTRAL TO THE ENTIRE OPERATION OF EVERYTHING

24     THAT GOES ON IN SILICON VALLEY, AND TO HAVE A MONOPOLIST OF

25     ETHERNET SWITCHES, YOU KNOW, GO, YOU KNOW, UNCORRECTED IS GOING

1    TO BE HARMFUL TO EVERYONE, LARGELY FOR THE REASONS THAT WERE

2    SET FORTH IN THE AMICUS BRIEF FILED LAST NIGHT.

3            **MR. DESMARAIS:**  YOUR HONOR, I --

4            **THE COURT:**  WHICH, OF COURSE, I -- IT'S NOT

5    ASSOCIATED TO ANYTHING.  I MEAN, I DON'T EVEN KNOW THAT I'LL

6    ALLOW THAT BRIEF, BECAUSE -- I MEAN, SOMEONE COULD MAIL ME A

7    LAW REVIEW ARTICLE, BUT I WAS A LITTLE SURPRISED TO GET AN

8    AMICUS BRIEF JUST FOR MY EDIFICATION.  I'M NOT DECIDING

9    ANYTHING NOW.  I AM AWARE THAT THERE WAS A REQUEST TO RECEIVE

10   IT.  I WAS WAITING TO SEE IF THERE WAS ANY OPPOSITION.  I MEAN,

11   IF THERE'S NO OPPOSITION --

12           **MR. DESMARAIS:**  WE'RE GOING TO TALK ABOUT THAT TODAY,

13   YOUR HONOR.

14           **THE COURT:**  OKAY.

