PAGES 1 – 52

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE NATHANAEL COUSINS

| | | |
|---|---|---|
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | NO. C 14-CV-5344 BLF |
| | ) | |
| ARISTA NETWORKS, INC. | ) | |
| | ) | SAN JOSE, CALIFORNIA |
| DEFENDANT. | ) | WEDNESDAY |
| | ) | JULY 27, 2016 |
| _____ | ) | |

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  2:04 P.M. – 3:16 P.M.**

**APPEARANCES:**

**FOR PLAINTIFF**          QUINN EMANUEL URQUHART & SULLIVAN, LLP
                   50 CALIFORNIA
                   FLOOR 22
                   SAN FRANCISCO, CALIFORNIA 94111
          BY:  **SEAN SANG–CHUL PAK, ESQUIRE**
               **JOHN M. NEUKOM, ESQUIRE**

**FOR DEFENDANT**          KEKER & VAN NEST
                   633 BATTERY STREET
                   SAN FRANCISCO, CALIFORNIA 94111
          BY:  **BRIAN L. FERRALL, ESQUIRE**
               **EDUARDO ENRIQUE SANTACANA, ESQUIRE**

*REPORTED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
*RETIRED OFFICIAL COURT REPORTER, USDC*

```
1   WEDNESDAY, JULY 27, 2016                          2:04 P.M.

2   (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSEL'S FAILURE TO

3   IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER

4   ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

5

6                        PROCEEDINGS

7                        ---OOO---

8        THE CLERK:  CALLING CIVIL 14-5344, CISCO SYSTEMS,

9   INCORPORATED VERSUS ARISTA NETWORKS, INCORPORATED.

10       THE COURT:  YOU MAY COME UP TO THE PODIUM, WHOEVER IS

11  GOING TO BE ARGUING IT.

12       MR. PAK:  GOOD AFTERNOON, YOUR HONOR.  SEAN PAK OF

13  QUINN EMANUEL ON BEHALF OF CISCO.  WITH ME IS MY PARTNER, JOHN

14  NEUKOM.

15       THE COURT:  GOOD AFTERNOON TO YOU BOTH.

16       MR. NEUKOM:  GOOD AFTERNOON.

17       MR. FERRALL:  GOOD AFTERNOON, YOUR HONOR, BRIAN

18  FERRALL OF KEKER & VAN NEST, AND WITH ME IS MY COLLEAGUE,

19  EDUARDO SANTACANA.

20       THE COURT:  GOOD AFTERNOON TO YOU BOTH.

21       ALL RIGHT.  WE'RE HERE, OF COURSE, ON DISCOVERY, AND

22  WE HAVE, I THINK, THREE PARTS TO THE CONVERSATION.

23       WORKING BACKWARDS, YESTERDAY YOU ALERTED ME THAT

24  YOU'D HAD FURTHER CONFERRING ON ONE ASPECT OF THE MOTION TO

25  STRIKE, AND THAT IS SET FORTH IN DOCKET 407, AND WE'LL COME
```

1  BACK TO WHAT YOUR REQUEST IS, AND WE'LL DEAL WITH THE PART

2  THAT'S AGREED TO FIRST.

3          THERE ARE STILL SUBSTANTIAL PORTIONS OF THE MOTION TO

4  STRIKE WHICH REMAIN, AND I'LL CHECK IN WITH YOU TO SEE IF

5  THERE'S BEEN MORE CONFERRING SINCE YESTERDAY, BUT THAT'S THE

6  MOST SIGNIFICANT PART OF THE DISPUTED ISSUES PRESENTED TODAY.

7          THEN THERE WAS ALSO FILED IN DOCKET 404 A CHALLENGE

8  BY ARISTA TO CISCO'S PRIVILEGE LOG ASSERTIONS.  THAT WAS FILED

9  AT 12:10 A.M. ON JULY 26TH, WHICH IS YESTERDAY, AND IT WAS

10  ACCOMPANIED BY 230 PAGES OF MATERIALS.  THERE'S SOME DISPUTE AS

11  TO WHETHER THE COURT WISHED TO RECEIVE THAT, AND I'LL DEAL WITH

12  THAT IN A MOMENT, BUT THAT'S ONE OF THE ISSUES ALSO PRESENTED

13  FOR HEARING TODAY.

14          SO LET'S START AT THE TOP.  THAT'S MY NOTE.  ARE

15  THERE ANY OTHER ISSUES THAT THE PARTIES THINK WE SHOULD BE

16  DEALING WITH TODAY?  CORRECT?

17          **MR. PAK:**  THAT'S IT YOUR HONOR, YES.

18          **THE COURT:**  ALL RIGHT.

19          **MR. FERRALL:**  SAME YOUR, HONOR.

20          **THE COURT:**  VERY GOOD.  AND HAVE THERE BEEN ANY

21  FURTHER RESOLUTIONS OF THE ISSUES ON THE MOTION TO STRIKE

22  BEYOND THE RESOLUTION SET FORTH IN YOUR STIPULATION?

23          **MR. PAK:**  NO, I THINK WE'RE PREPARED TO ARGUE THAT

24  ONE TODAY.

25          **MR. FERRALL:**  RIGHT.

1          **THE COURT:**  SO LET'S DEAL THEN JUST KIND OF ON THE

2     LOGISTICS FIRST OF THE PART YOU'VE AGREED TO.  AND THAT'S

3     SUMMARIZED THAT YOU AGREED THAT ARISTA MIGHT HAVE FIVE HOURS TO

4     CONDUCT THE DEPOSITION OF CISCO UNDER RULE 30(B)(6) ON THE

5     TOPIC OF THE DAMAGES FOR SALES TO SPECIFIC CUSTOMER ACCOUNTS.

6          **MR. PAK:**  RIGHT.

7          **THE COURT:**  AND MY QUESTION TO YOU IS:  IS THERE A

8     DEADLINE, OR HAVE YOU AGREED AS TO WHEN AND WHERE THAT

9     DEPOSITION WILL TAKE PLACE?

10         **MR. PAK:**  I THINK WE'RE STILL MEETING AND CONFERRING

11    ON THE SPECIFIC DATE, YOUR HONOR, BUT I THINK IT WOULD BE IN

12    THE EARLY PART OF AUGUST AS TO EXACTLY -- THE WITNESS IN

13    QUESTION, YOUR HONOR, IS VICE PRESIDENT FRANK PALUMBO, WHO

14    TAKING IN SCHEDULING AVAILABILITY, BUT IT CERTAINLY WOULD NOT

15    BE PAST AUGUST.  WE WOULD WRAP UP THIS DEPOSITION

16    EXPEDITIOUSLY, AND WE'LL WORK WITH COUNSEL TO RESOLVE THAT AS

17    QUICKLY AS WE CAN.

18         **THE COURT:**  ALL RIGHT.

19         **MR. FERRALL:**  I MAY NOT HAVE THE LATEST -- I ACTUALLY

20    THOUGHT WE HAD A DATE, BUT REGARDLESS WE'LL WORK WITH CISCO'S

21    COUNSEL.

22         **THE COURT:**  IS IT AGREED THAT IT'S A SINGLE

23    DEPOSITION UP TO FIVE HOURS?

24         **MR. FERRALL:**  YES.

25         **MR. PAK:**  YES, YOUR HONOR.

1          **THE COURT:**  ALL RIGHT.  TO AVOID FURTHER DISPUTES AS

2     TO WHEN IT'S GOING TO TAKE PLACE -- AND I TRUST YOU THAT YOU'RE

3     GOING TO KEEP WORKING ON IT, AND I APPRECIATE YOU WORKED OUT

4     THE LEVEL OF DETAIL YOU DID -- I WOULD SUGGEST WE SET A

5     DEADLINE FOR COMPLETION OF THE DEPOSITION BY AUGUST 19TH OF

6     2016, WITH THE PARTIES TO FURTHER CONFER AS TO THE SCHEDULING.

7          ANY OBJECTION TO SETTING THAT?

8          **MR. PAK:**  THAT'S FINE.

9          **MR. FERRALL:**  THAT'S FINE WITH US, YOUR HONOR.

10          **THE COURT:**  ALL RIGHT.  SO WE'LL RESOLVE THAT PORTION

11     OF THE MOTION TO STRIKE AS BEING RESOLVED BY AGREEMENT OF THE

12     PARTIES, WITH THE COURT GRANTING LEAVE TO TAKE A SINGLE

13     30(B)(6) DEPOSITION OF UP TO FIVE HOURS BY AUGUST 19TH, 2016.

14          ALL RIGHT.  SO THAT'S THAT PART OVER IT.  LET ME THEN

15     NEXT TURN TO THE MOST-RECENTLY FILED MOTION CHALLENGING THE

16     PRIVILEGE LOG.  THIS IS 404 -- AND IF DIFFERENT PEOPLE ARE

17     ARGUING.

18          **MR. PAK:**  YES, SO MY PARTNER NEUKOM -- MR. NEUKOM --

19          **THE COURT:**  WE CAN GO HOCKEY STYLE.

20          **MR. NEUKOM:**  YES.

21          **THE COURT:**  MY REACTION IS THAT THAT IS A LATE-FILED

22     REQUEST, AND MY TENTATIVE VIEW WOULD BE TO DENY IT AS BEING

23     LATE FILED.  NOT LATE NECESSARILY TECHNICALLY UNDER THE RULE OF

24     HAVING DISCOVERY DISPUTES RESOLVED WITHIN A PERIOD OF TIME

25     AFTER THE CLOSE OF FACT DISCOVERY.  IT'S CERTAINLY FILED AFTER

1    THE TECHNICAL TIMING THERE, BUT MORE JUST PRAGMATICALLY AS

2    BEING ONE DAY BEFORE A HEARING ON SUBSTANTIAL MOTIONS TO

3    STRIKE, AND IN THE CONTEXT OF ALL THE OTHER DEADLINES IN THE

4    CASE, AND THE NEED TO GET THINGS RESOLVED AND GET THIS CASE

5    READY FOR TRIAL, CERTAINLY THERE'S NOT A BEST PRACTICES

6    REQUIREMENT IN THE FEDERAL RULES OF CIVIL PROCEDURE, BUT IF I

7    WERE APPLYING BEST PRACTICES, IF THAT'S AN IMPORTANT DISCOVERY

8    MOTION, IT SHOULD HAVE COME BEFORE YESTERDAY.

9              BUT I DID LOOK AT IT.  I REVIEWED THE MATERIALS, AND

10   MY TENTATIVE VIEW WOULD BE TO SAY THAT ON THE FACE OF IT, THAT

11   THE PRIVILEGE LOG SEEMS TO BE SUFFICIENT TO ME, AND I WOULD NOT

12   GRANT THE INFORMATION PRESENTED IN THE MOTION FOR 404, EITHER

13   ON A PROCEDURAL BASIS FOR WHEN IT WAS BROUGHT OR ON THE

14   SUBSTANCE OF IT.

15             SO MY TENTATIVE VIEW -- AND I'LL GIVE YOU A CHANCE TO

16   DISABUSE ME OF BOTH NOTIONS -- WOULD BE TO DENY THE ARISTA

17   REQUEST IN DOCKET 404.

18             AND, AGAIN, IT'S NOT -- I'M NOT JUST BEING PURELY

19   TECHNICAL ABOUT THE MAY 27TH TIMING.  YOU HAVE CONFERRED ABOUT

20   IT, SO -- I'M NOT SAYING YOU HAVEN'T CONFERRED ABOUT IT.  THERE

21   WAS A BACK-AND-FORTH BETWEEN THE PARTIES.  AND LOOKING AT THE

22   ENTIRE DISCOVERY TRACK IN THIS CASE, IT'S BEEN WELL LITIGATED

23   BY BOTH PARTIES.  THERE'S LOTS OF ATTORNEYS ON EACH SIDE,

24   SKILLED AND EXPERIENCED ATTORNEYS.

25             AND SO THAT'S HAD THE CONSEQUENCE OF HAVING A VARIETY

1    OF THINGS BE PUSHED TO THE VERY LAST MOMENT WHILE YOU WORK OUT

2    THE DETAILS AND POTENTIALLY LITIGATE THEM.  THIS IS AN EXAMPLE

3    OF THAT AND HAD THE EFFECT OF ALL THAT NEGOTIATION AND

4    BACK-AND-FORTH OF PUSHING IT EITHER TO THE ELEVENTH HOUR OR A

5    LITTLE BIT BEYOND IN THIS CASE.  I THINK IT WAS A LITTLE BIT

6    BEYOND, WHEN, IF THE ISSUES WERE IMPORTANT, THEY SHOULD HAVE

7    BEEN BROUGHT EARLIER THAN THEY WERE, OR YOU SHOULD HAVE

8    PRIORITIZED TO THE PARTS THAT WERE MOST IMPORTANT.

9          SO THAT'S A LITTLE SPEECHIFYING, BUT MY CONCLUSION IS

10   THAT I'D BE INCLINED TO DENY THE REQUEST.

11         SO LET ME GIVE ARISTA CHANCE TO EXPLAIN WHY I'M WRONG

12   ON THAT.

13         **MR. FERRALL:**  THANK YOU, YOUR HONOR.

