MATTHEW D. POWERS (Bar No. 104795)
matthew.powers@tensegritylawgroup.com
WILLIAM NELSON (Bar No. 196091)
william.nelson@tensegritylawgroup.com
ROBERT GERRITY (Bar No. 268084)
robert.gerrity@tensegritylawgroup.com
NATASHA SAPUTO (Bar No. 291151)
natasha.saputo@tensegritylawgroup.com
SAMANTHA JAMESON (Bar No. 296411)
samantha.jameson@tensegritylawgroup.com
JENNIFER ROBINSON (Bar No. 270954)
jen.robinson@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone:  (650) 802-6000
Fax:  (650) 802-6001

Attorneys for Plaintiff
ARISTA NETWORKS, INC.

*[Additional Counsel Listed in Signature Block]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ARISTA NETWORKS, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>CISCO SYSTEMS, INC.,<br><br>        Defendant. | Case No. 5:16-CV-00923-BLF<br><br>**ARISTA NETWORKS, INC.'S MOTION TO STRIKE CISCO SYSTEMS, INC.'S AFFIRMATIVE DEFENSES AND FOR PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>Date:    May 10, 2018<br>Time    9:00 A.M.<br>Judge:  Hon. Beth Labson Freeman<br>Dept:   Courtroom 3<br><br>**DEMAND FOR JURY TRIAL** |

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF ISSUES TO BE DECIDED ................................................. 2

III.  RELEVANT FACTUAL BACKGROUND ....................................................... 3

      A.    The Parties And The Present Litigation ................................................ 3

      B.    Cisco's Assertions of Patent Infringement By Arista Switches In Other
            Proceedings And Arista's Continued Participation in The Relevant Switch
            Markets .................................................................................................... 3

      C.    The Court Denied In Relevant Part Cisco's Motion to Dismiss Based On
            Standing .................................................................................................. 5

      D.    Cisco's Assertion of a "Patent Infringement" Affirmative Defense
            Following The Court's Order ................................................................. 6

IV.   LEGAL STANDARD ......................................................................................... 7

V.    ARGUMENT ...................................................................................................... 8

      A.    Lack of Standing Is Not An Affirmative Defense ................................ 9

      B.    Under The Reasoning of Controlling Ninth Circuit Authority, Patent
            Infringement Does Not Eliminate Standing Or Antitrust Injury .......... 9

            1.    Cisco Cannot Avoid *Memorex* By Characterizing Patent
                  Infringement as a "Public Wrong" ........................................... 11

            2.    Cisco's Reliance on *Monarch* Is Misplaced ............................ 13

            3.    At Most, *Monarch* Stands For The Proposition that Patent
                  Infringement May Be A Defense To An Antitrust Claim When The
                  Infringed Patents Control Participation In the Market, Which Cisco
                  Cannot Establish ...................................................................... 14

            4.    Barring Standing to Assert Antitrust Claims Because of Patent
                  Infringement Would Undermine The Antitrust Laws ............... 16

      C.    Striking Cisco's "Patent Infringement" Affirmative Defense Will Avoid
            Unnecessary Use of this Court's Resources, And is In Accord With Public
            Policy ...................................................................................................... 18

      D.    Cisco's Remaining Affirmative Defenses Are Not Adequately Plead And
            So Should Be Stricken ........................................................................ 20

VI.   CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*ABC Distrib. v. Living Essentials LLC*,
   No. 15-cv-02064 NC, 2016 U.S. Dist. LEXIS 185992 (N.D. Cal. Apr. 26, 2016) ................... 9

*Ansari v. Elec. Document Processing, Inc.*,
   No. 5:12-CV-01245-LHK, 2012 U.S. Dist. LEXIS 128622 (N.D. Cal. Sep. 10, 2012)............ 9

*Broadcom Corp. v. Qualcomm Inc.*,
   501 F.3d 297 (3d Cir. 2007) ...................................................................................... 17

*Camacho v. Jefferson Capital Sys., LLC*,
   No. 14-cv-02728-BLF, 2014 U.S. Dist. LEXIS 141216 (N.D. Cal. Oct. 2, 2014).............. 8, 20

*Cargill, Inc. v. Monfort of Colo., Inc.*,
   479 U.S. 104 (1986).................................................................................................. 18

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*,
   132 F.3d 526 (9th Cir. 1997) ..................................................................................... 8

*Ethypharm S.A. Fr. v. Abbott Labs*,
   707 F.3d 223 (3rd Cir. 2013) ..................................................................................... 14

*Feitelson v. Google Inc.*,
   80 F. Supp. 3d 1019 (N.D. Cal. 2015) ........................................................................ 18

*First Beverages, Inc. v. Royal Crown Cola Co.*,
   612 F.2d 1164 (9th Cir. 1980) ............................................................................ passim

*Freeman v. San Diego Association of Realtors*,
   322 F. 3d 1133 (9th Cir. 2003) .................................................................................. 18

*Funai Electric Co. v. LSI Corp.*,
   No. 16-cv-01210, 2017 U.S. Dist. LEXIS 44866 (N.D. Cal. Mar. 27, 2017) ......................... 17

*Hartford-Empire Co. v. United States*,
   323 U.S. 386 (1945)................................................................................................. 17

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
   547 U.S. 28 (2006)................................................................................................... 17

*Memorex Corp. v. IBM Corp.*,
   555 F.2d 1379 (9th Cir. 1977) ............................................................................ passim

*Monarch Marking Sys., Inc. v. Duncan Parking Meter Maint. Co. ("Monarch I")*,
   No. 82 C 2599, 1988 U.S. Dist. LEXIS 390 (N.D. Ill. Jan. 14, 1988) ................... 6, 13, 14, 18

*Monarch Marking Sys., Inc. v. Duncan Parking Meter Maint. Co. ("Monarch II")*,
   No. 82 C 2599, 1988 U.S. Dist. LEXIS 2041 (N.D. Ill. Mar. 4, 1988) .............................. 6, 14

*Morton Salt Co. v. G. S. Suppiger Co.*,
  314 U.S. 488 (1942)......................................................................................... 17

*Pearl Music Co., v. Recording Industry Asso.*,
  460 F. Supp. 1060 (C.D. Cal. Nov. 15, 1978) ................................................. 15

*Perez v. Gordon & Wong Law Grp., P.C.*,
  No. 11-CV-03323-LHK, 2012 U.S. Dist. LEXIS 41080 (N.D. Cal. Mar. 26, 2012) ................ 9

*Perma Life Mufflers, Inc. v. International Parts Corp.*,
  392 U.S. 134 (1968).................................................................................. 13, 17

*Savage v. Citibank N.A.*,
  No. 14-cv-03633-BLF, 2015 U.S. Dist. LEXIS 107501 (N.D. Cal. Aug. 14, 2015) ........... 7, 19

