United States District Court<br>Northern District of California

1

2

3 **UNITED STATES DISTRICT COURT**

4 **NORTHERN DISTRICT OF CALIFORNIA**

5 **SAN JOSE DIVISION**

6

7 ARISTA NETWORKS, INC.,        Case No.  16-cv-00923-BLF

8        Plaintiff,

9                               **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES AND FOR PARTIAL JUDGMENT ON THE PLEADINGS**

10     v.

11 CISCO SYSTEMS, INC.,

12        Defendant.            [Re: ECF 186]

13

14        Plaintiff Arista Networks, Inc.'s ("Arista") initiated this action, alleging that Defendant

15 Cisco Systems, Inc. ("Cisco") violated antitrust and unfair competition laws.  On October 10,

16 2017, the Court granted in part and denied in part Cisco's motion to dismiss the complaint with

17 leave to amend.  Order, ECF 151.  Thereafter, Arista filed a First Amended Complaint ("FAC,"

18 ECF 161-3) and Cisco responded by submitting an Answer, which pleads seven affirmative

19 defenses ("Answer," ECF 170).

20        Before the Court is Arista's motion to strike Cisco's seven affirmative defenses and for

21 partial judgment on the pleadings.  Mot., ECF 186.  Having considered the briefing and oral

22 argument of the parties, as well as the governing law, the Court GRANTS IN PART and DENIES

23 IN PART Arista's motion with LEAVE TO AMEND.

24 **I.    BACKGROUND**

25     **A.    Procedural Background**

26        Arista and Cisco are sellers of Ethernet switches that are utilized to form a network.  As

27 described in the Court's October 10, 2017 Order, the parties have been litigating disputes in

28 multiple forums.  *See* Order 1–2.  To briefly summarize, Cisco filed two actions in this District:

United States District Court
Northern District of California

Case No. 14-cv-05343-JSW and Case No. 14-cv-05344-BLF.  The former action has been stayed until two other cases pending before the U.S. International Trade Commission ("ITC") are resolved.  In the latter action, a jury found that Arista infringed Cisco's copyright but that the infringement was excused by the scènes à faire affirmative defense.  Case No. 14-cv-05344-BLF, Dkt. 749.

Cisco also filed two cases at the ITC: *In the Matter of Certain Network Devices, Related Software and Components Thereof (I)*, ITC Inv. No. 337-TA-944 ("the '944 Investigation") and *In the Matter of Certain Network Devices, Related Software and Components Thereof (II)*, ITC Inv. No. 337-TA-945 ("the '945 Investigation").  Exs. 2, 3 to Leary Decl. in Supp. of Cisco's Mot. to Dismiss, ECF 110-5, -6.  In both investigations, the ITC found that Arista's Ethernet switches infringed certain patents owned by Cisco.  As a result, the ITC issued limited exclusion orders and cease and desist orders that limited Arista's ability to sell products that the ITC found to infringe in the '944 and '945 Investigations.  Exs. 7, 8 to Leary Decl. in Supp. of Cisco's Mot. to Dismiss, ECF 110-10, -11; Exs. 16, 17 to Leary Decl. in Supp. of Reply re Cisco's Mot. to Dismiss, ECF 130-4, 130-5.

While the above disputes were ongoing, Arista filed this action alleging that Cisco violated antitrust and unfair competition laws.  Cisco filed a motion to dismiss the complaint.  Cisco's Mot. to Dismiss, ECF 110.  One of Cisco's arguments was that Arista lacked antitrust standing because the ITC found that Arista's Ethernet switches infringed Cisco's patents and enjoined Arista from selling those switches.  *Id.* at 7–9.  The Court rejected that argument because the ITC's findings of infringement are not binding on district courts.  Order 8.  Cisco also asserted during oral argument that lack of standing due to patent infringement could be raised as an affirmative defense.  ECF 144 at 19:12–14, 20:1–3.  That issue was not ruled on because it was not properly before the Court.  Order 13.  Based on other arguments presented by the parties, the Court granted in part and denied in part Cisco's motion to dismiss with leave to amend.  *See generally* Order.

After Arista filed the FAC, Cisco submitted an Answer that pleads the following seven affirmative defenses: the FAC's claims are barred on the grounds that (1) Arista lacks antitrust standing because it infringes eleven Cisco patents and the ITC's '944 and '945 orders bar market

participation; (2) Cisco's conduct is protected under the *Noerr-Pennington* doctrine and the First Amendment of the United States Constitution; (3) Cisco's conduct constitutes bona fide business competition; (4) Cisco has never had monopoly power or a dangerous probability of attaining monopoly power; (5) there has been no injury to competition; (6) the doctrines of claim preclusion and issue preclusion apply; and (7) the statute of limitations precludes the claims.  Answer ¶¶ 134– 170.

Arista now moves the Court to strike the seven affirmative defenses under Rule 12(f);[1] seeks to preclude Cisco from offering evidence of patent infringement to establish the fact of infringement, to show the absence of antitrust injury, or to reduce damages; and requests partial judgment on the pleadings under Rule 12(c) that Arista does not lack antitrust standing based on patent infringement.  Mot. 1–2.

## B.    Request for Judicial Notice

The Court may generally consider exhibits attached to or incorporated by reference into the complaint and matters properly subject to judicial notice.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  In support of its motion, Arista filed a Request for Judicial Notice of the (1) Complaint filed in *Cisco Systems, Inc. v. Arista Networks, Inc.*, Case No. 14-cv-5343 (N.D. Cal.); (2) Order Granting Arista Networks, Inc.'s Unopposed Motion For Mandatory Stay Of Proceedings filed in *Cisco Systems, Inc. v. Arista Networks, Inc.*, Case No. 4:14-cv-5343 (N.D. Cal.); (3) Court's October 10, 2017 Order; (4) Order No. 4, issued in United States International Trade Commission Inv. No. 337-TA-944 by Administrative Law Judge David P. Shaw and dated February 13, 2015; and (5) article entitled "10,000 U.S. Patents Down-And Thanks to Our Amazing Innovators, Many More to Come," available at Cisco's Blog and dated July 9, 2013.  RJN, ECF 186-2.

