# EXHIBIT C

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CISCO SYSTEMS INC,<br>Cisco,<br>v.<br>ARISTA NETWORKS, INC.,<br>Arista. | Case No. 14-cv-05344-BLF<br><br>**ORDER ON DAUBERT MOTIONS**<br>[Re: ECF 423, 427, 428, 429, 430, 440] |

Before the Court are the parties' motions to exclude certain opinions of each party's experts under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Court heard argument on September 9, 2016. For the reasons stated on the record and set forth below, Plaintiff Cisco Systems Inc.'s ("Cisco") motions are GRANTED IN PART and DENIED IN PART and Defendant Arista Networks, Inc.'s ("Arista") motions are GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

Cisco and Arista are competitors who make and sell Ethernet switches, which connect multiple devices within a local area network and can direct traffic on the network. Cisco developed an "Internetwork Operating System" ("IOS") that allowed engineers to configure and manage Cisco servers, routers, and switches, and has multiple copyrights on its IOS. Arista also sells networking equipment using an "Extensible Operating System" ("EOS"). Cisco claims Arista's products violate its copyrights and infringe one of its patents.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 provides that a qualified expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. 579, 589 (1993). In *Kumho Tire Co., Ltd. v. Carmichael*, the Supreme Court clarified that the "basic gatekeeping obligation" articulated in *Daubert* applies not only to scientific testimony but to all expert testimony. 526 U.S. 137, 147 (1999). The Supreme Court also made clear that the reliability inquiry is a flexible one, and "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153; *see also Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003).

"*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) *aff'd*, 131 S. Ct. 2238 (2011). So long as an expert's methodology is sound and his opinions satisfy the requirements of Rule 702, underlying factual disputes and how much weight to accord the expert's opinion are questions for the jury. *Micro Chem.*, 317 F.3d at 1392; *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

## III. DISCUSSION

### A. Dr. John Black

Cisco moves to exclude Dr. Black's opinions on grounds of qualification, reliability, and irrelevance. Cisco's challenges are separately addressed below.

#### i. Dr. Black's Opinions Regarding "*De Facto* Industry Standards"

Cisco contends that Dr. Black's *de facto* industry standard cannot be independently tested and his opinions were manufactured for this litigation. Black Mot. 5-8, ECF 427. Cisco further claims that Dr. Black's opinion is flawed because he relied on Cisco's characterizations and failed to survey the industry. *Id.* Cisco also argues that Dr. Black is not qualified to opine on industry standards because he is not a member of any "important" industry standard organization, has not

authored a paper on industry standards, and has not held himself out as an expert in the creation of industry standards. Black Mot. 3-4; Black Reply 1-3, ECF 499. Lastly, Cisco claims that Dr. Black's opinion on *de facto* industry standard is not relevant. Black Mot. 8-9.

According to Arista, Dr. Black's experience in the networking industry and particularly with command line interfaces ("CLIs"), as well as his participation with the National Institute of Standards and Technology, makes him more than qualified to opine on *de facto* industry standards. Black Opp. 3-5, ECF 463. Arista claims that Dr. Black has extensively analyzed documentation from "all the 'major players'" in the industry to look for common CLI features, and even Cisco's own expert admitted that there was no reason to question Dr. Black's analysis. *Id.* at 6-7. Finally, Arista argues that while the nature of Dr. Black's methodology is not the type that invites peer-reviewed scholarship, evidence exists to support his opinion that the networking industry has adopted a *de facto* industry standard CLI. *Id.* at 9.

The Court is satisfied that Dr. Black is sufficiently qualified to render the opinions offered. The Court's concern is the reliability of those opinions. Dr. Black defines a "*de facto* standard" as that which "has become widely used over time, and not because the standard was developed and approved by a standards-setting body" and which is created "simply by the weight of their presence, adoption, and acceptance by vendors and customers in an industry." Black Mot. Ex. 1 ("Black Opening Rpt.") ¶¶ 82-83. The parties do not dispute that this definition is consistent with the glossary definition of The Institute of Electrical and Electronics Engineers. Hr'g Tr. 15:23-16:3; 24:18-25, ECF 516. Dr. Black cited to the QWERTY keyboard and the "AT" command set for modems as examples of *de facto* standards. Black Opening Rpt. ¶¶ 84-85. He then concluded that the *de facto* industry standard CLI he reviewed in his report is "widely used by multiple vendors in the networking industry, and has been widely used for a long period of time" because "a significant number of vendors support the same command modes, prompts, hierarchies, and commands disputed in this litigation, and many have supported those CLI features for over a decade." *Id.* ¶ 90.

