John M. Desmarais (*admitted pro hac vice*)
jdesmarais@desmaraisllp.com
Paul A. Bondor (*admitted pro hac vice*)
pbondor@desmaraisllp.com
Alan S. Kellman (*admitted pro hac vice*)
akellman@desmaraisllp.com
Andrew G. Heinz (*admitted pro hac vice*)
aheinz@desmaraisllp.com
Tamir Packin (SBN 317249)
tpackin@desmaraisllp.com
Jeffrey S. Seddon II (SBN 297502)
jseddon@desmaraisllp.com
Brian Leary (*admitted pro hac vice*)
bleary@desmaraisllp.com
William D. Findlay (*admitted pro hac vice*)
wfindlay@desmaraisllp.com
Carson Olsheski (*admitted pro hac vice*)
colsheski@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

Sarah E. Piepmeier (SBN 227094)
sarah.piepmeier@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Attorneys for Defendant Cisco Systems, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ARISTA NETWORKS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>Defendant. | Case No. 5:16-cv-00923-BLF (SVK)<br><br>**DEFENDANT CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE, IN PART, THE EXPERT OPINION OF FIONA SCOTT MORTON, PH.D.**<br><br>Date: May 3, 2018<br>Time: 9:00 am<br>Judge: Hon. Beth Labson Freeman<br>Dept.: Courtroom 3 |

# **TABLE OF CONTENTS**

**Page**

ARGUMENT .................................................................................................................................. 1

I.  Dr. Scott Morton Should Be Precluded From Testifying Regarding Industry Standard CLI, *De Facto* Or Otherwise. ................................................................. 1

   A.  Arista Offers No Basis For Any Testimony Based On A Standard For CLI. .......... 1

   B.  Testimony Regarding The "Attributes Of An Informal Industry Standard" Or "Industry Recognition" Is No Different And Should Also Be Excluded. .......... 2

II. Dr. Scott Morton Should Be Precluded From Testifying Regarding Damages Based On Her Forecasting Model. ........................................................................ 3

III. Dr. Scott Morton Should Be Precluded From Offering A New, Unsupported Opinion To Apportion Damages From Her Model. ............................................. 5

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Asetek Danmark A/S v. CMI USA, Inc.*,
  No. 13-cv-457, 2014 WL 6997670 (N.D. Cal. Dec. 9, 2014) ................................................. 5

*Daubert v. Merrell Dow Pharms., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ................................................................................................. 5

*Farley Transp. Co. v. Santa Fe Trail Transp. Co.*,
  786 F.2d 1342 (9th Cir. 1985) ....................................................................................... 3, 4, 5

*Harkins Amusement Enters., Inc. v. Gen. Cinema Corp.*,
  748 F. Supp. 1399 (D. Ariz. 1990) ........................................................................................ 4

*Moore v. Jas. H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982) ................................................................................................. 3

*Vernon v. S. Cal. Edison Co.*,
  955 F.2d 1361 (9th Cir. 1992) ............................................................................................... 3

*William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*,
  668 F.2d 1014 (9th Cir. 1981) ............................................................................................ 3, 4

## RULES

Fed. R. Evid. 702 ......................................................................................................................... 2, 3

## ARGUMENT

Faced with Cisco's *Daubert* challenge, Arista concedes that Dr. Scott Morton will not testify that Cisco's CLI was part of an "open and informal" standard, so that opinion, and other opinions based on it, must be excluded. Nonetheless, Arista seeks to rely on these excluded opinions as the basis for its "open early, closed late" theory. Dr. Scott Morton should not be permitted to circumvent Arista's concession and her lack of relevant expertise by offering an "open early, closed late" opinion based solely on the excluded, non-existent standard. Similarly, Arista concedes that Dr. Scott Morton's economic model does not distinguish between the effects of lawful conduct, specifically the two ITC actions Cisco initiated, and the allegedly unlawful conduct, thus Dr. Scott Morton's model cannot be used to establish the existence of anticompetitive harm, much less prove the quantity of damages. Nor can Arista offer her model under a "relaxed standard" when there is no proof that the allegedly unlawful conduct caused any harm. Finally, Dr. Scott Morton's attempt to fill that hole with uninformed lay opinion, offered for the first time at her deposition, should be excluded as untimely and unreliable.

