John M. Desmarais (*admitted pro hac vice*)
jdesmarais@desmaraisllp.com
Paul A. Bondor (*admitted pro hac vice*)
pbondor@desmaraisllp.com
Alan S. Kellman (*admitted pro hac vice*)
akellman@desmaraisllp.com
Andrew G. Heinz (*admitted pro hac vice*)
aheinz@desmaraisllp.com
Tamir Packin (SBN 317249)
tpackin@desmaraisllp.com
Jeffrey S. Seddon II (SBN 297502)
jseddon@desmaraisllp.com
Brian Leary (*admitted pro hac vice*)
bleary@desmaraisllp.com
William D. Findlay (*admitted pro hac vice*)
wfindlay@desmaraisllp.com
Carson Olsheski (*admitted pro hac vice*)
colsheski@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

Sarah E. Piepmeier (SBN 227094)
sarah.piepmeier@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Attorneys for Defendant Cisco Systems, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

|  |  |
|---|---|
| ARISTA NETWORKS, INC.,<br><br>            Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>            Defendant. | Case No. 5:16-cv-00923-BLF-SVK<br><br>**REPLY IN SUPPORT OF DEFENDANT CISCO SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      April 19, 2018<br>Time:      9:00 am<br>Judge:   Hon. Beth Labson Freeman<br>Dept.:    Courtroom 3 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

ARGUMENT ...............................................................................................................1

I.      Arista's Responsive Facts Present No Genuine Dispute Material To Cisco's Motion. .........................................................................................................1

II.     As A Matter Of Law, Cisco's Accused Conduct Is Not Exclusionary Conduct. ...............3

      A.      Arista Has Not Identified Any Conduct That Is Both Anticompetitive And Outside *Noerr–Pennington* Immunity. ...................................................3

          1.      Cisco's Accused Conduct Is First Amendment–Protected Petitioning........3

          2.      Cisco's Communications Are Not Exclusionary Conduct..........................4

      B.      Arista Offers No Legal Basis To Disregard *Noerr* Or *Harcourt Brace*. ................4

          1.      None Of The "Open Early, Closed Late" Cases Arista Cites Address Conduct Covered By *Noerr*  Or *Harcourt Brace*........................................4

          2.      Arista's Argument That *Noerr* Immunity Does Not Extend To Allegedly Anticompetitive Conduct Is Incorrect And Would Vitiate *Noerr* Entirely. ...............................................................................6

          3.      The *Hynix* Cases Also Do Not Rescue Arista's Claims. ...........................8

III.    Cisco Has Neither Monopoly Power Nor A Dangerous Probability Of Obtaining It. ..................................................................................................................9

IV.     Arista Identifies No Evidence Establishing Injury-In-Fact Caused By A "Closed" CLI. ................................................................................................................12

V.      Arista Cannot Show Harm To Competition........................................................14

      A.      Arista Relies On Speculation, Not Evidence, Of Harm To Competition. .............14

      B.      Arista's Alleged Injuries Do Not Establish Harm To Competition.......................15

VI.     Arista Agrees That Its California UCL Claim Follows Its Sherman Act Claims..............15

CONCLUSION............................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Allflex USA, Inc. v. Avid Identification Sys., Inc.*,
    No. 06-cv-1109, 2010 WL 11405130 (C.D. Cal. Feb. 16, 2010) ............................................. 8

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
    486 U.S. 492 (1988)................................................................................................................... 8

*Am. Prof'l Testing Servs., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Pub'ns, Inc.*,
    108 F.3d 1147 (9th Cir. 1997) ......................................................................................... passim

*Apple, Inc. v. Samsung Elecs. Co.*,
    No. 11-cv-1846, 2012 WL 2571719 (N.D. Cal. June 30, 2012).............................................. 8

*Cal. Comput. Prods., Inc. v. IBM Corp.*,
    613 F.2d 727 (9th Cir.1979) .................................................................................................. 15

*Carter v. Variflex, Inc.*,
    101 F. Supp. 2d 1261 (C.D. Cal. 2000) ................................................................................ 15

*City of Columbia v. Omni Outdoor Advert., Inc.*,
    499 U.S. 365 (1991)................................................................................................................. 9

*Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*,
    611 F.3d 495 (9th Cir. 2010) .................................................................................................. 7

*Concord Boat Corp. v. Brunswick Corp.*,
    207 F.3d 1039 (8th Cir. 2000) .............................................................................................. 13

*Daubert v. Merrell Dow Pharms.*,
    43 F.3d 1311 (9th Cir. 1995) ................................................................................................. 12

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
    365 U.S. 127 (1961).......................................................................................................... passim

*Eagle Harbor Holdings, LLC v. Ford Motor Co.*,
    No. 13-cv-2980, 2015 WL 574911 (W.D. Wash. Feb. 11, 2015)........................................... 8

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992).......................................................................................................... passim

*Farley Transp. Co. v. Santa Fe Trail Transp. Co.*,
    786 F.2d 1342 (9th Cir. 1985) .............................................................................................. 13

*Funai Elec. Co. v. LSI Corp.*,
    No. 16-cv-01210-BLF, 2017 WL 1133513 (N.D. Cal. Mar. 27, 2017).................................. 8

*Glen Holly Ent'mt, Inc. v. Tektronix, Inc.*,
    352 F.3d 367 (9th Cir. 2003) ................................................................................................ 12

*Handgards, Inc. v. Ethicon, Inc.*,
   601 F.2d 986 (9th Cir. 1979) ............................................................................. 14

*Hasbrouck v. Texaco, Inc.*,
   842 F.2d 1034 (9th Cir. 1987), *aff'd*, 496 U.S. 543 (1990) .................................. 15

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
   527 F. Supp. 2d 1084 (N.D. Cal. 2007) ............................................................. 8, 9

*Image Tech. Servs., Inc. v. Eastman Kodak Co.* ("*Kodak II*"),
   125 F.3d 1195 (9th Cir. 1997) ..................................................................... 5, 10, 11

*In re Indep. Serv. Orgs. Antitrust Litig.*,
   203 F.3d 1322 (Fed. Cir. 2000) ............................................................................. 7

*Intergraph Corp. v. Intel Corp.*,
   195 F.3d 1346 (Fed. Cir. 1999) .......................................................................... 5, 6

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
   884 F.2d 504 (9th Cir. 1989) ............................................................................... 15

*Los Angeles Land Co. v. Brunswick Corp.*,
   6 F.3d 1422 (9th Cir. 1993) ............................................................................... 9, 11

