John M. Desmarais (*admitted pro hac vice*)
jdesmarais@desmaraisll.com
Paul A. Bondor (*admitted pro hac vice*)
pbondor@desmaraisllp.com
Alan S. Kellman (*admitted pro hac vice*)
akellman@desmaraisllp.com
Andrew G. Heinz (*admitted pro hac vice*)
aheinz@desmaraisllp.com
Tamir Packin (SBN 317249)
tpackin@desmaraisllp.com
Jeffrey S. Seddon II (SBN 297502)
jseddon@desmaraisllp.com
Brian Leary (*admitted pro hac vice*)
bleary@desmaraisllp.com
William D. Findlay (*admitted pro hac vice*)
wfindlay@desmaraisllp.com
Carson Olsheski (*admitted pro hac vice*)
colsheski@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

*Attorneys for Defendant Cisco Systems, Inc.*

Sarah E. Piepmeier (SBN 227084)
sarah.piepmeier@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Kathleen M. Sullivan (SBN 242261)
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Adam B. Wolfson (SBN 262125)
adamwolfson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ARISTA NETWORKS, INC., | Case No. 5:16-cv-00923-BLF-SVK |
| Plaintiff, | **CISCO'S PETITION FOR § 1292(b) CERTIFICATION FOR INTERLOCUTORY REVIEW; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| CISCO SYSTEMS, INC., | |
| Defendant. | Dept: Courtroom 3 - 5th Floor |
| | Hearing Date:  September 20, 2018 |
| | Hearing Time:  9:00 am |
| | **REQUEST FOR ORAL ARGUMENT ON JUNE 14, 2018 AT 1:30 PM** |
| | Judge: Hon. Beth Labson Freeman |

1

## **TABLE OF CONTENTS**

2 TABLE OF AUTHORITIES ................................................................................................. ii

3 NOTICE OF PETITION AND PETITION .......................................................................... 1

4 STATEMENT OF ISSUES TO BE DECIDED .................................................................. 1

5 MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

6 PRELIMINARY STATEMENT .......................................................................................... 1

7 BACKGROUND .................................................................................................................. 3

8 LEGAL STANDARD ........................................................................................................... 5

9 ARGUMENT ........................................................................................................................ 5

10 I.  THE COURT SHOULD CERTIFY THE QUESTION WHETHER *NOERR-*
    *PENNINGTON* PROTECTS PUBLIC STATEMENTS ABOUT THE BASES FOR
11  PROTECTED LITIGATION ....................................................................................... 6

12     A.  Whether *Noerr-Pennington* Protects Public Statements About The Bases Of
           Protected Litigation Involves A Controlling Question Of Law ............................. 6
13
       B.  Substantial Grounds For Difference Of Opinion Exist As To Whether
14         *Noerr-Pennington* Immunizes Public Statements About The Basis Of A
           Protected Lawsuit ................................................................................................ 10
15
       C.  Certification Of The Question Whether *Noerr-Pennington* Immunity
16         Applies May Materially Advance The Termination Of The Litigation ................ 13

17 II. THE COURT SHOULD CERTIFY THE QUESTION WHETHER STATEMENTS
       ABOUT A RIVAL, EVEN IF NOT DISPARAGING, PRESUMPTIVELY HAVE *DE*
18     *MINIMIS* EFFECTS ON COMPETITION UNDER *HARCOURT BRACE* ........................ 14

19     A.  Whether Non-Disparaging Statements About A Rival Are Presumptively
20         *De Minimis* Involves A Controlling Question Of Law ............................................ 14

21     B.  Substantial Grounds For Difference Of Opinion Exist As To Whether Non-
           Disparaging Statements About A Rival Are Presumptively *De Minimis* ............... 15
22
       C.  Certification Of The Question Whether *Harcourt Brace* Applies May
23         Materially Advance The Termination Of The Litigation ..................................... 17

24 CONCLUSION ................................................................................................................... 17

25

26

27

28

CISCO'S PETITION FOR § 1292(b) CERTIFICATION FOR INTERLOCUTORY REVIEW

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) .............................................................................7

*Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp., Inc.*,
634 F. Supp. 316 (D. Kan. 1986)...............................................................11, 12

*Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*,
108 F.3d 1147 (9th Cir. 1997) ......................................1, 2, 3, 4, 14, 15, 16, 17

*Bernal v. Zumiez, Inc.*,
2017 WL 4542950 (E.D. Cal. Oct. 11, 2017) ...................................................5

*Bieter Co. v. Blomquist*,
1990 WL 107531 (D. Minn. May 24, 1990)......................................................8

*Brickman v. Facebook, Inc.*,
2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) ..................................................5

*Casas v. Victoria's Secret Stores, LLC*,
2015 WL 13446989 (C.D. Cal. Apr. 9, 2015) ..............................................7, 13

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982) ..........................................................................6

*Cent. Delta Water Agency v. United States*,
306 F.3d 938 (9th Cir. 2002) ............................................................................5

*Coastal States Mktg., Inc. v. Hunt*,
694 F.2d 1358 (5th Cir. 1983) ........................................................................12

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ..........................................................................10

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
2012 WL 2952929 (S.D.N.Y. July 18, 2012) .................................................11

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)...............................................................................*passim*

*EEOC v. Dial Corp.*,
2001 WL 1945088 (N.D. Ill. Dec. 27, 2001) .................................................14

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*,
821 F.3d 394 (3d Cir. 2016)............................................................................16

*Finder v. Leprino Foods Co.*,
2016 WL 4095833 (E.D. Cal. Aug. 1, 2016) ..................................................13

*Fox Television Stations, Inc. v. FilmOn X, LLC*,
2015 WL 13648582 (C.D. Cal. July 24, 2015) .................................................5

*Gallion v. Charter Commc'ns Inc.*,
   287 F. Supp. 3d 920 (C.D. Cal. 2018) ............................................................5

*Kemin Foods, L.C. v. Pigmentos Vegetales*,
   384 F. Supp. 2d 1334 (S.D. Iowa 2005) ...................................................11, 12