15           **MR. DESMARAIS:**  BUT JUST TO RESPOND TO MR. JACOBSON'S

16   COMMENT, AND TO REITERATE, YOU ARE GOING TO RESOLVE THE MERITS

17   OF HIS BASIC BEEF WITH CISCO AT THE NOVEMBER TRIAL.  HIS

18   EQUITABLE ESTOPPEL DEFENSE, WHILE IT MAY OR MAY NOT BE

19   PRECLUSIVE OF THE ANTITRUST, IF IT HAS ANY MERIT --

20           **THE COURT:**  IT WILL --

21           **MR. DESMARAIS:**  -- YOU'RE GOING TO DECIDE IT.  AND IF

22   YOU DECIDE IT IN THEIR FAVOR, THEY GET ALL THE RELIEF THEY

23   NEED.  EQUITABLE ESTOPPEL WILL PREVENT CISCO FROM ENFORCING ITS

24   COPYRIGHTS IN THE CLI.  SO HIS CLIENT IS GOING TO GET THEIR DAY

25   IN COURT.  HE WILL (UNINTELLIGIBLE).  SO IT DOESN'T MAKE ANY

1    SENSE THAT WE WOULD STAND ON OUR HEAD TO TRY TO SCHEDULE THIS

2    THING ON TOP OF THREE OTHER TRIALS.

3        **THE COURT:**  I MEAN, THE OTHER PROBLEM I HAVE,

4    MR. JACOBSON, IS SCHEDULING WHICH WILL NO DOUBT KNOCKDOWN

5    DRAG-OUT FIGHTS ON *DAUBERT* MOTIONS, SUMMARY JUDGMENT MOTIONS.

6    I HAVE COME TO EXPECT TWO ROUNDS OF *DAUBERT* MOTIONS AT THE

7    SUMMARY JUDGMENT STAGE AND AT TRIAL.

8        AND SO, FRANKLY, I REGRET PERSONALLY THAT I SCHEDULED

9    THE OTHER CASE SO QUICKLY, BECAUSE IT'S VERY HARD TO

10   ACCOMMODATE IT.  YOU DIDN'T WANT IT, I KNOW THAT, BUT THAT

11   IS -- THAT IS A -- THAT'S VERY DIFFICULT, AND I JUST CAN'T TURN

12   THE SCHEDULE INSIDE OUT ON OTHER CASES FOR PARTIES WHO HAD TO

13   WAIT TWO YEARS AND THEN TO BE KICKED BY PARTIES WHO HAVE NOT

14   WAITED AS LONG IS DIFFICULT.

15       AND THE OTHER THING IS, IT'S -- YOU KNOW, I GENERALLY

16   TRY TO DECIDE WHICH CASE IS MORE IMPORTANT BY WHICH ONE IS

17   OLDER, BECAUSE THE LITIGANTS RIGHTFULLY FEEL THAT THEIR CASE IS

18   IMPORTANT, AND ONCE I START VALUING ONE PLAINTIFF'S CLAIMS

19   AGAINST ANOTHER, WE'VE LOST EVERYTHING.

20       **MR. JACOBSON:**  YOUR HONOR, THAT I COMPLETELY GET, AND

21   I DON'T MEAN TO SUGGEST OTHERWISE.

22       **THE COURT:**  I KNOW.

23       ALL RIGHT.  SO THERE WILL BE NO STAY IN THE DISCOVERY

24   AT THIS POINT, AND I'M ONLY CONSIDERING A REQUEST BY

25   MR. DEMARAIS FOR A STAY PENDING THE MOTION.  I'M NOT DECIDING

1    THE MOTION.  THIS IS NOT WITH PREJUDICE.  BUT IT'S JUST NOT

2    BEFORE ME.  SO I'M NOT GOING TO DO THAT.

3            I AM GOING TO SET YOUR TRIAL.  YOU CAN TELL YOUR

4    FAMILIES THAT THEY WON'T BE ENJOYING VACATION WITH YOU IN

5    AUGUST OF 2018.

6            I AM GOING -- I'M GOING TO SET THIS -- I'M ACTUALLY

7    GOING TO SET THIS -- WHAT I LIKE TO DO IS TO HAVE YOU COME IN

8    ON A FRIDAY FOR -- BECAUSE NO DOUBT YOU'LL WANT A JURY

9    QUESTIONNAIRE.

10           **MR. DESMARAIS:**  YES.

11           **THE COURT:**  AND SO WHAT I HAVE FOUND WORKS WELL IS TO

12   HAVE THE JURY PANEL COME IN ON THE FRIDAY BEFORE.  WE DO THE

13   INITIAL HARDSHIP AND THE QUESTIONNAIRE, WHICH THEN GIVES YOU

14   THE WEEKEND TO REVIEW IT.  AND THEN ON MONDAY MORNING, WE GO

15   RIGHT INTO THE VOIR DIRE, AND THAT JURY PANEL IS GENERALLY

16   IMPANELED BY 10:30 IN THE MORNING AND YOU GO RIGHT INTO OPENING

17   STATEMENTS.  I FOUND THAT TO BE VERY EFFICIENT.

18           SO IF YOU WOULD PLAN ON AUGUST 3RD AS THE START OF

19   TRIAL, BUT THAT'S ONLY JURY SELECTION, THAT'S NOT WITNESSES AT

20   ALL.

21           **MR. JACOBSON:**  YES.

22           **THE COURT:**  YOU'LL ONLY BE HERE FOR A COUPLE OF

23   HOURS.  IF WE HAVE SOME MORE CLEANUP WORK ON PRETRIAL THINGS,

24   WE CAN TAKE CARE OF THOSE.

25           I'M GOING TO SET YOUR PRETRIAL CONFERENCE ON JUNE 28

1    AT 1:30.

2            **MR. JACOBSON:**  JUNE 28?

3            **THE COURT:**  YES.  WE'RE TALKING ABOUT 2018.

4            **MR. JACOBSON:**  OKAY.

5            **THE COURT:**  AND I'M GOING TO SET THE HEARING ON YOUR

6    MOTION FOR SUMMARY JUDGMENT ON APRIL 5TH, 2018.

7            **MR. DESMARAIS:**  5TH?

8            **THE COURT:**  APRIL 5.

9            **MR. DESMARAIS:**  YES.

10           **MR. JACOBSON:**  YOUR HONOR, I NEED TO CHECK MY

11   SCHEDULE ON THAT.

12           **THE COURT:**  OKAY.