14         AND, OBVIOUSLY, YOU KNOW, WE ARE BEARING THE BRUNT OF

15   WHAT IS ACKNOWLEDGED A LONG MEET-AND-CONFER EFFORT, SUBSTANTIAL

16   PORTIONS OF WHICH WERE TIME WHEN OUR OBJECTIONS WERE SITTING

17   ON -- IN CISCO'S INBOX.

18         JUST SO YOU'RE AWARE, THEY FILED THEIR PRIVILEGE LOG

19   LATE.  WE SERVED OUR OBJECTIONS TO THOSE EARLY, BEFORE THE 30

20   DAYS RAN.  THEY TOOK ANOTHER -- MORE THAN TWO WEEKS TO RESPOND

21   TO THOSE OBJECTIONS, AND THEN WE PROCEEDED TO HAVE REALLY NOT

22   MORE THAN -- I MEAN, THAT ALONE TOOK US TO JULY 15.

23         WE THEN PROCEEDED TO GET A MOTION TOGETHER, HAVE

24   ANOTHER BACK-AND-FORTH MEET AND CONFER.  WE HAD ONE PORTION OF

25   OURS DONE BY THE 20TH AND THE OTHER PORTION DONE BY THE 22ND.

1          WE -- I MEAN, YOU KNOW HOW THIS IS.  THIS -- WE

2     WERE -- WE WERE THE ONES CONSTANTLY PUSHING THE BALL FORWARD,

3     AND YET WE'RE PAYING THE PRICE FOR IT.  BELIEVE ME, WE ARE VERY

4     CONSCIOUS OF THE IDEA OF DROPPING A DISCOVERY MOTION ON YOUR

5     HONOR TWO DAYS BEFORE OR A DAY AND A HALF, WHATEVER, BEFORE THE

6     DEADLINE OF WHEN YOU WANTED TO RESOLVE DISCOVERY DISPUTES, BUT

7     WE HAD THAT DEADLINE IN OUR MIND.

8          WE, IN OUR VIEW, DID EVERYTHING WE COULD TO PUSH IT

9     FORWARD WITHOUT RUNNING TO COURT ON SOMETHING THAT WAS YET TO

10    BE NEGOTIATED.

11         WE ACTUALLY TRIMMED THESE DISPUTES ABOUT THE

12    PRIVILEGE LOG SUBSTANTIALLY FROM WHAT THEY WERE.  I MEAN,

13    THERE'S -- THERE'S -- I'M NOT SURE WHAT THE TOTAL COUNT OF

14    ENTRIES THAT ARE AT ISSUE NOW, BUT I THINK IT'S UNDER 50 OR 60,

15    SOMETHING LIKE THAT, AS OPPOSED TO HUNDREDS THAT WERE

16    POTENTIALLY, YOU KNOW, IN PLAY.

17         **THE COURT:**  AND I'M GLAD YOU DID.  AND THAT REFLECTS

18    THAT WAS SOME BENEFIT TO THE PROCESS OF CONFERRING AND WORKING

19    OUT AND PRIORITIZING, BUT WHAT WOULD HAVE BEEN EVEN BETTER --

20    AND I -- THERE'S, OF COURSE, A BALANCING HERE OF NOT COMING

21    INTO COURT BEFORE YOU HAVE A REAL DISPUTE, BUT FROM A CASE

22    MANAGEMENT PERSPECTIVE OF ALERTING ME BACK IN JUNE WHEN THIS

23    PRIVILEGE ISSUE WAS FIRST NOT -- WAS NOT CRYSTALLIZED IN INTO A

24    FINAL DISPUTE, YET (UNDISCERNIBLE) RESOLVED, BUT SAYING, HEY,

25    THIS IS -- LOOKS LIKE IT MIGHT BE LATE, IT'S COMING AT THE END,

1   YOU'RE DOING EVERYTHING YOU CAN TO MOVE IT FORWARD, BUT IT'S

2   SOMETHING THAT'S GOING TO HAVE TO BE RESOLVED AND HERE'S HOW IT

3   FITS IN.

4          I DIDN'T GET THAT SORT OF NOTICE, AND SO IT REALLY

5   COMES ACROSS TO ME AS AN AMBUSH AT THE LAST MOMENT WITH AN

6   ADDITIONAL 230 PAGES OF MATERIALS ON TOP OF OTHER DISCOVERY

7   ISSUES THAT HAVE BEEN PRESENTED BOTH IN THE LAST MONTH AND HOW

8   THAT EITHER MIGHT BE SEEN STRATEGICALLY AS AN EFFORT TO

9   DISTRACT ME OR DISTRACT THE OTHER PARTY OR PUT ADDITIONAL WORK

10  ON THE OTHER PARTY.

11         I DON'T THINK THAT'S WHAT THE INTENTION -- I -- MY

12  FINDING IS THE OPPOSITE, THAT YOU WERE WORKING THROUGH THESE

13  ISSUES, AND YOU FILED IT WHEN YOU HAD IT ALL RESOLVED, BUT THE

14  TIMING HAS THAT CONSEQUENCE OF ADDING TO ADDITIONAL DISPUTES AT

15  THE VERY LAST MOMENT.

16         **MR. FERRALL:**  COULD I SAY SOMETHING ABOUT THE 230

17  PAGES?

18         **THE COURT:**  YOU MAY, YEAH.

19         **MR. FERRALL:**  LET ME SHOW YOU MY BINDER FOR THIS.

20  YOU KNOW WHY, BECAUSE I DIDN'T INCLUDE THE HUNDREDS OF PAGES OF

21  ARISTA'S PRIVILEGE LOG WHICH IS NOT AT ISSUE IN THIS MOTION

22  WITH OURS IN MY BINDER BECAUSE IT'S IRRELEVANT.  CISCO INSISTED

23  ON FILING IT.

24         SO THE VOLUME THAT YOU'RE LOOKING AT IS CISCO FILING

25  A PRIVILEGE LOG THAT HAS NO RELATION TO THE ISSUES BEFORE YOU.

```
 1          THE COURT:  OTHER THAN THEY'RE SAYING WHAT'S GOOD FOR

 2     YOU IS GOOD FOR THEM, TOO, AND THAT THEY -- IF I WERE TO GRANT

 3     YOUR RELIEF, PERHAPS I SHOULD BE GRANTING THEM SOME RELIEF,

 4     TOO.

 5          I GET YOUR POINT.  IT'S NOT ALL YOUR RESPONSIBILITY.

 6     IT'S MORE OF A COLLECTIVE OBSERVATION ABOUT THE TIMING AND

 7     VOLUME OF THE DISCOVERY IS THAT THE CONSEQUENCE OF LITIGATING

 8     HARD IS THAT IT PUSHES THINGS OFF TO THE END, AND SOMETIMES

 9     THAT CAN LEAD TO THINGS GETTING RESOLVED THROUGH THE PROCESS,

10     BUT SOMETIMES IT CAN MEAN THE LOWER PRIORITY THINGS DON'T GET

11     RESOLVED.

12          NOW IN THIS CASE, I HAVE READ THROUGH THE MATERIALS,

13     AND MY TENTATIVE VIEW IS TO ON THE MERITS DENY THE MOTION.  SO

14     THERE'S TWO PARTS TO IT, AND -- BUT THE TIMING IS WHAT I, OF

15     COURSE, HAVE COMMENTED ON THE MOST.

16          MR. FERRALL:  SURE, SURE.

17          THE COURT:  IS THERE ANYTHING MORE YOU WOULD LIKE TO

18     SAY AS TO THE MERITS?

19          MR. FERRALL:  WELL, THANK YOU.  OBVIOUSLY, NOT A LOT

20     OF YOUR TIME ON THIS GIVEN THE TIMING ISSUE.

21          BUT I WILL SAY ON THE DOCUMENTS THAT ARE SHARED WITH

22     MR. GIANCARLO, THESE ARE ISSUES THAT CISCO HAS INSERTED INTO

23     THIS CASE.  OKAY?  WE QUOTED YOU FROM THEIR COMPLAINT AND THEIR

24     AMENDED COMPLAINT, AT LEAST IN EARLY 2015, THROUGH TO THEIR

25     EXPERT FILED IN MAY 2016.  THEY'VE MADE STATEMENTS THAT CISCO
```

1    HAS DEMONSTRATED ITS COMMITMENT, ITS BELIEF IN THE

2    COPYRIGHTABILITY OF THE CLI.  AND ITS EXPERT WENT SO FAR AS TO

3    SAY THIS LAWSUIT AGAINST HUAWEI THAT CISCO BROUGHT IN 2003 IS

4    EVIDENCE IN CISCO'S BELIEF IN THE COPYRIGHTABILITY OF THE CLI.

5             THAT'S THEIR WORDS, NOT OURS, AND THAT'S IN RESPONSE

6    TO THE OVERWHELMING EVIDENCE OF HOW CISCO LET THE REST OF THE

7    WORLD USE THESE SAME THINGS THAT IT'S NOW SAYING ARE

8    COPYRIGHTABLE.  OKAY?  NOW THAT'S THEIR RESPONSE.

9             IT SEEMS TO ME IF THEY'RE GOING TO PUT THAT FORWARD

10   AND THEY'RE GOING TO SAY MR. GIANCARLO IS THE SPOKESPERSON, IS

11   THE PROOF OF CISCO'S COMMITMENT TO THE CLI AS COPYRIGHTABLE

12   FROM THE HUAWEI LITIGATION.

13            THEY CAN'T HAVE IT BOTH SWORDS.  IT'S A CLASSIC

14   SWORD/SHIELD PROBLEM.  AND THEY CAN'T BOTH TROT MR. GIANCARLO

15   UP THERE AND SAY, YOU SIGNED THIS, YOU WERE BEHIND THIS, CISCO

16   SUED ON THE CLI.  AND THEN WHEN HE SAYS, YEAH, BUT I DON'T

17   THINK ACTUALLY THAT THE CLI IS PROTECTABLE.  THEY SAY, WHOA,

18   WHOA, YOU CAN'T TALK ABOUT THAT.

19            THAT'S WHAT THIS IS ALL ABOUT, AND THERE'S A NUMBER

20   OF DOCUMENTS THAT ARE CLEARLY FROM THE DATE OF THE HUAWEI

21   LITIGATION.  WE DON'T KNOW WHAT THEY SAY, OBVIOUSLY, BUT

22   THEY'RE CLEARLY FROM THE DATE OF THE HUAWEI LITIGATION, AND

23   SHARED WITH MR. GIANCARLO.  AND WE'RE BEING TOLD WE CAN'T SEE

24   THOSE, BUT WE CAN HAVE MR. GIANCARLO COME UP AND TALK ABOUT HOW

25   IMPORTANT THE CLI WAS TO CISCO AND THEN CLIP HIS WINGS WHEN IT

1    COMES TO HIM SAYING ANYTHING DIFFERENT THAN WHAT THEY WANT TO

2    HEAR.  THAT'S THE ISSUE.

3        **THE COURT:**  ALL RIGHT.  THANK YOU.

4        LET ME GET CISCO'S RESPONSE.

5        **MR. NEUKOM:**  THANK YOU, YOUR HONOR.

6        I WOULD BE HAPPY TO ADDRESS THE TIMELINESS ISSUES,

7    ALTHOUGH MY SENSE IS THAT THE COURT REMAINS PREDISPOSED AS YOUR

8    INITIAL INDICATION WAS.

9        **THE COURT:**  I MAY FROWN TOO MUCH.  THAT IS CORRECT.