*Tyson v. Bank of Am. N.A.*,
  No. 15-cv-01548-BLF, 2016 U.S. Dist. LEXIS 99774 (N.D. Cal. July 29, 2016)................... 8

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ........................................................................ 8

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) .................................................................... 7, 19

**Other Authorities**

1-OV Chisum on Patents 1 (2017)......................................................... 10, 11

6A-19 Chisum on Patents § 19.04 (2017)................................................... 17

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on May 10, 2018 at 9:00 AM, (or as soon thereafter as the Court's schedule permits), before The Honorable Beth Labson Freeman of the United States District Court for the Northern District of California, located at Courtroom 3, 280 South 1st Street, San Jose, CA 95113, plaintiff Arista Networks, Inc. ("Arista") will, and hereby does, move this Court for an order striking the first through seventh affirmative defenses of defendant Cisco Systems, Inc. ("Cisco") and precluding Cisco from offering evidence of the same, and, alternatively or additionally, granting partial judgment on the pleadings. This motion is based on this Notice of Motion and Motion, the following arguments and cited authorities and exhibits, the Declaration of Robert Gerrity in Support of Arista's Motion ("Gerrity Decl."), the pleadings and papers on file herein and in other litigations between Cisco and Arista, any oral argument before the Court, and any other matters the Court may request or consider.

**STATEMENT OF RELIEF SOUGHT**

Arista seeks an Order from the Court striking Cisco's first through seventh affirmative defenses; precluding Cisco from offering evidence of patent infringement to show the fact of infringement, the absence of antitrust injury, or to reduce damages; and granting partial judgment on the pleadings that Arista does not lack antitrust injury and does not lack antitrust standing based on patent infringement and that Arista does not lack antitrust standing based on the ITC Orders.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

After the Court issued its Order denying Cisco System, Inc.'s ("Cisco") motion to dismiss Arista's antitrust claims for lack of standing based on findings of patent infringement and resulting orders from the United States International Trade Commission ("ITC"), Cisco filed an Answer that asserted, as a new affirmative defense to Arista's claims, that Arista lacked standing and antitrust injury based on patent infringement and the ITC orders. ECF No. 170, Answer to Amended Complaint ("Answer"), ¶¶ 134-64. Cisco's new "patent infringement" affirmative defense improperly seeks to expand and transform this antitrust case into an eleven-patent infringement dispute,

duplicating litigation already underway in multiple other forums and requiring *this* court to oversee trial on infringement and validity of Cisco's patents as part of this antitrust case. There is no basis for Cisco to litigate those claims here.

First, not only is Cisco's first affirmative defense based on standing inconsistent with the Court's Order, but it should be stricken in its entirety because "lack of standing" is not an affirmative defense as a matter of law.

More fundamentally, permitting Cisco to assert patent infringement as a defense to antitrust standing and injury is inconsistent with the controlling Ninth Circuit authority, *Memorex Corp. v. IBM Corp.*, 555 F.2d 1379 (9th Cir. 1977). As this Court already observed, *Memorex* held that illegal acts by the plaintiff that are directed against the defendant are not a defense to an antitrust action. *Id.* at 1382-83; ECF No. 151, Order Granting In Part And Denying In Part Defendant's Motion To Dismiss With Leave To Amend ("Order") at 9-10 (quoting *Memorex*, 555 F.2d at 1382-83). While *Memorex* concerned assertions of trade secret misappropriation, Cisco's assertion of patent infringement by Arista as to a variety of patents related to optional switch features falls squarely within the reasoning of *Memorex* as conduct, even if proven true, that does not deprive an antitrust plaintiff of standing. As the Court recognized in its Order, none of the authority cited by Cisco to overcome *Memorex* supports a different result here.

Finally, Cisco's remaining affirmative defenses should be stricken for failing to meet the pleading standards, which require more than single sentences, each stating a legal conclusion.

Thus, Arista respectfully requests that Cisco's first affirmative defense be stricken; that Cisco be precluded from offering evidence of patent infringement to show infringement, to show the absence of antitrust injury, or to reduce damages; and that Arista be granted partial judgment on the pleadings that it does not lack antitrust standing or antitrust injury based on patent infringement and that it does not lack antitrust standing based on the ITC orders.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether Cisco's first through seventh affirmative defenses should be stricken under Rule 12(f).

2.   Whether, pursuant to *Memorex*, Cisco should be precluded from offering evidence of

patent infringement to show the fact of infringement, to show the absence of antitrust injury, or to reduce damages.

3.     Whether the Court should grant partial judgment on the pleadings under Rule 12(c) that Arista does not lack antitrust injury and does not lack antitrust standing based on patent infringement.

## III.     RELEVANT FACTUAL BACKGROUND

### A.     The Parties And The Present Litigation

Cisco and Arista both sell Ethernet switches. ECF No. 162, Amended Complaint for Antitrust and Unfair Competition ("Amended Complaint"), ¶¶ 11, 18. Ethernet switches "are building blocks for business communications" that "may connect computers, servers, storage, and other devices together to form a network." Answer, ¶ 11. For at least 15 years, Cisco dominated the market for Ethernet switches, with market shares always exceeding 50%, and at times exceeding 70%. Amended Complaint, ¶ 14. Arista released its first product in 2008, and its revolutionary Ethernet switches are being used in data centers of companies that provide financial services, social media, ecommerce, cloud computing, and scientific computing, as well as in many government agencies. *Id.*, ¶ 18. Cisco repeatedly tried and failed to counter Arista's success, and turned to anticompetitive conduct to maintain its Ethernet switch monopoly. *Id.*, ¶¶ 20-22. Arista initiated the present litigation on February 24, 2016, for violations of Section 2 of the Sherman Act, 15 U.S.C. § 2, and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ECF No. 1, Complaint for Antitrust and Unfair Competition, ¶¶ 1; Amended Complaint, ¶ 1.

### B.     Cisco's Assertions of Patent Infringement By Arista Switches In Other Proceedings And Arista's Continued Participation in The Relevant Switch Markets

On December 5, 2014, Cisco filed a complaint for patent infringement against Arista in this district, accusing a variety of specific Arista switch features of infringing 12 of its patents. *Cisco Systems, Inc. v. Arista Networks, Inc.*, Case No. 4:14-cv-5343 (N.D.Cal.) ("Infringement Litigation"). ECF No. 1, Complaint For Patent Infringement, Infringement Litigation Complaint (N.D.Cal. Dec. 5, 2014) ("Infringement Litigation Complaint"). Days later, Cisco asserted those same patents in the