Cisco objects to the Court taking judicial notice of the fifth document, Cisco's Blog article. Opp'n 20 n.10, ECF 191.  However, Cisco does not object to the authenticity the Blog article.  As Cisco points out in its objection, "[c]ourts may take judicial notice of publications introduced to

---

[1] All "Rules" discussed in this order refer to the Federal Rules of Civil Procedure.

United States District Court
Northern District of California

'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth Fund v. Alliance Capital Mgmt.,* 435 F.3d 396, 401 n.15 (3d Cir. 2006)).  Thus, the Court takes judicial notice of Cisco's Blog article as an indication of what Cisco represented to the public when the article was published but not for the truth of the matter asserted therein.

Cisco does not object to the other submissions, which are court and ITC documents.  As the first to fourth documents submitted by Arista are public record, the Court takes judicial notice of those documents.  Fed. R. Evid. 201.

Accordingly, Arista's RJN is GRANTED.  While the submitted documents are accepted as what they represent, specific fact findings and legal conclusions set forth in those documents may not bind this Court.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)) (internal quotation marks omitted).  "While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010).

The decision to strike a portion of a party's pleading is within the sound discretion of the court. *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000).  If a claim or defense is stricken, leave to amend should be freely given when doing so would not cause prejudice to the opposing party. *Wyshak v. City Nat. Bank*, 607 F.2d 824, 826 (9th Cir. 1979) (per curiam).

1    Rule 12(c) permits either party, "[a]fter the pleadings are closed but within such time as

2    not to delay the trial, . . . to move for judgment on the pleadings."  Much like a motion to dismiss

3    under Rule 12(b)(6), a motion brought pursuant to Rule 12(c) "is directed at the legal sufficiency

4    of a party's allegations."  *Carmen v. San Francisco Unified Sch. Dist.,* 982 F.Supp. 1396, 1401

5    (N.D. Cal.1997).  "Analysis under Rule 12(c) is substantially identical to analysis under Rule

6    12(b)(6) because, under both rules, a court must determine whether the facts alleged in the

7    complaint, taken as true, entitle the plaintiff to a legal remedy."  *Chavez v. United States*, 683 F.3d

8    1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted).

9    **III.    DISCUSSION**

10       **A.    First Affirmative Defense**

11       The first affirmative defense asserts that Arista lacks antitrust standing because Arista's

12   products infringe Cisco's patents and the ITC's '944 and '945 orders preclude Arista from

13   participating in the market.  Answer ¶¶ 134–36.  Arista moves to strike this defense on the grounds

14   that "lack of standing is not an affirmative defense" and patent infringement does not eliminate

15   antitrust standing under Ninth Circuit authority.  Mot. 9.  The Court addresses each argument.

16          **i.    Whether Cisco may raise a lack of antitrust standing as an affirmative defense**

17
       The parties disagree whether Cisco may plead lack of antitrust standing as an affirmative

18   defense.  Arista argues that district courts have repeatedly found that lack of standing is not an

19   affirmative defense.  Mot. 9 (citing *ABC Distrib., Inc. v. Living Essentials LLC*, No. 15-CV-02064

20   NC, 2016 WL 8114206 (N.D. Cal. Apr. 26, 2016); *Ansari v. Elec. Document Processing, Inc.*, No.

21   5:12-CV-01245, 2012 WL 3945482 (N.D. Cal. Sep. 10, 2012); *Perez v. Gordon & Wong Law*

22   *Grp., P.C.*, No. 11-CV-03323, 2012 WL 1029425 (N.D. Cal. Mar. 26, 2012)).  Cisco responds that,

23   contrary to Arista's position, courts have recognized that a defendant may plead facts that show a

24   plaintiff lacks antitrust standing as an affirmative defense.  Opp'n 8 (citing *Modesto Irrigation*

25   *Dist. v. Pacific Gas & Elec. Co.*, 309 F. Supp. 2d 1156, 1162, 1169–70 (N.D. Cal. 2004);

26   *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 843 (N.D. Cal. 2004)).

27       "Affirmative defenses plead matters extraneous to the plaintiff's prima facie case, which

28

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1  deny plaintiff's right to recover, even if the allegations of the complaint are true." *Fed. Deposit*

2  *Ins. Corp. v. Main Hurdman*, 655 F. Supp. 259, 262 (E.D. Cal. 1987) (citing *Gomez v. Toledo,* 446

3  U.S. 635, 640–41 (1980)).  This rule is also recognized by the cases cited by Arista.  *See Ansari*,

4  2012 WL 3945482, at *5; *Perez*, 2012 WL 1029425, at *11.  And, where the defendant has the

5  burden to prove the underlying matters in support of its defense, courts have characterized the

6  defense as an affirmative defense.  *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (the

7  defendants raised "an affirmative defense" in which they were required to prove failure to exhaust

8  administrative remedies).

9      Here, Cisco's first defense pleads an "extraneous matter"—Arista's infringement of

10  Cisco's patents—to Arista's prima facie antitrust case.  As the patent owner, Cisco has the burden

11  of proof to prove this "extraneous matter."  While Cisco's first defense is directed to an element

12  that Arista has to ultimately establish, Cisco bears the burden of proving the allegations of patent

13  infringement that underlie its defense.  Thus, Cisco's first defense is properly characterized as an

14  affirmative defense.  *Cf. Main Hurdman*, 655 F. Supp. at 263 (allegations challenging the

15  plaintiff's claim based on its unlawful conduct constituted an affirmative defense because the

16  defendant FDIC had the burden of proving the allegations).