While the evidence of widespread use of Cisco CLI throughout the industry is relevant to this case, such as on the issues of fair use and estoppel, Dr. Black's conclusion that Cisco CLI is a

*de facto* industry standard gives the Court pause. *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006) (noting that fair use "is appropriate where a 'reasonable copyright owner' would have consented to the use, i.e., where the 'custom or public policy' at the time would have defined the use as reasonable"). The problem is that Dr. Black has failed to identify a quantitative methodology that supports the conclusion that Cisco CLI is a *de facto* industry standard. Instead, he relies on his experience and knowledge to opine that use by other vendors of Cisco CLI has become sufficiently widespread to have crossed the line to become a *de facto* industry standard. In fact, Dr. Black admitted that there is no number to define what is "widely used" or "widespread adoption" and refused to provide a percentage or threshold for when the use "becomes common, well known, or widely adopted." Black Mot. Ex. 4 ("Black Dep.") 138:25-139-9; 171:8-173:5. Further, Dr. Black acknowledged that a "gray area" exists for commands that are less widely used but refused to provide any concrete description as to where the gray area begins or ends. *Id.* at 256:19-258:11.

Accordingly, Dr. Black's opinion is offered without any objective criterion on measurements. A bright line demarcation may not be necessary in this case, but without some definitive parameters, the proffered "test" of when and how Cisco CLI becomes the *de facto* industry standard appears to be wholly subjective and ambiguous, and in fact, nothing more than an opinion based on "I know it when I see it" rationale. Furthermore, both parties acknowledged at the hearing that they were unaware of any cases where an expert opinion regarding *de facto* industry standard had been used to address the issues presented in this case.

Cisco did not dispute at the hearing that Dr. Black should be permitted to opine on the underlying facts and analysis, such as the features and vendors he had reviewed and whether certain usage is common or frequent. Hr'g Tr. 17:9-22. It thus appears that Cisco's challenge relates to the label of "*de facto* industry standard," and not to the underlying evidence of industry use of Cisco CLI. The Court agrees that the label itself pronounced by an expert carries the potential of great prejudice where the opinion is not based on a sound methodology. Accordingly, the Court GRANTS the motion IN PART to exclude Dr. Black's opinion relating to whether Cisco CLI is a *de facto* industry standard. To the extent the motion also challenges Dr. Black's

United States District Court
Northern District of California

underlying facts and analysis, the Court DENIES the motion IN PART.

**ii. Dr. Black's Opinions Regarding Corporate Intent and the Subjective Beliefs of Others**

Cisco further challenges Dr. Black's statements relating to "industry standard CLI," "fair use," etc., on the grounds that they are not based on his expertise, but rather, are conclusions about third-party beliefs and corporate intent. Black Mot. 9-10. In response, Arista asserts that Dr. Black is not opining on corporate intent but on industry use of CLI over time. Black Opp. 10.

At the hearing, the parties conceded that their experts must not speculate about state of mind and corporate intent, or vouch for opinions of others. Hr'g Tr. 55:3-6. An expert is also prohibited from acting as a mere conduit for statements of others. *E.g.*, *Williams v. Illinois*, 132 S. Ct. 2221, 2241 (2012) (holding that an expert may not act as "mere conduits for hearsay"). To the extent Dr. Black opined on corporate intent and subjective beliefs of others, this motion is GRANTED. However, the Court is not persuaded at this time that Arista is offering Dr. Black for his opinion on corporate intent or beliefs of others. Rather, Dr. Black merely considered evidence to determine whether Cisco CLI has become common in the industry. As such, the Court DENIES the motion to the extent Cisco seeks to exclude Dr. Black's opinions on the common or frequent use of CLI by others in the industry.

**B. Mr. William M. Seifert**

Cisco moves to exclude Mr. Seifert's opinions on "*de facto* industry standard" and "market effects." The Court addresses Cisco's challenges separately below.

**i. Mr. Seifert's "*De Facto* Industry Standard" Opinions**

Cisco challenges Mr. Seifert's opinions on "*de facto* industry standard" because he lacks experience with any industry standard-setting organization, and discloses no research or publications on the topic. Seifert Mot. 1-9, ECF 430. In addition, Cisco contends that Mr. Seifert formed his opinion on third-party usage of Cisco CLI based on charts not prepared by him. *Id.* at 3; Seifert Reply 2, ECF 501. Cisco further argues that Mr. Seifert's opinions regarding *de facto* standard are unreliable as the opinions have neither been tested nor accepted. Seifert Mot. 3-4. Cisco claims that Mr. Seifert invented his definition and four-part test for this litigation.

Case 5:14-cv-05344-BLF Document 661 Filed 11/16/16 Page 6 of 26



According to Cisco, Mr. Seifert also failed to reliably apply his method and definition of "industry standard" to this case, did not know the version of Cisco CLI he was reviewing, and could not identify when Cisco CLI became an industry standard. *Id.* at 5-6. Finally, Cisco seeks to exclude Mr. Seifert's opinion on grounds of relevance. *Id.* at 6-7.