### I. DR. SCOTT MORTON SHOULD BE PRECLUDED FROM TESTIFYING REGARDING INDUSTRY STANDARD CLI, *DE FACTO* OR OTHERWISE.

#### A. Arista Offers No Basis For Any Testimony Based On A Standard For CLI.

Arista does not defend Dr. Scott Morton's opinion regarding an "informal" or "*de facto*" industry standard for CLI. Nor does it dispute the flaws that Cisco identified or provide any basis for her opinions. To the contrary, Arista agrees not to present "any opinion from her that Cisco's CLI is a 'standard,' de facto or otherwise" and states that "whether the CLI is a standard is irrelevant to whether Cisco committed an antitrust violation." (Opp'n at 3.) Accordingly, the Court should preclude Dr. Scott Morton from testifying regarding industry standards for CLI.

Furthermore, because she will not testify that "Cisco's CLI is a 'standard,'" there is no reliable basis for Dr. Scott Morton's opinions on anticompetitive "open early, closed late" conduct. The only anticompetitive conduct that she identifies is the alleged attempt to close the so-called standard. (*See, e.g.*, Ex. B at 305:4-5 ("the process of closing the standard, is the anticompetitive act").) The individual acts that she discusses, "a copyright litigation, FUD, … , ***all of that is part of trying to close the standard.***" (*Id.* at 306:21-307:1.) Additionally, Dr. Scott Morton's "open

early, closed late" opinion also depends upon the assumption that Cisco's CLI is a standard:

> [I]f an entrant into the Ethernet switch market wants to use the open-standard CLI, I think Cisco trying to exclude that entrant *on the basis that they own this open standard* is an 'open early, closed late' anticompetitive act.

(*Id.* at 143:4-10; *see also id.* at 334:1-3.)  Indeed, Dr. Scott Morton admitted, "I have no opinion" on "other ways … to open early and close late" besides using "copyright litigation that would work to try to close the standard."  (Ex. B at 145:18-23.)  Arista—which now contends that "whether the CLI is a standard is irrelevant"[1]—thus provides no reliable basis for Dr. Scott Morton's "open early, closed late" opinion, and it should be excluded.  *See* Fed. R. Evid. 702.

### B. Testimony Regarding The "Attributes Of An Informal Industry Standard" Or "Industry Recognition" Is No Different And Should Also Be Excluded.

Notwithstanding its agreement not to present opinion that "Cisco's CLI is a 'standard,' de facto or otherwise," Arista contends that Dr. Scott Morton can testify that "'Cisco-like' CLI commands have attributes of an informal industry standard and were recognized by the industry as such."  (Opp'n at 4.)  But those are different words that mean the same thing.  Arista is searching for another way to say "de facto" standard, and clearly intends to make the same standard-based arguments.[2]  And, for the same reasons, Arista cannot show that any such testimony is reliable.

For example, despite bearing the burden of proof on admissibility, Arista provides: (i) no evidence that Dr. Scott Morton has any expertise concerning what constitutes an "informal" standard; (ii) no evidence that she used an objective methodology in analyzing the "attributes of an informal industry standard" or the scope of "'Cisco-like' CLI commands"; and (iii) no evidence that an opinion on "'Cisco-like' CLI commands" relates to the specific commands asserted in the copyright litigation.  (Opp'n at 4.)  Indeed, Dr. Scott Morton does not even know what it means for a command to be "Cisco-like."  (*See, e.g.*, Ex. B at 146:22-147:14; 149:7-24.)  Arista's claim that her opinion is based on "the straightforward application of well-accepted economics principles" is belied by its failure to identify any such principles, (Opp'n at 4), much less show a

---

[1] Arista argues that "neither the economic literature nor the case law recognizing 'open early, closed late' conduct as anticompetitive hinges on standards." (Opp'n at 3.)  But that is irrelevant, because Dr. Scott Morton's opinion does hinge on "open standard[s]." (*See* Ex. B at 143:4-10.)

[2] In fact, Dr. Scott Morton uses "Cisco's CLI," "Cisco-like CLI," and "industry standard CLI" interchangeably.  (*See, e.g.*, Ex. B at 42:5-10; 146:22-147:14; 149:7-24; 274:22-24.)

reliable methodology for identifying informal industry standards. Arista thus cannot show that Dr. Scott Morton's opinions on "'Cisco-like' CLI" or an "informal industry standard"—including its "attributes" or industry recognition—satisfy Rule 702, so they should be excluded.