*Magnetar Techs. Corp. v. Intamin, Ltd.*,
   801 F.3d 1150 (9th Cir. 2015) .......................................................................... 12, 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .............................................................................................. 3

*Microsoft Mobile Inc. v. Interdigital, Inc.*,
   No. 15-cv-723, 2016 WL 1464545 (D. Del. Apr. 13, 2016) ................................... 8

*Moore v. James H. Matthews & Co.*,
   682 F.2d 830 (9th Cir. 1982) ............................................................................... 12

*Oahu Gas Serv., Inc. v. Pac. Res., Inc.*,
   838 F.2d 360 (9th Cir. 1988) ............................................................................... 10

*Olin Corp. v. F.T.C.*,
   986 F.2d 1295 (9th Cir. 1993) ............................................................................. 11

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
   127 F.3d 1157 (9th Cir. 1997) ............................................................................. 11

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ........................................................................................ 3, 7, 9

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ........................................................................ passim

*Red Lion Med. Safety, Inc. v. Ohmeda, Inc.*,
    63 F. Supp. 2d 1218 (E.D. Cal. 1999)...................................................................................... 14

*Rodime PLC v. Seagate Tech., Inc.*,
    174 F.3d 1294 (Fed. Cir. 1999)............................................................................................... 7

*Talking Yellow Pages, Inc. v. Pac. Telesis Grp.*,
    972 F.2d 1343 (9th Cir. 1992) ............................................................................................... 15

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.*,
    512 F.2d 1264 (9th Cir. 1975) ............................................................................................... 10

*United Mine Workers v. Pennington*,
    381 U.S. 657 (1961)................................................................................................... passim

*United States v. Borland Int'l, Inc.*,
    No. 91-cv-3666, 1992 WL 101767 (N.D. Cal. Mar. 13, 1992) ............................................ 5, 6

*United States v. E. I. du Pont de Nemours & Co.*,
    351 U.S. 377 (1956)................................................................................................................ 10

*United States v. Syufy Enter.*,
    903 F.2d 659 (9th Cir. 1990) ................................................................................................. 10

*Vizio, Inc. v. Funai Elec. Co.*,
    No. 09-cv-0174, 2010 WL 7762624 (C.D. Cal. Feb. 3, 2010) ............................................... 14

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
    382 U.S. 172 (1965)................................................................................................................ 7

**Other Authorities**

*In re Intel Corp.*,
    Dkt. No. 9341, 2010 WL 4542454 (F.T.C. Nov. 2, 2010)....................................................... 5

**INTRODUCTION**

As Arista's opposition underscores, Arista's entire case rests on Cisco's CLI lawsuit—brought to address Arista's self-described "slavish copying" of Cisco's copyrighted works—and a handful of communications that provided updates on the litigation. Arista's theory of harm fails as a matter of Supreme Court and Ninth Circuit law. The *Noerr–Pennington* doctrine immunizes both the lawsuit and the communications from antitrust liability. And even if *Noerr* did not apply, the communications do not harm competition as a matter of Ninth Circuit law under *American Professional Testing Services, Inc. v. Harcourt Brace Jovanovich Legal & Professional Publications, Inc.*

Arista insists that *Eastman Kodak Co. v. Image Technical Services, Inc.* provides a basis to override constitutional protections and disregard controlling law. *Kodak* had nothing to do with *Noerr*-protected conduct, and Arista cites no case extending *Kodak* to *Noerr*-protected conduct or to communications deemed harmless by *Harcourt Brace*. Instead, Arista tries to sidestep *Noerr* by characterizing Cisco's conduct as a "scheme," but even the "scheme" cases that Arista cites hold that *Noerr* immunity applies unless Arista first identifies non–*Noerr*-protected conduct that independently harmed competition. Arista has not done so, and under *Harcourt Brace*, Arista cannot do so.

Arista also cannot show that Cisco possesses monopoly power. The undisputed direct evidence shows a competitive market. Arista attempts to shift focus to arguments about circumstantial evidence, but those arguments cannot excuse Arista's inability to meet its burden of showing monopoly power. Out of the four alleged relevant markets, Arista identifies only one where Cisco's share was allegedly high enough to allow for abuse of monopoly power. But that market is not plausible—it directly conflicts with Arista executives' admissions about the markets in which Arista actually competes, and Arista's expert concedes that products in the alleged market are not interchangeable. Arista has also failed to identify evidence that Cisco's conduct allegedly "closing" the CLI caused Arista's alleged injury or caused injury to competition rather than just to Arista. Any one of these grounds alone is fatal to Arista's case and merits summary judgment in Cisco's favor.

**ARGUMENT**

**I.  Arista Presents No Genuine Disputed Fact Material To Cisco's Motion.**

Arista's responsive fact statement—and indeed, Arista's entire opposition brief—does not

dispute the material facts supporting Cisco's motion:

- Cisco's CLI is not a formal standard (and has never been submitted to a standards organization for consideration as a standard itself), and no formal standard CLI for Ethernet switches exists, (*see* Mot. at 2:7–9);

- Cisco sued Huawei in 2003 for infringing Cisco's CLI, (*see id.* at 10–13);

- Cisco sued Arista for infringing far more than the asserted multi-word commands in its CLI (Cisco did not assert copyright over single-word commands against Arista): Cisco also asserted infringement of 14 patents and verbatim copying of Cisco's user manuals— including errors—and other copyrighted works, (*see id.* at 2:27–3:12);

- Cisco's conduct preceding the CLI litigation was not anti-competitive, (*see id.* at 4:1–3);

- Arista has not identified any alleged "closing" conduct by Cisco other than the CLI lawsuit and communications about the litigations;

- During the two-year period while the CLI case was pending, Ethernet switch prices declined and output increased, (*see id.* at 5:22–24)

- During the same period, the ITC found Arista infringed Cisco patents and did so willfully as part of a "corporate culture of copying," (*see id.* at 4:6–17);

- Arista lacks direct evidence from customers showing that any chose not to buy Arista switches because of the allegedly "closed" CLI, (*see id.* at 5:14–18); and

- Neither Arista nor any other competitor or customer altered their CLI due to Cisco's conduct. (*See id.* at 6:3–8.)