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21 (2d Cir. 1990) ........................7, 8

*Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Grp.*,
   727 F. Supp. 2d 887 (E.D. Cal. 2010) ..........................................................13

*Mark Aero, Inc. v. Trans World Airlines, Inc.*,
   580 F.2d 288 (8th Cir. 1978) ..........................................................................8

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) ....................................................................................5, 6

*N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*,
   666 F.2d 50 (4th Cir. 1981) ............................................................................8

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ........................................................................11

*Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*,
   2015 WL 12941890 (N.D. Cal. Apr. 7, 2015) ..........................................11, 12

*Rose v. Stephens Inst.*,
   2016 WL 6393513 (N.D. Cal. Oct. 28, 2016) ..................................................5

*Scott v. Ruston La. Hosp. Co., LLC*,
   2017 WL 1364219 (W.D. La. Apr. 12, 2017) ................................................13

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ....................................................4, 7, 8, 9, 10, 11, 12

*Steering Comm. v. United States*,
   6 F.3d 572 (9th Cir. 1993) ..............................................................................7

*Sterk v. Redbox Automated Retail, LLC*,
   672 F.3d 535 (7th Cir. 2012) ........................................................................13

*In re Text Messaging Antitrust Litig.*,
   630 F.3d 622 (7th Cir. 2010) ..........................................................................7

*VIA Techs., Inc. v. SonicBlue Claims, LLC*,
   2011 WL 2437425 (N.D. Cal. June 17, 2011) ................................................10

*Yamaha Motor Corp. v. Calhoun*,
   516 U.S. 199 (1996) ........................................................................................5

## Additional Authorities

28 U.S.C. § 1292(b) ................................................................1, 5, 7, 11, 13, 14, 17

3 Federal Procedure, *Lawyers Edition* § 3:212 (2010) ..........................................10

## NOTICE OF PETITION AND PETITION

PLEASE TAKE NOTICE that, on September 20, 2018 at 9:00 am, before the Honorable Beth Labson Freeman, defendant Cisco Systems, Inc. ("Cisco") shall and hereby does respectfully petition the Court to certify its May 9, 2018 Order (1) Denying Plaintiff's Motion for Partial Summary Judgment and (2) Granting in Part and Denying in Part Defendant's Motion for Summary Judgment, Dkt. 269 (the "Order"), for interlocutory appellate review pursuant to 28 U.S.C. § 1292(b).  This petition is based upon this notice, the accompanying memorandum of points and authorities, the pleadings on file, arguments of counsel, and any other matters the Court deems appropriate.

In view of the time-sensitive nature of this petition, Cisco respectfully requests that the Court schedule oral argument on this petition (if necessary) for **June 14, 2018 at 1:30 PM**, which is the same date and time as the final pretrial conference for this case.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b) because it involves the following controlling questions of law as to which there is substantial ground for difference of opinion and because an immediate appeal may materially advance the ultimate termination of the litigation:

1. Whether protection from antitrust liability under *Noerr-Pennington* extends to all truthful public statements incidental to a non-sham litigation, including statements about the bases for the litigation, and is not limited solely to communications directed to the settlement or prosecution of the litigation.

2. Whether protection from antitrust liability under *Harcourt Brace*, which presumes that public statements about a rival have *de minimis* effect on competition, extends beyond statements that expressly disparage the rival.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Prior to its Order denying Cisco summary judgment, the Court expressed "grave concerns about whether [Arista's antitrust] case can go forward due to the *Noerr-Pennington* bar," which the Court recognized "would be case dispositive." Tr. 104:2-4, 4:9-10.[1]  In the Order, the Court also noted that "Cisco has raised strong arguments and produced sound evidence in support of its motion." Order

---

[1]   All citations to "Tr." are to the April 19, 2018 Transcript of Proceedings, Dkt. 264.

at 36.  Now that the Court has allowed the case to go forward nonetheless, Cisco respectfully submits that the same "grave concerns" justify certification of the Order for interlocutory review.  Whether *Noerr-Pennington* extends to all truthful public statements about the bases for a protected, non-sham litigation is an important and controlling question of law on which reasonable minds could differ, as illustrated by the contrary authorities the Court itself cited (Order at 20-21, 22).  Before the parties head into a costly and protracted trial, whose high stakes will make it difficult for either party to settle, that question should be resolved by the Ninth Circuit, whose grant of interlocutory review and reversal would terminate the litigation.

No previous appellate decision has embraced the Court's holding that *Noerr-Pennington* protection for statements incidental to protected litigation is limited to communications that literally "prosecute" the litigation.  To the contrary, Supreme Court and Ninth Circuit precedent support a reading of *Noerr-Pennington* that affords substantial breathing room for statements about the status of protected litigation activity and other speech incidental to petitioning activity.  The blog posts and customer correspondence at issue here are quintessential commentary on pending litigation, and the scope of their protection under *Noerr-Pennington* is a classic candidate for certification under § 1292(b)(2).  Moreover, the Court's ruling has important ramifications for future plaintiffs whose speech incidental to protected petitioning activity may be chilled by the specter of antitrust liability for public statements about a lawsuit that cannot itself, by law, form the basis of an antitrust claim.

The Court's further ruling that *Harcourt Brace* is inapplicable here likewise merits certification under § 1292(b)(2).  In *Harcourt Brace*, the Ninth Circuit instructed that supposedly ***false and disparaging*** statements about a rival "must overcome a presumption that the effect on competition … was *de minimis*" before they may be considered as satisfying a plaintiff's burden to show exclusionary conduct in violation of § 2 of the Sherman Act.  But the Circuit nowhere held that ***truthful and non-disparaging*** statements about a rival would receive lesser protection than false and disparaging ones— a holding that would turn on its head any notion of protected breathing room for free speech in the commercial marketplace.  Thus, the Court's ruling that the protections of *Harcourt Brace* are inapplicable in the absence of falsity and disparagement again raises important and controlling questions of law on which reasonable minds could differ, as illustrated by contrary authorities

1   including out-of-Circuit decisions recognizing that *Harcourt Brace* applies to customer campaigns like

2   the one the Court identifies here.   Interlocutory review and reversal on this point too would

3   immediately terminate the litigation, as the **only** exclusionary conduct at issue here—Cisco's

4   statements about the CLI action—is indisputably *de minimis* if *Harcourt Brace* applies, an

5   independently case-dispositive ground for dismissing Arista's antitrust claims.