13           **MR. JACOBSON:**  I'M GOING TO BE THE CHAIR OF THE

14   SECTION OF ANTITRUST LAW AT THE ABA, AND THAT IS TYPICALLY WHEN

15   WE HAVE OUR SPRING MEETING, AND I EXPECT TO BE FULLY OCCUPIED.

16           **THE COURT:**  IN APRIL, IS THAT --

17           **MR. JACOBSON:**  WELL, IT'S -- USUALLY, IT'S THE LAST

18   WEEK OF MARCH OR THE FIRST WEEK OF APRIL.  I HONESTLY DON'T

19   HAVE IT IN FRONT OF ME, BUT --

20           **THE COURT:**  SO I WOULD RATHER GIVE YOU A DIFFERENT

21   DATE NOW BECAUSE THAT CALENDAR FILLS UP AS WELL.  WOULD THE

22   12TH WORK?  ONE WEEK LATER, IS THAT STILL --

23           **MR. JACOBSON:**  I THINK SO, BUT CAN I GET BACK TO THE

24   COURT ON --

25           **THE COURT:**  YES.  BUT CAN WE -- WHICH IS MORE LIKELY,

1  THE 12TH?

2          **MR. JACOBSON:**  THE 12TH IS MORE LIKELY TO BE OKAY.

3  IF WE COULD DO THE 19TH.

4          **THE COURT:**  I CAN DO THE 19TH.

5          **MR. JACOBSON:**  THAT I CAN GUARANTEE I WILL BE

6  AVAILABLE.

7          **THE COURT:**  MR. DEMARAIS, IS THAT ALL RIGHT?

8          **MR. DESMARAIS:**  THAT'S FINE, YOUR HONOR.  WHAT TIME?

9          **THE COURT:**  THAT'S AT 9:00 O'CLOCK.  THAT'S ON THE

10  REGULAR MOTIONS CALENDAR.  NOW --

11          **MR. JACOBSON:**  THERE'S ONE OTHER ISSUE, YOUR HONOR,

12  WHICH IS THE NUMBER OF DEPOSITIONS THAT THE PARTIES --

13          **THE COURT:**  RIGHT.  LET ME JUST FINISH THE SCHEDULE,

14  AND THAT IS AN ISSUE I WANT TO DEAL WITH.

15          I DO NOT DO *DAUBERT* MOTIONS AT THE PRETRIAL.

16          **MR. DESMARAIS:**  WE'RE MOST ASSUREDLY GOING TO HAVE

17  SOME, YOUR HONOR.

18          **THE COURT:**  I KNOW YOU WILL.  BUT I WANT TO BE CLEAR

19  THAT THE LAST HEARING THAT I WILL HAVE BEFORE TRIAL IS THE

20  JUNE 28 PRETRIAL CONFERENCE.

21          AND IF YOU HAVE *DAUBERT*, I TRY TO SCHEDULE THOSE ON A

22  FRIDAY, SOMETIMES THEY INVOLVE TESTIMONY, MORE OFTEN NOT.  BUT

23  YOU DON'T KNOW YET.  YOU HAVE BARELY BEGUN TO LOOK AT WHAT

24  EXPERTS YOU'D NEED.

25          SO I NEED YOU TO -- SO I'M NOT GOING TO SCHEDULE

1   *DAUBERTS*.  I JUST CAN'T.  I DON'T KNOW WHAT THE SCOPE WILL BE,

2   BUT I JUST WANTED TO BE CLEAR WITH YOU IT'S GOING TO HAVE TO BE

3   BEFORE JUNE 28TH.

4                   **MR. DESMARAIS:**  YES, YOUR HONOR.