10        **MR. NEUKOM:**  OKAY.  ON TO THE SUBSTANCE.  FOR

11    MR. GIANCARLO, THIS IS A PRETTY STRAIGHTFORWARD ISSUE.  THREE

12    DOCUMENTS I WOULD REFER THE COURT TO:  EXHIBIT B, G, AND C.

13        EXHIBIT B IS A 2003 FACT DECLARATION SIGNED UNDER

14    PENALTY OF PERJURY BY MR. GIANCARLO.  IT'S NOT AN OPINION

15    PIECE.  IT'S A FACT WITNESS DECLARATION.  GIVEN THAT IT WAS

16    SERVED ON OPPOSING COUNSEL IN THAT CASE, IT OBVIOUSLY CANNOT BE

17    PRIVILEGED.

18        EXHIBIT G IS A 2014 BLOG POSTING BY MR. GIANCARLO AS

19    AN ARISTA BOARD MEMBER IN THE DAYS OR WEEKS FOLLOWING THE

20    FILING OF THIS LAWSUIT.  MR. GIANCARLO MADE A SERIES OF

21    FACTUAL, NONPRIVILEGED -- I HAVEN'T SEEN THE CASE LAW, YOUR

22    HONOR, BUT I'M PRETTY SURE A PUBLIC WEB BLOG POSTING IS NOT

23    PRIVILEGED, A SERIES OF PUBLIC FACTUAL STATEMENTS ABOUT THIS

24    LAWSUIT AND THE FACTUAL UNDERPINNINGS OF IT.

25        THOSE TWO FACT STATEMENTS, NEITHER OF WHICH IS

1   PRIVILEGED, CONTRADICT.  WE, THEREFORE, TOOK MR. GIANCARLO'S

2   DEPOSITION, AND THAT LEADS ME TO EXHIBIT C, WHICH ARE

3   HIGHLIGHTED EXCERPTS OF A DEPOSITION TRANSCRIPT FOR

4   MR. GIANCARLO.

5            I CONFESS I WAS THE ATTORNEY WHO TOOK THAT

6   DEPOSITION, AND, YOUR HONOR, I'VE NEVER BEEN IN A SITUATION

7   BEFORE WHERE I WAS ASKING A WITNESS QUESTIONS WHICH MAY HAVE

8   IMPLICATED MY -- MY CLIENT'S PRIOR HISTORICAL PRIVILEGE

9   CONCERNS.

10           I COULD NOT HAVE BEEN -- AND I RESPECTFULLY BELIEVE

11  EXHIBIT C SHOWS, I COULD NOT HAVE BEEN MORE REDUNDANT, MORE

12  CAREFUL, MORE NEUROTIC, PERHAPS, ABOUT ENSURING THAT EVERY

13  QUESTION PUT TO THIS WITNESS WAS ASKING FOR HIS PERSONAL,

14  FACTUAL, NONPRIVILEGED INFORMATION OR KNOWLEDGE, EXCLUDING

15  COMMUNICATIONS WITH ATTORNEYS.

16           SO MR. FERRALL WOULD SAY:  WE WANT TO PUT THE

17  INTERNAL OR SUBJECTIVE BELIEF OF CISCO ENGINEERS ON TRIAL FROM

18  2003, WHICH WOULD OBVIOUSLY IMPLICATE ATTORNEY-CLIENT

19  PRIVILEGE.  WE HAVE A VERY DIFFERENT TAKE ON IT.  THIS IS ABOUT

20  RESOLVING CONFLICTS BETWEEN TWO FACTUAL STATEMENTS.

21           AND ONE LAST NOTE, IF I MAY, YOUR HONOR, MR. FERRALL

22  SUGGESTS THAT CISCO HAS PUT MR. GIANCARLO IN PLAY BY USING THE

23  HUAWEI LITIGATION AS PROOF OF CISCO'S COMMITMENT TO ITS CLI.

24           AS A SIDE NOTE, THE FACT OF THE HUAWEI LITIGATION AND

25  THE NONPRIVILEGED PUBLIC PLEADINGS SHOW A HISTORY OF CISCO'S

1    PROTECTION OF ITS CLI, BUT LET ME PUT THAT ASIDE.

2            I WOULD RESPECTFULLY SUBMIT THAT MR. GIANCARLO AND

3    ARISTA BY VIRTUE OF MAKING THE PUBLIC WEB BLOG POSTING, WHICH

4    IS EXHIBIT G BEFORE YOUR HONOR, DENIGRATING THE FACTUAL BASES

5    FOR CISCO'S CLAIM, THAT'S WHAT PUT THIS ISSUE IN PLAY, AND,

6    CERTAINLY CISCO SHOULD NOT BE PENALIZED BECAUSE A FORMER

7    HIGH-RANKING CISCO EXECUTIVE, NOW A BOARD MEMBER AT ARISTA,

8    DECIDED TO PUT HIMSELF IN PLAY WITH A PUBLIC WEB BLOG POSTING.

9            THANK YOU.

10           **THE COURT:**  THANK YOU VERY MUCH.  I'LL GIVE YOU A

11   REPLY ON ANYTHING YOU WANT.

12           **MR. FERRALL:**  THANK YOU, YEAH, BECAUSE THIS BLOG

13   ISSUE DESERVES A WORD OR TWO.

14           THE BLOG IS -- CANNOT BE THEIR TRUE MOTIVATION.  A

15   BLOG WRITTEN AFTER THE LITIGATION WAS FILED BY AN ARISTA BOARD

16   MEMBER HAS NO BEARING ON CISCO'S CLAIM.  CISCO'S NOT CLAIMING

17   DEFAMATION FROM THAT BLOG.

18           THAT BLOG IS IRRELEVANT TO THE CASE.  AND IF THEY

19   WANT TO USE IT, I SUPPOSE THEY CAN, BUT WE'RE NOT USING IT.

20   IT'S NOT EVIDENCE.  IT'S JUST AN OPINION PIECE ABOUT THE

21   LITIGATION.  AND WHETHER IT CONTRADICTS THE PRIOR DECLARATION

22   OR NOT DOESN'T MATTER.  NO ONE AT ARISTA IDENTIFIED

23   MR. GIANCARLO AS A PERCIPIENT WITNESS, DISCLOSED AMONG RULE 26

24   DISCLOSURES, UNTIL CISCO CALLED HIM.

25           FIRST THEY DE-DESIGNATED THIS DECLARATION WHICH HAD

1    BEEN UNDER SEAL FOR 13 YEARS.  THEY DE-DESIGNATED IT, MADE IT

2    AVAILABLE TO SHOW MR. GIANCARLO AND EXAMINE HIM ABOUT IT,

3    REQUESTED HIS DEPOSITION.

4          NOW THEY WENT OUT OF THEIR WAY TO TRY TO MAKE

5    SOMETHING OF HIS BLOG AND TRY TO TIE IT.  WHY?  BECAUSE THERE'S

6    NOTHING THAT THEY'D LIKE TO DO MORE THAN PRETEND THAT

7    MR. GIANCARLO'S STATE OF MIND DURING THE HUAWEI LITIGATION IS

8    IMPUTED TO ARISTA NOW.  THAT'S WHY THEY PLEADED IT, AND THAT'S

9    WHY THEIR EXPERT SAID IT.

10         SO THE BLOG IS -- WITH ALL DUE RESPECT TO MR. NEUKOM

11   AND WE'VE BEEN IN A LOT OF FIGHTS IN THIS.  BUT THAT'S A

12   SMOKESCREEN.  THEY'RE NOT GOING TO RELY ON THAT BLOG BECAUSE

13   WE'RE NOT GOING TO RELY ON THAT BLOG.  IT'S ALL ABOUT TRYING TO

14   PAINT MR. GIANCARLO AS REPRESENTATIVE OF CISCO'S ZEAL WITHOUT

15   LETTING HIM EXPLAIN THE FULL EXTENT OF HIS KNOWLEDGE.

16         **THE COURT:**  ALL RIGHT.  THANK YOU FOR THE

17   PRESENTATIONS ON THIS.  I DO WANT TO MOVE ON TO THE MOTION TO

18   STRIKE.

19         **MR. PAK:**  THANK YOU, YOUR HONOR.

20         **THE COURT:**  HERE'S MY RULING.  THE GIANCARLO BLOG

21   DOES SOUND TO ME TO BE PRETTY FAR AFIELD FROM THE CENTRAL

22   ISSUES IN THE CASE.  I'M NOT DETERMINING ADMISSIBILITY AT

23   TRIAL.  WE'RE NOT AT TRIAL.  IT'S ONLY RELEVANT AS FAR AS IT

24   BEING A LEVER TO GET INTO THE PRIVILEGE CONVERSATIONS ABOUT

25   WHAT'S IN THE MOTION CHALLENGING THE PRIVILEGE LOG.

1          SO IF I WERE JUST DETERMINING RELEVANCE OF THAT

2     EXHIBIT, I WOULD PROBABLY AGREE WITH YOU THAT IT SOUNDS

3     IRRELEVANT TO THE ISSUES, BUT I'M NOT PERSUADED THAT THERE'S

4     BEEN AN IMPROPER ASSERTION OF PRIVILEGE OR THERE'S BEEN A

5     WAIVER BY CISCO BASED ON WHAT I READ.

6          IT MAY BE, IF I READ A THOUSAND PAGES AND LOOKED AT

7     EVERYTHING IN CAMERA, THAT I WOULD KNOW MORE ABOUT IT.  I'M

8     RELYING UPON WHAT YOU SUBMITTED IN YOUR SHORT MOTION.  AND IN

9     COMBINATION WITH THE TIMING OF THE MOTION, WHICH I FOUND TO BE

10    NOT TIMELY, I'M GOING TO DENY THE REQUEST I SAW IN DOCKET 44.

11    SO THAT'S RESOLUTION OF THAT.

12          NOW LET'S MOVE ON TO THE MOTION TO STRIKE.

13          **MR. FERRALL:**  THANK YOU, YOUR HONOR.

14          **MR. NEUKOM:**  THANK YOU.

15          **THE COURT:**  NOW THERE'S TWO -- JUST AS A PREFACE,

16    THERE'S TWO COMPONENTS TO THE MOTION TO STRIKE, AND THIS IS

17    ARISTA'S MOTION.  IT ALTERNATELY SEEKS A CONTINUANCE OF THE

18    CASE SCHEDULE.  NOW ISSUES OF THE CASE SCHEDULE, OF COURSE, GO

19    BEYOND MY RESPONSIBILITIES.  I DON'T HAVE AUTHORITY TO MODIFY

20    THE CASE SCHEDULE BEYOND MAKING A RECOMMENDATION TO THE

21    DISTRICT COURT JUDGE THAT RELIEF SHOULD BE A MODIFICATION OF

22    THE CASE SCHEDULE.

23          SO I HAVE IT WITHIN MY POWER TO MAKE A RECOMMENDATION

24    TO MODIFY THIS CASE SCHEDULE.  I HAVE IT WITHIN MY POWER TO

25    GRANT THE MOTION OR DENY THE MOTION TO STRIKE.  AND BOTH

1  PARTIES, OF COURSE, CAN OBJECT TO WHATEVER RULING I MAKE ON

2  EITHER OF THOSE ISSUES BACK TO THE TRIAL JUDGE.  SO THAT'S THE

3  FRAMING OF THE ISSUE, AND WE'VE ALREADY EXCLUDED ONE PART OF

4  THE MOTION THAT'S BEEN RESOLVED.

5       AS I DID WITH YOUR OTHER MOTION, I'LL GIVE YOU MY

6  TENTATIVE VIEWS HERE AND GIVE YOU A CHANCE TO DISABUSE ME OF MY

7  TENTATIVE THOUGHTS.

8       THE ISSUE HERE IS THE LATENESS OF -- OR NOT -- OF

9  CISCO'S CONTENTIONS, AND THEY WERE -- AND THERE'S DIFFERENT

10 CATEGORIES, BUT SPEAKING KIND OF GENERALLY, THEY WERE MADE AT

11 THE LAST MOMENT RIGHT BEFORE THE CUTOFF.  THEY WERE

12 SUPPLEMENTED, AND EVERYONE AGREES THAT THEY'RE -- UNDER THE

13 RULES SUPPLEMENTATION IS REQUIRED.  SO IT'S NOT AN ISSUE OF

14 WHETHER THERE SHOULD HAVE BEEN SUPPLEMENTATION.

15      THE QUESTION IS WHETHER THERE WAS SANDBAGGING HERE

16 AND CISCO WAITED UNTIL THE LAST MOMENT TO DISCLOSE INFORMATION

17 AND SHOULD HAVE DISCLOSED EARLIER, AND THAT BY DOING SO ARISTA

18 WAS PREVENTED FROM TAKING DISCOVERY THAT IT COULD HAVE TAKEN

19 EARLIER.  AND THE REMEDIES, IF THAT ASSERTION IS CORRECT, ARE

20 TO EITHER STRIKE THE SUPPLEMENTAL INFORMATION PROVIDED OR TO

21 ALLOW ARISTA ADDITIONAL TIME TO TAKE THE DISCOVERY IT SAYS IT

22 WOULD HAVE TAKEN EARLIER, AND PART OF THE REMEDY THERE COULD

23 ALSO BE AN IMPOSITION OF COSTS TO COVER THE INEFFICIENCIES OF

24 DISCOVERY THAT COULD HAVE BEEN TAKEN EARLIER BUT WAS NOT.

25      CISCO'S RESPONSE, AGAIN JUST GENERALIZING IT, IS THAT

1    IT LACKED INFORMATION AT THE BEGINNING THAT IT ULTIMATELY

2    DISCLOSED, THAT THE SUBSTANTIAL RATIONALE FOR ITS DISCLOSING

3    THINGS AT THE DEADLINE WAS THAT IT WAS RELYING IN PART OR ON

4    WHOLE ON INFORMATION THAT IT LEARNED FROM ARISTA, AND,

5    THEREFORE, IT WAS BEING DILIGENT AS TO PROVIDING INFORMATION

6    WHEN IT DID, AND THAT THERE'S NO DISPUTE THAT IT CAME AT THE

7    LAST -- AT THE LAST MOMENT, BUT THERE'S GOOD REASON FOR IT TO

8    BE DISCLOSED AT THE LAST MOMENT.

9           AND PARTS A AND B ARE:  A, THERE WAS NO PREJUDICE

10    FROM THE TIMING OF DISCLOSURE; THERE'S STILL A CHANCE FOR

11    ARISTA TO RESPOND; AND, B, ARISTA ITSELF HAS MADE DISCLOSURES

12    OF THINGS LATE IN THE GAME AND BEARS RESPONSIBILITY FOR WHEN IT

13    DISCLOSED THINGS TO CISCO THAT CISCO TURNED BACK TO ARISTA.

14           SO, HOPEFULLY, I'M SUMMARIZING THE ARGUMENTS AS

15    YOU'VE MADE THEM.  IF I'VE ERRED, THEN YOU CAN CORRECT ME ON

16    THAT.

17           SO VIEWING THAT IN THE TOTALITY, MY TENTATIVE VIEW IS

18    TO DENY THE MOTION TO STRIKE.  I AM PERSUADED ON THE PAPERS

19    THAT BY CISCO'S ARGUMENTS, THAT IT'S LATE DISCLOSURES, ALTHOUGH

20    COMING AT THE VERY ELEVENTH HOUR, WERE PRIMARILY RELYING UPON

21    INFORMATION THAT IT RECEIVED FROM ARISTA AND THAT THAT'S THE

22    JUSTIFICATION FOR ITS LATE TIMING.  AND, SECONDLY, THAT IT

23    APPEARS BOTH PARTIES HAVE ENGAGED VERY HEAVILY IN THE

24    LITIGATION AND THERE'S BEEN IN BOTH DIRECTIONS DISCLOSURES OF

25    INFORMATION THAT RAN VERY MUCH UP TO THE END OF THE DISCOVERY

1    PERIOD.

2              AND SO SITTING EQUITABLY, IT LOOKS TO ME LIKE BOTH

3    PARTIES HAVE ENGAGED IN THAT CONDUCT, AND, SO MY INCLINATION

4    WOULD BE NOT TO PUNISH ONE OF THE PARTIES FOR CONDUCT THAT BOTH

5    PARTIES SEEM TO HAVE ENGAGED IN.

6              SO IN A DIFFERENT CASE WHERE THERE WAS POWER ON ONE

7    SIDE AND NOT ON THE OTHER AND THERE WAS A PRO SE LITIGANT, I

8    MIGHT VIEW THINGS DIFFERENTLY.  THIS IS NOT A CASE WHERE

9    THERE'S A PRO SE LITIGANT UP AGAINST A CORPORATE POWER.  BOTH

10   OF YOU HAVE HAD THE POWER AND MONEY AND TIME TO INVESTIGATE IN

11   DISCOVERY THE THINGS YOU WANT TO, AND I DON'T SEE THAT THERE'S

12   BEEN UNFAIR PREJUDICE CAUSED BY THE TIMING OF THE DISCLOSURES

13   IN THIS CASE.

14             SO THAT IS MY TENTATIVE VIEW, ADVERSE TO ARISTA, AND

15   I'LL GIVE YOU THE FIRST CHANCE TO TELL ME WHY I'M WRONG.  I

16   KNOW THERE ARE DIFFERENT PARTS TO THE ARGUMENT.  IF YOU WANT TO

17   FOCUS ON THOSE THAT ARE MOST IMPORTANT TO YOU I, OF COURSE,

18   WELCOME THAT.

19             **MR. FERRALL:**  YES.  THANK YOU, YOUR HONOR.

20             FIRST OF ALL, LET ME ADDRESS THE PROCEDURAL ASPECT OF

21   IT, AND YOU MAY HAVE GOT THEN MESSAGE ALREADY, BUT WE INITIALLY

22   FILED THIS MOTION IN FRONT OF JUDGE FREEMAN.

23             **THE COURT:**  YES.

24             **MR. FERRALL:**  SHE REFERRED IT TO YOU.  IN SO DOING,

25   SHE MADE IT CLEAR SHE WAS NOT CHANGING ANY SCHEDULES IN THE

```
 1   CASE.  SO THAT ALTERNATIVE RELIEF, WHICH WE DIDN'T THINK WAS
 2   THE RIGHT OUTCOME ANYWAY, IS NOT AVAILABLE.
 3          THE COURT:  WELL, SORRY TO INTERRUPT.  IT'S NOT
 4   AVAILABLE NOW.  I'M NOT RECOMMENDING TO GRANT THAT.  IT IS
 5   PROCEDURALLY, YOU KNOW -- YOU HAVEN'T HAD THE BENEFIT OF MY
 6   RULING BEFORE TODAY, SO YOU COULD THEORETICALLY GO BACK TO HER
 7   AND SAY:  SOMETHING HAS CHANGED, AND THAT IS THAT YOU EXPECTED
 8   AND DESERVED ME TO GRANT THE RELIEF YOU'RE SEEKING, AND IF I
 9   DON'T GRANT IT, WELL, NOW YOU, IN THE ALTERNATIVE, MIGHT GO
10   BACK TO HER TO ASK IT.
11          I'M NOT SAYING THAT SHE WOULD GRANT IT OR I THINK
12   IT'S A GOOD IDEA, BUT I -- I'M NOT FORECLOSING THAT PROCEDURAL
13   OPTION AS BEING ONE THAT YOU MIGHT SEEK.
14          MR. FERRALL:  RIGHT.  AND I WANT TO COME AND SPEND
15   SOME TIME TALKING ABOUT THE HISTORY AND WHAT THESE -- WHAT
16   THESE LAST-MINUTE DISCLOSURES REALLY ARE AND WHAT THEY MEAN FOR
17   ARISTA'S DEFENSE, WHICH IS IMPOSSIBLE ON THEM AT THIS TIME,
18   FRANKLY.
19          BUT, FIRST, I DO WANT TO ADDRESS THE POINT YOU MADE
20   OF SORT OF BOTH SIDES ARE DOING THIS.  I RESPECTFULLY SUBMIT
21   THAT THAT IS NOT A CONCLUSION THAT I THINK CAN BE MADE ON THIS
22   RECORD WITH A SIMPLE, I BELIEVE CISCO'S ALLEGATION IS SIMPLY,
23   OH, ARISTA PRODUCED A NUMBER OF, YOU KNOW, SO MANY PAGES OF
24   DOCUMENTS.
25          WELL, OKAY.  WE DID OUR RESEARCH.  CISCO ALSO
```