International Trade Commission ("ITC"), against the same specific switch features.[1]   The ITC determined that Cisco's asserted patents (the same patents Cisco now seeks to litigate **as a group** before this Court in the antitrust trial) were too numerous and different to handle in a single investigation, and denied a motion to consolidate them such that two separate Investigations were handled by two different Administrative Law Judges. Ex. 1[2], Order No. 4, *In the Matter of Certain Network Devices, Related Software and Components Thereof (I)*, Inv. No. 337-TA-944 (Feb. 13, 2015). On August 22, 2016, following a finding that 3 of the 6 patents asserted by Cisco were infringed by Arista switches in ITC Investigation No. 337-TA-944, a Limited Exclusion Order and a Cease and Desist Order went into effect ("944 Orders"). Amended Complaint, ¶¶ 103-04; Answer, ¶¶ 103-04; ECF No. 110-8, Initial Determination, *In the Matter of Certain Network Devices, Related Software and Components Thereof (I)*, Inv. No. 337-TA-944 (Feb. 2, 2016; public version issued March 2, 2016). On May 4, 2017, following a finding that 2 of the 6 patents asserted by Cisco were infringed by Arista switches in ITC Investigation No. 337-TA-945, a second Limited Exclusion Order and a Cease and Desist Order went into effect ("945 Orders") (collectively, "ITC Orders"). Amended Complaint, ¶¶ 103-04; Answer, ¶¶ 103-04; ECF No. 110-13, Initial Determination, *In the Matter of Certain Network Devices, Related Software and Components Thereof (II)*, Inv. No. 337-TA-945 (Dec. 9, 2016; public version issued January 9, 2017).

As a consequence of the ITC Orders, Arista introduced redesigned products that either dropped the features found to infringe, or redesigned them so they cannot infringe. Amended Complaint, ¶¶ 103-04. U.S. Customs and Border Protection found that Arista's redesigned products did not violate the 944 Orders on April 7, 2017, and confirmed that Arista's redesigned products were permitted to enter the United States under the 945 Orders on October 12, 2017, based on a Federal Circuit order. *Id.* Proceedings before the ITC are ongoing. *Id.* Moreover, the two patents found to have been infringed in the 945 case have been found invalid following *inter partes review*

---

[1] As a result, the district court action has been stayed until the determinations in the ITC investigations become final. Order Granting Arista Networks, Inc.'s Unopposed Motion For Mandatory Stay Of Proceedings, Infringement Litigation, ECF No. 34 (N.D.Cal. Feb. 10, 2015) ("Stay Order").

[2] All references to "Ex." are references to the exhibits to the Gerrity Decl., filed herewith.

proceedings before the Patent Trial and Appeal Board. *Id.*, ¶ 104.

**C.    The Court Denied In Relevant Part Cisco's Motion to Dismiss Based On Standing**

On March 23, 2017, Cisco filed a renewed motion to dismiss Arista's antitrust Complaint, including on the basis that Arista did not suffer an antitrust injury because Arista is "***barred*** from selling" its Ethernet switches "in the United States by the ITC's orders" and Arista's sales of Ethernet Switches were "unlawful" because they infringed Cisco's patents. ECF No. 110, Defendant Cisco Systems, Inc.'s Motion to Dismiss the Complaint at 7-9.

This Court denied these portions of Cisco's motion on October 10, 2017. *See* Order. The Court found that "[t]here are a few problems with Cisco's argument" related to patent infringement as a bar to standing. *Id.* at 8. The Court "d[id] not agree with Cisco's premise," that "Arista's sales were unlawful from the start because the ITC found those switches to be infringing products" "and therefore f[ound] that antitrust standing has been alleged." *Id.* at 8. Specifically, the Court found that: "there has been no binding determination that Arista is an infringer"; the Court was not required to "accept as true that Arista infringed Cisco's patents"; "Cisco fails to show that Arista did not suffer antitrust injury"; that taking the allegations of the Complaint as true, "Arista has antitrust standing by suffering antitrust injury during the period before the effective dates of the ITC orders"; and "the ITC orders cannot negate Arista's antitrust injury that it suffered before their effective dates." *Id.* at 8, 10, 13-16. The Court also found that while Cisco "contend[ed] that Arista had no right to sell the excluded products '*before* or after' the ITC orders issued because the products are subject to the orders," "Cisco fails to establish that Arista had no right to sell its Ethernet switches before the ITC orders issued or that the ITC even has authority over past sales." *Id.* at 14. Accordingly, the Court denied Cisco's standing arguments, finding that the ITC's decisions were not binding determinations that Arista was an infringer, and conditioned Cisco's ability to re-raise the issue of lack of antitrust standing due to patent infringement on the necessity of a finding that "patent infringement is ***found*** to cover all of Arista's products." *Id.* at 13 (emphasis added).

Because the Court was "not reviewing a pleading alleging patent infringement," *id.* at 10, the Court did not rule on the question of whether a finding of patent infringement precludes standing to

assert an antitrust claim against a monopolist—a ruling which Cisco avidly sought. However, the Court expressed skepticism regarding Cisco's argument both in view of the controlling authority, and with respect to Cisco's cited authority. First, the Court noted that the Ninth Circuit's decision in "*Memorex* held that 'illegality is not to be recognized as a defense to an antitrust action when the illegal acts by the plaintiff are directed against the defendant.'" *Id.* at 9-10 (quoting *Memorex*, 555 F.2d at 1382-83). Although the Court did not reach Cisco's argument that *Memorex* was inapplicable because "Arista infringed a 'publicly issued' patent right," (*id.* at 10 n.3), the Court did find that Cisco's conclusion that "*Memorex* is distinguishable and Arista did not suffer antitrust injury because it committed a public wrong" was "incorrect" because "*Memorex* accepted that the antitrust plaintiff committed a wrong." *Id.* at 10.

Second, Cisco's cited authority in support of its argument that patent infringement findings deprive plaintiffs of antitrust standing fared no better: the Court found that while "Cisco relies on several cases that held a party lacked antitrust standing for engaging in unlawful conduct or for having an inability to participate in the market," the Court was "not convinced that those cases are applicable here." *Id.* at 12. For example, Cisco had identified a case in its motion to dismiss– a case from outside of this circuit that has never been followed by any court in the thirty years since it issued and that conflicts with the law of this circuit –finding that patent infringement is a defense to an antitrust claim: *Monarch Marking Sys., Inc. v. Duncan Parking Meter Maint. Co.* ("*Monarch I*"), No. 82 C 2599, 1988 U.S. Dist. LEXIS 390 (N.D. Ill. Jan. 14, 1988); *Monarch Marking Sys., Inc. v. Duncan Parking Meter Maint. Co.* ("*Monarch II*"), No. 82 C 2599, 1988 U.S. Dist. LEXIS 2041 (N.D. Ill. Mar. 4, 1988) (collectively "*Monarch*"). While the Court concluded that it "need not decide here whether a patent infringer is always barred from asserting antitrust claims against the patent owner, where the infringer sold only infringing products," the Court was "doubtful that *Monarch* clearly stands for such a proposition." Order at 11. The Court also found that "Cisco's proposition that *Monarch* stands for a brightline rule—that an infringer with no non-infringing products has no standing whatsoever—may be in conflict with the fact that § 16 requires a showing of only threatened loss and that a potential competitor can suffer injury." *Id.*