17      To be clear, a defense that merely challenges standing without relying on "extraneous

18  matter" would not properly be considered an affirmative defense.  The cases cited by Arista fall

19  under this situation.  In both *Ansari* and *Perez*, the lack of standing defense was not an affirmative

20  defense because the defendant merely denied the plaintiff's allegations in the complaint.  *See*

21  *Ansari*, 2012 WL 3945482, at *5; *Perez*, 2012 WL 1029425, at *11.  *Living Essentials* is similar.

22  While the court did not elaborate the allegations concerning the lack of standing defense, it

23  recognized that the defendants' answer was "bereft of factual allegations."  *See Living Essentials*,

24  2016 WL 8114206, at *2–3.  The Court does not observe that the rejected lack of standing defense

25  in those cases alleged any matter that the defendant(s) were required to prove.  Unlike those cases,

26  Cisco's first affirmative defense based on lack of standing requires Cisco to prove its patent

27  infringement case.

28      For the above reasons, the Court concludes that Cisco's first affirmative defense which

relies on patent infringement may be pled as an affirmative defense.  However, that is not to say the first affirmative defense is otherwise properly pled.  The Court next turns to this issue.

### ii.   Whether Patent Infringement Bars Antitrust Standing

The first affirmative defense pleads that "Arista has not suffered antitrust injury and does not have antitrust standing because its Ethernet switches and sales of those Ethernet switches . . . infringed one or more . . . Cisco patents."  Answer ¶ 136.  Such infringement has purportedly occurred "[f]or all times relevant to the allegations of the Complaint."  *Id.* ¶¶ 138, 142, 146, 150, 152, 154, 156, 158,160, 162, 164.  As such, Cisco pleads that all of Arista's Ethernet switches that are identified in the complaint are infringing products.[2]  Cisco's allegations underlying its first affirmative defense are accepted as true for the purposes of this motion.  *State of Cal. ex rel. State Lands Comm'n v. United States*, 512 F. Supp. 36, 39 (N.D. Cal. 1981) (citing *Kohen v. H.S. Crocker Co.*, 260 F.2d 790, 792 (5th Cir. 1958)) ("On a motion to strike, the Court must treat as admitted all material factual allegations underlying the challenged defenses and all reasonable presumptions that can be drawn therefrom.").

### a.  The Ninth Circuit's Memorex Decision

Taking Cisco's allegations as true, the issue before the Court is whether Cisco has raised a valid affirmative defense that Arista has suffered no antitrust injury because all of Arista's products pled in the FAC infringe Cisco's patents.

Arista argues that Cisco's first affirmative defense based on patent infringement is barred by *Memorex Corp. v. Int'l Bus. Machines Corp.*, 555 F.2d 1379 (9th Cir. 1977).  Mot. 9–11.  That case involved two disk storage manufacturers—Memorex and IBM—in the 1960s and 70s. *Memorex*, 555 F.2d at 1380.  Before the filing of that case, IBM sued Memorex in the California Superior Court in December 1970 and alleged that Memorex wrongfully misappropriated IBM's trade secrets.  *Id.*  The companies eventually entered into a settlement agreement which "called for

---

[2] The FAC added allegations regarding Arista's Redesigned Ethernet switches.  The parties dispute whether Arista could add those allegations without leave of the Court.  That dispute is irrelevant for the purposes of this motion, because Cisco pleads that all of Arista's products— including the Redesigned Ethernet switches—infringe Cisco's patents.  Answer ¶¶ 138, 142, 146, 150, 152, 154, 156, 158,160, 162, 164 (infringement occurred "[f]or all times relevant to the allegations of the Complaint").

United States District Court
Northern District of California

Memorex to stop marketing certain products." *Id.*  But in December 1973, Memorex filed an antitrust lawsuit against IBM which became the underlying action of *Memorex*.  *Id.*  IBM raised an "unlawful market presence" defense which pled that Memorex stole IBM's trade secrets and thus "could not have sustained any 'injury' cognizable under [§] 4 of the Clayton Act."  *Id.*  The Ninth Circuit affirmed the district court's ruling that struck IBM's "unlawful market presence" defense. *Id.*

The court in *Memorex* accepted IBM's trade secret allegations as true because the court was reviewing Memorex's motion to strike an affirmative defense.  *Id.* at 1380 n.1.  Despite the assumed fact that Memorex stole IBM's trade secrets, the Ninth Circuit held that "illegality is not to be recognized as a defense to an antitrust action when the illegal acts by the plaintiff are directed against the defendant."  *Id.* at 1382.  In doing so, the court opined that "[a] wrongful act committed against one who violates the antitrust laws must not become a shield in the violator's hands against operation of the antitrust laws. This is particularly true when the defendant has other remedies available to him."  *Id.*.  The court further recognized that the purposes of antitrust laws are best served by insuring that private actions deter defendants who commit a public wrong by violating antitrust laws.  *Id.* at 1383 (citing *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 139 (1968)).