Arista argues that Mr. Seifert is qualified because of his experience as an engineer and later as a business man, having worked in the local-area-networking industry since 1981. Seifert Opp. 1-3, ECF 471. As to whether Mr. Seifert's opinion has been tested and reliably applied, Arista contends that Mr. Seifert can properly rely on another expert's opinion and third party's information on Cisco CLI, as well as his own experience and knowledge. *Id.* at 3-9. Arista disagrees with Cisco's various assertions pointing to Mr. Seifert's lack of knowledge with respect to the version of Cisco CLI under review and timing of the CLI development. *Id.* at 7-8. Moreover, Arista counters that Mr. Seifert's testimony is not of the type that should be subject to an exacting inquiry based on peer reviews or error rates, but is more properly evaluated on his experience and training. *Id.* at 5-6 (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004)). Lastly, Arista claims that Mr. Seifert's testimony is relevant to several issues, including fair use and estoppel. Seifert Opp. 8.

The Court is satisfied that Mr. Seifert is qualified to render expert opinions on this topic. However, similar to Dr. Black's opinion on *de facto* industry standard, no reliable methodology supports Mr. Seifert's opinion, either. Mr. Seifert defines a "*de facto* standard" as one that "typically emerges over time owing to its widespread adoption by users," Seifert Mot. Ex. 5 ("Seifert Opening Rpt.") ¶ 38, and created a four-factor test to determine the characteristics of a "*de facto* standard." Seifert Mot. Ex. 6 ("Seifert Dep.") 25:21-22. The four factors are (1) market size; (2) number of market participants; (3) scarce human resources available to deploy the equipment; and (4) complexity of the system. *Id.* at 28:2-37:20. Not only has this four-factor test never been adopted by anyone before this litigation, *id.* at 26:12-27:4, but Mr. Seifert also did not provide any objective parameters or reliable method by which one could apply his test. In describing this four-factor test, Mr. Seifert admitted that "market size" involves a subjective test, and "number of market participants," "scarce human resources," and "complexity of the system"

Case 5:14-cv-05344-BLF Document 661 Filed 11/16/16 Page 9 of 26



all involve either a subjective test or business judgment. *Id.* at 28:7-18 ("[determining the sufficiency size of the market] requires a simple subjective test, business judgment"); *id.* at 28:20-29:6 ("this is [sic] largely subjective thresholds in terms of market participants); *id.* at 35:23-37:7 (stating that complexity is in the eye of the customer or the collective perspective of an organization). For example, when asked how many customers have to ask for help for the element of "scarcity" to be satisfied, Mr. Seifert testified in his deposition that it is a business judgment as to whether there is enough human capital available to respond to customer needs. *Id.* at 30:25-31:10; 34:2-35:9 ("business judgment . . . opportunity costs . . . go into making a determination").

Accordingly, Mr. Seifert did not use an objective measure to determine what qualifies as a *de facto* industry standard. His four-factor test of *de facto* industry standard also appears to have emerged for the first time in this litigation, as there is no evidence of its application or adoption in the industry or use by him prior to this suit. As raised by Arista, the Court acknowledges that reliability of an expert opinion can turn more on knowledge and experience rather than on methodology, depending on the nature of the opinion. Seifert Opp. 8; *Hangarter*, 373 F.3d at 1017 (citing *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)). However, the expert testimony at issue in *Hangarter* related to whether an insurance company's letter was misleading, deceptive, and below industry standard. 373 F.3d at 1010. Thus, the opinion in *Hangarter* was not contingent upon a particular methodology or technical framework. *Id.* at 1018. In contrast, Mr. Seifert's opinion on *de facto* industry standard is technical and should rest on some scientific foundations, or at least some measure of objective, verifiable principles rather than the subjective guesstimates used by Mr. Seifert. *See id.* (noting that the expert's testimony on the insurance company's correspondence is not scientific or technical testimony).

Further, although an expert may rely on opinions of another expert in some circumstances, Mr. Seifert's recitation of factual events and reliance on charts prepared by Dr. Black cannot substitute for "reliable principles and methods" required in determining a *de facto* industry standard. For Mr. Seifert to merely parrot Dr. Black's opinion would also be cumulative and improper under Fed. R. Evid. 702 when Mr. Seifert has not applied a proper methodology. For the reasons stated herein, the Court GRANTS Cisco's motion to exclude Mr. Seifert's "*de facto*

Case 5:14-cv-05344-BLF Document 661 Filed 11/16/16 Page 8 of 26

industry standard" opinions.