## II. DR. SCOTT MORTON SHOULD BE PRECLUDED FROM TESTIFYING REGARDING DAMAGES BASED ON HER FORECASTING MODEL.

Arista does not deny that it never changed its CLI in response to the copyright litigation. Arista has no admissible evidence that it lost any sales due to the allegedly unlawful conduct. And Arista concedes that Dr. Scott Morton's damages model "does not quantifiably separate the impact of Cisco's CLI conduct from its [lawful] ITC actions." (Opp'n at 7.) Nonetheless, Arista argues that its damages model is subject to a "relaxed standard" and attempts to shift "the risk of any uncertainty" to Cisco. (*Id.* at 5-7.) It cannot do so. Unlike the expert testimony in the cases Arista cites, which was supported by "ample evidence" of losses,[3] Arista has **no** admissible evidence that it lost even a single sale as a result of the copyright litigation. Arista's only evidence of "the fact of damage" comes from Dr. Scott Morton's model, which she admits cannot separately show any such impact. (*See* Ex. B at 355:4-8, 358:16-19.) Because Arista cannot show that the CLI litigation is "a material cause of the injury," *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1051 (9th Cir. 1981), or the "fact of damage," no "relaxed standard" applies. *See Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 836 (9th Cir. 1982). Unlike the opinion in *Moore*, Dr. Scott Morton's model does not merely "lack[] exactness" or rely on "inexact figures." *Cf. id*. It fails to "segregate the losses, if any, caused by acts which were not antitrust violations from those that were." *See Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1372 (9th Cir. 1992).

Arista attempts to distinguish cases requiring "segregation between damages attributable to lawful competition and that attributable to [an] unlawful scheme," *see, e.g.*, *Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1351 (9th Cir. 1985), by arguing that Dr. Scott Morton "considers multiple factors that affected Arista's revenues." (Opp'n at 6.) But Arista points to nothing that will "permit[] the jury to parse out which damages are attributable to the

---

[3] In *Moore*, for instance, the expert's calculations were supported by separate evidence "that, but for the tying restraints, [the plaintiff] would have sold approximately 50% of the markers sold in defendants' cemeteries." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 836 (9th Cir. 1982).

unlawful competition." *Farley*, 786 F.2d at 1351.  Rather, like the expert in *Farley*, Dr. Scott Morton simply provides a lump sum of "reduced gross profits," (*see* Ex. A ¶ 242), and invites the jury to guess how much of the alleged losses "were due to [Cisco's] illegal activities." *See Farley*, 786 F.2d at 1351.  That is a recipe for jury speculation.  Nor can Arista shift its burden by claiming Cisco "combine[d] its anticompetitive conduct with the ITC actions." (Opp'n at 6.)  The ITC actions are separate actions addressing patents, and Arista has explicitly told this Court that its antitrust claim "does not, not, and I repeat not, include any allegation about them asserting patent claims against us." (Ex. D at 49.)  Arista's cases, which address conduct that "formed part of the overall mosaic that constituted the unlawful conspiracy," thus have no bearing here.  *Cf. Harkins Amusement Enters., Inc. v. Gen. Cinema Corp.*, 748 F. Supp. 1399, 1404 (D. Ariz. 1990).

Arista also argues that Dr. Scott Morton properly considered the ITC actions because she analyzed "the possible impact of the import bans." (Opp'n at 7.)  But that unquantified analysis lacks any nexus to her model and has not been reliably applied to the facts of the case.  For instance, Dr. Scott Morton ignores the February 2016 finding that Arista infringed three Cisco patents, (*see* Ex. A ¶ 234; Ex. G ¶ 51), which immediately preceded Arista's "strongest decline in new customer acquisitions in the second quarter of 2016." (Opp'n at 7.)  She also ignores the extensive evidence that the ITC actions reduced Arista's sales, both before and after the import bans. (*See, e.g.*, Ex. E at 2; Ex. F at 16.)  Similarly, Arista argues that Dr. Scott Morton accounts for other factors, because they "were part of the benchmark period." (Opp'n at 8.)  But these factors did not appear until the end of the six-year benchmark period, and increased significantly thereafter:  Dr. Scott Morton herself identifies January 2014 as the beginning of Cisco's aggressive pricing. (Ex. A at 31).  Cisco's sales of the Nexus 9000 did not start until late 2013. (Ex. G ¶ 106.)  And third-party competition also increased:  whitebox switches, for example, had no market share until 2012, yet grew quickly through 2016. (Ex. A, Fig. 4.)  Arista thus cannot "show that the market conditions of both the 'base' and 'liability' periods 'were similar but for the impact of the violation,'" as is necessary to "avoid a characterization as 'speculation.'" *See William Inglis*, 668 F.2d at 1052.