The disputes Arista claims exist are neither genuine nor material and are insufficient to preclude summary judgment.  For example, Arista's reliance on self-serving testimony from its board member regarding whether Cisco's lawsuit against Huawei was "about" source code, (*see* Opp'n at 10:5–11), is immaterial to the alleged "open early" scheme.  It is undisputed that Cisco publicly sued Huawei for infringement of Cisco's copyright-protected CLI and, therefore, put the industry on notice that Cisco asserted rights in its CLI.  Similarly, Arista does not raise a genuine dispute over Cisco's instruction to its salesforce not to comment on the litigation and to direct interested customers to General Counsel Mark Chandler's blog.  (*See* Mot. at 4:19–5:6.)  Contrary to Arista's characterization that Mr. Chandler disclaimed such an instruction, (*see* Opp'n at 10), Mr. Chandler clearly testified that there was ███████████████████████████████████████████████████

███████████████████████████ (Ex. A75[1] at 144:23–146:16; *see also id.* at 148:7–15 (disagreeing with

---

[1] Citations to Ex. A52, A66–67, A75–78 refer to exhibits to the Leary Declaration filed herewith; citations to all other Ex. A__ refer to exhibits to the Seddon Declaration filed as Dkt. No. 221-1.

1  question ███████████████████████████████████████████).)  Arista also

2  cites a draft competitive document that suggested the salesforce may reference the litigation, (*see*

3  Opp'n at 10), but Arista offers no evidence that Cisco ever distributed that draft to its salesforce, and

4  a subsequent draft of the document removes the sections Arista cites.  (Ex. A76.)  Indeed, Arista

5  identifies only a single instance where one person among Cisco's thousands of salespersons discussed

6  the litigations with a customer, but proffers no evidence that this instance related to the CLI as opposed

7  to the ITC actions, which Arista has not alleged to be anticompetitive.  (Ex. A6 ¶ 148.)  Arista has

8  failed to "do more than simply show that there is some metaphysical doubt as to the material facts,"

9  thus compelling summary judgment in Cisco's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio*

10  *Corp.*, 475 U.S. 574, 586 (1986) (citations omitted).

11  **II.**   **As A Matter Of Law, Cisco's Accused Conduct Is Not Exclusionary Conduct.**

12  **A.**   **Arista Has Not Identified Any Conduct That Is Both Anticompetitive And**
13         **Outside *Noerr–Pennington* Immunity.**

14        Arista's own expert concedes that all of Cisco's conduct preceding the CLI litigation was

15  procompetitive conduct.  (Ex. A6 ¶ 61; Ex. A1 at 48:6–20.)  Arista offers no basis to conclude that

16  Cisco's conduct following the jury verdict in the CLI case was anticompetitive.  (Ex. A6 ¶ 208.)  And

17  Arista identifies no conduct other than the CLI litigation itself and Cisco's communications about the

18  litigations as the so-called "closed late" conduct.  This means that Arista's *entire* case hangs on this

19  conduct.  But the CLI litigation is *Noerr*-protected, and the related communications are both *Noerr*-

20  protected and not anticompetitive as a matter of Ninth Circuit law.  (*See* Mot. at 8:20–13:13.)

21        **1.**   **Cisco's Accused Conduct Is First Amendment–Protected Petitioning.**

22        Arista does not contest that Cisco's CLI lawsuit and ITC actions were objectively reasonable

23  litigation under the *Noerr–Pennington* doctrine.  This uncontested fact in and of itself "irrefutably

24  demonstrates . . . entitl[ement] to *Noerr* immunity."  *Prof'l Real Estate Inv'rs, Inc. v. Columbia*

25  *Pictures Indus., Inc.*, 508 U.S. 49, 63 (1993). (*See* Mot. at 8:10–19.)  *Noerr* protection also extends to

26  Cisco's communications about the litigation, and Arista fails to show otherwise.  Arista suggests that

27  the communications are not as "incidental" to the litigation as "a demand letter," (Opp'n at 11:27–28),

28  but Arista never addresses—much less distinguishes—the cases Cisco cites holding that the kinds of

communications Cisco made are protected by *Noerr–Pennington*.  (*See* Mot. at 9:7–13.)  Arista has not cited a single instance—let alone controlling precedent—of a court holding that a *Kodak* theory of harm voids *Noerr* immunity, particularly where, as here, Arista has identified no other conduct alleged to be independently anticompetitive.  This alone requires summary judgment for Cisco.

### 2. Cisco's Communications Are Not Exclusionary Conduct.

Also fatal to Arista's claims is the Ninth Circuit's unequivocal holding in *Harcourt Brace* that disparaging communications about a competitor do not constitute exclusionary conduct.  108 F.3d 1147, 1151–52 (9th Cir. 1997) (disparaging fliers about a competitor cannot sustain monopolization claim).  Arista only can overcome this binding precedent and base an antitrust claim on such communications if Arista establishes all six factors of a six-factor test to "show[] significant and more-than-temporary harmful effects on *competition*."  *Id.* at 1151.  Arista cannot do so.  (*See* Mot. 10:15–13:13.)  In fact, Arista's opposition brief entirely ignored *Harcourt Brace* and made no attempt whatsoever to meet the six-factor test.  Even more, Arista did not provide any argument whatsoever to suggest that *Harcourt Brace* does not apply.  Thus, Cisco's communications about the CLI litigation (and the ITC actions) are not exclusionary conduct as a matter of undisputed Ninth Circuit law and cannot support Arista's claims.

### B. Arista Offers No Legal Basis To Disregard *Noerr* Or *Harcourt Brace*.

### 1. None Of The "Open Early, Closed Late" Cases Arista Cites Address Conduct Covered By *Noerr* Or *Harcourt Brace*.

No matter how many times Arista repeats the phrase "open early, closed late" to generalize *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992), the facts before this Court are distinct from those in *Kodak*, and *Kodak* cannot rescue Arista's legally deficient claims.  (*See* Mot. at 15:26–16:24.)  Most critically, Arista elides over the fact that Kodak **severed ISO access** to replacement parts, *see Kodak*, 504 U.S. at 457–58, whereas no industry participant—not even Arista—had to change the way it managed switches in response to Cisco's CLI lawsuit.  (*See* Mot. at 6:3–8.)  And the conduct comprising *Kodak*'s open early–closed late scheme did not include either *Noerr*-protected petitioning or presumptively harmless communications under *Harcourt Brace*, whereas that is all that Arista has alleged in this case.