6           For these reasons, the Court should grant Cisco's petition to certify the Order.

7                                          **BACKGROUND**

8           On December 5, 2014, Cisco filed two actions against Arista in this Court alleging that Arista

9   infringed Cisco's copyrights and patents on its original and protected Command Line Interface

10   ("CLI").  Order at 3.  In the first case (the "CLI" case), a jury found that Cisco's CLI is protected by

11   copyright and that Arista infringed Cisco's CLI copyrights.  The jury also rejected Arista's affirmative

12   defenses of fair use, merger, and copyright misuse and abandonment, but nonetheless excused the

13   infringement based on the supposed applicability of the affirmative defense of scènes à faire.  Case No.

14   14-cv-5344, Dkt. 749 at 2.  An appeal from the final judgment denying copyright liability in that case

15   is pending before the Federal Circuit.  The second action has been stayed pending the resolution of

16   other cases pending before the ITC.  Order at 3.

17           Before the CLI case went to trial, Arista filed this action alleging that Cisco's CLI lawsuit, and

18   communications about that lawsuit, amounted to antitrust violations under § 2 of the Sherman Act.

19   Arista's theory was based on a supposed "open early, close late" scheme in which Cisco had

20   "encouraged" customers and competitors to "utilize and innovate" using Cisco's CLI, but then

21   "reversed" that policy.  Dkt. 162, ¶¶ 114, 121; Order at 4-5.  As relevant here, Arista focused on three

22   forms of conduct that it claimed were the anti-competitive "closing":  (1) Cisco's act of filing of the

23   CLI lawsuit; (2) blog posts uploaded by Cisco's General Counsel Mark Chandler disclosing that Cisco

24   had filed the lawsuit and its reasons for filing it and providing updates on the CLI lawsuit; and (3)

25   certain of Cisco's communications with customers about the lawsuit, which Arista sought to

26   characterize as anti-competitive sales tactics to create "fear, uncertainty and doubt" (FUD) about the

27   outcome of the litigation.  *See* Order at 18-19.

28

1    Cisco moved for summary judgment, arguing that all three categories of alleged anti-

2   competitive activity enjoy antitrust immunity under the *Noerr-Pennington* doctrine as a matter of law

3   (Cisco's Mot., Dkt. 221 at 8-10) and cannot establish exclusionary conduct as a matter of law (*id*. at

4   10-13).[2]  In its Order (at 16), the Court ruled that "[i]t is undisputed that the CLI case was not a sham,"

5   that the jury had in fact found that Arista infringed Cisco's copyrights, and that Cisco's filing of the

6   lawsuit "was objectively reasonable."  The Court thus held that Cisco's filing of the lawsuit was not

7   itself anticompetitive and granted summary judgment to Cisco on this point.  Nonetheless, the Court

8   denied Cisco's motion for summary judgment on two grounds relevant here.

9    ***First***, the Court held that, even though Cisco's lawsuit was objectively reasonable and thus

10   protected activity, Cisco's "blog posts and direct correspondence with customers regarding the

11   litigation between the parties" are not protected activity incidental to the litigation under *Noerr-*

12   *Pennington*.  Order at 20-22.  The Court reasoned that, under *Sosa v. DIRECTV, Inc.*, 437 F.3d 923,

13   934 (9th Cir. 2006), only communications "relat[ing] to the ***prosecution*** of the CLI lawsuit" are

14   protected as conduct "incidental to" the suit.  Order at 21 (emphasis in original).  Under that

15   interpretation, public "statements about the status of the parties' litigation" are not protected no matter

16   how truthful and no matter how related to the bases for the litigation.  The Court acknowledged that

17   other courts have come to contrary conclusions.  Order at 20-21, 22.

18    ***Second***, while recognizing that Arista had to show "exclusionary conduct" even if Cisco's blog

19   posts and correspondence with customers about the litigation were not protected by *Noerr-Pennington*,

20   the Court held that the presumption against exclusionary conduct set forth in *Am. Prof'l Testing Serv.,*

21   *Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d 1147 (9th Cir. 1997)

22   ("*Harcourt Brace*"), did not apply.  Order at 22-24.  In the Court's view, *Harcourt Brace* presumes a

23   *de minimis* effect on competition only for disparaging statements, and found that, "[w]hile Cisco's

24

---

25   [2]   The Court denied Arista's cross-motion for summary judgment.  Order at 6-15.  Cisco's motion for
      summary judgment included additional grounds that:  (1) Arista did not establish the requisite causal
26   connection; (2) the "open early, closed late" theory has no legal basis here; (3) Arista cannot show that
      Cisco has legally cognizable monopoly power; (4) Arista cannot establish the requisite injury-in-fact
27   or damages; and (5) Arista cannot show harm to competition.  Order at 15.  The Court denied Cisco's
      motion on each of these grounds.  Order at 25-36.  While Cisco respectfully disagrees with the Court's
28   ruling on those issues, they are not the subject of the instant petition for certification.

blog posts contain some disparaging statements against Arista, the posts also suggest that Cisco's CLI is not an 'industry standard.'" Order at 23.  Accordingly, the Court allowed Arista's antitrust case to proceed based on the blog posts and customer communications about the litigation.  Order at 24-25.

## LEGAL STANDARD

A district court may, in its discretion, certify an order for interlocutory appeal if it:  (1) "involves a controlling question of law"; (2) on which there is "substantial ground for difference of opinion"; and (3) "an immediate appeal … may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  *See, e.g.*, *Rose v. Stephens Inst.*, 2016 WL 6393513, at *2-4 (N.D. Cal. Oct. 28, 2016) (certifying order for interlocutory appeal that denied reconsideration of defendant's summary judgment motion); *see also, e.g.*, *Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920, 931 (C.D. Cal. 2018) (certifying order); *Bernal v. Zumiez, Inc.*, 2017 WL 4542950, at *2-3 (E.D. Cal. Oct. 11, 2017) (similar); *Brickman v. Facebook, Inc.*, 2017 WL 1508719, at *2-4 (N.D. Cal. Apr. 27, 2017) (similar).  Further, where an order "involves a new legal question or is of special consequence," a district court "***should not hesitate*** to certify an interlocutory appeal."  *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009) (emphasis added).