5                   **THE COURT:**  AND YOU NEED TO CONTACT MY COURTROOM

6   DEPUTY AS EARLY AS POSSIBLE TO TRY TO GET A DATE FOR THAT.

7                   NOW, ON THE SUMMARY JUDGMENT MOTION, THAT'S THE

8   HEARING DATE, I'M GOING TO HAVE YOU NOW MEET AND CONFER AND

9   WORK OUT THE REST OF THE CASE SCHEDULE FOR DISCOVERY CUTOFFS

10  WITH THESE DATES IN MIND.  AND I URGE YOU TO WORK OUT A

11  REASONABLE BRIEFING SCHEDULE ON THE SUMMARY JUDGMENT.  AND IF

12  YOU WANT TO GO AHEAD AND SET A *DAUBERT* DATE AND BRIEFING ON

13  THAT, YOU'RE WELCOME TO.  I JUST FELT IT WOULD BE ARBITRARY IF

14  I TRIED TO DO IT RIGHT NOW.

15                  NOW, THERE IS A QUESTION ON THE NUMBER OF

16  DEPOSITIONS.  I FEEL LIKE I'VE BEEN DOWN THIS ROAD BEFORE.

17                  **MR. JACOBSON:**  I'M SURE YOU HAVE, YOUR HONOR.  BUT IF

18  YOU LOOK AT THE 26(A) DISCLOSURES IN THIS CASE, BETWEEN THE TWO

19  PARTIES WE IDENTIFY OVER 40 WITNESSES.

20                  **THE COURT:**  YEAH.

21                  **MR. JACOBSON:**  AND SO TEN PER SIDE JUST SEEMS SILLY.

22                  **THE COURT:**  SO IT PROBABLY IS.

23                  **MR. DESMARAIS:**  (UNINTELLIGIBLE), YOUR HONOR, DON'T

24  FORGET WE HAVE BEEN LITIGATING FOR YEARS.  MANY OF THESE PEOPLE

25  HAVE ALREADY BEEN DEPOSED.  RIGHT?  SO WE'VE TWO ITC CASES GO

1    FULL THROUGH DISCOVERY.  WE'VE HAD THE CLI CASE WITH YOUR HONOR

2    GO FULL THROUGH DISCOVERY.  AT SOME POINT WE DON'T HAVE TO

3    DEPOSE EVERYBODY IN THE COMPANY.  THESE DEPOSITIONS SHOULD BE

4    JUST NEW PEOPLE ON NEW ISSUES, NOT REPLOWING OLD GROUND.

5           **THE COURT:**  SO, MR. JACOBSON, I'M GOING TO ASK, AS I

6    DID IN THE OTHER CASE, THAT YOU LINE UP YOUR MOST IMPORTANT

7    DEPONENTS AS YOUR FIRST TEN, BECAUSE YOU CAN NEVER BE SURE I'LL

8    GIVE YOU MORE.  YOU'RE ASKING FOR 30 AT THIS POINT.  AND AS I

9    DID BEFORE, I'M GOING TO NEED TO SEE A LIST OF WHO THE

10   DEPONENTS WOULD BE AND WHY THEY'RE SO IMPORTANT AND WHY THEY

11   AREN'T PART OF THE TOP TEN.

12          IT'S NOT UNREASONABLE TO HAVE MORE THAN TEN AT ALL,

13   BUT I JUST AM NOT WILLING -- IF THERE IS NO AGREEMENT, I AM NOT

14   WILLING TO GIVE YOU A NUMBER AT THIS POINT.

15          **MR. JACOBSON:**  HOW DO YOU WANT TO RECEIVE THAT, YOUR

16   HONOR?

17          **THE COURT:**  I ACTUALLY WOULD RATHER -- AGAIN, WITH

18   THESE DISCOVERY ISSUES, I'M MORE INCLINED TO SEND THIS TO THE

19   MAGISTRATE JUDGE HANDLING THE CASE, BECAUSE, FRANKLY, I GOT

20   TIED UP IN A LOT OF THIS WITH TWO ROUNDS OF THIS ISSUE.

21          **MR. JACOBSON:**  UNDERSTOOD.

22          **THE COURT:**  AND IT WAS BURDENSOME, FRANKLY.

23          THIRTY IS A LOT.  I DON'T KNOW THAT IT'S

24   INAPPROPRIATE IN THIS CASE.

25          **MR. JACOBSON:**  I WOULD SAY THAT MARKET DEFINITION,

1    MARKET POWER THEMSELVES COULD BE TEN WITNESSES.

2            **THE COURT:**  YEAH.

3            **MR. JACOBSON:**  YOU KNOW, WE WOULD TRY TO AVOID THAT.