1    PRODUCED THAT MANY DOCUMENTS IN ADDITION TO THIS LATE

2    DISCLOSURE.  THIS IS QUALITATIVELY DIFFERENT THAN PRODUCING

3    DOCUMENTS AFTER THE FACT, AFTER THE DISCOVERY CUTOFF.

4    ESPECIALLY PRODUCING DOCUMENTS THAT MAY BE THE SUBJECT OF

5    MEETING AND CONFERRING AND AGREEING TO DEALS ABOUT NOT RAISING

6    DISCOVERY DISPUTES WITH YOUR HONOR.

7            THIS IS ABOUT CONTENTIONS, YOUR HONOR.  THIS IS A

8    CONTENTION DISCOVERY RESPONSE THAT THEY WAITED UNTIL 10:00 P.M.

9    ON THE CLOSE OF FACT DISCOVERY TO REVEAL.  SO THIS DOES NOT --

10   THIS IS NOT SIMPLY, WELL, THERE'S A FEW MORE DOCUMENTS TO

11   CONSIDER AS POTENTIAL EXHIBITS IN THE CASE, WHICH NO ONE BUT --

12   I MEAN, THEY'VE NOT COMPLAINED ABOUT IT.  ALL THEY DID WAS DROP

13   IT AS AN ASIDE.  WE COULD HAVE A DISCUSSION ABOUT HOW MANY

14   PAGES ARE -- CAN BE PRODUCED AFTER THE DISCOVERY CUTOFF, BUT

15   THEY HAVEN'T RAISED THAT.  SO I DON'T THINK IT'S -- I DON'T

16   THINK THERE'S A RECORD BEFORE THE COURT TO DRAW A CONCLUSION

17   THAT SAYS, WELL, BECAUSE PEOPLE DISCLOSE THINGS AFTER THE

18   CUTOFF, THEREFORE, YOU KNOW, ALL'S FAIR.

19           SO LET'S TALK ABOUT WHAT HAPPENED HERE.  OKAY?  THEY

20   BROUGHT A CASE ALLEGING 500 PHRASES ARE COPYRIGHT PROTECTABLE

21   FROM WHAT'S CALLED THE COMMAND LINE INTERFACE, THE CLI.  OKAY?

22   THEY IDENTIFIED SOME OTHER VARIATIONS ON THAT, SOME OTHER

23   ASPECTS OF THE CLI WE BROUGHT MOTION PRACTICE.  JUDGE GREWAL

24   ISSUED AN IMPORTANT ORDER LAST OCTOBER OR NOVEMBER REQUIRING

25   THEM TO PROVIDE A WHOLE SLEW OF BIBLIOGRAPHIC INFORMATION ABOUT

```
1    EACH ONE OF THOSE PHRASES.  OKAY?

2            AND WHAT WE HAVE HERE -- AND I'LL COME BACK A LITTLE

3    BIT TO THE HISTORY, BUT WHAT WE HAVE HERE ARE 400 NEW PHRASES

4    THAT ARE INTRODUCED AT 10:00 P.M. ON THE CLOSE OF FACT

5    DISCOVERY.  NOW, THERE IS ABSOLUTELY NO POSSIBLE WAY, NO

6    POSSIBLE WAY FOR ARISTA TO COMPLETE THE DISCOVERY THAT

7    NEEDED -- NEEDS TO BE DONE TO FULLY DEFEND ITSELF ABOUT 400 --

8    ALMOST DOUBLED THE NUMBER OF, QUOTE/UNQUOTE, EXPRESSIONS THAT

9    ARE AT ISSUE IN THIS CASE.

10           AND THERE'S NO POSSIBLE WAY FOR US TO COMPLETE THE

11   DISCOVERY ABOUT THOSE; OBVIOUSLY, NOT WITHIN THE FACT DISCOVERY

12   PERIOD, BUT EVEN IF THERE WERE AN EXTENSION, EXPERT REPORTS

13   WERE DUE A WEEK LATER.  THEY SAID, OH, WELL, YOUR EXPERTS CAN

14   RESPOND.  TO 400 NEW -- IT TOOK A YEAR TO TAKE DISCOVERY ABOUT

15   500 PHRASES.  AND OUR EXPERT'S SUPPOSED TO RESPOND IN A WEEK TO

16   400 NEW PHRASES?

17           I'LL COME BACK TO THE PREJUDICE, BUT THAT'S -- BUT

18   THE UNTIMELINESS AND THE LACK OF SUBSTANTIAL JUSTIFICATION IS

19   CRITICAL BASED UPON THIS RECORD AND BASED UPON THE FACTS AS WE

20   KNOW IT.

21           ONE THING I'LL POINT OUT FIRST BEFORE I CITE YOU TO

22   EVIDENCE, LOOK AT HOW CAREFUL CISCO PHRASED ITS OPPOSITION.

23   THERE IS NOT A SINGLE SENTENCE IN THERE IN WHICH THEY SAY:  WE

24   DID NOT HAVE THE ABILITY TO LOCATE THESE PHRASES EARLIER IN THE

25   CASE.  THEY NEVER SAY THAT.
```

1          BUT WHAT THEY SAY IS THAT:  WE WAITED UNTIL OUR

2     EXPERTS FINISHED, WE RELIED UPON THIS PRODUCTION OF WHAT HAS

3     OCCURRED IN THE CASE.  THE QUESTION IS NOT WHETHER THEY

4     PRODUCED A SUPPLEMENT CLOSE TO THE TIME AFTER THEY COMPLETED

5     THEIR ANALYSIS.  I BELIEVE THEM.

6          THE QUESTION IS COULD THEY HAVE DONE THEIR ANALYSIS

7     EARLIER.  WE PROPOUNDED THIS INTERROGATORY IN MAY OF 2015.  THE

8     QUESTION IS WHAT DID THEY DO AND WHAT COULD THEY HAVE DONE

9     AFTER MAY OF 2015 AND BEFORE MAY 27 OF 2016?  AND HERE'S --

10          **THE COURT:**  LET'S PAUSE THERE, BECAUSE I THINK THAT

11     IS THE CORRECT QUESTION, COULD THEY AND SHOULD THEY HAVE DONE

12     IT EARLIER?  THERE'S NO DISPUTE THAT THEY DIDN'T.  THEY DID IT

13     AT THE END.

14          **MR. FERRALL:**  RIGHT.

15          **THE COURT:**  SO LET ME TURN TO CISCO TO ANSWER THAT

16     QUESTION.

17          **MR. PAK:**  ABSOLUTELY, YOUR HONOR.