**D.     Cisco's Assertion of a "Patent Infringement" Affirmative Defense Following**

1

### The Court's Order

2     Following the Court's Order, Cisco answered on October 24, 2017. ECF No. 155, Answer to

3  Complaint. Pursuant to the Court's Order, Arista filed an Amended Complaint on October 31, 2017.

4  *See* Amended Complaint. Cisco answered that Amended Complaint on November 14, 2017. *See*

5  Answer.

6     Contrary to the Court's Order finding that Arista had standing and that Cisco could only re-

7  raise the issue of lack of antitrust standing due to patent infringement "in the event that patent

8  infringement is found to cover all of Arista's products," Order at 13, Cisco's Answer to the Amended

9  Complaint included a first affirmative defense that "Arista lacks standing to bring claims for antitrust

10 violations" because Arista is "barred from participating in the market by orders from the [ITC]" and

11 Arista's Ethernet switches and their sale infringed one of the eleven patents identified in the Answer.

12 Answer, ¶¶ 134-35. The patents identified in Cisco's Answer are all presently being asserted by Cisco

13 in the co-pending, stayed Infringement Litigation. *See* Infringement Litigation Complaint.

14     Lest there be any doubt as to what Cisco's "patent infringement" affirmative defense means

15 for this antitrust case, Cisco has made it clear that it intends to litigate patent infringement for each of

16 these eleven patents based on the assertion of this affirmative defense. For example, Cisco has

17 disclosed four technical experts: Kevin Almeroth, Bobby Bhattacharjee, Kevin Jeffay, and Stephen

18 Wicker. Ex. 2 (November 3, 2017, email from counsel for Cisco). Cisco has also informed counsel

19 for Arista that it intends to submit expert reports regarding infringement on December 18, pursuant to

20 the schedule for expert disclosure. *See* Gerrity Decl., ¶ 5.

21 ## IV.    LEGAL STANDARD

22     "Federal Rule of Civil Procedure 12(f) permits a court to 'strike from a pleading an

23 insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Savage v.*

24 *Citibank N.A.*, No. 14-cv-03633-BLF, 2015 U.S. Dist. LEXIS 107501, at *3 (N.D. Cal. Aug. 14,

25 2015). "The function of a motion made under this rule is 'to avoid the expenditure of time and money

26 that must arise from litigating spurious issues by dispensing with those issues prior to trial.'" *Id.*

27 (quoting *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

28     The Ninth Circuit previously affirmed the granting of a motion to strike an affirmative

1   defense, similar to Cisco's, asserting that the plaintiff did not sustain an antitrust injury because of an

2   "unlawful market presence." *Memorex*, 555 F.2d at 1380. In that case, the alleged illegality was trade

3   secret theft. *Id.* at 1382. In that case the Ninth Circuit also precluded the defendant from

4   "introduc[ing] evidence relating to the alleged theft of trade secrets to show the fact of such theft" or

5   "us[ing] this evidence to reduce damages." *Id.* at 1384 & n.8. "Our holding - that illegality is not to be

6   recognized as a defense to an antitrust action when the illegal acts by the plaintiffs are directed

7   against the defendant – ***bars the use of this evidence in this context***." *Id.*

8       "Rule 12(c) provides that '[a]fter the pleadings are closed — but early enough not to delay

9   trial — a party may move for judgment on the pleadings.'" *Tyson v. Bank of Am. N.A.*, No. 15-cv-

10  01548-BLF, 2016 U.S. Dist. LEXIS 99774, at *4 (N.D. Cal. July 29, 2016). "'A judgment on the

11  pleadings is properly granted when, taking all allegations in the pleadings as true, the moving party is

12  entitled to judgment as a matter of law.'" *Id.* (quoting *Enron Oil Trading & Transp. Co. v. Walbrook

13  Ins. Co.*, 132 F.3d 526, 528 (9th Cir. 1997)). A court may "'consider certain materials—documents

14  attached to the complaint, documents incorporated by reference in the complaint, or matters of

15  judicial notice—without converting the motion to dismiss into a motion for summary judgment.'" *Id*

16  at *4-5 (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). It is appropriate for the

17  Court to take judicial notice of "court documents that are matters of public record." *Id.* at *5. A

18  separate request for the Court to take judicial notice of such court documents is being filed

19  concurrently herewith.

20      "Courts in this district apply the heightened pleading standards of *Twombly* and *Iqbal* to

21  affirmative defenses when adjudicating a motion to strike." *Camacho v. Jefferson Capital Sys., LLC*,

22  No. 14-cv-02728-BLF, 2014 U.S. Dist. LEXIS 141216, at *3 (N.D. Cal. Oct. 2, 2014). "Defenses can

23  be stricken when they fail to give a plaintiff fair notice of the defense asserted." *Id.* (internal quotation

24  marks omitted). "An affirmative defense must point to ***some identifiable fact*** that if applicable . . .

25  would make the affirmative defense plausible on its face." *Id.* at *4-5 (internal quotation marks

26  omitted). "[B]are statements reciting mere legal conclusions may not be sufficient." *Id.* at *3 (internal

27  quotation marks omitted).

28  V.   **ARGUMENT**

## A. Lack of Standing Is Not An Affirmative Defense

Cisco's first affirmative defense that "Arista lacks standing" (Answer, ¶ 134) should be stricken for the simple and indisputable reason that lack of standing is not an affirmative defense, as courts of this district have repeatedly found. *ABC Distrib. v. Living Essentials LLC*, No. 15-cv-02064 NC, 2016 U.S. Dist. LEXIS 185992, at *6 (N.D. Cal. Apr. 26, 2016) ("Lack of standing: This is not an affirmative defense, so the motion to strike is granted without leave to amend."); *Perez v. Gordon & Wong Law Grp., P.C.*, No. 11-CV-03323-LHK, 2012 U.S. Dist. LEXIS 41080, at *41 (N.D. Cal. Mar. 26, 2012) ("Likewise, Defendants' fifteenth affirmative defense, that 'Plaintiff lacks standing to pursue the claims asserted in this action,' is not an affirmative defense . . . . [T]he Court strikes Defendants' . . . fifteenth affirmative defense[]."); *Ansari v. Elec. Document Processing, Inc.*, No. 5:12-CV-01245-LHK, 2012 U.S. Dist. LEXIS 128622, at *15 (N.D. Cal. Sep. 10, 2012) ("Defendants' twentieth affirmative defense regarding Plaintiff's alleged lack of standing is also not an affirmative defense . . . . Accordingly, the Court strikes Defendants' . . . twentieth . . . affirmative defense[]."). Cisco's assertion of this "affirmative defense" is no different, and should be stricken.