While *Memorex* did not involve a situation where an antitrust plaintiff infringed the defendant's patents, the Ninth Circuit's underlying reasoning is applicable to this case.  *Memorex* holds that a plaintiff who violated a defendant's right is not precluded from bringing an antitrust action against the defendant. 555 F.2d at 1382 n.5.  Despite the fact that Memorex's misappropriation of trade secrets was the basis of its "unlawful market presence," the court held that Memorex alleged that it suffered injury and could bring the antitrust action.  *Id.* at 1382–83. As in *Memorex*, for purposes of reviewing this motion, the Court assumes Cisco's allegations are true.  Thus, similar to the plaintiff in *Memorex*, Arista had a presence in the market, albeit by selling infringing products in violation of Cisco's patent rights.  And like the defendant IBM, Cisco has a remedy for that violation—Cisco can bring a patent infringement action and in fact it has done so.  *Id.* at 1382 (recognizing that IBM had remedies for its trade secrets claim); *see* Case

United States District Court
Northern District of California

United States District Court
Northern District of California

1   No. 14-cv-05343-JSW (Cisco's patent infringement suit against Arista).

2          Cisco, however, argues that *Memorex* is distinguishable from this case for several reasons.

3   Opp'n 11–14.  First, Cisco points out that Memorex and IBM reached a settlement regarding

4   IBM's state court trade secrets action.  *Memorex*, 555 F.2d at 1380.  According to Cisco, after the

5   settlement, Memorex lawfully participated in the market "with IBM's permission."  Opp'n 11–12.

6   Hence, Cisco argues that Memorex was selling non-infringing products when Memorex filed the

7   antitrust action whereas, here, Arista has continued to infringe Cisco's patents at "all times

8   relevant to the allegations of the Complaint."  *Id.* at 12.

9          Although *Memorex* does not explain the terms of the settlement agreement in detail, Cisco

10  is likely correct that after the settlement Memorex sold products covered by the misappropriated

11  trade secrets with IBM's approval.  However, *Memorex* does not discuss and rely on this turn of

12  events.  In other words, the Ninth Circuit's holding does not depend on whether Memorex had

13  suffered injury based on Memorex's sales of non-infringing products after the parties agreed to

14  settle.  Rather, the court addressed the issue of whether Memorex "sustained any 'injury'

15  cognizable under [§] 4 of the Clayton Act" due to Memorex's "unlawful market presence."  *See*

16  *Memorex*, 555 F.2d at 1380, 1383.  In the end, the court held that Memorex suffered injury, albeit

17  by illegal means, *see id.* at 1383, not because Memorex sold non-infringing products after the

18  settlement.  Because the settlement was irrelevant to the court's reasoning, *Memorex* did not reach

19  the issue of whether IBM's defense relying on trade secret theft was barred by res judicata.  *Id.* at

20  1383–84.

21         Second, Cisco argues *Memorex* is distinguishable because that case involved trade secret

22  misappropriation as opposed to patent infringement.  Opp'n 11–12.  In particular, Cisco asserts

23  that "a party may gain entrance to a market through the 'wrongful act' of trade secret theft" and

24  "the subsequent use of the trade secret to compete in the market does not actually violate trade

25  secret laws."  *Id.* at 13 (citing *Chicago Lock Co. v. Fanberg*, 676 F.2d 400, 404 (9th Cir. 1982)).

26  The Court, however, does not find support for such a proposition in *Chicago Lock*.  In fact,

27  *Chicago Lock* recognized that "[o]ne who . . . uses another's trade secret, without a privilege to do

28  so, is liable" if the trade secret was discovered by improper means.  676 F.2d at 404 (quoting

United States District Court
Northern District of California

1    Restatement (First) of Torts, § 757).  Thus, contrary to Cisco's contention, use of trade secrets to

2    compete in the market would violate trade secret laws just like selling unlicensed patented

3    products would violate patent laws.

4         Cisco also contends that "[u]nlike patents, trade secrets cannot legitimately be used to

5    create a monopoly or to prevent others from competing in a market."  Opp'n 13.  To be sure, trade

6    secret laws are not as protective as patent laws because one may use trade secrets so long as the

7    trade secrets were not acquired by improper means.  *Chicago Lock*, 676 F.2d at 404.  But the

8    distinction which Cisco relies on is irrelevant because the allegation that Memorex stole IBM's

9    trade secrets was assumed to be true.  *Memorex*, 555 F.2d at 1380 n.1.  As Memorex was accused

10   of having an illegal presence in the market, here Arista is also accused of unlawfully competing in

11   the market.

12        Third, Cisco asserts that *Memorex* is inapplicable because that case did not address

13   "antitrust injury."  Opp'n 13–14.  Instead, Cisco argues, *Memorex* decided whether a past

14   "wrongful act" would bar an antitrust action and looked at the Supreme Court's considerations

15   that abolished equitable defenses of in pari delicto and unclean hands in antitrust actions.  *Id.* at

16   13.  For support, Cisco points to *Memorex*'s discussion of those two equitable defenses.

17   *Memorex*, 555 F.2d at 1381 (discussing *Perma Life Mufflers, Inc. v. International Parts Corp.*,

18   392 U.S. 134 (1968) (in pari delicto) and *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, 340

19   U.S. 211 (1951) (unclean hands)).  Cisco argues that its patent infringement defense is unlike the

20   equitable defenses discussed in *Perma Life* and *Kiefer-Stewart*.  Opp'n 13–14.

21        The Court disagrees with Cisco that *Memorex* provides no guidance.  As Arista responds,

22   the Ninth Circuit in *Memorex* opined on the validity of the "unlawful market presence" defense

23   and considered the injury suffered by Memorex.  The essence of that defense was that Memorex

24   "maintained an 'unlawful market presence' as one of IBM's competitors and thus could not have

25   sustained any 'injury' cognizable under [§] 4 of the Clayton Act."  *Memorex*, 555 F.2d at 1380.  In

26   holding that the "unlawful market defense" was not allowed, the court rejected IBM's argument

27   that the defense "establish[ed] the absence of injury altogether" and concluded that Memorex did

28   suffer cognizable injury under antitrust laws.  *Id.* at 1380–81.