**ii. Mr. Seifert's "Market Effect" Opinions**

Cisco moves to exclude Mr. Seifert's opinions on "market effect" on grounds that Mr. Seifert merely summarized sources from third parties without applying any expertise. Seifert Mot. 7-9; Seifert Reply 5. Arista counters that Mr. Seifert analyzed evidence, such as a publication from "Network World." Seifert Opp. 9-10.

In determining whether Cisco has suffered market harm, Mr. Seifert relied on a number of documents, but failed to apply his expertise or experience in his review. He relied on an online publication by "Network World, Inc." from 2010 that purportedly conducted "grueling" performance tests of Cisco and Arista's products. Seifert Opening Rpt. ¶¶ 94-96. Mr. Seifert then described Arista's market segments using Arista's 30(b)(6) deposition, the deposition of an Arista customer, related deposition exhibits, and the parties' presentation materials. *Id.* ¶¶ 97-102. Mr. Seifert then concluded that Arista's customers chose Arista for reasons other than the Cisco-like CLI. *Id.* ¶¶ 103-04. In effect, Mr. Seifert's opinions amount to nothing more than his summary of the depositions or the documents without applying any "reliable principles and methods." Nor did he apply his personal experience and knowledge to add any substantive analysis to the mere recitation of third-party testimony and documents.

In contrast, Mr. Seifert's opinion on the market share data published by Crehan Research Inc. can be proper expert testimony. *Id.* ¶¶ 106-09. Crehan's chart shows the market share of the major players in the data center Ethernet switching market over time. *Id.* ¶ 108. The Court finds that Mr. Seifert's interpretation of this chart is derived at least in part from his personal knowledge and business experience and can be helpful to a trier of fact. The Court therefore DENIES the motion as to Mr. Seifert's opinion on Crehan's chart, *id.* ¶¶ 106-09, but GRANTS the motion as to rest of his opinions on "market effect."

**C. Dr. Douglas W. Clark**

Cisco seeks to preclude Dr. Clark from testifying on the invalidity of the asserted '526 patent claims because he fails to conform his opinions to the Court's claim constructions. Clark Mot. 2-5, ECF 428. Cisco also objects to Dr. Clark's opinions to the extent they are conditioned

Case 5:14-cv-05344-BLF Document 661 Filed 11/16/16 Page 25 of 26



("Sadana Dep.") 108:17-21. If the supporting evidence is weak or if Dr. Chevalier's inference is erroneous, Arista is free to cross-examine her. *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003) ("Once the patentee establishes the reasonableness of this inference, the burden shifts to the infringer to show that the inference is unreasonable for some or all of the lost profits.").

The Court is also not persuaded that Dr. Chevalier's opinion on "Scenario 3" is solely for the purpose of presenting a factual narrative, like the precluded expert opinions in *Highland Capital* and *Rezulin*. The expert in *Highland Capital* was to opine on whether the conduct of certain individuals constituted a criminal violation of securities law. 379 F. Supp. 2d at 465, 469. The expert provided a narrative solely to marshal facts in support of the plaintiff's theories without applying any of his expertise. *Id.* at 469. Similarly, the court in *Rezulin* excluded an expert's opinion relating to the regulatory events of a drug in a product liability case because the expert was merely acting as a "historian" of facts better presented through percipient witnesses and documentary evidence. *Rezulin*, 309 F. Supp. 2d at 551. Unlike those experts, Dr. Chevalier is not recounting historical events or narrating facts, but has applied her expertise in a market share analysis based on assumptions she made from certain deposition testimony. Accordingly, Arista's motion to exclude Dr. Chevalier's "Scenario 3" is DENIED.

## IV. ORDER

For the foregoing reasons, Cisco and Arista's *Daubert* motions are both GRANTED in PART and DENIED IN PART.

1. Cisco's motions to exclude expert testimony are GRANTED with respect to:
   a. Dr. Black's opinions on *de facto* industry standard, except to his underlying analysis;
   b. Dr. Seifert's opinions on *de facto* industry standard;
   c. Dr. Seifert's opinions on "market effects," except to his opinions on the chart published by Crehan Research Inc.
   d. Opinions of Dr. Black and Ms. Elsten on third-party beliefs and corporate

United States District Court
Northern District of California

intent.

2. The Court defers Cisco's motion as to Dr. Clark's opinions.

3. Cisco's motions are DENIED as to the remainder.

4. Arista's motions to exclude expert testimony are GRANTED with respect to:

   a. Dr. Almeroth's opinions on source code copying of the parser and source code copying relating to "help descriptions;"

   b. Dr. Almeroth's opinions on the CLI "look and feel" based on features that are not command expressions, command outputs, hierarchies, modes, prompts, or help descriptions screens; and

   c. Opinions of Dr. Almeroth on third-party beliefs and corporate intents.

5. Arista's motions are DENIED as to the remainder.

Dated: October 11, 2016

BETH LABSON FREEMAN
United States District Judge