Finally, Arista contends that Dr. Carlton "did not criticize [Dr. Scott Morton's] forecasting model." (Opp'n at 7-8.)  That is simply not true.  Dr. Carlton explicitly identified "two fatal flaws:"

the model "cannot identify the effects of the allegedly anti-competitive behavior" and "does not make reliable predictions." (*See* Ex. G ¶¶ 111-18.) And his opinion that "there are no antitrust damages," (*id.* ¶ 112), cannot validate a speculative damages model where there is no actual evidence of harm. If customers decided not to purchase Arista switches because of the copyright litigation, Arista could have sought evidence from those customers. Arista did not, and cannot now rely on a speculative model because it chose not to provide actual evidence of harm.

### III. DR. SCOTT MORTON SHOULD BE PRECLUDED FROM OFFERING A NEW, UNSUPPORTED OPINION TO APPORTION DAMAGES FROM HER MODEL.

Despite her model's failure to separate the effects of lawful competition and allegedly unlawful conduct, Dr. Scott Morton offered no apportionment theory in her report. Instead, she opined that the "lost revenue" predicted by her model was "damages due to Cisco's actions," and made no attempt to disentangle the effects of lawful conduct like the ITC actions. (*See* Ex. A ¶¶ 241-242.) Nonetheless, when questioned about that omission at her deposition, Dr. Scott Morton offered an entirely new opinion: "Cisco's policy change played a more important factor in Arista's lost sales than the ITC actions" or other lawful conduct. (Opp'n at 10.) That belated attempt to apportion damages is not a response to Dr. Carlton's criticisms or "elaborat[ion] on the details of her damages model." (*Id.* at 9-10.) It is a separate opinion on a core issue on which Arista bears the burden of proof. *See Farley*, 786 F.2d at 1350. Dr. Scott Morton should have offered that opinion in her opening report, and cannot do so for the first time at her deposition. *See Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-cv-457, 2014 WL 6997670, at *2 (N.D. Cal. Dec. 9, 2014).

Arista also fails to show that Dr. Scott Morton's new apportionment theory is reliable. It identifies no reliable methodology supporting her belief that the CLI litigation is "more impactful and important" than ITC actions, or other lawful conduct. (*See* Opp'n at 10.) Nor does it identify expertise supporting her attempt to go beyond her model and weigh the relative importance of CLI, ITC actions, or other lawful conduct. (*See id.*) Indeed, Arista concedes that Dr. Scott Morton offers her opinion on the evidence "as a whole" without applying any economic theory. (*Id.*) Accordingly, Dr. Scott Morton's attempt to further apportion damages should be excluded. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995).

|   |   |   |
|---|---|---|
| 1 | | |
| 2 | | Respectfully submitted, |
| 3 | Dated:  April 13, 2018 | DESMARAIS LLP. |
| 4 | | By: */s/ Jeffrey S. Seddon, II /s/* |

John M. Desmarais (*admitted pro hac vice*)
jdesmarais@desmaraisllp.com
Paul A. Bondor (*admitted pro hac vice*)
pbondor@desmaraisllp.com
Alan S. Kellman (*admitted pro hac vice*)
akellman@desmaraisllp.com
Andrew G. Heinz (*admitted pro hac vice*)
aheinz@desmaraisllp.com
Tamir Packin (SBN 317249)
tpackin@desmaraisllp.com
Jeffrey S. Seddon II (SBN 297502)
jseddon@desmaraisllp.com
Brian Leary (*admitted pro hac vice*)
bleary@desmaraisllp.com
William D. Findlay (*admitted pro hac vice*)
wfindlay@desmaraisllp.com
Carson Olsheski (*admitted pro hac vice*)
colsheski@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

Sarah E. Piepmeier (SBN 227094)
sarah.piepmeier@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Attorneys for Defendant Cisco Systems, Inc.*