Arista also has not identified any precedent extending *Kodak* to such conduct.[2]   Contrary to the implications in Arista's opposition, the Ninth Circuit's decision on remand in *Kodak* does not address whether *Noerr* immunity is lost when a plaintiff alleges a *Kodak*-style theory of harm.   (*Cf.* Opp'n at 10 (misrepresenting that the Ninth Circuit "expressly held" otherwise).)   Rather than sweep intellectual property rights aside, the Ninth Circuit found "no reported case in which a court had imposed antitrust liability for a unilateral refusal to sell or license a patent or copyright." *Image Tech. Servs., Inc. v. Eastman Kodak Co.* ("*Kodak II*"), 125 F.3d 1195, 1216 (9th Cir. 1997); *see also Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1362 (Fed. Cir. 1999) ("Nor have we.").   Addressing a different issue, the Ninth Circuit adopted a rebuttable presumption that exercising the statutory right to exclude is a valid business justification for discontinuing a prior course of dealing as "some measure [to] guarantee that the jury account for the procompetitive effects and statutory rights extended by the intellectual property laws." *Kodak II*, 125 F.3d at 1218–20.   Assuming that the jury concluded that Kodak's motivations were anticompetitive, the Ninth Circuit found a failure to instruct the jury on this presumption was harmless error. *Id.*  The Ninth Circuit did not address whether enforcement of valid intellectual property could be exclusionary conduct, and *Kodak II* imposed no limits on the First Amendment rights safeguarded by the *Noerr–Pennington* doctrine.

Neither *United States v. Borland Int'l, Inc.*, No. 91-cv-3666, 1992 WL 101767 (N.D. Cal. Mar. 13, 1992), nor *In re Intel Corp.*, Dkt. No. 9341, 2010 WL 4542454 (F.T.C. Nov. 2, 2010), provide a basis for this Court to extend *Kodak*.   Both were government investigations that settled without findings of fact or law. *See* Dkt. 243-14 at 12:21–22 (settlement is "no admission by any party as to any issue of fact or law"); *In re Intel*, 2010 WL 4542454, at *1 (consent order "does not constitute an admission" that "the law has been violated" or that "the facts as alleged in [the] complaint . . . are true").   Both dealt with strikingly different factual circumstances and procedural postures.   In *Borland*, the Department of Justice tried to block Borland's acquisition of Ashton-Tate due to a concern that Borland would control both dominant RDBMS products—its own and Ashton-Tate's—if Ashton-Tate could establish, through its lawsuit against competitor Fox, its copyrights in the programming

---

[2] Indeed, Arista has cited no case but *Kodak* itself that found liability for an alleged open early–closed late scheme (regardless whether *Noerr* protected any of the accused conduct).

language used in its RDBMS product.  (Dkt. 243-14 at 5, 8–9).  To complete the acquisition, Borland volunteered to drop Ashton-Tate's suit against Fox.  *Borland Int'l*, 1992 WL 101767 § IV.C.  The DOJ never alleged open early–closed late liability, and there was no question of *Noerr* immunity.

In *Intel*, the FTC accused Intel of leveraging its monopoly power in the markets for personal computer and server CPUs to harm competition in the complementary market for graphics processing units ("GPUs"), including through predatory price bundling and modifying the interfaces through which CPUs and GPUs interoperate "to create technological barriers" for GPU competitors.  (Dkt. 243-15 ¶¶ 3, 8, 80–81, 85, 88–89.)  The FTC accused Intel of a litany of other anticompetitive acts as well.  (*See id.* ¶¶ 6–10.)  Nowhere did the FTC posit that an enforcement of intellectual property rights alone constitutes open early–close late conduct; indeed, Intel actually modified its products to foreclose access.  (*Id.* ¶¶ 85–86.)  Nor did the FTC address—in any way—*Noerr–Pennington* immunity or the *Harcourt Brace* presumption in its case against Intel.

Finally, although *Borland* and *Intel* posit the existence of "informal" industry standards, in neither matter did the Antitrust Division or FTC articulate a method to decide when an "informal" standard exists.  Arista cannot do so either.  (*See* Dkt. 241 at 3:3–5:7 (conceding that Arista's expert, Dr. Scott Morton, will not discuss the CLI as an "informal standard")).  In other words, Arista never defines just what it is that Cisco first opened and then closed.  Although Arista cites expert opinion regarding command overlap between Cisco's and competitors' CLIs, (Opp'n at 1–1), Arista offers no evidence of a uniform CLI adopted by different switching vendors.  And because Arista concedes that neither Arista nor any other competitor altered its CLI in response to Cisco's conduct, Arista cannot identify any CLI, standard or otherwise, that has been closed.  "A Sherman Act violation cannot be so imprecisely invoked."  *Intergraph Corp.*, 195 F.3d at 1363.

### 2. Arista's Argument That *Noerr* Immunity Does Not Extend To Allegedly Anticompetitive Conduct Is Incorrect And Would Vitiate *Noerr* Entirely.

Arista next offers a circular argument that *Noerr* does not protect Cisco's petitioning conduct because it was allegedly part of an open early–closed late scheme and, therefore, "unlawful."  (Opp'n at 11.)  The very purpose of the *Noerr–Pennington* doctrine, however, is to immunize from antitrust liability litigation and other First Amendment–protected government petitioning—even though the

"sole purpose" of that activity may be to "destroy . . . competitors." *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961). *Noerr* immunity would be a worthless protection of the right to petition if it was voided whenever a plaintiff argued that the petitioning activity was anticompetitive.[3] *See Prof'l Real Estate Inv'rs., Inc.*, 508 U.S. at 56 ("[T]he Sherman Act does not prohibit . . . attempt[ing] to persuade [the government] to take a particular action . . . that would produce a restraint.") (citation omitted).

Given the sweeping implications of Arista's argument, it is not surprising that none of the cases Arista cites support such a boundless theory. Rather, they support the application of the *Noerr– Pennington* doctrine here to grant summary judgment in Cisco's favor. For example, in *In re Independent Service Organizations Antitrust Litigation*, the Federal Circuit explained that *Noerr* immunity applies to a lawsuit to enforce intellectual property rights "even though such a suit may have an anticompetitive effect" unless it falls under one of two *Noerr* exceptions—sham litigation or *Walker Process* fraud. 203 F.3d 1322, 1326 (Fed. Cir. 2000). Arista has presented no argument that the CLI case or Cisco's statements about the case fall within either exception. Applying this framework, the Federal Circuit declined to extend *Kodak*—on facts far closer to those in *Kodak* than the facts before this Court—to an argument that Xerox's refusal to continue selling IP-protected replacement parts for Xerox copiers to independent servicers constituted anticompetitive conduct. *Id.* at 1326–27.