## ARGUMENT

Cisco requests that the Court certify two issues for interlocutory review under § 1292(b):

1. Whether protection from antitrust liability under *Noerr-Pennington* extends to all truthful public statements incidental to a non-sham litigation, including statements about the bases for the litigation, and is not limited solely to communications directed to the settlement or prosecution of the litigation.

2. Whether protection from antitrust liability under *Harcourt Brace*, which presumes that public statements about a rival have *de minimis* effect on competition, extends beyond statements that expressly disparage the rival.

While Cisco need only satisfy § 1292(b)'s requirements for either of the two issues it presents,[3] the requisite standard is satisfied here as to both.  Moreover, "the legal issues are close and of significant commercial importance," *Fox Television Stations, Inc. v. FilmOn X, LLC*, 2015 WL 13648582, at *1 (C.D. Cal. July 24, 2015), implicating fundamental First Amendment protections that

---

[3]  *See Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 n.10 (9th Cir. 2002) (if any single issue is certified for interlocutory review, "the ***entire*** order is certified for appeal") (citing *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996)) (emphasis in original).

protect a plaintiff's reasonable and accurately-stated comments about a just-filed lawsuit. Given the strength of Cisco's arguments (*see* Order at 36), the lack of on-point Circuit authority, the disagreement from other courts, and the importance these issues may present to other litigants, the Court "should not hesitate" to grant Cisco's petition. *Mohawk Indus.*, 558 U.S. at 111.

## I. THE COURT SHOULD CERTIFY THE QUESTION WHETHER *NOERR-PENNINGTON* PROTECTS PUBLIC STATEMENTS ABOUT THE BASES FOR PROTECTED LITIGATION

As the Court acknowledged in its Order and at oral argument on the parties' respective motions for summary judgment, whether *Noerr-Pennington* applies to Cisco's various litigation-related communications and statements is case-dispositive. *See* Order at 15; Tr. at 4:9-10, 104:2-4. Furthermore, given the immunity afforded Cisco's objectively reasonable CLI lawsuit, whether explanations of the bases for and updates on the status of that lawsuit are also afforded similar immunity is an extraordinarily important question of law that implicates the chilling of free speech. Without such protection, corporations throughout Silicon Valley and the country (including, *e.g.*, any business or university that initiates or defends litigation that, if successful, would exclude infringing products or services from a market) will need to reassess whether they can continue to publicly comment about a pending lawsuit. Under the Order, they cannot, or else fear retribution and expensive litigation via a Sherman Act claim. Given the importance of this question of law and its controlling nature for this lawsuit, the Court should certify the question of the extent of *Noerr-Pennington* immunity for interlocutory appeal.

### A. Whether *Noerr-Pennington* Protects Public Statements About The Bases Of Protected Litigation Involves A Controlling Question Of Law

The Court's resolution of whether *Noerr-Pennington* protects Cisco's public statements about its bases for initiating the CLI infringement lawsuit turns on a pure question of controlling law that will be subject to *de novo* review on appeal.

*First*, the issue is "controlling" because "resolution of the issue on appeal could materially affect the outcome of litigation in [this Court]." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). "Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's

order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (internal citations omitted). Here, reversal of the Order on this issue would necessarily terminate the entire action.[4] Because *Noerr-Pennington* immunity would result in the complete dismissal of Arista's complaint, it by definition presents a "controlling" issue.

**Second**, whether *Noerr-Pennington* immunity applies to descriptions about a lawsuit, and not only to statements made in the "prosecution" of a lawsuit is a pure question of law; it presents an issue of precedential application that does not "turn on complicated or disputed facts." *Casas v. Victoria's Secret Stores, LLC*, 2015 WL 13446989, at *2 (C.D. Cal. Apr. 9, 2015); *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (question of law is one "the court of appeals could decide quickly and cleanly without having to study the record"). The Ninth Circuit would not be asked to review disputed facts; rather, it would resolve whether, as a legal matter, the scope of *Noerr-Pennington* and *Sosa* is limited only to statements pertaining to the actual prosecution of a lawsuit, or if protected "incidental" statements also include public statements about the basis of a lawsuit. A conclusion that the latter is the proper scope would resolve this case as a matter of law. And in any event, the Ninth Circuit has accepted § 1292(b) certifications for questions involving application of law to a presented set of facts where the legal conclusion was sufficiently important. *See Steering Comm. v. United States*, 6 F.3d 572, 575-76 (9th Cir. 1993); *cf. In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625-27 (7th Cir. 2010) (Posner, J.) (§ 1292(b) certification request regarding application of law to facts was appropriate where the controlling legal standard was in ferment).

Here, the Court effectively held that a plaintiff in a *Noerr-Pennington*-immunized lawsuit nevertheless exposes itself to antitrust liability if it talks publicly about matters necessarily incidental to that lawsuit. The basis for this holding is the legal conclusion that making public statements "about the status of the parties' litigation and [the plaintiff's] intellectual property rights" is not "incidental to the **prosecution** of the suit." Order at 21 (emphasis in original). This generalized distinction does not

---

[4]   Directing entry of summary judgment to Cisco on *Noerr-Pennington* would resolve both of Arista's Sherman Act claims, and Arista concedes that its remaining UCL claim rises or falls with its Sherman Act claims. Opp. to Cisco's Mot. at 25, Dkt. 240.