4            IN TERMS OF THE CLI, I SUSPECT THAT JUST A HAND FULL

5    OF WITNESSES ARE GOING TO HAVE TO BE CALLED FOR VERY BRIEF

6    DEPOSITIONS TO TALK ABOUT THE INDUSTRY NATURE OF THE STATEMENTS

7    AND THE INDUSTRY NATURE OF THE REALIZE.

8            BUT, CERTAINLY, IT'S NOT IN OUR INTERESTS AND I'M

9    GOING TO PLEDGE TO YOU RIGHT NOW THAT WE'RE NOT GOING TO ASK

10   THE SAME QUESTIONS OF THE SAME PEOPLE.  WE'RE JUST NOT GOING TO

11   DO IT.

12           **MR. DESMARAIS:**  I THINK WITH YOUR HONOR'S GUIDANCE WE

13   CAN PROBABLY WORK SOMETHING OUT.

14           **THE COURT:**  I THINK YOU CAN PROBABLY WORK IT OUT MOST

15   OF THE WAY.

16           NOW, LET ME JUST ASK YOU.  HAVE YOU GIVEN ANY THOUGHT

17   TO WHETHER IT IS APPROPRIATE FOR A MAGISTRATE JUDGE TO HANDLE

18   DISCOVERY IN THIS CASE OR WHETHER A SPECIAL MASTER IS MORE

19   APPROPRIATE?

20           **MR. DESMARAIS:**  I THINK THE MAGISTRATE PROBABLY CAN

21   HANDLE IT.  I THINK THE PARTIES IN THIS CASE ARE GOING TO GET

22   ALONG FINE, YOUR HONOR.  SO I DON'T THINK IT'S GOING TO BE A

23   PROBLEM.

24           **THE COURT:**  I APPRECIATE THAT, MR. DEMARAIS.

25   FRANKLY, MY EXPERIENCE IS WHEN I HAVE BEFORE ME THE TOP LAWYERS

```
 1   IN THE COUNTRY, I DON'T EXPECT PROBLEMS, BECAUSE YOU DIDN'T GET

 2   TO WHERE YOU ARE BY FIGHTING UNNECESSARY BATTLES, AND SO I

 3   APPRECIATE THAT.

 4          ALL RIGHT.  AND I -- YOU KNOW, TO THE EXTENT THAT MY

 5   INVOLVEMENT IN SOME OF THESE SKIRMISHES CAN BE HELPFUL, I

 6   ENCOURAGE YOU TO CONTACT ME.  I'M MORE THAN GLAD TO HAVE A

 7   BRIEF TELEPHONE CONTACT IF IT CAN BE HELPFUL, AND THOSE I CAN

 8   GENERALLY SCHEDULE PRETTY EASILY BECAUSE I CAN DO THOSE AFTER

 9   HOURS.

10          IF YOU NEED TO GET ON TO CASE MANAGEMENT, WE TRY TO

11   SCHEDULE THAT PRETTY EASILY AS WELL, BUT IT'S A LOT OF TRAVEL

12   FOR ALL OF YOU.  AND IF I CAN TAKE CARE OF IT BY PHONE AND A

13   TWO-PAGE EXPLANATION OF THE PROBLEM, THAT'S EFFICIENT FOR

14   EVERYBODY AND I LIKE TO DO THAT.

15          MR. JACOBSON:  WE COULD ALSO INVITE YOU TO NEW YORK.

16          MR. DESMARAIS:  I SAID THE SAME.

17          (SIMULTANEOUS SPEAKING.)

18          THE COURT:  WELL, YOU KNOW, THAT'S ALWAYS A NICE

19   THING.  OH, ALL OF YOU.  OKAY.  IT WOULD HAVE ITS ADVANTAGES,

20   WOULDN'T IT?

21          ALL RIGHT.

22          MR. DESMARAIS:  THERE'S ONE OTHER --

23          THE COURT:  OKAY.

24          MR. DESMARAIS:  SO ON THE AMICUS?

25          THE COURT:  OH, YEAH.
```