18          **THE COURT:**  COULD THIS INFORMATION HAVE BEEN PROVIDED

19     EARLIER OR -- AND, IF YOU DISAGREE WHY YOU DISAGREE?

20          **MR. PAK:**  NO, ABSOLUTELY NOT, YOUR HONOR.  BECAUSE

21     THIS ALLEGATION IS NOT SIMPLY WHETHER CERTAIN WORDS THAT APPEAR

22     ON THE SCREEN ARE THE SAME AS OTHER WORDS THAT APPEAR ON A

23     DIFFERENT SCREEN.  THIS IS SOMETHING CALLED HELP DESCRIPTIONS.

24     SO WHEN A USER IS USING EITHER AN ARISTA SWITCH OR A CISCO

25     SWITCH, AND THEY DON'T UNDERSTAND WHAT A COMMAND DOES AND/OR

1    THEY WANT TO UNDERSTAND HOW YOU INPUT PARAMETERS INTO A

2    COMMAND, THEY CAN USE A QUESTION MARK.  WHEN THEY USE THAT

3    QUESTION MARK IS A SIGNAL TO THE SYSTEM IN SOURCE CODE TO TELL

4    ME INFORMATION, GIVE ME HELP ABOUT THAT COMMAND.

5         SO THIS ALLEGATION IS VERY SPECIFIC, YOUR HONOR.

6    THIS ALLEGATION IS NOT ABOUT LOOKING FOR WORDS ON A SCREEN.

7    THIS ALLEGATION IS A DIRECT REBUTTAL TO AN IMPORTANT ALLEGATION

8    THAT ARISTA HAS MADE IN THIS CASE, WHICH IS THEY ARE CLAIMING

9    THAT THEY WROTE THEIR SOURCE CODE FROM THE GROUND UP, WITHOUT

10   ACCESS TO ANY OF OUR COPYRIGHTABLE INFORMATION, THAT THERE'S NO

11   COPYRIGHTABLE EXPRESSION WHATSOEVER IN THEIR SOURCE CODE.  THAT

12   IS A FUNDAMENTAL ALLEGATION THAT HAS EMERGED AS DISCOVERY HAS

13   UNFOLDED IN THIS CASE.

14        TO TEST THAT ALLEGATION, YOUR HONOR, WE NEEDED TO DO

15   TWO THINGS.  ONE IS WE NEEDED SOURCE CODE THAT'S BEEN VERIFIED

16   AND PRODUCED BY ARISTA IN THIS CASE AS BEING PRODUCTION CODE.

17   SO THIS IS WHAT'S ACTUALLY RUNNING ON THEIR ACCUSED PRODUCTS.

18        AND, SECOND, WE NEEDED THE SWITCHES THAT ARE ACTUALLY

19   RUNNING THAT CODE.  THEY'RE ARISTA SWITCHES SO -- THAT ARE

20   ACTUALLY OPERABLE SO OUR EXPERT CAN LOOK AT THE OPERATION AND

21   LOOK AT THESE WORDS, NOT JUST LOOK AT WORDS, BUT THEN GO BACK

22   TO THE SOURCE CODE AND FIND SPECIFIC INSTANCES IN WHICH THAT

23   TEXT IS STORED IN SOURCE CODE.

24        AND YOU CAN STORE INFORMATION IN SOURCE CODE A LOT OF

25   DIFFERENT WAYS.  WHAT WE FOUND IS WHEN OUR EXPERT DID THAT

1    COMPARISON -- AND BY THE WAY, IN TERMS OF TIMELINE, YOUR HONOR,

2    THE REASON WHY WE COULDN'T HAVE DONE THAT ANALYSIS IS IN

3    SEPTEMBER OF 2015 WE SUBMITTED A -- WE SERVED AN RFP ASKING FOR

4    OPERABLE SWITCHES TO BE PRODUCED IN THIS CASE.

5            SO WE TOLD THEM SPECIFICALLY THIS IS WE WANT.  AND IN

6    JANUARY, AS YOUR HONOR SAW, IN JANUARY OF 2015 WE MADE IT CLEAR

7    WHY WE WANTED THAT.  WE WANTED IT SO THAT WE COULD COMPARE THE

8    SOURCE CODE TO THE OPERATIONAL SWITCHES, AND, SPECIFICALLY, WE

9    WANTED TO INVESTIGATE THE HELP DESCRIPTION.  SO THERE WAS DELAY

10   BETWEEN SEPTEMBER OF 2015.  WE DIDN'T GET THE SWITCHES UNTIL

11   MAY OF 2016.  THESE ARE ARISTA SWITCHES THAT WE HAVE BEEN

12   ASKING FOR SINCE SEPTEMBER OF 2015.  WE TOLD THEM EXACTLY WHY

13   WE WANTED IT.  THEY DELAYED AND DELAYED IN PRODUCING IT.

14           AS SOON AS WE GOT IT, IN NINE DAYS, YOUR HONOR, WE

15   WERE ABLE TO TURN THE ANALYSIS AROUND.  AND TO BE CLEAR, THE

16   ANALYSIS IN OUR ALLEGATION IS NOT SIMPLY:  HERE ARE WORDS THAT

17   APPEAR ON THE SCREEN, THEY'RE SIMILAR TO THESE WORDS.  OUR

18   ALLEGATION IS THESE ARE COPYRIGHTABLE EXPRESSIONS, AND THESE

19   ARE COPYRIGHTABLE EXPRESSIONS THAT ARE FOUND IN SOURCE CODE,

20   AND THESE ARE COPYRIGHTABLE EXPRESSIONS THAT ARE ALSO APPEARING

21   ON THE OPERATIONAL SWITCHES THAT WE GOT FROM ARISTA.  WE CANNOT

22   HAVE DONE THIS ANALYSIS UNTIL WE GOT THE SWITCHES, AND SO

23   THAT -- THOSE ARE THE FACTS.

24           AND IN TERMS OF THE DISCOVERY PREJUDICE THAT WE

25   HEARD, YOUR HONOR, THIS IS A SUBSET OF A CATEGORY OF THINGS

1    THAT WE'VE ALLEGED IN THIS CASE CALLED SCREEN OUTPUTS, SAYS --

2    AS MR. -- AS COUNSEL FOR ARISTA TALKED ABOUT, IT'S TRUE THAT WE

3    ARE ASSERTING COPYRIGHT PROTECTION OVER THE COMMANDS.

4            BUT WHERE IT'S ALSO TRUE, YOUR HONOR, IS FROM DAY

5    ONE, WE'RE ASSERTING COPYRIGHTABLE EXPRESSION ON THE OUTPUT, SO

6    WHEN THE USER SEES THE OUTPUT OF THE COMMANDS THAT THEY TYPE,

7    THERE ARE WORDS THAT APPEAR ON THE SCREEN.  THAT SCREEN OUTPUT

8    IS ALSO COPYRIGHTABLE AS TEXT AS ORIGINAL EXPRESSIONS.

9            WE IDENTIFIED IN THIS CASE, SETTING ASIDE THESE

10   PARTICULAR INSTANCES, HUNDREDS AND HUNDREDS OF EXAMPLES OF

11   SCREEN OUTPUTS.  THEY CONDUCTED NO FACTUAL DISCOVERY ON ANY OF

12   IT, NONE.  AND SO THIS IDEA THAT SOMEHOW THEY CAN'T DEFEND

13   AGAINST THOSE ALLEGATIONS WITHOUT HAVING DONE FACT DISCOVERY IS

14   SIMPLY FALSE, BECAUSE THEY DID NO FACT DISCOVERY WITH RESPECT

15   TO THE OTHER SCREEN OUTPUTS.

16           FURTHERMORE, IN TERMS OF PREJUDICE, THEIR EXPERT

17   SPECIFICALLY REBUTTED OUR ORIGINALITY AND COPYRIGHTABILITY

18   ALLEGATIONS ON ALL THE SCREEN OUTPUTS, INCLUDING THE HELP

19   DESCRIPTIONS.  SO RIGHT NOW PENDING BEFORE JUDGE FREEMAN ARE A

20   SERIES OF SUMMARY JUDGMENT MOTIONS THAT DEAL WITH

21   COPYRIGHTABILITY.

22           IN THOSE MOTIONS AND THE BRIEFING FOR THOSE MOTIONS,

23   COUNSEL FOR ARISTA IS RELYING ON EXPERT REPORTS AND

24   DECLARATIONS SAYING THAT THESE ARE JUST MUNDANE TEXTS, THAT

25   THEY'RE NOT COPYRIGHT BECAUSE THEY'RE SIMPLE PHRASES.  THAT'S

1    THEIR DEFENSE.

2           SO THEY'VE ALREADY HAD THE OPPORTUNITY TO PROVIDE A

3    DEFENSE.  THEY'VE HAD THEIR EXPERT PROVIDE OPINIONS.  THEY

4    ASKED OUR EXPERTS ABOUT THESE ISSUES.  THE EXPERT DISCOVERY IS

5    COMPLETELY DEVELOPED.  THERE IS NO PREJUDICE WHATSOEVER.

6           SO THE ONLY QUESTION IS SHOULD THERE BE A RULE IN

7    THIS JURISDICTION THAT SAYS, BECAUSE WE MAY HAVE HAD ACCESS TO

8    OFF-THE-MARKET-SHELF SWITCHES THAT ARE RUNNING SOFTWARE THAT

9    MAY NOT BE THE SOFTWARE THAT ARISTA HAS PRODUCED IN THIS CASE,

10   WHERE WE'VE PROVIDED DISCOVERY, WE'VE GIVEN THEM CONTENTION

11   SPECIFICS IN TERMS OF OUR JANUARY RESPONSE.

12          THERE IS NO RULE, AND THERE'S NO CASE AUTHORITY THAT

13   SAYS OUR EVIDENCE SHOULD BE STRICKEN IN ITS ENTIRETY WHEN THAT

14   EVIDENCE TURNS ON THE VERY SWITCHES THAT THEY PRODUCE AT THE

15   LAST MINUTE, AND THAT'S THE FUNDAMENTAL MISMATCH THAT WE'RE

16   HAVING HERE IS THAT MR. FERRALL WOULD LIKE TO CHARACTERIZE THIS

17   AS A WORD MATCHING EXERCISE.  IT'S NOT.  IT'S A SOURCE CODE

18   ANALYSIS EXERCISE, LOOKING AT THE SPECIFIC SWITCHES IN

19   QUESTION.

20          WE GOT THE SOURCE CODE IN AUGUST.  WE ASKED FOR THE

21   OPERATIONAL SWITCHES.  WE DIDN'T GET THAT UNTIL MAY OF 2016.

22   WITHIN NINE DAYS, YOUR HONOR, WE TURNED AROUND THE ANALYSIS.

23   WE SUPPLEMENTED.  THEY HAD GOT WHAT THEY NEEDED.  THAT WAS

24   BEFORE THE DEADLINE.  NOW THEIR EXPERT HASN'T HAD THE

25   OPPORTUNITY TO REBUT ALL OF THIS, AND THAT'S THE REASON WHY WE

1    DON'T THINK THIS MOTION SHOULD BE GRANTED.

2            **THE COURT:**  SO ASSUMING THAT YOUR POSITION IS RIGHT

3    AND YOU COULDN'T HAVE PROVIDED THE INFORMATION EARLIER, WHAT

4    WOULD BE THE HARM NOW IN RECOMMENDING TO THE TRIAL JUDGE, WELL,

5    THEY HAVEN'T TAKEN DISCOVERY BEFORE, BUT WHAT WOULD BE THE HARM

6    NOW IN GIVING THEM SOME PERIOD OF TIME TO TAKE DISCOVERY ON

7    ADDITIONAL INFORMATION THAT HAS BEEN SUPPLEMENTED.

8            **MR. PAK:**  YOUR HONOR, THEY'VE ALREADY HAD THAT

9    OPPORTUNITY THROUGH THE OPPORTUNITY, WE THINK, THROUGH THE

10   EXPERT DISCOVERY PROCESS TO THIS QUESTION.  AND JUDGE FREEMAN

11   HAS HAD TO DEAL WITH THIS QUESTION IN A SLIGHTLY DIFFERENT

12   CONTEXT, WHICH IS THEIR ORIGINAL DISCOVERY PLAN, YOUR HONOR,

13   WAS TO TAKE EVERY ONE OF OUR 500 COMMAND EXPRESSIONS AND DEPOSE

14   EVERY SINGLE AUTHOR OF EVERY ONE OF THOSE COMMANDS, WHICH WOULD

15   HAVE BEEN HUNDREDS OF AUTHORS.

16           WE HAVE BEEN BACK AND FORTH A NUMBER OF TIMES BEFORE

17   HER HONOR.  AND WHAT WE EXPLAINED TO HER WAS A CASE LAW ON

18   COPYRIGHTABILITY DOESN'T REQUIRE THAT TYPE OF ANALYSIS.  THE

19   BAR FOR ORIGINALITY IS VERY LOW.  WHAT YOU'RE LOOKING AT IS THE

20   PROCESS BY WHICH IS THIS SOMETHING THAT WAS SUBJECT TO

21   PROFESSIONAL JUDGMENT, IS THIS A SUBJECTIVE PROCESS, OR IS THIS

22   PURELY A FACT-GATHERING EXERCISE.  AND EVEN IF YOU'RE FACT

23   GATHERING, THE COMPILATION ITSELF, THERE WAS ENOUGH ORIGINAL

24   ENOUGH TO CONSTITUTE COPYRIGHTABLE.

25           SHE DENIED, YOUR HONOR, THEIR REQUEST FOR THOSE

1    HUNDREDS OF DEPOSITIONS.  SHE SAID, YOU GET FOUR OR FIVE THAT

2    YOU IDENTIFIED IN YOUR ORIGINAL LIST, THE REST ARE CUMULATIVE,

3    THERE'S NO REASON TO TAKE ANY FURTHER DISCOVERY.

4            AND THE MOST IMPORTANT THING, YOUR HONOR, IS, IN THIS

5    PARTICULAR CATEGORY OF INFORMATION, WHICH IS SCREEN OUTPUTS, WE

6    GAVE THEM HUNDREDS AND HUNDREDS OF EXAMPLES OF SCREEN OUTPUTS,

7    LONG BEFORE THIS FACT DISCOVERY DEADLINE SUPPLEMENTATION TOOK

8    PLACE.

9            THEY TOOK ZERO DEPOSITIONS.  THEY ASKED FOR ZERO

10    DISCOVERY INTO WHO AUTHORED THOSE PARTICULAR SCREEN OUTPUTS,

11    NONE.

12            SO FOR THEM NOW TO SAY, WELL, THERE'S A SUBCLASS OF

13    SCREEN OUTPUTS THAT ARE CALLED HELP DESCRIPTION AND, THEREFORE,

14    WE NOW NEED TO REOPEN DISCOVERY TO TAKE DEPOSITIONS THAT THEY

15    DIDN'T SEEK WITH RESPECT TO THE REMAINING 200 EXAMPLES THAT WE

16    GAVE MAKES NO SENSE, YOUR HONOR.

17            WE'RE AN A VERY TIGHT SCHEDULE, AS YOUR HONOR KNOWS.

18    WE'VE SUBMITTED EXPERT REPORTS.  EXPERTS HAVE BEEN DEPOSED.  WE

19    FILED SUMMARY JUDGMENT MOTIONS.  THEY FILED SUMMARY JUDGMENT

20    MOTIONS.  THIS CASE IS GOING TO TRIAL IN NOVEMBER.  YOUR HONOR

21    MADE THAT VERY, VERY CLEAR TO US.

22            SO WE ARE PREPARED TO MOVE FORWARD.  WE THINK THAT

23    THEY -- BEFORE DISCOVERY IS OVER, THEY HAVE THEIR DEFENSES

24    THEIR EXPERT FULLY PREPARED AND ABLE TO STAND IN FRONT OF THE

25    JURY AND SAY:  I THINK THESE ARE MUNDANE PHRASES, THEY ARE NOT

1    SUBJECT TO COPYRIGHTABILITY.  THAT'S WHAT HE SAID IN HIS EXPERT

2    REPORT.  THAT'S WHAT HE SAID IN HIS DEPOSITION.

3            THERE'S NO PREJUDICE HERE.  THAT'S WHY WE THINK WE

4    DON'T NEED TO GO BACK AND REOPEN DISCOVERY.

5            **THE COURT:**  ALL RIGHT.  MR. FERRALL.

6            **MR. FERRALL:**  YES, A NUMBER OF THINGS TO RESPOND TO.

7            LET ME START BY (UNDISCERNIBLE) MR. PAK.  HERE'S WHAT

8    HE SAID IN AUGUST 2015 TO JUDGE FREEMAN WHEN HE REQUESTED AND

9    GOT AN ACCELERATED TRIAL IN THIS CASE.  CISCO IS COMMITTED TO

10   GIVE THE DISCOVERY THAT'S NECESSARY TO GET THIS CASE TO TRIAL,

11   CISCO'S COMMITTED TO IT IN AUGUST 2015.

12           SO WHAT WE HEARD FROM THE EXPLANATION WAS NOT --

13   AGAIN, NOT:  IT WAS POSSIBLE FOR US TO IDENTIFY THESE,

14   QUOTE/UNQUOTE, EXPRESSIONS THAT WE CLAIM ARE PROTECTABLE AND

15   COPYRIGHTABLE.  HE NEVER SAID THOSE WORDS.

16           IN FACT, WHAT HE SAID AT THE END WAS AN ADMISSION,

17   WHICH IS PROVEN AND UNDENIABLE, THAT THEY DID HAVE ACCESS TO

18   SWITCHES.

19           AND, YOU KNOW, THEIR ACCESS TO ARISTA SWITCHES WAS

20   NOT JUST RANDOM, NOT JUST IRRELEVANT TO LITIGATION.  THEY USED

21   ARISTA SWITCHES TO PREPARE INFRINGEMENT CONTENTIONS IN THE ITC

22   USING SCREEN OUTPUTS.  THAT'S IN 2014 THEY USED THOSE SCREEN

23   OUTPUTS.

24           AND, YOUR HONOR, UNLIKE SOME OF THE REPRESENTATIONS

25   FROM COUNSEL, THIS IS PROVEN IN THE PAPERS.  IT'S NOT JUST A

1    REPRESENTATION.

2              SO IF YOU LOOK, FOR EXAMPLE, AT EXHIBIT 13 TO OUR

3    MOTION, THESE ARE CISCO'S INFRINGEMENT CHARTS SUBMITTED IN 2014

4    IN THE ITC IN WHICH THEY QUOTE ON PAGE 2, ON PAGE 12, AND SO

5    FORTH:  PARTIAL OUTPUT FROM RUNNING SHOW PROCESS COMMAND ON

6    EOS -- THAT'S ARISTA'S SOFTWARE -- FROM RUNNING THIS COMMAND ON

7    EOS, AND THEN THERE'S A SCREEN SHOT.  AND THERE'S MULTIPLE

8    SCREEN SHOTS THROUGHOUT THEIR CONTENTIONS.

9              THERE IS NO DISPUTE THAT THEY HAD ARISTA SWITCHES AND

10   USED THEM IN LITIGATION.  AND YOU NEVER HEARD MR. PAK SAY:  WE

11   COULDN'T HAVE DONE THAT, WE COULD NOT HAVE FOUND THESE

12   EXPRESSIONS.  JUST LIKE WE LOOKED AT SCREENS FOR THE ITC, HE

13   CAN'T SAY:  WE COULDN'T HAVE FOUND THESE USING THOSE SAME

14   RESOURCES THAT WE USED IN THE ITC, WE COULDN'T HAVE FOUND THEM

15   BACK IN 2014.

16             THAT'S POINT ONE ABOUT SCREENSHOTS.

17             THERE'S ALSO CONFIDENTIAL EVIDENCE THAT I WILL NOT

18   DISCUSS OPENLY THAT FURTHER PROVES THIS POINT.

19             THAT'S ARISTA SWITCHES.

20             BY THE WAY, CISCO NEVER COMPLAINED ABOUT THE

21   PRODUCTION OF THE WORKABLE SWITCH UNTIL ABOUT A MONTH OR TWO

22   BEFORE THE CLOSE OF DISCOVERY, BUT THAT'S NEITHER HERE NOR

23   THERE, BECAUSE THOSE ARE IRRELEVANT.

24             THEN THERE'S THE SOURCE CODE, APPARENTLY, WE NEEDED

25   THE SOURCE CODE.  WELL, FIRST OF ALL, YOU DON'T NEED THE SOURCE

1   CODE TO MAKE THE CONTENTION THAT THE PUBLICLY AVAILABLE

2   VIEWABLE TEXT ON THE SCREEN IS THE SAME AND CISCO CONTENDS IT'S

3   PROTECTABLE.  YOU DON'T NEED SOURCE CODE FOR THAT.  AND THEY

4   COULD HAVE MADE THAT DISCLOSURE WITHOUT ANY SOURCE CODE.

5           AND THEN IF THEY FOLLOWED UP WITH A CONTENTION OF

6   ABOUT SOURCE CODE LATER, FINE.  THAT'S ONE WAY THAT YOU WOULD

7   TYPICALLY DO IT.

8           IN A PATENT CASE, OF COURSE, YOU ALWAYS MAKE

9   CONTENTIONS ABOUT WHAT'S AVAILABLE, AND THEN YOU SUBSEQUENTLY

10  GET SOURCE CODE AND YOU FOLLOW UP.  THAT'S WHAT SHOULD HAVE

11  BEEN DONE HERE.  THEY DIDN'T DO THAT.

12          BUT LET'S TALK ABOUT SOURCE CODE, BECAUSE THE SOURCE

13  CODE THAT'S RELEVANT TO THIS ISSUE IS PUBLICLY AVAILABLE.

14  IT'S -- CISCO PRODUCED -- HOW MANY?  I MEAN, THEY PRODUCED

15  DOZENS.  IT'S IN THE PESH (PHONETIC) DECLARATION.  DOZENS,

16  MAYBE OVER 50 -- I FORGET WHAT THE NUMBER IS -- FILES OF ARISTA

17  SOURCE CODE IN THE ITC, CISCO PRODUCED TO US, OUR SOURCE CODE.

18          POINT TWO ABOUT SOURCE CODE:  ARISTA PRODUCED ITS

19  SOURCE CODE IN THIS CASE TO CISCO IN 2015.  BY JANUARY 2016 --

20  AND I'LL COME BACK TO WHY THAT DATE'S RELEVANT -- BY JANUARY OF

21  2016, ARISTA HAD ALREADY SPENT OVER 80 HOURS REVIEWING OUR

22  SOURCE CODE.

23          SO, THERE'S -- THERE IS AT LEAST THREE MAYBE FIVE

24  REASONS WHY YOU WILL NEVER HEAR CISCO'S COUNSEL REPRESENT

25  UNEQUIVOCALLY ON THE RECORD:  WE COULD NOT HAVE KNOWN THAT

```
1    THESE HELP TEXT DESCRIPTIONS WERE SIMILAR OR PROTECTABLE OR

2    WHAT THEY WERE.  YOU WILL NEVER HEAR THEM SAY THAT BECAUSE THEY

3    CANNOT SAY THAT.

4          THEY HAD EVERYTHING -- THEY HAD MULTIPLE WAYS OF

5    SEEING WHAT THIS TEXT WAS, AND THEY EVEN HAD WAYS OF LOOKING AT

6    THE SOURCE CODE AND SEEING WHAT WAS IN THE SOURCE CODE

7    REGARDING THIS.

8          AND, BY THE WAY, YOUR HONOR, THIS SOURCE CODE THEORY,

9    IT'S NOT REALLY SOURCE CODE.  IT'S A TEXT SCREEN.  SO

10   OBVIOUSLY, IF A COMPUTER PRINTS SOME TEXT ON THE SCREEN,

11   THERE'S GOT TO BE CODE THAT HAS -- HAS THAT TEXT WITHIN THE --

12   THAT'S ALL THE -- TO THE EXTENT IT'S IN THE SOURCE CODE, IT'S

13   SIMPLY A PORTION OF THE SOURCE CODE THAT SAYS:  WHEN YOU DO

14   THIS, PRINT THIS TEXT.  THAT'S THE SOURCE CODE.  BUT THAT'S

15   THEIR THAT'S THEIR THEORY OF SOURCE CODE THEFT.

16         SO --

17         THE COURT:  WHAT OF THE ARGUMENT THAT THERE WAS

18   DISCOVERY YOU COULD HAVE TAKEN AS TO THE -- THIS TYPE OF

19   INFORMATION THAT YOU DID NOT TAKE AND THAT IT'S SUGGESTIVE OF

20   YOUR CHOICES MADE THAT, IN REALITY, YOU WOULD NOT TAKE

21   DISCOVERY ON THESE ISSUES EVEN IF GIVEN THE OPPORTUNITY TO DO

22   SO.

23         MR. FERRALL:  WELL, THAT -- I MEAN, IT'S A COMPLETELY

24   DIFFERENT -- IT'S A DIFFERENT SET OF CONTENTIONS.  THE SCREEN

25   OUTPUTS THAT MR. PAK IS TALKING ABOUT ARE THINGS LIKE AN
```