## B. Under The Reasoning of Controlling Ninth Circuit Authority, Patent Infringement Does Not Eliminate Standing Or Antitrust Injury

More fundamentally, Cisco's affirmative defense that Arista lacks antitrust standing and antitrust injury based on patent infringement is also barred by the Ninth Circuit's controlling authority, *Memorex*. While the Court determined, in connection with Cisco's motion to dismiss, that it did not need to resolve whether patent infringement could be raised as a defense to an antitrust claim, that question is now squarely before the Court because Cisco has raised a purported affirmative defense to Arista's antitrust claim based on patent infringement. This was the position raised by the defendants in *Memorex*, and the Court should reach the same result and strike Cisco's affirmative defense.

In *Memorex*, plaintiff Memorex had sued defendant IBM for antitrust violations, and IBM had asserted an affirmative defense that Memorex "maintained an 'unlawful market presence'" based on the "systematic theft of IBM trade secrets," and thus "could not have sustained any 'injury' cognizable under § 4 of the Clayton Act." *Memorex*, 555 F.2d at 1380-81. Memorex moved to strike

this affirmative defense, the district court granted that motion, and that decision was appealed to the Ninth Circuit. *Id.* As this Court has observed, the *Memorex* Court held that "illegality is not to be recognized as a defense to an antitrust action when the illegal acts by the plaintiff are directed against the defendant.'" Order at 9 (quoting *Memorex*, 555 F.2d at 1382–83). The *Memorex* Court's reasoning was widely applicable and was not limited to trade secret theft:

> A wrongful act committed against one who violates the antitrust laws ***must not become a shield in the violator's hands*** against operation of the antitrust laws. This is particularly true when the ***defendant has other remedies available to him***.

*Memorex*, 555 F.2d at 1382 (emphasis added). In summary, the Ninth Circuit held that when the plaintiff has committed an illegal or wrongful act ***against the defendant***, and in particular one for which the defendant had a remedy, that act does not provide a defense to an antitrust claim, and that conduct does not act as a "shield" that immunizes an antitrust violator from the consequences of its wrongful acts. *Id.* Not only was the affirmative defense stricken in *Memorex* on this basis, but the Ninth Circuit precluded the defendant from "introduc[ing] evidence relating to the alleged theft of trade secrets to show the fact of such theft" or "us[ing] this evidence to reduce damages." *Id.* at 1384 & n.8. "Our holding - that illegality is not to be recognized as a defense to an antitrust action when the illegal acts by the plaintiffs are directed against the defendant – ***bars the use of this evidence in this context***." *Id.; see also First Beverages, Inc. v. Royal Crown Cola Co.*, 612 F.2d 1164, 1175 (9th Cir. 1980) (explaining that the "point" of *Memorex's* evidentiary bar *"*is that where the illegal act by the plaintiff is ***directed against the defendant***, the defendant should not use this fact to reduce his liability for his own breach of public policy, but should bring a ***counterclaim based on the plaintiff's breach of public policy."*)*. The *Memorex* holding was not limited to trade secret theft, and in fact *Memorex* specifically noted that trade secret theft was just an example of the type of wrong that its holding covered: "wrongs against the defendant, ***such as*** the theft of trade secrets, will not bar the plaintiff's antitrust action." *Memorex,* 555 F.2d at 1382 n.5.

*Memorex* bars Cisco's assertion of "patent infringement" as an affirmative defense to standing here. Like the defendant in *Memorex,* Cisco claims Arista has no standing due to acts "directed against the defendant," and *Memorex* bars such claims. Infringement of an antitrust violator's patents is an act "directed against the defendant" (and therefore does not preclude antitrust standing) first and

foremost because the patent owner's remedy for patent infringement is a private civil claim or counterclaim against the infringer. 1-OV Chisum on Patents 1 (2017) ("A patent owner may file a civil suit for infringement against anyone who, without authority, makes, uses or sells the patented invention. Remedies for infringement include . . . ."). In *Memorex*, "the alleged theft by Memorex of IBM's trade secrets is not a bar to Memorex's antitrust action," as the defendant could have asserted a claim "for the alleged misappropriation" to obtain a "setoff" against the plaintiff's recovery on the antitrust claim, instead of "asserting that Memorex does not have any cause of action at all." *Memorex*, 555 F.2d at 1382-83. Here too, Cisco has a remedy for any alleged violation of its patent rights in the form of a patent infringement claim, which Cisco has already filed in the Infringement Litigations. Any recovery in the Infringement Litigation will in effect be a "setoff" against Arista's antitrust recovery, and there is no need to shield a defendant from an antitrust claim based on patent infringement when the defendant will be made whole by bringing a patent infringement claim. Cisco's patent infringement claims thereby fall squarely within the holding of *Memorex*, which precludes their use either as a defense against an antitrust claim or as evidence to reduce damages.

The nature of the patent right itself further confirms that acts of patent infringement are "directed against the defendant" and therefore do not bar standing under *Memorex*. *Id.* A patent "confers the right to exclude others from making, using, or selling the claimed invention" and has "attributes of personal property." 1-OV Chisum on Patents 1 (2017). Thus, patent infringement is a harm to the patent holder's right to exclude, which is directed against the patent owner in the same way that an act that harms an owner's personal property right to exclude—such as theft—is a wrong against the individual who owns that property.

*Memorex* itself confirms that patent infringement should be precluded in suggesting intentional theft of patented technology would not change its decision. *Memorex*, 555 F.2d at 1382.

### 1.    Cisco Cannot Avoid *Memorex* By Characterizing Patent Infringement as a "Public Wrong"

Cisco has sought to escape the consequences of *Memorex* by arguing that the theft of trade secrets in *Memorex* is a "private wrong"—which even Cisco concedes *Memorex* disposes of—while "Arista infringed a 'publicly issued' patent right." Order at 10. Cisco's reliance on that purported

distinction, based on the *Memorex* Court's observation that a "defendant who violates the antitrust laws has committed a public wrong," while a "private wrong done by a potential plaintiff should not prevent that party, who may be the only party with standing to sue, from taking action under the antitrust laws," is entirely misplaced. *Memorex,* 555 F.2d at 1382. The court's ***holding*** in *Memorex* made no mention of "private wrongs." To the contrary, the focus of the *Memorex* holding was on whether there was a wrong against the defendant for which the defendant has a separately available remedy, not whether it was a "private wrong":

> This does not mean that any violation of a law by a plaintiff will not bar an action. If, for example, a plaintiff participates in an illegal conspiracy to restrain trade - ***an act not directed against the defendant*** - then his conduct must be evaluated under different standards. What ***we are holding today is that wrongs against the defendant***, such as the theft of trade secrets, will not bar the plaintiff's antitrust action.