United States District Court
Northern District of California

1    The Court is also unpersuaded by Cisco's argument that *Memorex* is inapplicable because

2    that case considered the Supreme Court's rationale for barring the in pari delicto and unclean

3    hands defenses.  To be sure, *Memorex* discussed those two equitable defenses in detail.  *Id.* at

4    1381.  But upon rejecting IBM's "unlawful market presence" defense, the Ninth Circuit

5    considered the presence of injury and held that Memorex's market participation through illegal

6    acts did not negate the suffered injury.  *Id.* at 1383 ("IBM here does not argue that there was no

7    injury at all, but rather that the market position which suffered injury was obtained through illegal

8    means. The statutory requirements for suit are met. That is all that is necessary.").  The Ninth

9    Circuit's clear conclusion that harm suffered while being illegally on the market is still antitrust

10   injury does not change by the fact that the court considered the policy rationale for abolishing the

11   in pari delicto and unclean hands defenses in antitrust suits.

12        To the extent that Cisco contends *Memorex* is inapplicable because the misappropriation of

13   trade secrets in that case was a private wrong whereas Arista's patent infringement is a public

14   wrong, the Court is unpersuaded by that argument.  The Ninth Circuit in *First Beverages* made

15   clear that *Memorex*'s holding does not depend on the distinction between private and public

16   wrongs.  *First Beverages, Inc. of Las Vegas v. Royal Crown Cola Co.*, 612 F.2d 1175 (9th Cir.

17   1980).  Specifically, the court confirmed that when a plaintiff commits an illegal act against a

18   defendant, "the defendant should not use this fact to reduce his liability for his own breach of

19   public policy."  *Id.*  Instead, the defendant "should bring a counterclaim based on the plaintiff's

20   breach of public policy."  In this way, "*both public wrongs* may be formally vindicated, instead of

21   only one or neither."  *Id.* (emphasis added).  Hence, even if Arista's patent infringement

22   constitutes a violation of public policy that underlies patent laws, Cisco cannot use Arista's

23   violation as a shield to breach the public policy underlying antitrust laws.

24                          **b.  The Monarch Case**

25        In support of its position, Cisco primarily relies on *Monarch Marking System, Inc. v.*

26   *Duncan Parking Meter Maintenance Co.*, No. 82-cv-02599, 1988 WL 5038 (N.D. Ill. Jan. 19,

27   1988) ("*Monarch I*"), *vacated on other grounds*, 1988 WL 23830 (N.D. Ill. Mar. 8, 1988)

28   ("*Monarch II*") (collectively, "*Monarch*").  The plaintiff in *Monarch* asserted infringement of

patented "price labels," and the defendant brought an antitrust counterclaim.  *Monarch I*, 1988 WL 5038, at *1.  The court held that the defendant suffered no antitrust injury because the defendant did not compete with non-infringing labels.  *Id.*, at *5.  Hence, the defendant's antitrust counterclaim was dismissed.  *Id.*  In *Monarch II*, the court recognized that it erred in assuming the defendant had sold only infringing products.  1988 WL 23830, at *1–2.  In fact, the defendant had been selling non-infringing labels for certain periods of time.  *Id.*, at *1.  As a result, the defendant's antitrust counterclaim was reinstated.  *Id.*

Cisco argues that this Court should follow *Monarch* because the facts in that case are similar to those present here.  Opp'n 16–18.  Arista disagrees and asserts that *Monarch* is either inconsistent with *Memorex* or "does not stand for the proposition that patent infringers are barred from antitrust standing."  Mot. 13.  In the October 10, 2017 Order, the Court expressed doubts about Cisco's reliance on *Monarch*.  Order 11.  The Court now declines to follow *Monarch* for the following reasons.

*Monarch I* expressly considered and distinguished *Memorex* on the grounds that *Monarch I* involved patent infringement as opposed to trade secrets theft.  *Monarch I*, 1988 WL 5038, at *4 ("Unlike *Memorex*, this case does not involve allegations of trade secret theft on the part of the antitrust plaintiff, but involves a claim of patent infringement.").  Considering that patent rights are different from trade secret rights, *Monarch I* rejected *Memorex*.  *See id.*  But, as discussed above, the Court does not find persuasive that there is a distinction between patent infringement and misappropriation of trade secrets under *Memorex*'s reasoning.  In both cases, the conduct is an unlawful violation of the right holder's intellectual property.  Thus, insofar as *Monarch* relied on the fact that patents and trade secrets are distinct rights, the Court declines to follow *Monarch* because the distinction is immaterial under *Memorex*.

As Cisco points out, *Monarch I* noted that "Monarch's label patents gave it a *legal right* to exclude all other manufacturers from producing and selling those types of labels."  1988 WL 5038, at *4 (emphasis in original) (citing *United States v. Studiengesellschaft Kohle, M.b.H*, 670 F.2d 1122, 1135 (D.C. Cir. 1981)).  Based on this statement, the court in *Monarch I* concluded that the antitrust plaintiff could not recover damages for infringing labels.  But in the antitrust

12

context, courts have referred to the patentee's "right to exclude others" as a tool to lawfully threaten competition by enforcing the patent, *see, e.g.*, *Studiengesellschaft Kohle*, 670 F.2d at 1134–35, but not as a tool that strips the infringing seller's status as a market participant.  In fact, a patent infringer may participate in the market so long as it pays damages assessed and future license fees and it is not subject to an injunction.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392–94 (2006) (holding that a finding of patent infringement does not always render injunction appropriate).  Hence, the patentee's "right to exclude others" is not an absolute right that bars the infringer from participating in the market.  *See id.*  Thus, the Court disagrees with *Monarch I*'s conclusion.