Cases that have found *Noerr* immunity inapplicable did so on facts that are plainly and materially distinct from Arista's allegations. In *Rodime PLC v. Seagate Tech., Inc.*, the Federal Circuit concluded that *Noerr* immunity did not extend to Seagate's false representations to the U.S. Patent Office because such false representations violated a statute. 174 F.3d 1294, 1307 (Fed. Cir. 1999). In *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, the Ninth Circuit found *Noerr* inapplicable because VeriSign coerced the decision-making authority of ICANN, a private standards-setting body, and, under Supreme Court precedent, petitioning a *private* standards body does not fall within the scope of government petitioning protected by *Noerr*. 611 F.3d 495, 506–07 (9th Cir. 2010) (citing

---

[3] Arista propounds a similar strawman argument about whether intellectual property rights "confer a privilege to violate the antitrust laws." *In re ISOs Antitrust Litig.*, 203 F.3d at 1325. Cisco never suggested that such rights or *Noerr* immunity confer an unfettered freedom to violate the law. (*See, e.g.*, Mot. at 8, 17 (noting *Noerr* exceptions).)

1   *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988)).  *Eagle Harbor Holdings,*

2   *LLC v. Ford Motor Co.* is even further afield.  No. 13-cv-2980, 2015 WL 574911 (W.D. Wash. Feb.

3   11, 2015).  The *Eagle Harbor* court concluded that *Noerr* offered no defense because the purportedly

4   immunized litigation was not the conduct accused by the plaintiff's claim—a trade secret

5   misappropriation claim "limited to the unauthorized acquisition of trade secrets."  *Id.* at *3.  These

6   cases offer no support for Arista's request that this court improperly extend *Kodak* to abrogate *Noerr–*

7   *Pennington* immunity but, rather, underscore why *Noerr–Pennington* immunity applies here.

8   ### 3.  The *Hynix* Cases Also Do Not Rescue Arista's Claims.

9   Arista misreads *Hynix Semiconductor Inc. v. Rambus, Inc.* to establish a rule that if *Noerr*-

10   protected conduct is "causally connected" to anticompetitive harms, such conduct does not receive

11   *Noerr* protection.  (Opp'n at 12–14.)  This is not the holding of *Hynix*.  The *Hynix* court held that

12   "before otherwise protected litigation can be part of an 'anticompetitive scheme' claim, the court must

13   find that the ***other aspects*** of the scheme ***independently produce anticompetitive harms***."  527 F.

14   Supp. 2d 1084, 1097 (N.D. Cal. 2007).  Only "[o]nce this step has been established" does the court

15   "ask whether the accused . . . litigation was causally connected to these anticompetitive harms."  *Id.*;

16   *see also Funai Elec. Co. v. LSI Corp.*, No. 16-cv-01210-BLF, 2017 WL 1133513, at *6 (N.D. Cal.

17   Mar. 27, 2017); *Microsoft Mobile Inc. v. Interdigital, Inc.*, No. 15-cv-723, 2016 WL 1464545, at *3

18   (D. Del. Apr. 13, 2016).

19   Arista's allegations contrast starkly with the facts of *Hynix*, *Funai*, and the other cases Arista

20   cites, where the antitrust defendants engaged in exclusionary conduct ***independent of*** *Noerr*-protected

21   litigation.  *See Funai*, 2017 WL 1133513, at *5–6 (refusing to honor FRAND commitments); *Hynix*,

22   527 F. Supp. 2d at 1098 (same); *Microsoft Mobile, Inc.*, 2016 WL 1464545, at *3 (same); *Apple, Inc.*

23   *v. Samsung Elecs. Co.*, No. 11-cv-1846, 2012 WL 2571719, at *27 (N.D. Cal. June 30, 2012) (failure

24   to disclose essential patents during formal standard setting); *Allflex USA, Inc. v. Avid Identification*

25   *Sys., Inc.*, No. 06-cv-1109, 2010 WL 11405130, at *13 (C.D. Cal. Feb. 16, 2010) (wrongfully

26   obtaining and asserting invalid patents).  No similar facts exist here.

27   Arista cannot identify any conduct outside the scope of *Noerr* in the alleged scheme that

28   independently produced anticompetitive harm.  (*See* Mot. at 17–18.)  Arista concedes that all of

1    Cisco's conduct prior to the CLI ligation was procompetitive, (Ex. A6 ¶ 61; Ex. A1 at 48:6–20), and

2    Arista has not identified any conduct other than *Noerr*-protected conduct—the CLI lawsuit and

3    communications about it—that constitutes the "closed late" half of the alleged scheme.  Any alleged

4    "policy change" cannot be an independent exclusionary act because it is indistinguishable from the

5    CLI suit—the act of filing that case ***was*** the alleged change in policy.  And Cisco's communications

6    did not produce independent anticompetitive harm because, as a matter of law, they have no more than

7    a *de minimis* effect on competition under *Harcourt Brace*.  (*See* Mot. at 10:15–13:13.)

8          Because Arista cannot meet the threshold inquiry under *Hynix* and *Funai*, these cases do not

9    support abrogating Cisco's First Amendment right to petition.  As Judge Whyte recognized, "the

10   predicate harms in an 'anticompetitive scheme' claim must be more precise than simply being

11   'inspired by any monopolistic conspiracy or [a] veiled attempt to unjustly drive plaintiffs' competitors

12   to the wall.'"  *Hynix*, 527 F. Supp. 2d at 1097 (citation omitted).  To hold that *Noerr*-protected conduct

13   loses immunity merely because it purportedly is "causally connected" to an alleged scheme, as Arista

14   argues,[4] would mean that any conduct alleged to be anti-competitive would lose *Noerr* immunity.  That

15   would risk "undermin[ing], if not vitiat[ing] *Noerr*."  *Prof'l Real Estate Inv'rs, Inc.*, 508 U.S. at 60.

16   And the law is clear that "[p]olicing the legitimate boundaries of . . . a genuine attempt to influence

17   governmental action[] is not the role of the Sherman Act."  *City of Columbia v. Omni Outdoor Advert.,*

18   *Inc.*, 499 U.S. 365, 382 (1991).