1    hinge on the actual words used or any in-depth exploration of the record; rather, it makes a qualitative

2    distinction foreclosing legal immunity by concluding that such communications are not legally akin to

3    the pre-suit demand letters *Sosa* explicitly immunizes. *Id.*[5] But, even if this were not the case, the

4    question of whether a modern-day company exposes itself to antitrust liability by communicating to

5    the market why it chose to file a lawsuit has broad and important effects. Under the Court's Order,

6    any company—or even individual—choosing to sue or institute counterclaims must now worry that it

7    cannot make public statements or issue a press release about those claims.

8        Such wide-ranging repercussions for *Noerr-Pennington* protection—and the potential chilling

9    effects on free speech—implicated by the Order raise the exact sort of question that warrants

10   certification. Courts have not hesitated to grant interlocutory review for orders that address the scope

11   and boundaries of *Noerr-Pennington* protection. *See, e.g.*, *N.C. Elec. Membership Corp. v. Carolina

12   Power & Light Co.*, 666 F.2d 50, 52 (4th Cir. 1981) (granting certification to address "serious question

13   about the scope of" *Noerr-Pennington*); *Mark Aero, Inc. v. Trans World Airlines, Inc.*, 580 F.2d 288,

14   293 (8th Cir. 1978) (granting certification to address "the applicability of the *Noerr-Pennington*

15   doctrine"); *Bieter Co. v. Blomquist*, 1990 WL 107531, at *9 (D. Minn. May 24, 1990) (approving

16   interlocutory appeal of order holding that alleged conduct not protected by *Noerr-Pennington*).

17       ***Third***, and relatedly, the question of *Noerr-Pennington* immunity presents an issue of

18   important precedential value for many other cases. *See Klinghoffer*, 921 F.2d at 24 ("the impact that

19   an appeal will have on other cases is a factor" in determining whether a question is controlling). This

20   Court's opinion will have substantial effects on how intellectual property holders notify the market of

21   potential infringement and litigation. In *Sosa*, the alleged monopolist defendant sent out "tens of

22   thousands" of hard copy letters informing the recipients of the defendant's intellectual property rights

23   and how it intended to proceed with litigation if they refused to cease infringing those rights. *Sosa*,

24   437 F.3d at 925-26 (DirecTV "sent tens of thousands of demand letters alleging that the recipients had

25   accessed DIRECTV's satellite television signal illegally and would be sued if they did not quickly

26   settle DIRECTV's claims against them"). Similarly, in *Noerr*, the defendants engaged in a publicity

27

28      [5]   Cisco strongly disagrees with this conclusion, as discussed further below.

1    campaign aimed at explaining their position (and garnering support) for proposed legislation. *E. R.R.*

2    *Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 140-41 (1961).  In both cases, the

3    communications were immunized from antitrust liability because they fell within the immunity courts

4    have erected to vindicate the protection the Constitution affords petitioning activity—the "breathing

5    space" this Court referenced when rejecting *Sosa*'s application here.  *Id.*; *Sosa*, 437 F.3d at 933-36.

6         Here, Cisco initiated an objectively reasonable lawsuit resulting in an actual finding of

7    infringement (and rejecting *inter alia* Arista's copyright misuse defense), and communicated to the

8    market via public blog posts explaining why it brought suit, including Cisco's positions on when and

9    why it would initiate such litigation, and responding to Arista's anticipated argument that Cisco's CLI

10   is an "industry standard"—an argument that Arista did in fact make in the CLI case.  *See* Order at 16,

11   23-24; *see also* Ex. 15 to Nelson Decl. in Opp'n to Cisco's Mot. (reproducing Cisco's at-issue blog).

12   Qualitatively, these communications had the same connection to immunized speech as in *Noerr* and

13   *Sosa*:  they explained Cisco's positions as they related to the protected act of initiating litigation and

14   placed the public on notice of how Cisco intended to pursue that immunized activity.  No matter how

15   the Ninth Circuit rules on this issue, its effects on future conduct by companies and other litigants are

16   obvious and extensive, particularly for public companies like Cisco that must by law communicate

17   material decisions and actions to investors.

18        For example, had the blog posts simply cut and pasted allegations from Cisco's complaint

19   rather than paraphrase and explain them, the Order implies that Cisco would nevertheless be exposed

20   to antitrust liability for reproducing such petitioning statements, simply because they were made in a

21   blog post rather than in a publicly filed pleading.  This cannot be the law.  That sort of line drawing

22   based on the distribution method of Cisco's explanation of its claims will have substantial chilling

23   effects on other plaintiffs' ability to speak freely about legitimate and protected litigation activity.  It is

24   no small stretch to apply this sort of rule to quotations in news articles, press releases about a lawsuit,

25   and other typical communications modern-day corporations make about lawsuits that may have

26   substantial effects in their industries, especially at a time where companies are now expected to post

27   on their website any significant activity for public sharing.

28

1    Moreover, the Court's ruling that pre-suit demand letters enjoy immunity but post-suit

2    explanations of claims do not presents a distinction based merely on the timing and distribution of

3    statements concerning protected litigation activity.  The prudent company seeking to conform with the

4    Order will have every incentive to bombard potential customers and infringers with threats rather than

5    provide the same information in a more efficient and public manner, such as a public blog post.  Just

6    as in *Sosa*, Cisco's blog posts explained its infringement claims and its commitment to protecting its

7    intellectual property.  *Compare* Order at 23-24; *with Sosa*, 437 F.3d at 925-26.  The only difference

8    was that, unlike in *Sosa*, Cisco made good on those positions and actually sued the infringer.

9    *Compare* Order at 3 (noting the blog posts coincided with Cisco's CLI lawsuit); *with Sosa*, 437 F.3d at

10   935-36 (rejecting argument that *Noerr-Pennington* did not apply simply because DirecTV had not

11   actually filed suit).  Cisco also explained **why** it filed suit:  to stop Arista's pervasive copying of its

12   CLI, rebutting Arista's anticipated attempt to justify its copying by arguing that Cisco's CLI was an

13   industry standard and that other switch companies also used some of Cisco's CLI commands.[6]  *See*

14   *supra* at 9.  Absent appellate review of the Order, corporations will now, in every instance of potential

15   infringement, need to send out demand letters and threaten their customers and competitors rather than

16   take a more mediated approach by publicly identifying egregious infringers.