1          **MR. DESMARAIS:**  I WANTED TO INQUIRE WHAT THE COURT'S

2   PREFERENCE IS.  IF YOU ARE GOING TO ALLOW IT, WE'VE AGREED

3   AMONGST US, AND I WOULD PROPOSE TO YOU HOW TO HANDLE IT, BUT IF

4   YOU'RE NOT GOING TO ALLOW IT, THEN WE DON'T NEED TO --

5          **THE COURT:**  WELL, MY FIRST REACTION WHEN I -- AND I

6   HAVEN'T LOOKED AT THE AMICUS ITSELF, BUT WHEN IT CAME IN, IT'S

7   NOT ATTACHED TO ANYTHING AND SO IT'S NOT APROPOS OF ANY ISSUE

8   BEFORE ME.

9          **MR. DESMARAIS:**  I AGREE WITH YOU.  I THINK THAT

10  AMICUS IS A GENERAL PROPHECY ON THE LAW.  IT'S NOT TAILORED TO

11  THE ISSUE YOU ARE GOING TO BE DECIDING, SO I DON'T KNOW IF IT'S

12  RELEVANT TO ANYTHING.

13         **MR. JACOBSON:**  YOUR HONOR --

14         **THE COURT:**  I WISH I HAD TIME FOR THAT MUCH READING,

15  BUT, FRANKLY --

16         **MR. JACOBSON:**  CAN I --

17         **THE COURT:**  THAT'S TOUGH.