1    ARRANGEMENT OF DATA, OKAY?  IT'S NOT -- AND TO THE EXTENT

2    THERE'S SIMILARITIES OF TEXT THEY'RE ABSURD SIMILARITIES.

3    THEY'RE PICKING WORDS HERE AND THERE.

4         BUT, REGARDLESS, WE HAD TO MAKE DECISIONS -- AS

5    MR. PAK SAID, WE WANTED TO TAKE A LOT MORE DISCOVERY THAN WE

6    WERE ALLOWED TO.  SO, YEAH, WE HAD A LIMIT OF 25 DEPOSITIONS.

7    WE HAD ONLY A CERTAIN AMOUNT OF TIME.  AS IT WAS, WE STILL WERE

8    SCRAMBLING TO GET THINGS DONE, RIGHT?

9         SO WE HAD TO MAKE TACTICAL DECISIONS ABOUT WHAT TO

10   EMPHASIZE.  AND TO US, FOR MULTIPLE REASONS, THOSE SCREEN

11   OUTPUTS WERE NOT PARTICULARLY -- WERE NOT AS IMPORTANT AS OTHER

12   ASPECTS OF THE CASE.

13        LET ME SHOW YOU, THOUGH, WHAT WE DID ABOUT THE CLI

14   COMMANDS -- AND TO BE FAIR, THESE SO-CALLED HELP DESCRIPTIONS

15   ARE BASICALLY A DESCRIPTION OF THOSE COMMANDS.  SO THEY SORT OF

16   PAIR UP WITH COMMANDS.  ALTHOUGH, I'LL NOTE THAT CISCO HASN'T

17   EVEN ACTUALLY IDENTIFIED WHAT COMMAND THEY PAIR UP WITH.  ALL

18   THEY DID IS QUOTE THE TEXT AND THEN SAID, SEE, ARISTA HAS THE

19   SAME TEXT.  SO WE DON'T EVEN KNOW COMMAND THEY PAIR UP WITH

20   NECESSARILY.

21        BUT LET ME SHOW YOU IN THE RECORD AN EXAMPLE OF THE

22   SORT OF DISCOVERY THAT WE DID FOR THE COMMANDS AND HOW MUCH

23   EFFORT WENT INTO THAT.

24        SO THIS IS EXHIBIT L TO CISCO'S OPPOSITION.  THEY

25   SUBMITTED ONE VERSION OF OUR CONTENTION INTERROGATORY RESPONSES

1    IN WHICH -- AND WE SUBMITTED VARIOUS VERSIONS OF THESE,

2    CONSTANTLY UPDATING THEM OVER TIME.  BUT YOU'LL SEE FOR EACH

3    COMMAND, WE HAD TO ENGAGE STARTING, FOR EXAMPLE, ON PAGE 12 OF

4    EXHIBIT L --

5              THE COURT:  OKAY.  PROCEED.  YES.

6              MR. FERRALL:  FOR EACH COMMAND, WE ENGAGED IN REVIEW

7    OF ALL OF THE INDUSTRY STANDARD DOCUMENTS THAT RELATE TO THAT

8    COMMAND.  THESE ARE COMMANDS THAT ARE IMPLEMENTING

9    FUNCTIONALITY THAT ARE TYPICALLY DESCRIBED AND DEFINED BY

10   INDUSTRY STANDARDS.  AND SO NOT SURPRISINGLY, A LOT OF THE

11   VOCABULARY AND THE EXPRESSIONS THAT CISCO CLAIMS ARE

12   COPYRIGHTABLE ARE ALSO FOUND IN STANDARDS DOCUMENTS PUBLISHED

13   BY THE IETF AND THE IEEE AND SO FORTH.

14             SO WE EXHAUSTIVELY ANALYZED -- I COULDN'T TELL YOU

15   HOW MUCH RFCS WE HAD TO ANALYZE -- THESE DOCUMENTS WE HAD TO

16   ANALYZE TO ESTABLISH HOW WHAT CISCO CLAIMS IS ORIGINAL TO IT

17   ACTUALLY OWES ITS ORIGIN TO OTHER SOURCES.  A MASSIVE, MASSIVE

18   PROJECT.  OKAY?

19             WELL, WE WOULD DO SOME OF THE SAME, IF NOT ALL OF THE

20   SAME, FOR THESE 400 NEW EXPRESSIONS, BECAUSE, AFTER ALL, IF

21   IT'S SIMPLY A DESCRIPTION OF A COMMAND THAT OWES ITS ORIGINS

22   MOSTLY OR ENTIRELY TO AN INDUSTRY STANDARD, WE THINK IT'S

23   LIKELY THAT THAT DESCRIPTION ALSO IS NOT GOING TO BE ORIGINAL.

24             NOW, THIS IS -- THIS IS A YEAR OR MORE OF WORK THAT

25   WE UNDERTOOK TO DO THIS.  AND CISCO WOULD SAY, WELL, THEIR

1    EXPERT IS FULLY PREPARED TO RESPOND TO THESE 400 COMMANDS ON

2    ONE WEEK'S NOTICE.  IT'S SILLY.

3         THE OTHER ASPECT OF EXHIBIT L STARTS ON PAGE -- WHERE

4    IS IT?  ROUGHLY PAGE 150.  AND HERE, FOR EVERY COMMAND, WE TOOK

5    DISCOVERY, INCLUDING THIRD-PARTY DISCOVERY, TO SEE HOW MUCH OF

6    THE REST OF THE INDUSTRY WAS USING THE IDENTICAL COMMAND.

7    AFTER ALL, ONE OF THE POINTS WE MADE, AS WE ALLUDED TO A LITTLE

8    BIT TALKING ABOUT MR. GIANCARLO, IS THAT CISCO HAS KNOWN THAT

9    THE INDUSTRY HAS USED THIS TERMINOLOGY, HAS EMULATED ITS CLI

10   FOR A DECADE OR MORE AND DID NOTHING ABOUT IT.

11        SO TO PROVE THAT, WE TOOK EXTENSIVE THIRD-PARTY

12   DISCOVERY, INTERNAL INVESTIGATION, RESEARCH, DISCOVERY OF CISCO

13   ABOUT EACH COMMAND TO SHOW YOU, TO SHOW CISCO AND TO PROVE HOW

14   IT'S BEEN USED BROADLY IN THE INDUSTRY.

15        AGAIN, WE CERTAINLY WOULD DO THE SAME FOR THESE

16   RESPONSES, BECAUSE WE HAVE STRONG REASON TO BELIEVE THAT

17   EVERYONE WHO'S USING THE SAME COMMANDS -- AND THAT'S BASICALLY

18   EVERY BIG PLAYER IN THE INDUSTRY -- IS ALSO GOING TO BE USING

19   THE SAME DESCRIPTIONS.

20        BUT CISCO, BECAUSE THEY CHOSE NOT TO REVEAL ANY OF

21   THIS UNTIL THE LAST DAY OF DISCOVERY, IT'S ABSOLUTELY

22   IMPOSSIBLE.  MR. PAK IS RIGHT.  SUMMARY JUDGMENT IS BRIEF.

23   IT'S GOING TO BE ARGUED NEXT WEEK.  EXPERT DISCOVERY IS OVER.

24   IT'S LONG OVER.  THE CASE IS HEADING TO TRIAL.  THAT'S WHY

25   STRIKING THE EVIDENCE IS THE ONLY JUST OUTCOME, ESPECIALLY

1  GIVEN WHAT CISCO REPRESENTED TO THIS COURT ABOUT ITS LEVEL OF

2  COMMITMENT AND COOPERATION TO GET THIS CASE READY FOR TRIAL.

3       SO THIS IS NOT A CASE, NOT A CASE AT ALL, WHERE

4  THEY -- WHERE THERE WAS SOME SECRET ARISTA INFORMATION EVIDENCE

5  SOURCE CODE, THAT THEY COULD NOT POSSIBLY HAVE KNOWN ABOUT THIS

6  UNTIL WE PRODUCED, AND THEN THEY PROMPTLY ANALYZED IT.  QUITE

7  TO THE CONTRARY.

8       AND LOOK, YOUR HONOR, THEIR OWN DISCOVERY RESPONSE --

9  I TOLD YOU I'D COME BACK TO JANUARY 16 -- THEIR OWN DISCOVERY

10  RESPONSE PROVES THAT.

11       JANUARY 2016 -- JANUARY 5, I THINK IT WAS -- THEY

12  PROVIDED DISCOVERY RESPONSE IN WHICH THEY SAY ARISTA ALSO

13  COPIES THIS CONTEXT-SENSITIVE HELP, AND THEY QUOTE A

14  SCREENSHOT.  HOW THEY GOT THAT SCREENSHOT -- WELL, WE KNOW HOW

15  THEY GOT -- THEY GOT A LOT OF SCREENSHOTS.

16       THEY QUOTE A SCREENSHOT THAT DESCRIBES THE HELP

17  FUNCTION, THAT BASICALLY SAYS, YOU CAN HIT QUESTION MARK AFTER

18  ANY COMMAND, AND YOU'LL GET A DESCRIPTION OF WHAT IT IS.

19       THEN THEY GO ON AND SAY, AND CISCO -- SORRY -- AND

20  ARISTA HAS COPIED OTHER OF THESE DESCRIPTIONS, AND THEY GIVE AN

21  EXAMPLE, AND THEY SAY, OF COURSE WE RESERVE THE RIGHT TO

22  SUPPLEMENT.  OKAY.  WELL, THAT WAS THE TIME TO SUPPLEMENT.  IF

23  NOT JANUARY 5, HOW ABOUT JANUARY 15?  HOW ABOUT JANUARY 30?

24  HOW ABOUT SOMETIME BEFORE 10:00 P.M. ON THE CLOSE OF FACT

25  DISCOVERY?

1          IT WAS INEXCUSABLE, YOUR HONOR.  IT'S ABSOLUTELY

2     INEXCUSABLE.  AND, YOU KNOW, THIS IS -- THE *FINJAN* CASE IS

3     DIRECTLY ON POINT.  *FINJAN* WAS A CASE IN WHICH THERE WAS

4     DISCLOSURE OF PRIOR ART, MASS -- AS YOU MIGHT IMAGINE, AS YOU

5     SEE IN A LOT OF THESE CASES, MASSIVE DISCLOSURES OF PRIOR ART

6     BY THE DEFENDANT.  RIGHT?

7          AND THEN AT THE VERY END OF DISCOVERY, THE DEFENSE

8     COUNSEL IDENTIFIED A WITNESS ON ITS DISCLOSURE THE VERY -- I

9     THINK IT'S THE VERY LAST DAY OF DISCOVERY -- IDENTIFIED TWO

10    WITNESSES, THEIR PRIOR ART WITNESSES.

11         AND DEFENSE COUNSEL SAID, OH, WELL, THEY SHOULD HAVE

12    KNOWN ABOUT IT BECAUSE WE DISCLOSED THIS PRIOR ART AMONG TWO

13    HUNDRED OTHER PIECES OF PRIOR ART; THEY SHOULD HAVE KNOWN THESE

14    GUYS COULD BE WITNESSES.  AND THE COURT SAID, NO, THAT DOESN'T

15    FLY.

16         AND THEN THEY SAID, WELL, WE DIDN'T DISCLOSE THESE

17    WITNESSES BEFORE BECAUSE WE DIDN'T KNOW THE ADDRESS OF ONE OF

18    THEM.  THAT DOESN'T -- THAT DOESN'T PREVENT YOU FROM DISCLOSING

19    THE NAME.

20         SAME HERE.  IF THEY REALLY NEEDED MORE TIME TO DO

21    SOURCE CODE ANALYSIS, WHICH THE EVIDENCE SHOWS THEY DIDN'T

22    BECAUSE THEY HAD IT LONG AGO, BUT EVEN IF THEY DID, FINE.  YOU

23    DON'T NEED THE SOURCE CODE ANALYSIS TO MAKE THE CONTENTION.

24    JUST LIKE IN A PATENT CASE, TO MAKE A CONTENTION, AN

25    INTERROGATORY RESPONSE THAT SAYS, WE SAY THESE PHRASES ARE

1   PROTECTABLE AND WE SAY YOU'RE INFRINGING BY USING THESE

2   PHRASES.

3           IF THAT'S THEIR THEORY OF THE CASE AND THEY'RE GOING

4   TO PUT THAT ON TO TRIAL, AND THEY ABSOLUTELY, IT APPEARS IN

5   EVERY EXPERT REPORT THEY SUBMITTED, THEY HAD THE ABILITY TO DO

6   THEY.  THEY HAD THE ABILITY TO DO THAT BEFORE THEY FILED THE

7   CASE, BUT THEY CERTAINLY HAD ABILITY TO DO IT AFTER OUR

8   INTERROGATORY.  THEY PROVED THEY COULD DO IT BY JANUARY 2016,

9   AND THEY WAITED UNTIL THE LAST DAY.

10          **THE COURT:**  ALL RIGHT.  MR. PAK, WHY COULDN'T YOU

11  HAVE DONE THIS IN JANUARY?

12          **MR. PAK:**  ABSOLUTELY NOT, YOUR HONOR, BECAUSE ALL

13  THESE COMMANDS GET ADDED OVER TIME.  SO WE HAVE A HISTORY OF

14  DIFFERENT RELEASES OF VERSIONS.  SO I THINK IN ARISTA'S CASE,

15  THEY STARTED WITH CLOSE TO ABOUT 150 COMMANDS.  OVER A LONG

16  PERIOD OF TIME THOSE COMMANDS HAVE NOW INCREASED TO CLOSE TO A

17  THOUSAND COMMANDS.

18          WHAT OUR ALLEGATIONS WITH RESPECT TO THE HELP

19  DESCRIPTION IS NOT SIMPLY THAT THERE'S TEXT THAT APPEARS ON

20  THIS SCREEN, AND THERE'S TEXT THAT APPEARS ON THIS SCREEN, OR

21  EVEN DOWN AT THE SOURCE CODE LEVEL, THAT'S SOME SIMILAR

22  PHRASING HERE AND SIMILAR PHRASING HERE.

23          WHAT WE'RE SAYING HERE IS THAT WHEN YOU LOOK AT THE

24  SWITCH AND OPERATION THAT'S RUNNING A PARTICULAR VERSION OF

25  SOURCE CODE, YOU WILL FIND VERY SIMILAR SCREEN OUTPUTS WHEN YOU