*Memorex*, 555 F.2d at 1382 n.5 (emphasis added). In this explanation, the Ninth Circuit distinguished acts that were not directed against the defendant, from "wrongs" that are against the defendant. *Id.*

The Ninth Circuit's decision in *First Beverages* confirmed that *Memorex* stands for the proposition that acts against the defendant for which the defendant has a remedy are not a defense to an antitrust claim and that *Memorex* did not turn on any distinction between public and private wrongs. *First Beverages* considered whether *Memorex* applied to the plaintiff's illegal conduct at issue in *First Beverages*, and concluded that it did not where "the plaintiff's illegal conduct was not ***directed at the defendant***" and the defendant had ***"no claim or counterclaim*** based on the [conduct]." *First Beverages,* 612 F.2d at 1174-75. *First Beverages* did not distinguish *Memorex* based on whether the wrong at issue in *First Beverages* was public or private, and to the contrary recognized that a ***public wrong*** could fall within the scope of *Memorex*:

> The point of this footnote [in *Memorex*] is that where the illegal act by the plaintiff is directed against the defendant, the defendant should not use this fact to reduce his liability for his own breach of public policy, but should bring a counterclaim based on the plaintiff's breach of public policy. Then ***both public wrongs may be formally vindicated***, instead of only one or neither.

*Id.* Cisco has already asserted its "counterclaim" regarding infringement of its patents, in separate and different actions. Doing so here is not only contrary to law, but redundant and wasteful of the court's

resources, and Cisco has no basis to argue that a "publicly issued" patent does not fall within the scope of *Memorex*.

Even if the Court finds that there is some component of the act of patent infringement that is "public"—despite the availability of a civil remedy for the defendant—for instance, because a patent is "publicly issued," *see* Order at 10, nothing in *Memorex* and the decisions following it suggest such an act can bar an antitrust claim. Even acts covered by unclean hands and *in pari delicto* that are not against the defendant "cannot completely and automatically bar [plaintiff's antitrust] claim;" "'[t]he plaintiff who reaps the reward of treble damages may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition.'" *First Beverages,* 612 F.2d at 1174 (quoting *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 139 (1968)).

## 2. Cisco's Reliance on *Monarch* Is Misplaced

For its motion to dismiss, Cisco relied on the *Monarch* district court decisions from outside the Ninth Circuit that have never been followed in the thirty years since they issued to argue that, despite the clear holding of *Memorex,* a finding of patent infringement should defeat antitrust standing. In that context, the Court found that it was "doubtful that *Monarch* clearly stands" for the proposition asserted by Cisco that "a patent infringer is always barred from asserting antitrust claims against the patent owner, where the infringer sold only infringing products." Order at 11. The Court's finding was the correct one. First, to the extent that *Monarch* is inconsistent with *Memorex, Memorex* is the controlling authority in this Circuit, and its holding prevents Cisco from asserting its "patent infringement" affirmative defense. More fundamentally, *Monarch* does not stand for the proposition that patent infringers are barred from antitrust standing. At most, *Monarch* stands for the proposition, like similar decisions, that where a plaintiff's entire business is unlawful, such plaintiffs have no standing to assert antitrust claims.

In *Monarch,* the plaintiff asserted patent infringement, and the defendant brought an antitrust counterclaim. *Monarch I*, 1988 U.S. Dist. LEXIS 390 at *1. The antitrust counterclaim was dismissed in *Monarch I* "[b]ased on the defendant's representation conceding patent validity and infringement," and "the court held that the defendant had no market interest in the patented labels and did not suffer

injury." *See* Order at 11. The primary basis asserted in *Monarch I* to distinguish *Memorex* was that *Monarch I* "does not involve allegations of trade secret theft on the part of the antitrust plaintiff, but involves a claim of patent infringement." *Monarch I*, 1988 U.S. Dist. LEXIS 390 at *11. But *Monarch I* never explains why patent infringement is distinguishable from trade secret theft under the reasoning of *Memorex*; as described *supra*, it is a distinction without a difference. Like trade secret misappropriation, patent infringement is an act directed against the defendant for which the defendant has a civil remedy. To the extent *Monarch* suggests otherwise, it should be given no weight in this circuit because it is inconsistent with *Memorex*.

**3.      At Most, *Monarch* Stands For The Proposition that Patent Infringement May Be A Defense To An Antitrust Claim When The Infringed Patents Control Participation In the Market, Which Cisco Cannot Establish**

While the Court's Order did not need to decide "whether a patent infringer is always barred from asserting antitrust claims against the patent owner, where the infringer sold only infringing products," the Court was rightfully "doubtful that *Monarch* clearly stands for such a proposition." Order at 11. The holding of *Monarch* was narrower than this. In *Monarch I,* the infringing product was a simple label for use in defendant's hand-held labelers, and the patents at issue covered that entire product. As the court in *Monarch* described, the patents at issue covered "certain pressure-sensitive price labels which are sold for use in [plaintiff's] hand-held labelers." *Monarch I*, 1988 U.S. Dist. LEXIS 390 at *1. The court's decision was driven by its understanding that practicing the patent was necessary for the would-be antitrust claimant to participate in the market at all. *Id.* at *12 (claimant "cannot be permitted to recover damages as a result of Monarch's alleged monopolization of the market for certain types of labels when Monarch's label patents gave it a ***legal right to exclude all other manufacturers from producing and selling those types of labels***."). When it became apparent in *Monarch II* that the claimant also sold non-infringing labels, the district court reinstated the antitrust claim. *Monarch II*, 1988 U.S. Dist. LEXIS 2041, at *1-3. As such, *Monarch* held only that where patent infringement is found to prevent participation in the market altogether, there may

not be an antitrust injury or antitrust standing.[3]

Cisco's patents do not control participation in the relevant switch markets, and Cisco's Answer does not plead that they do. To the contrary, Cisco's Answer implicitly admits that its patents do not control entry into and participation in those markets, because it asserts, as its Fourth Affirmative Defense, that "Cisco has never had, and does not have a dangerous probability of attaining, monopoly power in any relevant market." ECF No. 155, Answer, ¶ 188.

Cisco's Answer further demonstrates that its asserted patents cover only narrow features of a complex multi-feature Ethernet Switch – none of which is a bar to Arista's participation in the claimed switch markets. Cisco's admissions in its Answer show that switches are technologically complex devices with numerous features, including a command line interface, configurable features, and hardware and software for transferring information. *See, e.g.,* Answer, ¶ 11 (Ethernet switches "may connect computers, servers, storage, and other devices together to form a network."); ¶ 33 (Ethernet switches are a "component of modern local area networks and may be used to enable network components to communicate."); ¶ 16 (Ethernet Switches may be "used in data centers," used "in concert with other networking components," and used "to support cloud services" and may "operate at various speeds");   ¶ 36 (Ethernet switches may operate to "transfer information using physical addresses," and "certain network components may incorporate both switching and routing functionality."). Thus, it is clear from even Cisco's admissions that Ethernet switches are technologically complex, configurable computing devices with multiple features, and intended for use

---

[3] *Monarch*'s holding is consistent with *Ethypharm S.A. Fr. v. Abbott Labs*, 707 F.3d 223 (3rd Cir. 2013), in which there was no antitrust standing because the entire product and all relevant products were not on the market. In *Ethypharm*, "the plaintiff was not a competitor in the United States because the plaintiff, by its own choice, did not directly sell in the U.S. market as evidenced by not obtaining FDA approval." Order at 12. *Monarch*'s holding is also consistent with *Pearl*, in which, "the plaintiff [wa]s engaged *in a business* which [wa]s, by its very nature, *entirely illegal*" and "[t]he almost *total magnitude* of this illegal conduct by plaintiffs makes their miniscule conduct that may be legal, insignificant, and, in any event, none of such miniscule and possibly legal conduct rises to *the level of the legitimate activities* of Memorex." *Pearl Music Co., v. Recording Industry Asso.*, 460 F. Supp. 1060, 1067-68 (C.D. Cal. Nov. 15, 1978). Applying the reasoning of *Pearl* to a case involving patent infringement, the presence of significant non-infringing features in a product would provide a level of legitimate activities at least comparable to those in *Memorex*.