Moreover, under § 16 of the Clayton Act, a plaintiff may need to show only threatened loss or damages but not actual damages to establish antitrust injury.  *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 111 (1986).  *Monarch*'s general requirement that an antitrust plaintiff must have sold non-infringing products is in conflict with the fact that the plaintiff may suffer antitrust injury without selling products on the market for § 16 purposes.  *See Retrophin, Inc. v. Questcor Pharm., Inc.*, 41 F. Supp. 3d 906, 914 (C.D. Cal. 2014) ("[A] potential competitor has standing if he can show a genuine intent to enter the market and a preparedness to do so." (citing *Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 450 (9th Cir.1985))).  Cisco argues that *Monarch* is not inconsistent with § 16 of the Clayton Act because an infringer could show antitrust injury by demonstrating the ability and preparedness to sell non-infringing products before entering the market.  Opp'n 22.  However, *Monarch* requires the infringer to show actual sales of non-infringing products to establish the infringer's willingness and ability to compete in the market.  *See Monarch II*, 1988 WL 23830, at *1.  The Court therefore is unpersuaded by Cisco's reliance on *Monarch*.

### c.   Cisco's Reliance on Other Cases

To persuade the Court to follow *Monarch*, Cisco argues that other cases have reached the same decision.  Specifically, Cisco contends that other courts have held that "market exclusion that flows from a valid and infringed patent is not antitrust injury."  Opp'n 10 (citing *Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105 (6th Cir. 1989); *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d

United States District Court
Northern District of California

187 (2d Cir. 2006), *abrogated by F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013); *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282 (9th Cir. 1984)).  However, Cisco misapplies those cases to Arista's antitrust claims.

The two out-of-circuit cases, *Axis* and *Tamoxifen*, do not address *Memorex* and are distinguishable from this case.  *Axis* involved a dispute between manufacturers of armature winding machines.  870 F.2d at 1106.  The plaintiff Italian manufacturer brought an antitrust action against the defendant Swiss manufacturer, alleging that the defendant's purchase of an American manufacturer "prevented [the plaintiff]'s entry into the market" but also "admitted in the complaint itself [that] . . . patents precluded its entry into the U.S. market." *Id.* at 1106, 1111. Recognizing that the plaintiff had not entered the market, the court held that the "alleged injury [was] not 'of the type the antitrust laws were intended to prevent' and it did not 'flow from' the element of the acquisition that made it unlawful." *Id.* at 1112 (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).  In other words, the plaintiff could not show antitrust injury as it was not a market participant at all.  Here, unlike the plaintiff in *Axis*, Arista actually sold Ethernet switches and was a market participant although those sales are alleged to have infringed Cisco's patents.  *Axis* does not address such a situation.

*Tamoxifen* is no different from *Axis*.  In *Tamoxifen*, a patent-owner and a generic drug manufacturer were sued for antitrust violations after entering a "reverse payment" settlement.  466 F.3d at 190.  One issue was whether the alleged injury was caused by the generic drug manufacturer's conduct related to the reverse payment settlement. *Id.* at 219.  Following *Axis*, the court held that there was no antitrust injury because "other generic manufacturers would not have been able to enter the market with their generic versions without infringing the tamoxifen patent." *Id.* at 220.  That is, no antitrust injury existed because the defendants were the only market participants and no other generic manufacturers had competed in the market.  Hence, the circumstance is analogous to *Axis*.  By contrast, as mentioned, Arista participated in the market by selling its Ethernet switches.  *See, e.g.*, FAC ¶¶ 18, 108.

Accordingly, *Axis* and *Tamoxifen* fail to lend support to Cisco's position.  Those cases do not address the issue of whether a patent infringer who is actually participating in the market is

precluded from bringing an antitrust suit.  On the other hand, that issue falls under *Memorex*'s holding.  555 F.2d at 1382 ("[I]llegality is not to be recognized as a defense to an antitrust action when the illegal acts by the plaintiff are directed against the defendant.").

*Handgards* also does not support Cisco's position.  In that case, the Ninth Circuit confirmed the proposition that "the injury caused by [a valid] patent is not antitrust injury." *Handgards*, 743 F.2d at 1296.  That holding is inapplicable here because Arista alleges injury caused by Cisco's conduct related to the reversal of a long standing CLI policy rather than a mere exercise of patent rights. FAC ¶¶ 32, 81–89.  *Handgards* does not address whether a plaintiff loses antitrust standing for infringing a defendant's patent.

Accordingly, the cases cited by Cisco do not sway the Court's conclusion to follow *Memorex* rather than *Monarch*.

### d.  The Parties' Public Policy Arguments

As the parties dispute whether allowing a patent infringement defense would undermine antitrust laws, Mot. 16–20; Opp'n 19–23, the Court addresses the parties' arguments.  Arista contends that Cisco's interpretation of *Monarch* contradicts common sense. Mot. 16.  In Arista's view, "[i]f a monopolist is permitted to immunize its antitrust conduct by asserting patent infringement against its victims, technologically sophisticated companies . . . would never face the consequences of their anticompetitive acts." *Id.*  Arista argues that "[t]his problem will be particularly acute when the antitrust cause of action relates to the use of patents to violate the antitrust laws." *Id.* at 17.

Cisco counters with several points.  First, according to Cisco, Arista's problem has been addressed by courts "which have recognized that the grant of a patent creates a right to exclude that is an exception to the antitrust laws." Opp'n 19.  (citing *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 816 (1945); *United States v. Line Material Co.*, 333 U.S. 287, 309 (1948); *F.T.C. v. Actavis, Inc.*, 570 U.S. 136, 147 (2013)).  While the three cases cited by Cisco clearly hold that a patent right is a limited exception to the rule against monopolies, they address issues irrelevant to Cisco's patent infringement defense. *See Precision Instrument*, 324 U.S. at 819 (dismissing patent infringement claims under the unclean hands doctrine); *Line*

1  |  *Material*, 333 U.S. at 314–15 (patentees improperly restrained commerce by combining their

2  |  patents to fix prices); *Actavis*, 570 U.S. at 159–60 (reverse payment settlement in a patent

3  |  infringement case were to be evaluated under the rule of reason for antitrust violations).