19   **III.   Cisco Has Neither Monopoly Power Nor A Dangerous Probability Of Obtaining It.**

20         Arista does not dispute the direct evidence that Cisco lacks monopoly power, namely that

21   prices are decreasing and output increasing in all alleged markets.  *See Rebel Oil Co. v. Atl. Richfield*

22   *Co.*, 51 F.3d 1421, 1441 (9th Cir. 1995).  Similarly, Arista does not dispute that Cisco's prices are

23   "lower than some and higher than others," showing that Cisco lacks "power to control prices."  *See*

24   *Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1426 (9th Cir. 1993).  Arista also does not

25   dispute that Cisco's market share has declined in all alleged markets, showing that Cisco lacks "power

26   _____

27   [4] Even if "causally connected" were the sole inquiry, Cisco's communications about the litigation are
     not causally connected to the alleged "closing" because they cannot enforce the closing in the way that
28   the litigation in *Hynix* enforced the patent holdup. *Hynix*, 527 F. Supp. 2d at 1098.

to exclude competitors." *See United States v. Syufy Enter.*, 903 F.2d 659, 669 (9th Cir. 1990).[5]  And, according to Arista's admissions, Ethernet switching is "intensely competitive" within an environment that is "highly competitive and highly pressured on price."  (Ex. A66 at 9; Ex. A65 at 21.)  Thus, it is undisputed that Cisco lacks the ability "to control prices or exclude competition," and thus lacks monopoly power.  *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956).  In addition, Arista does not—and cannot—argue that Cisco possesses a "dangerous probability of achieving monopoly power" given the undisputed decline of market share in all alleged markets.

Arista's arguments regarding circumstantial evidence—Cisco's market share and alleged barriers to entry and expansion—cannot overcome the unrebutted direct evidence showing lack of monopoly power.  First, "[a] high market share, though it may ordinarily raise an inference of monopoly power, ***will not do so in a market with*** low entry barriers or ***other evidence of a defendant's inability to control prices or exclude competitors***."  *See Oahu Gas Serv., Inc. v. Pac. Res., Inc.*, 838 F.2d 360, 366 (9th Cir. 1988) (citation omitted).  In light of the undisputed direct evidence, Cisco's market share, no matter how high, cannot sustain Arista's allegations of monopoly power.

Second, Arista cannot show that Cisco possesses the requisite "dominant market share" in any relevant market.  *Cf. Rebel Oil Co.*, 51 F.3d at 1434.  "Courts generally require a 65% market share" as a threshold to find monopoly power could exist,[6] *see Kodak II*, 125 F.3d at 1206, but the only market in which Arista contends that Cisco's share exceeds 65% in the relevant time-period is the alleged Ethernet switch market.  (*See* Dkt. 213 at 10–11.)  Not only is this based on unreliable, inadmissible hearsay, (*see* Dkt. 236 at 6-15), it is an implausible market.  The market allegedly encompasses "all

---

[5] Arista's attempt to distinguish *Syufy* by pointing to shares that "fell from 91% to 39%," (Opp'n at 14), is irrelevant and misleading.  Those figures address shares of "exclusive exhibition rights," not Syufy's "box office receipts," *i.e.*, its revenues.  *See Syufy*, 903 F.2d at 666.  Syufy's revenue share—which fell from 93% to 75%—is directly comparable.  *Id.*

[6] Notwithstanding its discussion of the FTC's advice and *Rebel Oil*, Arista identifies no controlling authority that supports a finding of monopoly power based on a 53% market share.  (Opp'n at 15.) The FTC's advice is not law, *see Olin Corp.*, 986 F.2d at 1299, and *Rebel Oil* concerned "an *attempt* to monopolize," not "a claim of *actual* monopolization."  *See* 51 F.3d at 1438 (emphasis original). Indeed, in *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, the Ninth Circuit noted that "courts have considered a 50% share of the market as inadequate to establish a proscribed monopoly" and reminded the trial court that "'it is doubtful whether sixty or sixty-four per cent would be enough'" to constitute a monopoly.  512 F.2d 1264, 1274 (9th Cir. 1975) (citation omitted).

Ethernet switches," both high-speed and low-speed.  (*See* Am. Compl. ¶ 34.)  But it is undisputed that high-speed and low-speed switches are not interchangeable.  (*See* Am. Compl. ¶¶ 41–43.)  Arista's expert, Dr. Scott Morton, admitted that low-speed switches could not "defeat a price increase" in high-speed switches and were not "a close substitute."  (Ex. A77 at 195:2–196:18.)  Indeed, she does not even rely on the all-Ethernet switch market—she included it "just for completeness."  (*Id.* at 196:23–2.)  Furthermore, Arista's CEO admitted that Arista does not compete to sell all Ethernet switches:

(*See* Ex. A78 at 182:10–14.)  There is thus no genuine dispute that Ethernet switches are not all interchangeable, and that there is no "all Ethernet switch" market.  *See Olin Corp. v. F.T.C.*, 986 F.2d 1295, 1298 (9th Cir. 1993).  And Cisco's shares are significantly lower than 65% in each of Arista's other alleged markets.  *See Kodak II*, 125 F.3d at 1206.

Third, Arista cannot show monopoly power because the undisputed facts show no meaningful barriers to entry and expansion.  *See Rebel Oil Co.*, 51 F.3d at 1439.  Arista does not dispute that "some of Cisco's competitors have expanded output and market share."  (Opp'n at 15.)  For example, in the alleged worldwide high-speed market, Arista's share increased by eight percentage points, Huawei's by seven, and Juniper's and white box's by three each.  (*See* A10 ¶ 43.)  Those undisputed gains by multiple competitors in a growing market preclude finding "an entry barrier of any significance."[7]  *See Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1164–65 (9th Cir. 1997) (addressing a competitor's increase from 6% to 8% share in a growing market).  None of Arista's alleged barrier evidence overcomes this direct evidence of competitive expansion.  High start-up costs and vendor reputation are not significant as a matter of law.  *See, e.g.*, *Brunswick*, 6 F.3d at 1429 ("The mere fact that entry requires a large absolute expenditure of funds does not constitute a 'barrier to entry.'") (citation omitted); *Harcourt Brace*, 108 F.3d at 1154 ("[R]eputation alone does not constitute a sufficient entry barrier in this Circuit.").  And the alleged "switching costs" are based on nothing more than an expert's unsupported assertion, (*see* Ex. A6 ¶¶ 104–05; *see also* Ex. A77 at 86:3–88:11 (conceding she made no attempt to measure or quantify switching costs)), which is insufficient to

---

[7] Arista complains that those increases are "small," but cites no authority supporting that complaint. (Opp'n at 15.)  In fact, those competitors collectively control 29% of the market.  (*See* A10, Fig. 2.)