**B.    Substantial Grounds For Difference Of Opinion Exist As To Whether *Noerr-Pennington* Immunizes Public Statements About The Basis Of A Protected Lawsuit**

19   "Courts traditionally will find that a substantial ground for difference of opinion exists where

20   'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the

21   point, if complicated questions arise under foreign law, or if novel and difficult questions of first

22   impression are presented.'"  *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (quoting 3

23   Federal Procedure, Lawyers Edition § 3:212 (2010)) ; *see also VIA Techs., Inc. v. SonicBlue*

24   *Claims, LLC*, 2011 WL 2437425, at *1 (N.D. Cal. June 17, 2011) ("Substantial grounds for a

---

[6]   *See, e.g.*, Case No. 14-cv-5344, Dec. 6, 2016 Trial Tr. at 1963:5-13 (Jayshree Ullal, Chief Executive Officer of Arista) (admitting that she is "not aware of any standards setting organization for command-line interface commands" or any "standards setting organization that require the use of Cisco CLI commands"); *id.*, Dec. 5, 2016 Trial Tr. at 1843:24-1844:2) (Hugh Holbrook, Arista's Vice President of Software Engineering) (admitting that he is "not aware of any standards-setting organization that has standardized what a command-line interface would be").

difference of opinion … arise when an issue involves one or more difficult and pivotal questions of law not settled by controlling authority."). As the Ninth Circuit has explained, "[a] substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed. Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).[7]

Applying these principles, substantial grounds exist for disagreement with the Court's narrow reading and application of *Noerr-Pennington* because: (1) it gives rise to a direct conflict on this issue with other Circuit and district courts; and (2) although the Ninth Circuit has yet to provide specific guidance on this question, its *Sosa* opinion and the Supreme Court's *Noerr* opinion each have been interpreted by other courts to immunize the type of communications at issue here under *Noerr-Pennington*.

**First**, as the Court readily acknowledged, opinions from other Circuits and district courts reached the exact opposite conclusion regarding *Noerr-Pennington* immunity for public statements about a pending lawsuit. *See* Order at 22 ("To the extent that some cases, including *Kemin Foods* and *Aircapital*, contradict *Riverbed*, the Court decides to follow *Riverbed* as being more consistent with the Ninth Circuit's reasoning in *Sosa*."). The Court opted for the *Riverbed* approach, but substantial reasons exist to apply other Circuit and district courts' reasoning. For example, unlike here, the party arguing against *Noerr-Pennington* immunity in *Riverbed* claimed that the statements in question were false and, in any event, were included in a "competitive brief" as a marketing tool rather than accurately explaining to the market why a plaintiff filed litigation. *Riverbed Tech., Inc. v. Silver Peak*

---

[7] The applicable standard is not whether the Court is confident in its ruling, but rather whether others may reasonably disagree. As one court explained in certifying an order:

> On the issue …, I am convinced that the Decision reflects the better and more considered view of the law. However, if a district court had to believe that her decision was likely to be reversed before certifying a question under 28 U.S.C. § 1292(b), there would be no such certifications. Probability of reversal is not the standard. The standard is whether there is "substantial ground for disagreement.

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 2012 WL 2952929, at *8 (S.D.N.Y. July 18, 2012).

*Sys., Inc.*, 2015 WL 12941890, at *3-4 (N.D. Cal. Apr. 7, 2015).  In contrast, as other courts have noted with respect to communications more like Cisco's, publicly describing a litigation is necessarily immunized because it is incidental to petitioning activity.

The Fifth Circuit has held that a defendant's "well-publicized threat to litigate wherever and whenever necessary to assert their claim" was protected by *Noerr-Pennington* because it was "ancillary to that petition [*i.e.*, immunized litigation]." *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 & n.31 (5th Cir. 1983).[8]  *See also, e.g.*, *Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 384 F. Supp. 2d 1334, 1349-50 (S.D. Iowa 2005) (finding that press releases, notices, and direct contacts about infringement were immunized under the *Noerr-Pennington* doctrine); *Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp., Inc.*, 634 F. Supp. 316, 324 (D. Kan. 1986) (although defendant "would have been better advised to have refrained" from publicity campaign surrounding lawsuit, that campaign was clearly incidental to the lawsuit and protected by *Noerr-Pennington*).  While the Court ultimately found *Riverbed* to be "more consistent" with *Sosa* (Order at 22), the absence of Ninth Circuit precedent on this issue, and the acknowledgement of contradictory authority (including from a sister Circuit) indicates there are substantial grounds for disagreement.

**Second**, a close reading of *Sosa* and *Noerr* explains why other courts disagree with the position this Court took in the Order.  In *Sosa*, the Ninth Circuit found that putting potential infringers on notice was the exact sort of statement that must be afforded "breathing space" around actual litigation.  *Sosa*, 437 F.3d at 936 (noting that pre-suit demand letters "are the type of activity that typically arises only in the context of contemplated petitioning activity").  This stems from *Noerr* itself, in which the Supreme Court found that a "publicity campaign designed to influence governmental action"—even if unethical, as was the case in *Noerr*, but not here—must be immunized from Sherman Act liability.  *Noerr*, 365 U.S. at 140-141.  With this precedent in mind, it is likely that the Ninth Circuit, consistent with *Sosa*, would clarify on interlocutory review that communications qualitatively similar to pre-suit demand letters are similarly immunized under *Noerr-Pennington*.

---

[8]  *Coastal States*—arguably one of the most analogous Circuit-level opinions Cisco cited—was not addressed in the Order.

**C.    Certification Of The Question Whether *Noerr-Pennington* Immunity Applies May Materially Advance The Termination Of The Litigation**

Interlocutory appeal of the Order "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  Whether certification will materially advance the termination of the litigation "is closely related to the question of whether an issue of law is 'controlling' in that the district court should consider the effect of a reversal on the management of the case." *Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Grp.*, 727 F. Supp. 2d 887, 896 (E.D. Cal. 2010) (quotation marks and citation omitted).