18         **MR. JACOBSON:**  CAN I EXPLAIN WHY I THINK IT'S

19  IMPORTANT AND HELPFUL?

20         THE BRIEF DOES NOT TAKE ANY POSITION ON ANY OF THE

21  ISSUES IN THE CASE.  IT DOESN'T TAKE AN ISSUE POSITION ON

22  *TWOMBLY*.  IT DOESN'T IF TAKE AN ISSUE ON THE BUNDLING OR

23  INTIMIDATION ASPECTS.

24         WHAT IT DOES SAY IS THAT IF THE FACTS ALLEGED IN THE

25  COMPLAINT ON THE CLI ASPECT OF THE CASE ARE TRUE, THAT THAT IS

1   COPYRIGHT HOLDUP AND CAUSES THE SAME INDUSTRY-WIDE HARM THAT

2   YOU SEE IN THE STANDARD ESSENTIAL PATENTS CASES AND CASES LIKE

3   THAT.

4           IT'S PURELY SUBMITTED IN THE PUBLIC INTEREST.  IT

5   FAVORS US, WHICH I ALSO BELIEVE IS IN THE PUBLIC INTEREST.

6   BUT, YOUR HONOR, I THINK YOU WILL FIND IT INFORMATIVE, AND I

7   WOULD ENCOURAGE YOU AT LEAST TO TAKE A LOOK AT THE MOTION FOR

8   LEAVE WITH AN OPEN MIND.

9           **THE COURT:**  AND, MR. DEMARAIS, ARE YOU GOING TO

10  OPPOSE IT?

11          **MR. DESMARAIS:**  WELL, SO --

12          **THE COURT:**  -- OR SCOUR UP SOMETHING THAT GIVES THE

13  OTHER VIEW?

14          **MR. DESMARAIS:**  YES.  LET ME EXPLAIN WHY I THINK IT'S

15  WASTE OF THE COURT'S RESOURCES TO EVEN REVIEW IT.  I DON'T

16  DISAGREE WITH MR. JACOBSON AS TO WHAT IT COVERS.  THAT'S NOT

17  BEEN BRIEFED, RIGHT?  OUR MOTION TO STAY AND/OR DISMISS IS NOT

18  ABOUT WHETHER IF EVERYTHING IN THE COMPLAINT IS TRUE, WHETHER

19  THERE'S A CLAIM.

20          OUR MOTION TO DISMISS IS ABOUT THEY HAVEN'T BEEN

21  SUFFICIENTLY PLED AND HAVEN'T SUFFICIENTLY -- YOU KNOW, HAVE A

22  BASIS FOR THAT CLAIM.

23          SO THE AMICUS BRIEF IS REALLY ABOUT A DISPUTE WE'RE

24  NOT HAVING.  ALL YOU NEED TO DECIDE TO DECIDE THE MOTION TO

25  DISMISS IS DID THEY PROPERLY PLEAD THAT CLAIM, IS THERE A

1    FACTUAL BASIS FOR THE THINGS THEY'RE SAYING.  WE'RE NOT TAKING

2    ISSUE WITH THE FUNDAMENTAL IDEA THAT IF ALL OF THOSE -- IF WE

3    DID ALL THOSE THINGS THEY SAID, THERE'S A TRIABLE CLAIM HERE.

4    WE'RE NOT TAKING THAT ISSUE.

5         YOU KNOW, IF YOU WANT US TO RESPOND TO THE BRIEF,

6    WHAT WE WOULD SAY IS IT'S NOT RELEVANT TO ANY ISSUE BEFORE THE

7    COURT, AND IT'S NOT HELPFUL.  SO...

8         **MR. JACOBSON:**  YOUR HONOR, COULD I ADDRESS THAT,

9    BECAUSE THAT IS FUNDAMENTALLY WRONG.

10        SO THE BASIS OF THE MOTION TO DISMISS, AT LEAST ON

11   THE CLI ASPECT OF THE CASE, IS THAT WE HAVE AN ALLEGED FRAUD.

12   AND WHAT OUR OPPOSITION BRIEF EXPLAINS AND WHAT THE AMICUS

13   EXPLAINS IS THAT FRAUD IS NEVER AN ELEMENT IN A CLAIM SUCH AS

14   THIS.  THIS IS A CHANGE OF POLICY CASE.  IT IS NOT A FRAUD

15   CASE.  AND WHETHER THERE WAS INTENT AT THE TIME THAT CLI WAS

16   MADE INDUSTRY STANDARD BY CISCO IS NOT RELEVANT.

17        IF CISCO HAD NO INTENTION OF CHANGING POLICY WHEN IT

18   FIRST DID THIS, THAT DOESN'T NEGATE THE ANTITRUST CLAIM FROM

19   THE FACT THAT IT LATER DID.  AND THAT IS WHAT I BELIEVE THE

20   AMICUS BRIEF WILL BE HELPFUL TO YOU IN EVALUATING.

21        **THE COURT:**  SO IF THE AMICUS BRIEF IS SUBMITTED IN

22   SUPPORT OF THE MOTION TO DISMISS, THAT PUTS IT IN A DIFFERENT

23   LIGHT.

24        **MR. JACOBSON:**  WELL, IT'S IN OPPOSITION.

25        **THE COURT:**  IN OPPOSITION, RATHER.  SORRY.

1          BUT I THOUGHT IT WAS JUST FILED AS:  HERE'S AN AMICUS

2     BRIEF.

3          **MR. JACOBSON:**  IT IS MORE THAN THAT, YOUR HONOR.  IT

4     CAREFULLY DECIDES NOT TO TAKE A POSITION --

5          **THE COURT:**  YEAH.

6          **MR. JACOBSON:**  -- ON WHETHER WE HAVE ENOUGH FACTUAL

7     MATTER IN OUR COMPLAINT.  WE DO, BUT THAT'S FOR US TO BRIEF.

8          WHAT IT DOES SAY IS THAT THE LEGAL APPROACH TAKEN TO

9     THE CLI ASPECT OF THE CASE AND CISCO'S MOTION IS UNSOUND, AND I

10    THINK YOUR HONOR WILL FIND THAT VERY HELPFUL.

11         **THE COURT:**  WELL, MR. DEMARAIS, DID YOU WANT TO --

12    WERE YOU GOING TO OPPOSE THE ADMINISTRATIVE MOTION IN WRITING?

13         **MR. DESMARAIS:**  WHAT I WAS GOING TO SUGGEST, YOUR

14    HONOR, IS -- AND I HAVE SPOKEN TO MR. JACOBSON, AND WE'RE IN

15    AGREEMENT ON IT, IS THIS -- WHICH SHOWS YOU WE CAN AGREE ON

16    SOME THINGS.

17         IF YOUR HONOR IS GOING TO REVIEW THE AMICUS BRIEF,

18    MR. JACOBSON HAS CONSENTED TO GIVE US FIVE EXTRA PAGES IN OUR

19    REPLY.

20         **THE COURT:**  OH, WELL.  THEN YOU'VE ANSWERED MY

21    QUESTION.  I'M NOT GOING TO ACCEPT IT.  I AM NOT.  I'M SORRY,

22    BUT THERE IS -- YOU WILL BE DIVERTING MY ATTENTION FROM THE

23    MOTION, AND I NEED TO DECIDE THE MOTION, AND I WILL NOT TAKE

24    EXTRA ON IT.  IT'S JUST NOT GOING TO HAPPEN.  SO I THINK THAT

25    TAKES CARE OF THAT.

1          AND I THINK TO THE EXTENT THOSE ISSUES ARE OF VALUE,

2    THEY CAN BE ARGUED ON THE DAY OF THE HEARING, BUT I AM JUST NOT

3    GOING TO OPEN THE DOOR TO FURTHER BRIEFING ON THE ISSUE.  YOU

4    FILED YOUR MOTION TO DISMISS.

5          **MR. DESMARAIS:**  YES.