1    TYPE THESE HELP DESCRIPTION COMMANDS.  AND WHEN YOU DO THAT,

2    HERE ARE THE ELEMENTS IN THE SOURCE CODE THAT CORRESPOND TO

3    THOSE PARTICULAR SCREEN OUTPUTS IN THE FORM OF HELP

4    DESCRIPTIONS.  THAT ANALYSIS WE CANNOT DO WITHOUT HAVING AN

5    ARISTA-VERIFIED SWITCH THAT'S BEEN PRODUCED TO US THAT

6    CORRESPONDS TO SPECIFIC VERSIONS OF THE SOURCE CODE THAT'S BEEN

7    PRODUCED BY ARISTA IN THIS CASE.

8            WHEN WE GOT THOSE TWO PIECES OF INFORMATION, YOUR

9    HONOR, WHICH WAS IN MAY, WE TURNED AROUND THE ANALYSIS DIRECTLY

10   ON TIME, AND WE GOT THAT ANALYSIS DONE, AND WE SUPPLEMENTED IT

11   BEFORE FACT DISCOVERY CUTOFF.  SO THAT'S REALITY NUMBER ONE.

12           SO I AM ABSOLUTELY SAYING, YOUR HONOR, THAT WE COULD

13   NOT HAVE DONE THE ANALYSIS THAT WE DID BACK IN JANUARY OF 2016

14   BECAUSE WE WERE MISSING PRODUCTION OF ARISTA SWITCHES THAT WERE

15   RUNNING THE CODE THAT'S BEEN PRODUCED IN THIS CASE.

16           IF WE HAD TAKEN ANY SWITCH THAT MR. FERRALL IS

17   TALKING ABOUT, SOME HYPOTHETICAL SWITCH OFF THE MARKET OR IN

18   OUR (UNDISCERNIBLE) WHICH IS RUNNING SOME DIFFERENT VERSION OF

19   THE CODE THAN WHAT ARISTA HAS PRODUCED IN THIS CASE AS BEING

20   REPRESENTING THE CODE, THAT DOESN'T DO US ANY GOOD.  THAT IS

21   NOT ADMISSIBLE EVIDENCE, YOUR HONOR.  WHAT WE NEEDED TO WAS TO

22   MATCH UP THE OPERATIONAL LEAD SWITCH TO THE CODE, AND WE DID

23   THAT ANALYSIS.

24           SO, NUMBER TWO, ON ALL THESE CASES THAT MR. FERRALL

25   IS TALKING ABOUT ARE PATENT CASES, YOUR HONOR.  THEY'RE VERY

1    SPECIFIC RULES ABOUT PATENT DISCLOSURES, AS YOUR HONOR KNOWS,

2    IN LOCAL PATENT RULES ABOUT ASSERTION OF CLAIMS, IDENTIFICATION

3    OF CLAIMS, IDENTIFICATION OF PRIOR ART.  WHAT WE'RE TALKING

4    ABOUT HERE IS A COPYRIGHT CASE WHERE WE ARE ALLEGING THAT THEY

5    STOLE, EFFECTIVELY, THIS ENTIRE INTERFACE.  AND THAT INTERFACE

6    NOT ONLY INCLUDES THE COMMANDS, BUT IT INCLUDES --

7              **THE COURT:**  YOU'RE RIGHT ABOUT THERE BEING PARTICULAR

8    PATENT RULES, BUT THE CONCEPT OF SHIFTING SANDS --

9              **MR. PAK:**  SURE, YOUR HONOR.

10              **THE COURT:**  -- AND NOT ALLOWING ONE PARTY TO GO ONE

11    DIRECTION AND SHIFT TO THE OTHER AT THE LAST MOMENT IS --

12              **MR. PAK:**  ABSOLUTELY.

13              **THE COURT:**  -- IS TRUE ACROSS THE --

14              (SIMULTANEOUS SPEAKING.)

15              **MR. PAK:**  THAT'S ABSOLUTELY -- ALL I'M SAYING IS THAT

16    SPECIFIC *FINJAN* CASE, YOUR HONOR, I THINK, YOU KNOW, IF YOU GO

17    INTO SOME OF THOSE SPECIFIC CASES, THERE ARE VIOLATIONS OF

18    LOCAL PATENTS RULES AND THAT WAS A BASIS WHY THE STRIKING OF

19    THE EVIDENCE OCCURRED.

20              BUT I WANT TO SHOW YOUR HONOR, IF I MAY, EXHIBIT E,

21    WHICH IS AN EXEMPLARY COPY OF THE COMMAND RESPONSES.

22              MR. FERRALL SAYS THESE ARE JUST DATA ELEMENTS.

23    THEY'RE NOT.  SO THESE ARE SPECIFIC SCREEN OUTPUT EXAMPLES THAT

24    WE PROVIDED AS PART OF THIS CASE, NOT BASED ON SWITCHES, BUT

25    THESE WERE BASED ON MANUAL DESCRIPTIONS THAT WE HAVE FROM

1    ARISTA SHOWING THE SCREEN OUTPUTS OF THEIR SWITCHES.

2         AS YOU CAN SEE, THERE ARE STRINGS OF WORDS OF

3    COPYRIGHTABLE EXPRESSIONS OF HOW YOU DESCRIBE THESE PARTICULAR

4    COMMANDS THAT WERE TAKEN FROM CISCO'S SCREEN OUTPUTS, COPIED

5    INTO ARISTA SCREEN OUTPUTS.

6         WE PROVIDED THIS INFORMATION.  MR. FERRALL DIDN'T DO

7    ANY OF THE THINGS THAT HE TALKED ABOUT.  HE DIDN'T ASK FOR

8    CONTENTION INTERROGATORIES AND WHO AUTHORED THEM.  HE DIDN'T

9    TAKE A SINGLE DEPOSITION ON ANY OF THESES AUTHORS WHATSOEVER.

10        SO THIS IDEA THAT SOMEHOW THESE PARTICULAR SCREEN

11   EXAMPLES WE'RE TALKING ABOUT IN THE HELP DESCRIPTION CONTEXT,

12   THAT THEY WOULD HAVE CONDUCTED SOME ENTIRELY DIFFERENT SET OF

13   DISCOVERY, I THINK IS BELIED BY THE FACT WE HAD VERY SIMILAR

14   CONTENTIONS WITH RESPECT TO THE INFORMATION THAT WE HAD ON THE

15   OUTPUT SCREENS.

16        THE THING THAT'S IMPORTANT ABOUT THE HELP

17   DESCRIPTION, YOUR HONOR, AGAIN, IS OUR CONTENTION IS NOT THAT

18   WORDS APPEAR IN THE SAME PLACES ON THE HELP SCREEN.  THAT IS

19   NOT OUR CONTENTION.

20        WHAT OUR CONTENTION IS THAT WHEN YOU LOOK AT HOW THE

21   SOURCE CODE RUNS ON EACH OF THESE ARISTA SWITCHES THEY PRODUCED

22   IN THIS CASE, THEY ARE GENERATING THESE STRINGS, THEIR COMMAND

23   EXPRESSIONS, AND WHEN YOU LOOK INSIDE THE SOURCE CODE, THEY'RE

24   STORED AS STRINGS THAT ARE COPYRIGHTABLE EXPRESSIONS.

25        SO I'M ABSOLUTELY ON THE RECORD, YOUR HONOR, SAYING

```
 1    THAT IN JANUARY OF 2016, THE KIND OF ANALYSIS THAT OUR EXPERT

 2    PUT TOGETHER, THE ALLEGATION THAT WE'RE MAKING WHICH LINKS

 3    SPECIFIC SWITCHES, AND THEIR OUTPUTS TO THE CODE COULD NOT HAVE

 4    BEEN DONE.

 5              WE PROVIDED A -- WE SERVED RFP, A REQUEST FOR

 6    PRODUCTION, IN SEPTEMBER OF 2015.  WE DIDN'T GET THEIR SWITCH.

 7    WE TOLD THEM IN JANUARY OF 2016 THAT WE WERE LOOKING FOR THE

 8    SWITCHES FOR THIS PURPOSE.

 9              THEY DIDN'T PROVIDE THE SWITCH.  THEY CONDUCTED NO

10    DISCOVERY.  WE GET TO MAY OF 2016 AFTER WE COMPLAIN ABOUT THE

11    LACK OF SWITCH.  WE GOT THE SWITCHES.  OUR EXPERT TURNED IT

12    AROUND, AND THEIR EXPERT HAS ADDRESSED IT.

13              SO MR. FERRALL'S ARGUMENT THAT THEY WOULD HAVE

14    CONDUCTED ALL THIS HYPOTHETICAL FACT DISCOVERY IS NOT SUPPORTED

15    BY WHAT THEY DID IN THIS CASE.

16              IT ALSO -- AT THE END OF THE DAY, THEY STILL HAVE ALL

17    OF THE EXPERT DISCOVERY WHICH WE TALKED ABOUT, WHICH

18    MR. FERRALL DOESN'T DENY, THAT THEIR EXPERT HAD FULL

19    OPPORTUNITY TO ADDRESS THIS ISSUE.  HE ADDRESSED IT.  HE TALKED

20    ABOUT IT.  THERE'S ABSOLUTELY NO PREJUDICE HERE.

21              ONE LAST THING, YOUR HONOR, IS, YOU KNOW, WITH

22    RESPECT TO DISCOVERY -- AND, YOU KNOW, I THINK HE SUGGESTED

23    THAT THEY WERE ASKING FOR THIS EXTENSION OF CASE SCHEDULE.

24    WE'RE ABSOLUTELY OPPOSED TO THAT.  I THINK JUDGE FREEMAN WOULD

25    BE OPPOSED TO THAT, WHICH IS TO HAVE SOME PERPETUAL REOPENING
```

1    OF DISCOVERY THAT WOULD PUSH THE TRIAL SCHEDULE BEYOND THE

2    NOVEMBER AND DECEMBER TIME FRAME.

3         AND WE'VE STOOD BY MY COMMITMENT AT THE VERY ONSET OF

4    THIS CASE, WHICH WAS WE WOULD WORK VERY, VERY HARD TO GET ALL

5    THE DISCOVERY TO ARISTA, AND WE'VE DONE THAT AS MUCH AS WE CAN.

6         HOWEVER, IF YOUR HONOR REALLY FEELS THAT THIS IS AN

7    ISSUE THAT -- JUST LIKE WE DID WITH THE LOST PROFITS ISSUE

8    THAT, LOOK, YOU KNOW, ARISTA MAY NEED SOME FACT DISCOVERY, AND

9    IT WAS A VERY FOCUSED SUPPLEMENTAL DISCOVERY, ONE DEPOSITION

10   30(B)(6) WITNESS, TO TALK ABOUT THESE PARTICULAR SCREEN OUTPUTS

11   THAT ARE IN THE FORM OF HELP DESCRIPTIONS, WE WOULDN'T BE

12   OPPOSED TO SOMETHING LIKE THAT.

13        BUT THE RELIEF THAT WAS PUT ON THE TABLE WAS WE WANT

14   TO REOPEN DISCOVERY, WE WANT TO CONDUCT POTENTIALLY HUNDREDS OF

15   DEPOSITIONS, WE WANT TO GO BACK AND INTERVIEW EVERY SINGLE

16   PERSON WHO EVER WROTE ANY OF THESE WORDS AND REENGAGE IN THIS

17   INTERROGATORY RESPONSE PROCESS, WHICH ARE THEY DIDN'T ENGAGE IN

18   FOR THE SCREEN OUTPUT, WE'RE ABSOLUTELY OPPOSED TO THAT.

19        BUT IF YOUR HONOR AT THE END OF THE DAY REALLY FEELS

20   THAT THERE IS SOME RELIEF THAT NEEDS TO BE GIVEN TO ARISTA

21   THAT'S LIMITED IN SCOPE, TARGETED, WE WOULDN'T BE OPPOSED TO

22   THAT.

23        BUT I THINK ULTIMATELY IT COMES DOWN TO TWO

24   QUESTIONS.  THERE'S NOT A SINGLE CASE AUTHORITY, YOUR HONOR,

25   THAT SAYINGS AS STRICKEN A CONTENTION OR EVIDENCE OF THIS TYPE,

1   WHERE THE EVIDENCE AND THE ANALYSIS TURNS ON SWITCHES OR

2   EQUIPMENT THAT WAS IN ARISTA'S POSSESSION, THE DEFENDANT'S

3   POSSESSION, AND WASN'T PRODUCED UNTIL A MONTH BEFORE FACT

4   DISCOVERY CUTOFF, NOT A SINGLE CASE.

5          SO OUR ALLEGATIONS, ONCE YOU UNDERSTAND THEM AND THAT

6   WE UNDERSTAND -- AND, AGAIN, I'LL REPRESENT OUR ALLEGATIONS

7   HERE ARE NOT SIMPLY ABOUT MATCHING WORDS AND SAYING, WE HAVE

8   COPYRIGHTABLE EXPRESSION HERE, YOU COPIED IT BY PUTTING IT INTO

9   A SCREEN.

10          OUR ANALYSIS IS YOU WENT TO THE SOURCE CODE, YOU

11   PROVIDED THESE HELP DESCRIPTION TEXTS.  THOSE TEXT STRINGS

12   APPEAR WHEN YOU RUN THESE SPECIFIC COMMANDS ON THESE SPECIFIC

13   SWITCHES.  THAT'S THE EVIDENCE THAT WE WANT TO PUT ON ON AT

14   TRIAL.  THAT'S THE EVIDENCE THAT OUR EXPERT PROVIDED.  THAT

15   THAT'S THE EVIDENCE THAT THEIR EXPERT REBUTTED.  NOT A SINGLE

16   CASE AUTHORITY WHERE THAT TYPE OF EVIDENCE CONTENTION WAS

17   STRICKEN.

18          **THE COURT:**  ALL RIGHT.  LET ME GIVE MR. FERRALL THE

19   FINAL WORD.  IT'S HIS MOTION.

20          JUST FOR THE RECORD, WHAT YOU'VE SHOWN ME, I'LL GIVE

21   BACK TO YOU.

22          **MR. PAK:**  YES, SIR.