---

in different computing scenarios.

Cisco's Answer also makes it clear that the patents identified in Cisco's "patent infringement" affirmative defense cover only specific features of these multi-feature products. For each patent identified in Cisco's Answer, Cisco identifies a specific feature or functionality in the multi-feature accused products that are covered by the identified patent. Specifically, the accused products that Cisco identifies are those that implement "access control list functionality, " "process manager functionality," "SysDB functionality," "multi-chassis link aggregation, or MLAG," "zero-touch provisioning, or ZTP," "private VLAN functionality," "loop guard functionality," and "control plane policing, or CoPP." *Id.*, ¶¶ 138, 142, 146, 150, 152, 154, 156, 158, 160, 162, 164. Even accepting, as Cisco asserts, that these features or functionalities are "covered by" the claims of the identified patents, *id.*, it is clear that the scope of the patents is different from the scope of the patents in *Monarch*. Instead of covering the entire product as the patents in *Monarch* did, Cisco's patents cover individual features of a complex multi-feature device. There is no indication—including based on the description of Ethernet Switches in Cisco's Answer—that the patents identified in the affirmative defense cover all features of an Ethernet switch, or are required components for participation in the relevant markets. As such, even under *Monarch*, infringement of Cisco's narrow, feature-specific patents cannot deprive Arista of antitrust standing, and Cisco's "patent infringement" affirmative defense should be stricken.

### 4.     Barring Standing to Assert Antitrust Claims Because of Patent Infringement Would Undermine The Antitrust Laws

There are sound, common sense reasons why *Memorex,* rather than Cisco's extreme reading of *Monarch,* should be dispositive of Cisco's affirmative defense. Reading *Memorex* or *Monarch* to allow any instance of patent infringement to be a defense against an antitrust claim would turn antitrust law on its head. If a monopolist is permitted to immunize its antitrust conduct by asserting patent infringement against its victims, technologically sophisticated companies like Cisco with over 10,000 U.S. patents would never face the consequences of their anticompetitive acts. *See* Ex. 3, *available at* https://blogs.cisco.com/news/10000-u-s-patents-down-and-thanks-to-our-amazing-innovators-many-more-to-come. Conversely, if infringement of any patent destroyed antitrust

standing, few companies selling technologically sophisticated, multi-functional products could ever have standing to bring an antitrust suit to stop anticompetitive conduct harming the market, given the prevalence of patent infringement litigation (including assertions by non-practicing entities) in the United States.   This is directly contrary to the policy of encouraging antitrust suits, regardless of the culpability of the antitrust plaintiff. *See First Beverages*, 612 F.2d at 1174 ("'The plaintiff who reaps the reward of treble damages may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition.'" (quoting *Perma Life*, 392 U.S. at 139)).

This problem will be particularly acute when the antitrust cause of action relates to the use of patents to violate the antitrust laws. For example, *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007), held that a plaintiff had stated a claim for monopolization by inducing standard organizations to include the defendant's patented technology as an essential element of the standard by "by falsely promising to license its patents on FRAND terms, and then reneging on those promises after it succeeded in having its technology included in the standard." *Id.* at 303, 306, 315; *see also generally Funai Electric Co. v. LSI Corp.*, No. 16-cv-01210, 2017 U.S. Dist. LEXIS 44866, at *15-16 (N.D. Cal. Mar. 27, 2017) (applying *Broadcom*) (Freeman, J.). If the holding of *Monarch* were applied to such a case, all that the patent holder would need to do to defeat the antitrust claim would be to show that the plaintiff practiced the portion of the standard covered by the patent. This would mean that all participants in the market practicing the standard would be barred from bringing the *Broadcom* antitrust claim, and private causes of action bringing this claim would be essentially unavailable.

The general principle that applies to antitrust claims related to the use of patents—as stated by the Supreme Court—is that "so long as the patent owner is using his patent in violation of the antitrust laws, he ***cannot restrain infringement of it by others***." *Hartford-Empire Co. v. United States*, 323 U.S. 386, 415 (1945); *see also Morton Salt Co. v. G. S. Suppiger Co.*, 314 U.S. 488, 494 (1942) (concluding that a patent infringement complaint was properly dismissed when the patent owner tied the license to use the patented machine to the purchase of unpatented materials), *overruled in part by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 42 (2006) (concluding that tying

arrangements can no longer be evaluated under the *per se* rule applied in *Morton Salt*, although tying arrangements may still be unlawful); 6A-19 Chisum on Patents § 19.04 (2017) ("If such misuse is found, the courts will withhold any remedy for infringement or breach of a license agreement—even against an infringer who is not harmed by the abusive practice," and "[u]se of a patent to violate the antitrust laws will constitute misuse."). And yet the court in *Monarch I* concluded that in a case where the patent owner is using the patent in violation of the antitrust laws, ***infringement eliminates the antitrust claim***. *Monarch I*, 1988 U.S. Dist. LEXIS 390, *14 (concluding "***even assuming that Monarch has engaged in unlawful tying***, Powers, ***because of its infringement*** of Monarch's label patents, ***has sustained no antitrust injury***" (emphasis added)). These results are in direct conflict. Under the Supreme Court's rule, if there is infringement and an antitrust violation, infringement cannot be asserted. Under a broad reading of *Monarch*, if there is infringement and an antitrust violation, the antitrust claim cannot be asserted. Thus, the holding of *Monarch* is either wrong, or must be read very narrowly so as not to destroy the balance that the Supreme Court has established between patent law and antitrust law.

*Monarch*'s holding itself conflicts with general principles of antitrust law. This Court rightly noted that "Cisco's proposition that *Monarch* stands for a brightline rule—that an infringer with no non-infringing products has no standing whatsoever—may be in conflict with the fact that § 16 requires a showing of only threatened loss and that a potential competitor can suffer injury." Order at 11. As the Court already noted, while § 4 of the Clayton Act allows the recovery of damages, § 16 permits injunctive relief. 15 U.S.C. §§ 15, 26. The antitrust standing requirement is lower for injunctive relief than it is for damages. *See* Order at 7 (citing *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1026-27 (N.D. Cal. 2015)); *see also Freeman v. San Diego Association of Realtors*, 322 F. 3d 1133, 1145 (9th Cir. 2003) (threatened injury is sufficient for indirect purchaser claims). While Section 4 requires a showing of "actual injury" and an injury to "business or property," § 16 requires only "threatened loss or damage." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 111 (1986). Cisco's proposed reading of *Monarch* as barring standing altogether is therefore in direct conflict with this standard.