4  |  *Precision Instrument*, *Line Material*, and *Actavis* do not address whether the patentee's "right to

5  |  exclude" permits it to engage in anticompetitive conduct unrelated to its patent where the antitrust

6  |  plaintiff infringes the patent—the situation presented in this case.  Thus, the Court disagrees with

7  |  Cisco.

8  |        Second, Cisco contends that Arista's concern is overblown because even if one competitor

9  |  lacks antitrust standing due to patent infringement, other actors—competitors selling non-

10  |  infringing products, customers, and the government—can bring an antitrust lawsuit.  Opp'n 21.

11  |  Cisco is correct that there may be situations where other private and government actors could file a

12  |  suit.  In fact, *Memorex* would have fallen under such a situation.  However, the Ninth Circuit in

13  |  *Memorex* still held that a plaintiff's "unlawful market presence" does not shield the antitrust

14  |  defendant from liability in light of the importance of encouraging private actions to enforce

15  |  antitrust laws.  *Memorex*, 555 F.2d at 1382–83 ("A wrongful act committed against one who

16  |  violates the antitrust laws must not become a shield in the violator's hands against operation of the

17  |  antitrust laws.").  Moreover, the rarer situations where only the infringing plaintiff has antitrust

18  |  standing should not be ignored.  In those situations, under Cisco's reading of *Monarch*, there

19  |  would be no "private attorney general" to represent the public interest and the antitrust defendant

20  |  would escape liability despite violating antitrust laws.  Such a result would be contrary to

21  |  *Memorex*.  *See id.* at 1832–83 ("A private wrong done by a potential plaintiff should not prevent

22  |  that party, who may be the only party with standing to sue, from taking action under the antitrust

23  |  laws.").

24  |        Third, Cisco argues that *Monarch* does not undermine antitrust laws because that case held

25  |  that an antitrust defendant who misuses its patents may not rely on patent infringement to avoid

26  |  antitrust liability.  *See* Opp'n 21–22.  Cisco correctly points out the court in *Monarch* recognized

27  |  that patent misuse would have rendered the defendant's patent unenforceable.  *Monarch*, 1988 WL

28  |  5038, at *3.  Thus, a patentee who misuses its patent would not be able to escape antitrust liability

United States District Court
Northern District of California

16

by relying on *Monarch*. To be sure, this result does not undermine antitrust laws. However, *Monarch*'s broad holding that a patent infringer is barred from bringing an antitrust action at all does conflict with the purposes of antitrust laws. Under that interpretation of *Monarch*, an antitrust defendant who engaged in anticompetitive conduct other than patent misuse would be shielded from an antitrust suit brought by an infringer. That result would be contrary to the "purposes of the antitrust laws [that] are best served by insuring . . . private actions . . . deter anyone contemplating business behavior in violation of the antitrust laws." *Memorex*, 555 F.2d at 1383 (quoting *Perma Life*, 392 U.S. at 139).

The Court notes one important policy identified in *Memorex* is that the public is best served by holding the antitrust defendant liable for engaging in anticompetitive conduct as well as subjecting the infringing plaintiff to its own penalties. *Id.* at 1382–83; *First Beverages*, 612 F.2d at 1174 (explaining that *Memorex* permits "both public wrongs [to] be formally vindicated, instead of only one or neither"). The antitrust defendant can resort to available remedies to recover from the infringing plaintiff. *Memorex*, 555 F.2d at 1382. However, Cisco complains that it cannot be "made whole by bringing a patent infringement claim" against Arista because any "setoff" would only reduce antitrust treble damages by a third. Opp'n 14. Arista counters that Cisco misunderstands the nature of the "setoff" recognized by *Memorex*. Reply 6. The Court agrees with Arista. When *Memorex* explained that IBM could have obtained a "setoff" by asserting a trade secrets claim against Memorex, the court did not mean that the parties could recover an equal amount from each other. Instead, *Memorex* recognized that each party could resort to remedies based on the available cause of action. *See id.* (holding that Memorex's antitrust claim was allowed and IBM should have asserted a trade secrets claim). Here, Cisco has its own remedy and in fact properly brought a patent infringement action against Arista in Case No. 14-cv-05343-JSW.

### e.   Conclusion

For the foregoing reasons, the Court concludes that patent infringement is not a defense against antitrust standing and injury under *Memorex*'s holding. The Court is bound by the Ninth Circuit's reasoning in *Memorex* and is unpersuaded by the cases cited by Cisco.

United States District Court
Northern District of California

1    Accordingly, Arista's Motion to Strike the first affirmative defense that asserts Arista lacks

2    antitrust injury and antitrust standing due to infringement of Cisco's patents is GRANTED.  For

3    the same reasons, Arista's request for partial judgment on the pleadings under Rule 12(c) that

4    Arista does not lack antitrust injury and antitrust standing based on patent infringement is

5    GRANTED.  This ruling does not eliminate Arista's burden to establish during trial that it has

6    suffered antitrust injury and has antitrust standing.

7         **iii.    Whether to Preclude Evidence of Patent Infringement for Other Purposes**

8    Arista requests that the Court preclude Cisco from offering evidence of patent infringement

9    to show the absence of antitrust injury.  Mot. 1, 19.  As discussed above, the Court grants Arista's

10   motion to strike the first affirmative defense as to Cisco's patent infringement defense to eliminate

11   antitrust injury.  Thus, evidence of patent infringement "to show the absence of antitrust injury"

12   has no relevance.  Arista's request to preclude Cisco from introducing evidence of patent

13   infringement "to show the absence of antitrust injury" is GRANTED.