1    defeat Cisco's motion.  *See Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1319 (9th Cir. 1995).

2          Finally, Arista's claim that Cisco has introduced no expert testimony disputing monopoly

3    power or barriers to entry and expansion is incorrect.  Cisco's expert opines that Cisco is "increasingly

4    constrained by competitive market forces," including "increasing competition from expanding

5    incumbents and new entrants," (Ex. A10 ¶ 26; *see also id.* ¶¶ 27–38), that competitors have expanded,

6    (*id.* ¶¶ 39–43), and that improvements in price, quality, and output demonstrate competition.  (*See id.*

7    ¶¶ 44–45, 92–98.)  He also disputes the alleged barriers: "there are a number of reasons to doubt that

8    there are material impediments to entry or expansion of rivals."  (*Id.* ¶ 31; *see also id.* ¶¶ 32–34.)

9    **IV.    Arista Identifies No Evidence Establishing Injury-In-Fact Caused By A "Closed" CLI.**

10          To establish antitrust injury-in-fact, Arista must show that its injury "flows from that which

11   makes the conduct unlawful"—not from conduct, such as the ITC actions, that even Arista agrees is

12   lawful.  *Glen Holly Ent'mt, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 372 (9th Cir. 2003).  Because Arista

13   cannot establish this causal nexus between Cisco's accused conduct and Arista's alleged injury, Arista

14   cannot meet its burden to establish injury-in-fact.  The "relaxed" standard for proving antitrust

15   damages that Arista emphasizes only applies "once the fact of damage has been shown."[8]  *Moore v.*

16   *James H. Matthews & Co.*, 682 F.2d 830, 836 (9th Cir. 1982) (citation omitted).

17          The meager evidence Arista highlights in its opposition fails to show any injury actually caused

18   by Cisco's alleged open early–closed late conduct.  Some of it—such as emails indicating that Cisco's

19   General Counsel spoke to lawyers at four Cisco customers, (Dkt. No. 243 Exs. 19–22)—fails to show

20   that Arista lost any sales, let alone lost sales because of a "closed" CLI.  The rest of the evidence Arista

21   cites fails to tie any allegedly lost sale to the "closed" CLI as opposed to, for example, the ITC actions

22   and Arista's patent infringement.  Arista's evidence also comes secondhand from conversations its

23   sales personnel purportedly had with customers and, thus, depends on inadmissible hearsay.  (*See,*

24   *e.g.*, Ex. A6 ¶¶ 148, 190–91; A53 at 24:12–27:15.)

25          Dr. Scott Morton's models do not remedy this deficiency.  Contrary to Arista's arguments, Dr.

26

---

27   [8] Even under the relaxed standard, Arista must provide the jury sufficient evidence "to estimate
     ***reasonably, and without undue speculation***, the damages flowing from the antitrust violations."
28   *Moore*, 682 F.2d at 836.  For the reasons above, Arista cannot do so and improperly leaves
     "guesswork" to the jury.  *Magnetar Techs. Corp. v. Intamin, Ltd.*, 801 F.3d 1150, 1159 (9th Cir. 2015).

Scott Morton's own report explicitly states that she considered the impact on her revenue model of two—and only two—independent factors: an earthquake in Taiwan and the import bans issued by the ITC.  (Ex. A6 ¶¶ 231–34.)  More critically, Dr. Scott Morton's consideration of the ITC actions only included the import bans and ignored the ITC's multiple, public findings of infringement that preceded them.  Dr. Scott Morton's analysis of Arista's new customer acquisitions suffers the same flaws.  (*Id.* ¶¶ 179, 182.)  Dr. Scott Morton asserts that the ITC actions did not affect Arista's new customer acquisition because ████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████

████  (*Id.* ¶ 185.)  The ALJ's findings of infringement in the '944 action, however, were announced on February 2, 2016, the quarter before the ███████████████ (Exs. A15–A16.)  And the ITC's affirmance of those findings was made public that same quarter.  (Ex. A18.)  Arista offers no reason why Dr. Scott Morton ignored the impact on Arista's sales of repeated and public findings of patent infringement.  Nor does Arista provide any reason for the Court to discount Arista's public statements that the impact of the ITC actions on its sales "cannot be overstated."  (Ex. A55 at 16.)  Contrary to Arista's protestations, Dr. Scott Morton "ignored inconvenient evidence" and "failed to account for market events . . . not related to any anticompetitive conduct."  *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000); *Magnetar Techs. Corp.*, 801 F.3d at 1159–60 (similar).

Nor can Arista escape its burden to show antitrust injury-in-fact by complaining that the CLI and ITC actions were concurrent cases and insisting "no damages model can quantifiably separate" them.  (Opp'n at 16, 18.)  Arista could have taken discovery from customers regarding why they decided not to buy Arista switches.  It chose not to do so.  *See Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1352 (9th Cir. 1985) (plaintiff's damages proof critically flawed by lack of "direct evidence concerning the behavior and motivations of the . . . *customers*").  Arista's discovery failures and infringement of Cisco's patents do not excuse its failure to prove injury-in-fact.

Arista's failure of proof is particularly egregious because neither Arista nor any other industry participant altered their CLI in response to Cisco's conduct.  Any alleged injury to Arista cannot flow from a so-called open early–closed late scheme because ***nothing ever closed***—Arista and its customers continued to use the same CLI throughout the alleged conduct period.  *Cf. Kodak*, 504 U.S. at 457–58

1   (ISOs could no longer buy parts from Kodak or from OEMs).  At best, Arista asks the jury to guess

2   how much Cisco's CLI lawsuit itself slowed Arista's growth.  But that is unavailing as a matter of

3   law, because Cisco's effort to enforce its intellectual property rights "does not constitute harm to

4   competition."  *Vizio, Inc. v. Funai Elec. Co.*, No. 09-cv-0174, 2010 WL 7762624, at *5 (C.D. Cal.

5   Feb. 3, 2010) (citing *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 996 (9th Cir. 1979)).

6   **V.    Arista Cannot Show Harm To Competition.**

7        **A.    Arista Relies On Speculation, Not Evidence, Of Harm To Competition.**

8        An act harms competition when it "harms both allocative efficiency and raises the prices of

9   goods above competitive levels or diminishes their quality."  *Rebel Oil Co.*, 51 F.3d at 1433.  Arista

10  claims that "there is substantial direct evidence of harm to competition," (Opp'n at 22:7–8), but

11  identifies no facts showing reduced efficiency, supra-competitive prices, or diminished quality.