Here, not only would reversal on this issue terminate the entire case, but the issues presented are narrow and straightforward, which would be a far more efficient use of resources than a lengthy and expensive antitrust trial that turns out to be unnecessary.  *See Finder v. Leprino Foods Co.*, 2016 WL 4095833, at *5 (E.D. Cal. Aug. 1, 2016) ("appellate briefing on a relatively narrow legal issue should cost far less than litigating all the facts related to that issue in this Court").  The trial currently is scheduled to run from August 3, 2018 to August 24, 2018—a time that will likely cut across at least five weeks (including jury deliberations).  The use of what may be a full month of this Court's and jurors' time with a complicated and costly trial should be avoided when a case-dispositive appeal on an important (and close) issue would render it unnecessary.

Moreover, this case is a particularly appropriate candidate for interlocutory appeal because quicker resolution of these legal issues would likely aid in settlement.  The legal uncertainty surrounding this dispositive issue, accompanied by the high stakes in this case, make settlement unlikely if the case is slated to proceed to trial; if Arista's antitrust claims are dismissed as a result of interlocutory review and reversal, settlement of those claims may be more likely.  *See, e.g.*, *Casas*, 2015 WL 13446989, at *3 ("uncertainty" over a key claim "may delay ultimate resolution by leaving the parties in a state of limbo, with neither side willing to seriously entertain the other's position absent some resolution"); *see also Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) ("uncertainty about the status of [a] claim may delay settlement" that would otherwise be likely); *Scott v. Ruston La. Hosp. Co., LLC*, 2017 WL 1364219, at *5 (W.D. La. Apr. 12, 2017) ("a decision on this issue may help to advance settlement, a factor that courts have found significant in permitting

interlocutory appeals to proceed"); *EEOC v. Dial Corp.*, 2001 WL 1945088, at *4 n.4 (N.D. Ill. Dec. 27, 2001) ("if the Seventh Circuit reverses my conclusions … the likelihood of settlement will substantially increase, thus 'materially advanc[ing] the ultimate termination of [this] litigation'").

## II.   THE COURT SHOULD CERTIFY THE QUESTION WHETHER STATEMENTS ABOUT A RIVAL, EVEN IF NOT DISPARAGING, PRESUMPTIVELY HAVE *DE MINIMIS* EFFECTS ON COMPETITION UNDER *HARCOURT BRACE*

If the Court agrees that the *Noerr-Pennington* issue justifies interlocutory review under § 1292(b), the Court may certify the Order on that basis alone.  Nonetheless, the Court's separate determination that only statements that falsely "disparage" a rival are presumptively *de minimis* for exclusionary conduct purposes is also a case-dispositive question of controlling law on which reasonable minds may differ.  In particular, whether Mr. Chandler's blog posts about the CLI lawsuit or Cisco's discussion of the litigation through its sales personnel had a *de minimis* impact on competition under the principles of *Harcourt Brace* is an important question of law warranting interlocutory review.

### A.   Whether Non-Disparaging Statements About A Rival Are Presumptively *De Minimis* Involves A Controlling Question Of Law

Whether a company's accurate description of a lawsuit filed against a rival is to be treated as having a presumptively *de minimis* impact on competition—based on the same principles upon which *Harcourt Brace* relied—involves a controlling question of law.    The Ninth Circuit need not resolve any disputed facts to determine that, where a business accurately describes a lawsuit against a rival, the impact on competition will be presumptively *de minimis*.  The Ninth Circuit is not being asked to apply that test here, but rather to rule that, as a legal matter, *Harcourt Brace*'s presumption applies to all statements announcing a lawsuit, whether or not they "disparage" a rival.  And because Arista has not made arguments or offered facts to overcome that presumption,  resolution of the legal question in Cisco's favor would result in termination of the lawsuit,

Similarly, whether supposed "FUD tactics" are subject to *Harcourt Brace* is a pure question of law.  Even assuming that Cisco engaged in FUD tactics relating to its litigation against Arista (which it did not), it is a pure question of law whether such tactics are subject to *Harcourt Brace* because creating fear, uncertainty and doubt is a form of deceptive marketing akin to disparagement.

**B.     Substantial Grounds For Difference Of Opinion Exist As To Whether Non-Disparaging Statements About A Rival Are Presumptively *De Minimis***

Reasonable jurists could disagree on how to resolve this issue.

*First*, there is substantial ground for difference of opinion whether an accurate description of a lawsuit's allegations can be exclusionary.  In *Harcourt Brace*, the Ninth Circuit explained that public disparagement of a rival—there, distributing fliers suggesting that a rival was implicated in a SEC investigation and might not be able to continue offer its services—"are ordinarily not significant enough to warrant recognition under § 2 of the Sherman Act."  108 F.3d at 1151.  That is because such communications "must have a significant and enduring adverse impact on competition itself in the relevant markets to rise to the level of an antitrust violation." *Id.* at 1152.  The Court set forth a six-element test that a plaintiff must satisfy to overcome a presumption of *de minimis* impact on competition. *Id.*

Here, the Court ruled that *Harcourt Brace* is "inapplicable" because Mr. Chandler's blog post announcing the just-filed CLI lawsuit contained statements explaining the bases of the suit, including that the particular "features" that Arista copied are not "industry standard."   Order at 23-24.  According to the Court, a statement that Arista infringed non-industry standard portions of its CLI may demonstrate exclusionary conduct because Arista does not rely on the falsity of the statement but rather on its purported representation of a reversal in policy.  *See* Order at 23-24 (excerpting statements).[9]  Whether falsely disparaging speech merits greater protection than truthful speech, however, is an issue on which reasonable minds may differ, as normally truthful speech is given greater protection than false speech in the public sphere.  There is no dispute here that Mr. Chandler's blog posts accurately reflect Cisco's positions in its lawsuit.  Furthermore, this Court ruled that Cisco's lawsuit against Arista for infringing its CLI was not a sham.  *Harcourt Brace* nowhere states that it is limited to "disparaging" speech, nor has any Court held that *Harcourt Brace* must be limited to disparagement.  Rather, the Court held that public communications about a competitor generally will

---

[9]   Although the Court quoted certain individual passages from a Mr. Chandler's blog post, these make up a fraction of the entire post, which is entirely about the litigation and Arista, and not about any announcement of any purported new "policy."  *See* Ex. 15 to Nelson Decl. in Opp'n to Cisco's Mot.