6          **THE COURT:**  AND IT'S BRIEFED, AND THAT'S WHERE WE'RE

7    GOING TO LET IT GO.  ALL RIGHT.

8          **MR. DESMARAIS:**  THANK YOU, YOUR HONOR.

9          **MR. JACOBSON:**  THANK YOU, YOUR HONOR.

10          **THE COURT:**  WELL, I REALLY APPRECIATE BOTH OF YOU

11    BEING HERE.  IT'S REALLY A PLEASURE TO MEET BOTH OF YOU.  I

12    KNOW -- I KNOW THIS CASE IS -- EACH OF THESE CASES IS REALLY

13    QUITE EXTENSIVE.  AND IT WAS CLEAR TO ME WHEN I DID NOT ALLOW

14    THE ANTITRUST CLAIM TO BE AN AMENDED COUNTERCLAIM TO THE CLI

15    CASE THAT THIS -- THAT THAT WAS IMPORTANT.  AND I CAN SEE NOW

16    THAT THIS IS REALLY SO MUCH BIGGER THAN EVEN I IMAGINED WHEN I

17    FIRST SAW IT.

18          SO ALL RIGHT.  I THINK YOU HAVE SOME BASIC DATES THAT

19    YOU CAN DEAL WITH.  I TYPICALLY DON'T GO AHEAD AND SET FURTHER

20    CASE MANAGEMENT.  THE TIMING TENDS TO BE ARBITRARY.  I THINK

21    THIS IS A CASE THAT WOULD BENEFIT FROM CASE MANAGEMENT, BUT I'M

22    GOING TO ASK THAT YOU PROMPT WHEN IT IS BENEFICIAL.

23          I WILL ASK THAT WITHIN THE NEXT 14 DAYS YOU WORK OUT

24    THAT SCHEDULE AND SEND ME A STIPULATION AND ORDER ON THAT.  AND

25    AS ISSUES COME UP -- AND CERTAINLY, MR. JACOBSON, IF OUR DATE

```
 1   FOR THAT SUMMARY JUDGMENT MOTION STILL INTERFERES, YOU'LL LET
 2   ME KNOW RIGHT AWAY, AND WE'LL WORK SOMETHING OUT.
 3           MR. JACOBSON:  I WILL ACTUALLY LET YOU KNOW RIGHT
 4   AWAY.
 5           THE COURT:  AND THOSE APRIL DATES, IF YOU JUST GIVE
 6   MR. DEMARAIS A CALL AND GET BACK TO ME WITH SOME SUGGESTED
 7   DATES, THAT WILL BE GREAT.
 8           MR. JACOBSON:  WE ARE TRYING TO GET JUSTICE BREYER TO
 9   APPEAR AT THAT MEETING, YOUR HONOR, SO I HOPE THAT HAPPENS.
10           THE COURT:  THAT WOULD BE NICE.  THAT'S WORTH YOUR
11   EFFORT.  THANK YOU BOTH.
12           MR. DESMARAIS:  THANK YOU, YOUR HONOR.
13           THE COURT:  ALL RIGHT.
14           (PROCEEDINGS ADJOURNED AT 11:53 A.M.)
15
16
17
18
19
20
21
22
23
24
25
```

1    **CERTIFICATE OF TRANSCRIBER**

2

3         I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4    TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5    THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6    U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7    PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8    ABOVE MATTER.

9         I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10   RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11   WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12   FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13   ACTION.

14

15                         *Jmcolumbini*

16                    JOAN MARIE COLUMBINI

17                       MAY 29, 2016

18

19

20

21

22

23

24

25