23          **THE COURT:**  THAT'S EXHIBIT D, CISCO'S OBJECTIONS AND

24   RESPONSES TO ARISTA'S INTERROGATORIES.

25          **MR. PAK:**  THANK YOU.

1          **THE COURT:**  THANK YOU.

2          **MR. FERRALL:**  COUPLE THINGS, YOUR HONOR.

3          **THE COURT:**  YEAH.

4          **MR. FERRALL:**  I DON'T THINK IT'S EVER BEEN THE CASE

5   THAT YOU'RE EXCUSED FROM RESPONDING TO A CONTENTION

6   INTERROGATORY UNTIL YOU'RE SURE YOU HAVE ADMISSIBLE EVIDENCE

7   THAT IS, YOU KNOW, UNIMPEACHABLE AT TRIAL.  I DON'T THINK

8   THAT'S EVER THE RULE, CERTAINLY NOT THE RULE IN PATENT CASES

9   WHERE CONTENTIONS ARE REQUIRED BEFORE YOU GET REALLY ANY

10  DISCOVERY.

11         OF COURSE YOU DON'T NEED ADMISSIBLE, YOU KNOW,

12  CONFIRMED ADMISSIONS FROM THE OTHER SIDE BEFORE YOU CONTEND

13  WHAT IS PROTECTED AND NOT.

14         SO THIS STRAWMAN ARGUMENT THAT THERE'S NO CASE

15  HOLDING THIS SCENARIO, THEIR VERSION OF THE WORLD, IS

16  IRRELEVANT.  THE QUESTION IS:  DID THEY HAVE THE ABILITY, AN

17  ABILITY, FROM WHATEVER MEANS, PUBLIC OR OTHERWISE, OR WITHIN

18  THEIR BACK OFFICE TO MAKE THIS CONTEXT?

19         AND, YOUR HONOR, THEIR HIS DEPICTION OF WHAT THIS IS

20  ABOUT, I'M NOT SURE I TOTALLY UNDERSTOOD IT, BUT IT'S NOT

21  WHAT'S IN THE INTERROGATORY RESPONSE.  THEIR WORDS IN THE

22  INTERROGATORY RESPONSE -- THIS IS THE ONE THAT FIRST INTRODUCES

23  HELP DESCRIPTION, QUOTE:

24               "CISCO ALSO HAS DISCOVERED

25          ADDITIONAL COPYING BY ARISTA.

1              "ARISTA HAS COPIED THE COMMAND

2         DESCRIPTIONS, ALSO KNOWN AS HELP TEXT OF

3         VARIOUS COMMANDS.  THE NUMBER AND EXTENT OF

4         THE SIMILARITIES BETWEEN CISCO COMMAND

5         DESCRIPTIONS AND ARISTA COMMAND DESCRIPTIONS

6         IS EVIDENCE THAT ARISTA INTENTIONALLY COPIED

7         AND THEN INCORPORATED THOSE DESCRIPTIONS INTO

8         ITS EOS CLI."

9         OKAY?

10             IT DIDN'T NEED ANYTHING OTHER THAN WHAT IT HAD BEFORE

11    IT EVEN FILED THIS CASE TO BE ABLE TO SAY THAT THIS TEXT ON A

12    CISCO DEVICE IS THE SAME AS THIS TEXT ON ARISTA DEVICE, AND I'M

13    GOING TO ASSERT COPYRIGHT OVER THIS CASE.  THAT'S WHAT THIS IS

14    ABOUT.  THEY HAD EVERYTHING THEY NEEDED BEFORE THEY EVEN FILED

15    THIS CASE, NOT TO MENTION BY JANUARY 2016, AS THEY PROVED.

16             SO THIS HAS NOTHING TO DO WITH THE TIME THAT THEY GOT

17    THEIR SWITCH.  THIS HAS EVERYTHING TO DO WITH WHY ON EARTH, IF

18    CISCO IDENTIFIES THIS ISSUE, EVEN GIVING THEM THE BENEFIT OF

19    THE DOUBT, THAT THEY IDENTIFIED THE ISSUE IN JANUARY 2016, AND

20    THEY SAY THAT THERE'S MORE EXAMPLES, WHY ON EARTH DO THEY WAIT

21    FOR THE LAST DAY OF DISCOVERY TO IDENTIFY THOSE EXAMPLES?

22             YOU WOULD NEVER TOLERATE THAT SORT OF GAMESMANSHIP OF

23    NEW CONTENTION THEY ARE MISS A PATENT CASE.  YOU WOULD NEVER

24    TOLERATE THAT.

25             AND THERE'S NO -- AND, LOOK, THE RULES OF DISCOVERY

1    STILL APPLY HERE.  IT'S STILL -- THERE'S STILL AN OBLIGATION TO

2    TIMELY SUPPLEMENT, AND THE TIMELINESS IS BASED UPON THE

3    AVAILABILITY OF THE INFORMATION THAT SUPPORTS THE CONTENTION.

4         UNDER THEIR THEORY, THEY DIDN'T HAVE THE ABILITY TO

5    IDENTIFY THE 500-PLUS COMMANDS AT THE BEGINNING OF THE CASE

6    BECAUSE WE HADN'T PRODUCED ANY DEFINITIVE IN EVIDENCE THE CASE

7    YET.  IT DOESN'T -- IT DOESN'T MAKE ANY SENSE.  THEIR THEORY

8    DOESN'T MAKE ANY SENSE.

9         LET ME JUST RESPOND ON THE DISCOVERY.

10        A 30(B)(6) DEPOSITION, YOUR HONOR, IS NOT WHAT WENT

11   INTO TRYING TO DEFEND AGAINST 500 COMMANDS, AND IT'S NOT WHAT'S

12   SUFFICIENT TO DEFEND AGAINST 400 NEW PHRASES.  OKAY?

13        JUDGE GREWAL ORDERED THEM TO IDENTIFY THE AUTHOR OF

14   EVERY ONE OF THOSE COMMANDS.  I DON'T THINK THEY'VE EVER

15   ACTUALLY FULLY COMPLIED WITH THAT, BUT THEY PUT IN A LOT OF

16   EFFORT, I'LL GIVE THEM THAT.

17        **THE COURT:**  YOU CAN BRING THAT MOTION TO JUDGE

18   GREWAL.  ACTUALLY, YOU CAN'T.

19        **MR. FERRALL:**  NO, THAT'S NOT MY POINT.  I KNOW THEY

20   PUT IN A LOT OF EFFORT INTO IT.  IT TOOK THEM A LONG TIME.  IT

21   TOOK THEM A LONG, LONG TIME EVEN TO PROVIDE THE COMPLIANCE THAT

22   THEY DID.

23        WELL, WHY WOULDN'T WE GET THE SAME THING HERE?  MAYBE

24   IT'S THE SAME AUTHORS.  I DON'T KNOW.  BUT WHY AREN'T WE

25   ENTITLED TO KNOW WHETHER, WHEN SOMEONE CLAIMS COPYRIGHT

1  PROTECTION OVER THE PHRASE "DELETE TO FILE," WHICH IS ONE OF

2  THEIR PHRASES, WHY AREN'T WE ENTITLED TO KNOW, REALLY, REALLY,

3  MR. CISCO ENGINEER, DID YOU REALLY MAKE THAT UP?  AND COUNTLESS

4  OTHER ONES THAT ARE AS MUNDANE AND QUOTIDIAN AS THEY COME.

5          BUT THEY'RE CLAIMING COPYRIGHT PROTECTION, AND WE'RE

6  GOING TO HAVE TO DEFEND THAT IN FRONT OF A JURY, AND WE HAVE NO

7  BASES FOR TAKING DISCOVERY FOR EXAMINING WHAT'S BEHIND THOSE.

8          **THE COURT:**  ALL RIGHT.

9          **MR. FERRALL:**  THANK YOU.

10         **THE COURT:**  THANK YOU VERY MUCH, BOTH, FOR YOUR

11 PREPARATION AND PRESENTATIONS.

12         THE STANDARD, OF COURSE, I'M APPLYING IS UNDER RULE

13 26 AND RULE 37.  THERE'S NOT AN EQUIVALENT PATENT LOCAL RULE

14 THAT APPLIES IN THIS CASE TO THESE CLOSURES, BUT IT'S HELPFUL

15 THAT BOTH PARTIES HAVE ANALOGIZED TO THE PATENT RULES AS TO

16 BASIS FOR RESPONDING TO CONTENTION INTERROGATORIES AND REQUESTS

17 FOR DISCOVERY.

18         AND THESE ARE IMPORTANT REQUESTS.  I RECOGNIZE AND

19 AGREE WITH ARISTA THAT THESE ARE IMPORTANT CONTENTIONS AND

20 THEY'RE GOING TO BE SIGNIFICANT AT THE TRIAL OF THE CASE, AND

21 I'M -- NO MATTER HOW I RESOLVE THIS, THERE'S GOING TO BE LEFT

22 SOME VERY TRICKY ISSUES AT TRIAL AS TO THE ADMISSIBILITY OF

23 INFORMATION, HOW EXPERTS ARE GOING TO REFER TO IT.

24         BUT AT SOME POINT IN A CASE DISCOVERY DOES COME TO AN

25 END, AND IN ANY TRIAL YOU GET TO A POINT YOU HAVE TO TAKE WHAT

1    YOU'VE GOT AND WORK WITH THAT AT TRIAL AND THE PARTIES ARE

2    GOING TO HAVE DO WHAT, WHETHER I GRANT THIS RELIEF OR NOT,

3    THERE'S GOING TO BE SOME CHALLENGING EVIDENTIARY ISSUES AT

4    TRIAL AS TO HOW THIS IS GOING TO BE MANAGED AND PREPARED AT

5    TRIAL.

6            BUT THERE'S NOT A PATENT LOCAL RULE THAT FORBIDS THE

7    TIMING OF THIS DISCLOSURE, SO IT'S REALLY MORE OF A COMMONSENSE

8    APPROACH.

9            I'LL TELL YOU MY REACTION TO A 10:00 P.M. DISCLOSURE

10   ON THE LAST DAY OF DISCOVERY IS THAT IT LOOKS FISHY.  IT LOOKS

11   PROBLEMATIC.  AND THAT'S WHAT MAKES THIS A CLOSE CALL, IS THAT

12   THAT CAN BE INDICATIVE OF A SANDBAGGING AND WAITING UNTIL THE

13   LAST POSSIBLE MOMENT TO DISCLOSE THINGS.

14           THAT MOTION IS, OF COURSE, ARISTA'S, BUT I'M, IN

15   CONCLUSION, PERSUADED BY CISCO'S EXPLANATION FOR WHY IT

16   DISCLOSED THE THINGS IT DID AND WHEN IT DISCLOSED THEM, THAT IT

17   WAS NOT BASED ON A BAD FAITH WAITING, BUT IT WAS BASED ON IT

18   LEARNING INFORMATION AND THEN IN A TIMELY WAY RESPONDING AND

19   UPDATING ITS CONTENTION INTERROGATORIES.

20           SO I, APPLYING THE RULES, I'M GOING TO DENY THE

21   MOTION TO STRIKE THE INFORMATION THAT IS SOUGHT IN THE MOTION,

22   AGAIN, LEAVING FOR A FUTURE DAY, HOW TO DEAL WITH THIS AT

23   TRIAL, THERE'S GOING TO BE SOME -- I CAN FORESEE THERE WILL BE

24   ISSUES ABOUT WHAT EXPERTS CAN SAY ABOUT IT, AND I'M LEAVING

25   THAT TO JUDGE FREEMAN.

1          I'M VERY MUCH IMPACTED HERE BY THE CONTEXT OF THIS

2     BEING AFTER DISCOVERY IS OVER, AND NOW JUDGE GREWAL DID GRANT

3     SOME EARLY RELIEF IN THE CASE THAT WAS LONG BEFORE THE END OF

4     THE DISCOVERY PERIOD AND LONG BEFORE SUMMARY JUDGMENT WAS

5     PENDING AND LONG BEFORE TRIAL.

6          NOW WE'RE IN A DIFFERENT WORLD, AND THE TRIAL JUDGE

7     HAS SAID THE TRIAL IS HAPPENING IN NOVEMBER, AND IT WOULD BE A

8     MORE SIGNIFICANT RULING NOW FOR ME TO SAY THAT YOU SHOULD

9     CONTINUE THE TRIAL YOU SHOULD TAKE MORE DISCOVERY.  AND SO THE

10    CONTEXT IS NOW A LITTLE BIT DIFFERENT THAN IT WAS WHEN YOU WERE

11    HAVING A SIMILAR DISPUTE BEFORE JUDGE GREWAL IN THE PAST.

12         SO THAT CONTEXT IS PART OF MY RULING.  IF WE WERE ON

13    THE FIRST DAY OF DISCOVERY AND THIS ISSUE CAME UP, I WOULD BE

14    MUCH MORE INCLINED TO SAY THIS INFORMATION IS NOT SUFFICIENT

15    AND HERE'S SOME MORE DISCOVERY YOU CAN TAKE.  IT'S COMING AFTER

16    DISPUTES WHERE YOU HAVE ARGUED AND HAVE COME TO SOME

17    RESOLUTIONS ABOUT THE NUMBER OF DEPOSITIONS AND THE SCOPE OF

18    DISCOVERY.

19         WE'RE NOW AT THE TAIL END OF THAT PROCESS RATHER THAN

20    THE BEGINNING.  SO I'M REALLY FOLLOWING ALONG WITH WHAT THE

21    TRIAL JUDGE AND JUDGE GREWAL HAVE DONE IN SETTING THE SCOPE OF

22    DISCOVERY AND TRYING TO BE CONSISTENT WITH THEIR APPROACH AT

23    THIS STAGE.

24         IN DOING ALL THAT AND TRYING TO BE FAIR AND

25    PRAGMATIC, I'M GOING TO DENY THE RELIEF REQUESTED AND ALLOW YOU

1    TO OBJECT TO THAT TO JUDGE FREEMAN IF YOU WISH TO.

2              THANK YOU VERY MUCH FOR YOUR TIME.

3              **MR. FERRALL:**  THANK YOU, YOUR HONOR.

4              **THE COURT:**  TAKE YOU VERY MUCH FOR YOUR TIME.

5              (PROCEEDINGS ADJOURNED AT 3:16 P.M.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **CERTIFICATE OF TRANSCRIBER**

2

3          I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4     TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5     THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6     U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7     PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8     ABOVE MATTER.

9          I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10    RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11    WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12    FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13    ACTION.

14

15                    *jmcolumbini*

16                    JOAN MARIE COLUMBINI

17                    AUGUST 2, 2016

18

19

20

21

22

23

24

25

*JOAN MARIE COLUMBINI, CSR, RPR*
*RETIRED OFFICIAL COURT REPORTER, USDC*
*510-367-3043*