**C.     Striking Cisco's "Patent Infringement" Affirmative Defense Will Avoid**

**Unnecessary Use of this Court's Resources, And is In Accord With Public**

**Policy**

Because infringement of Cisco's patents cannot be a bar to Arista's standing to assert antitrust claims, Cisco's affirmative defense to the contrary should be stricken. For the same reasons, Cisco should be precluded from offering evidence of patent infringement to show infringement, as a defense to the antitrust claim, or to reduce damages, and Arista should be granted partial judgment on the pleadings that it does not lack antitrust standing or antitrust injury based on patent infringement. Granting this relief fulfills the function of Rule 12(f), which is to avoid precisely the "expenditure of time and money" that would arise from litigating such "spurious issues." *Savage*, 2015 U.S. Dist. LEXIS 107501 at *3 (quoting *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)). As in *Memorex*, precluding Cisco from offering evidence of infringement also avoids the expense of needlessly litigating patent infringement for 11 separate patents. *See Memorex*, 555 F.2d at 1384 & n.8 (precluding defendant from "introduc[ing] evidence relating to the alleged theft of trade secrets to show the fact of such theft," "us[ing] this evidence to reduce damages," or using evidence of illegality "as a defense to an antitrust action"). Granting partial judgment on the pleadings is also appropriate because as a matter of law Cisco's allegations of patent infringement cannot eliminate standing or antitrust injury.

The relief that Arista seeks is also appropriate because it eliminates an entirely unnecessary and duplicative patent infringement "trial" that would be an end-run around the statutory stay of Cisco's infringement claims in the Infringement Litigation. Cisco made a strategic litigation **choice** to delay its relief for patent infringement by pursuing relief in front of the ITC. To the extent that Arista is found in the Infringement Litigation to have infringed Cisco's patents, Cisco will be fully compensated for that infringement on the timeline that Cisco accepted. This antitrust case should proceed to trial, without needless and redundant proceedings regarding patent infringement, and Cisco will have the opportunity to "set off" any damages awarded to Arista in a later proceeding. *Cf. Memorex*, 555 F.2d at 1382-83; *First Beverages*, 612 F.2d at 1174-75.

Granting the relief that Arista seeks is also consistent with the strong public policy interest in promoting competition. As the Court concluded in its Order on Cisco's motion to dismiss, "the

inquiry for antitrust injury should focus ***not on infringement*** but how the allegedly injured party is ***related to the market.***" Order at 11 (emphasis added)). Arista has been, and continues to be, harmed in the Relevant Markets due to Cisco's anticompetitive conduct. To allow patent infringement to be a defense to an antitrust claim would ignore what actually occurred in the market.

### D. Cisco's Remaining Affirmative Defenses Are Not Adequately Plead And So Should Be Stricken

Cisco's second through seventh affirmative defenses are each a single sentence containing no facts to provide notice of the defense or to make the defense plausible. *See* Answer, ¶¶ 165-70; *Camacho,* 2014 U.S. Dist. LEXIS 141216 at *3-5. For example, Cisco's sixth and seventh affirmative defense state only Cisco's legal conclusion that Arista's claims are barred by "the doctrines of claim and issue preclusion" and "the relevant statutes of limitations." Answer, ¶¶ 169-170. This does not meet the *Twombly* and *Iqbal* standards that apply to affirmative defenses. *Camacho,* at *3. Arista respectfully requests these affirmative defenses be stricken.

## VI. CONCLUSION

For the foregoing reasons, Arista respectfully requests this Court grant its motion.

1  Dated: December 5, 2017                  Respectfully submitted,

2

3                                           */s/ William Nelson*
                                           MATTHEW D. POWERS (SBN 104795)
4                                          WILLIAM NELSON (SBN 196091)
                                           ROBERT GERRITY (SBN 268084)
5                                          NATASHA SAPUTO (SBN 291151)
                                           SAMANTHA JAMESON (SBN 296411)
6                                          JENNIFER ROBINSON (SBN 270954)
                                           TENSEGRITY LAW GROUP, LLP
7                                          555 Twin Dolphin Drive, Suite 650
                                           Redwood Shores, CA 94065
8                                          Telephone:    (650) 802-6000
                                           Facsimile:    (650) 802-6001
9                                          Email:
10                                         matthew.powers@tensegritylawgroup.com
                                           william.nelson@tensegritylawgroup.com
11                                         robert.gerrity@tensegritylawgroup.com
                                           natasha.saputo@tensegritylawgroup.com
12                                         samantha.jameson@tensegritylawgroup.com
                                           jen.robinson@tensegritylawgroup.com
13

14                                         JONATHAN M. JACOBSON (NY SBN 1350495)
                                           CHUL PAK (*Pro Hac Vice*)
15                                         DAVID H. REICHENBERG (*Pro Hac Vice*)
                                           WILSON SONSINI GOODRICH & ROSATI
16                                         1301 Avenue Of The Americas, 40th Floor
                                           New York, NY 10019
17                                         Telephone: (212) 999-5800
                                           Facsimile: (212) 999-5899
18                                         Email:
                                           jjacobson@wsgr.com
19                                         cpak@wsgr.com
                                           dreichenberg@wsgr.com
20

21                                         SUSAN CREIGHTON (SBN 135528)
                                           SCOTT A. SHER (SBN 190053)
22                                         BRADLEY T. TENNIS (SBN 281206)
                                           WILSON SONSINI GOODRICH & ROSATI
23                                         1700 K Street NW, Fifth Floor
                                           Washington, D.C., 20006
24                                         Telephone: (202) 973-8800
                                           Facsimile: (202) 973-8899
25                                         Email:
                                           screighton@wsgr.com
26                                         ssher@wsgr.com
                                           btennis@wsgr.com
27

28                                         ROBERT A. VAN NEST (SBN 84065)
                                           BRIAN L. FERRALL (SBN 160847)
                                           MICHAEL S. KWUN (SBN 198945)

---

ARISTA'S MOTION TO STRIKE AND FOR            21            CASE NO. 5:16-CV-00923-BLF
JUDGMENT ON THE PLEADINGS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVID J. SILBERT (SBN 173128)
ASHOK RAMANI (SBN 200020)
NICHOLAS DAVID MARAIS
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
Email:
rvannest@keker.com
bferrall@keker.com
mkwun@keker.com
dsilbert@keker.com
aramani@keker.com
nmarais@keker.com

Attorneys for Plaintiff
ARISTA NETWORKS, INC.