14   In addition, Arista seeks to exclude evidence of patent infringement to show "the fact of

15   infringement[] or to reduce damages."  *Id.*  The court in *Memorex* indicated that whether evidence

16   should be precluded depends on the specific situation.  *See Memorex*, 555 F.2d at 1384 n.8

17   ("There may be other situations which we do not list or foresee in which the use of some of the

18   evidence relating to theft of trade secrets would still be permitted.").  At this juncture, the Court

19   cannot foresee and speculate on the uses of evidence of patent infringement at trial.  As such,

20   Arista's request goes far beyond that which the Court can reasonably determine in addressing this

21   motion.  Accordingly, Arista's request to preclude Cisco from offering evidence of patent

22   infringement to support other theories is DENIED WITHOUT PREJUDICE as premature.

23        **B.    Other Affirmative Defenses**

24   The Court turns to the remaining affirmative defenses.  Arista argues that Cisco's second

25   through seventh affirmative defenses are devoid of facts to provide notice of the defense or to

26   make the defense plausible.  Mot. 20.

27   Cisco's second affirmative defense asserts that Arista's claims are barred under the *Noerr-*

28   *Pennington* doctrine and the First Amendment of the United States Constitution.  Answer ¶ 165.

18

United States District Court
Northern District of California

The defense specifically points to Cisco's conduct that initiated the 2014 federal lawsuits and the ITC investigations as well as Cisco's statements regarding those disputes. *Id.* The defense alleges that Cisco's conduct is protected by the *Noerr-Pennington* doctrine and the First Amendment. *Id.* Those allegations provide adequate notice to Arista and make the second affirmative defense plausible. The Court therefore finds that Cisco has sufficiently pled the second affirmative defense. Arista's Motion to Strike is DENIED as to the second affirmative defense.

The third, fourth, and fifth affirmative defenses respectively alleges that Arista's claims are barred because Cisco engaged in bona fide business competition, Cisco never had monopoly power or a dangerous probability of attaining monopoly power, and there has been no injury to competition. *Id.* ¶¶ 166–68. Here, Cisco is simply denying allegations which Arista has the burden to prove. Thus, the third, fourth, and fifth defenses are not affirmative defenses as Cisco conceded during oral argument. Oral Arg. Tr. 37:22–23, ECF 203; *see, e.g.*, *Perez*, 2012 WL 1029425, at *11 (explaining that mere denial of allegations in the complaint is not an affirmative defense). As such, Arista's Motion to Strike is GRANTED with prejudice as to the third, fourth, and fifth affirmative defenses. To be clear, this ruling does not bar Cisco from arguing the allegations contained in those defenses when Arista presents its antitrust case. Cisco may argue that it never had monopoly power or a dangerous probability of attaining monopoly power, or that its conduct was not anti-competitive.

The sixth affirmative defense is based on "doctrines of claim and issue preclusion." Answer ¶ 169. The seventh affirmative defense alleges that Arista's claim is barred by the "relevant statute of limitations." *Id.* ¶ 170. The Court finds that these two defenses contain no factual allegations to provide notice on how Cisco intends to rely on those defenses. As such, Cisco has failed to sufficiently plead the sixth and seventh affirmative defenses. Cisco, however, indicated in its opposition and during oral argument that it could add factual allegations in support of those defenses. The Court therefore GRANTS Arista's Motion to Strike the sixth and seventh affirmative defenses with LEAVE TO AMEND. Arista will not be prejudiced by an amendment because Cisco's proposed amendments are directly related to allegations contained in Arista's FAC. *Wyshak*, 607 F.2d at 826 ("If a claim or defense is stricken, leave to amend should be freely

1    given when doing so would not cause prejudice to the opposing party.").

2    **IV.    ORDER**

3            For the foregoing reasons, IT IS HEREBY ORDERED that Arista's Motion to Strike

4    Affirmative Defenses and for Partial Judgment on the Pleadings is GRANTED IN PART and

5    DENIED IN PART as follows:

6            1.   Arista's Motion to Strike Cisco's first affirmative defense is GRANTED.

7            2.   Arista's Motion for Partial Judgment on the Pleadings that Arista does not lack

8                 antitrust injury and antitrust standing based on patent infringement is GRANTED.

9                 This ruling does not eliminate Arista's burden to establish during trial that it has

10               suffered antitrust injury and has antitrust standing.

11           3.   Arista's request to preclude Cisco from introducing evidence of patent infringement to

12               show the absence of antitrust injury is GRANTED.

13           4.   Arista's request to preclude Cisco from introducing evidence of patent infringement to

14               support other theories is DENIED WITHOUT PREJUDICE as premature.

15           5.   Arista's Motion to Strike Cisco's second affirmative defense is DENIED.

16           6.   Arista's Motion to Strike Cisco's third, fourth, and fifth affirmative defenses is

17               GRANTED.  This ruling does not bar Cisco from arguing the allegations contained in

18               those defenses when Arista presents its antitrust case.

19           7.   Arista's Motion to Strike Cisco's sixth and seventh affirmative defenses is GRANTED

20               with LEAVE TO AMEND.  Cisco may amend the stricken sixth and seventh

21               affirmative defenses **within twenty-one (21) days of the date of this Order.**

22           **IT IS SO ORDERED.**

23

24   Dated: February 14, 2018

25                                                     _____

26                                                     BETH LABSON FREEMAN
                                                       United States District Judge
27

28

United States District Court
Northern District of California

20