12  Although Arista claims Cisco's prices are above average based on Dr. Scott Morton's analysis, (Opp'n

13  at 24:14–16), this does not show that Cisco's prices are supra-competitive.  Dr. Scott Morton explicitly

14  notes that quality differences can be a significant price differentiator, but nowhere does her analysis

15  account for differences in product quality.  (Ex. A6 ¶ 107 n.169.)  Nor does Arista dispute that Cisco's

16  prices are actually lower than many competitors' prices.  (Ex. A10 ¶ 45 & Fig. 3.)

17       Arista's remaining evidence is nothing but the speculation of its expert.  Dr. Scott Morton

18  claims that Cisco's conduct caused "a loss in consumer welfare" because customers could not purchase

19  Arista products as their "first choice."  (Opp'n at 23:2–5.)  But neither Dr. Scott Morton nor Arista

20  identify evidence of any customer that saw Arista as its "first choice" yet bought another switch

21  because of a "closed" CLI.  (*See* FSM Rpt. ¶ 244 (identifying no such customer).)  Unlike the plaintiffs

22  in the cases Arista cites, Arista never obtained customer testimony to that effect.  *Cf., e.g.*, *Red Lion*

23  *Med. Safety, Inc. v. Ohmeda, Inc.*, 63 F. Supp. 2d 1218, 1235 (E.D. Cal. 1999) (relying on third-party

24  testimony as evidence of harm to competition).  Since Arista never altered its CLI in response to

25  Cisco's lawsuit, customers had no need to pick a "second choice" product because of a "closed" CLI.

26       Nor does Dr. Scott Morton's speculation concerning reduced innovation establish harm to

27  competition.  Arista never changed its CLI, thus spent nothing to eliminate its copying of Cisco's CLI.

28  Dr. Scott Morton herself argued that Arista's R&D declined because ███████████████

██████████████████████████████████████████████████  (Ex. A6 ¶ 247 (emphasis added).)  Even if Arista canceled or delayed some products, that fails to show harm to competition because "costs incurred" remedying patent "infringement cannot constitute antitrust injury."  *See Carter v. Variflex, Inc.*, 101 F. Supp. 2d 1261, 1269 (C.D. Cal. 2000).

**B.    Arista's Alleged Injuries Do Not Establish Harm To Competition.**

Even if Arista could establish antitrust injury-in-fact, injury to Arista—standing alone—cannot establish harm to competition.  *See Rebel Oil Co.*, 51 F.3d at 1433 ("[C]onduct that eliminates rivals reduces competition. But reduction of competition does not invoke the Sherman Act until it harms consumer welfare."); *Cal. Comput. Prods., Inc. v. IBM Corp.*, 613 F.2d 727, 732 (9th Cir. 1979) ("[T]he plaintiff must demonstrate . . . anticompetitive effect beyond his own loss of business.").  Arista heavily cites *Hasbrouck v. Texaco, Inc.*, but *Hasbrouck* neither addresses Sherman Act claims[9] nor holds that Arista's injury alone establishes harm to competition.  842 F.2d 1034 (9th Cir. 1987), *aff'd*, 496 U.S. 543 (1990).  While injury to a competitor "*may* be probative of harm to competition," *id.* at 1040, the Ninth Circuit has cautioned that "[s]uch circumstances are the exception" and "generally . . . confined to situations in which 'the relevant market is both narrow and discrete and the market participants are few.'"  *Talking Yellow Pages, Inc. v. Pac. Telesis Grp.*, 972 F.2d 1343 (9th Cir. 1992) (quoting *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508–09 (9th Cir. 1989)).  Arista's alleged markets are not narrow—one encompasses every Ethernet switch sold anywhere in the world, (Am. Compl. ¶¶ 33, 41–42)—and there is no dispute that each contains multiple competitors beyond Cisco and Arista.  (Ex. A6 Figs. 4–5.) Thus, any alleged injury to Arista fails to establish harm to competition.

**VI.    Arista Agrees That Its California UCL Claim Follows Its Sherman Act Claims.**

Arista does not dispute that its UCL claim rises or—as here—falls with its Sherman Act claims.  (Opp'n at 25.)  Thus, Arista's UCL claim should be dismissed for the foregoing reasons.

**CONCLUSION**

Accordingly, the Court should grant summary judgment for Cisco on all of Arista's claims.

---

[9] *Hasbrouck* addressed "competitive injury under [the] Robinson-Patman" Act, which only requires the possibility of harm to competition.  842 F.2d at 1040–41.

1

2     Dated: April 13, 2018                    By:   */s/ John M. Desmarais*
                                                     John M. Desmarais (*admitted pro hac vice*)
3                                                    jdesmarais@desmaraisllp.com
                                                     Paul A. Bondor (*admitted pro hac vice*)
4                                                    pbondor@desmaraisllp.com
                                                     Alan S. Kellman (*admitted pro hac vice*)
5                                                    akellman@desmaraisllp.com
                                                     Andrew G. Heinz (*admitted pro hac vice*)
6                                                    aheinz@desmaraisllp.com
                                                     Tamir Packin (SBN 317249)
7                                                    tpackin@desmaraisllp.com
                                                     Jeffrey S. Seddon II (SBN 297502)
8                                                    jseddon@desmaraisllp.com
                                                     Brian Leary (*admitted pro hac vice*)
9                                                    bleary@desmaraisllp.com
                                                     William D. Findlay (*admitted pro hac vice*)
10                                                   wfindlay@desmaraisllp.com
                                                     Carson Olsheski (*admitted pro hac vice*)
11                                                   colsheski@desmaraisllp.com
                                                     DESMARAIS LLP
12                                                   230 Park Avenue
                                                     New York, NY 10169
13                                                   Telephone: (212) 351-3400
                                                     Facsimile: (212) 351-3401
14

15                                                   Sarah E. Piepmeier (SBN 227094)
                                                     sarah.piepmeier@kirkland.com
16                                                   KIRKLAND & ELLIS LLP
                                                     555 California Street, 27th Floor
17                                                   San Francisco, CA 94104
                                                     Telephone: (415) 439-1400
18                                                   Facsimile: (415) 439-1500

19
                                                     *Attorneys for Defendant Cisco Systems, Inc.*
20

21

22

23

24

25

26

27

28