1  not give rise to exclusionary conduct because buyers generally "distrust" such "isolated" statements

2  sourcing from one competitor about another. *Harcourt Brace*, 108 F.3d 1152.

3      Where an accurate description of a lawsuit is at issue, the same fundamental principle

4  articulated in *Harcourt Brace* applies:  a presumption of *de minimis* effect must be overcome because

5  such statements are given less credit, given the competitive context.  *Harcourt Brace* presumes that

6  statements one competitor makes in the context of discussing a rival will generally not be anti-

7  competitive, but will rather be understood by the public as merely reflecting competitive business

8  positions unless the plaintiff can demonstrate "significant and enduring adverse impact." *Id.*  By

9  arriving at a contrary position here, the Court relieved Arista of its burden to prove that Mr. Chandler's

10  description of a lawsuit against a rival would have a more than *de minimis* impact on competition.

11      ***Second***, there is substantial ground for difference of opinion whether Cisco's alleged "sales

12  tactics" of creating FUD must satisfy the *Harcourt Brace* test.  Order at 24.  Here, the Court

13  considered inferences that "Cisco used its CLI litigation to create FUD in an anticompetitive manner."

14  Order at 25.  But statements giving rise to FUD are intrinsically premised on allegations of deception,

15  triggering the six-element *Harcourt Brace* test.  The Third Circuit, for example, recently recognized

16  that "allegations regarding [a] so-called 'FUD' campaign are more properly analyzed under the law of

17  ***deceptive marketing***." *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 407 n.40 (3d Cir. 2016)

18  (emphasis added).  *Eisai* relied on *Harcourt Brace* in affirming summary judgment in favor of that

19  defendant, ruling that FUD-related statements did not constitute exclusionary conduct because the

20  plaintiff did not "show that such statements induced or were likely to induce reasonable reliance by

21  consumers." *Id.*  Moreover, FUD-related statements need not be "disparaging" and yet the Third

22  Circuit nonetheless applied its analog of *Harcourt Brace*'s requirement to prove a sufficient impact on

23  competition.  Thus, even assuming for the purposes of summary judgment that Cisco employed FUD-

24  related tactics (which Cisco denies), a reasonable judge could find such tactics to be subject to

25  *Harcourt Brace*.  While the Ninth Circuit has not squarely addressed this issue, the decision of a sister

26  Circuit in *Eisai* exemplifies that a different outcome would, at minimum, be reasonable.

27

28

**C.      Certification Of The Question Whether *Harcourt Brace* Applies May Materially Advance The Termination Of The Litigation**

For the same reasons discussed above, *see supra* Part I.C, immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If the Ninth Circuit finds that statements (whether accurate or FUD-based) about a rival in connection with a reasonably-filed, non-sham, and protected lawsuit cannot support exclusionary conduct, the action will be terminated in its entirety, as Arista did not introduce evidence to overcome any presumption of *de minimis* effect. And regardless of the outcome in the Ninth Circuit, the certainty of a decision on this point will increase the prospects of a more prompt settlement. If the parties instead need to head into a high-stakes trial in August without guidance on this issue, neither side will have a powerful incentive to settle.

## CONCLUSION

The Court should grant Cisco's petition to certify the Order for interlocutory appellate review of the two issues set forth above pursuant to 28 U.S.C. § 1292(b).

Dated:  May 17, 2018                                              Respectfully submitted,

                                                                           */s/ Kathleen M. Sullivan*
                                                                           Kathleen M. Sullivan (SBN 242261)
                                                                           kathleensullivan@quinnemanuel.com
                                                                           QUINN EMANUEL URQUHART &
                                                                           SULLIVAN, LLP
                                                                           51 Madison Avenue, 22nd Floor
                                                                           New York, NY 10010
                                                                           Telephone: (212) 849-7000
                                                                           Facsimile: (212) 849-7100

                                                                           Adam B. Wolfson (SBN 262125)
                                                                           adamwolfson@quinnemanuel.com
                                                                           QUINN EMANUEL URQUHART &
                                                                           SULLIVAN, LLP
                                                                           865 South Figueroa Street
                                                                           Los Angeles, CA 90017
                                                                           Telephone: (213) 443-3000
                                                                           Facsimile: (213) 443-3100

                                                                           John M. Desmarais (*admitted pro hac vice*)
                                                                           jdesmarais@desmaraisll.com
                                                                           Paul A. Bondor (*admitted pro hac vice*)
                                                                           pbondor@desmaraisllp.com
                                                                           Alan S. Kellman (*admitted pro hac vice*)
                                                                           akellman@desmaraisllp.com
                                                                           Andrew G. Heinz (*admitted pro hac vice*)
                                                                           aheinz@desmaraisllp.com

1                                   Tamir Packin (SBN 317249)

tpackin@desmaraisllp.com

2                                   Jeffrey S. Seddon II (SBN 297502)

jseddon@desmaraisllp.com

3                                   Brian Leary (*admitted pro hac vice*)

bleary@desmaraisllp.com

4                                   William D. Findlay (*admitted pro hac vice*)

wfindlay@desmaraisllp.com

5                                   Carson Olsheski (*admitted pro hac vice*)

colsheski@desmaraisllp.com

6                                   DESMARAIS LLP

230 Park Avenue

7                                   New York, NY 10169

Telephone: (212) 351-3400

8                                   Facsimile: (212) 351-3401

9                                   Sarah E. Piepmeier (SBN 227084)

sarah.piepmeier@kirkland.com

10                                 KIRKLAND & ELLIS LLP

555 California Street, 27th Floor

11                                 San Francisco, CA 94104

Telephone: (415) 439-1400

12                                 Facsimile: (415) 439-1500

13                                 *Attorneys for Defendant Cisco Systems, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28