| | |
|---|---|
| 1 | MATTHEW D. POWERS (Bar No. 104795) |
| 2 | matthew.powers@tensegritylawgroup.com<br>WILLIAM NELSON (Bar No. 196091) |
| 3 | william.nelson@tensegritylawgroup.com<br>ROBERT GERRITY (Bar No. 268084) |
| 4 | robert.gerrity@tensegritylawgroup.com<br>NATASHA SAPUTO (Bar No. 291151) |
| 5 | natasha.saputo@tensegritylawgroup.com<br>SAMANTHA JAMESON (Bar No. 296411) |
| 6 | samantha.jameson@tensegritylawgroup.com<br>JENNIFER ROBINSON (Bar No. 270954) |
| 7 | jen.robinson@tensegritylawgroup.com<br>WANLI CHEN (Bar No. 300254) |
| 8 | wanli.chen@tensegritylawgroup.com<br>TENSEGRITY LAW GROUP, LLP |
| 9 | 555 Twin Dolphin Drive, Suite 650<br>Redwood Shores, CA 94065 |
| 10 | Telephone: (650) 802-6000<br>Fax: (650) 802-6001 |
| 11 | |
| 12 | Attorneys for Plaintiff<br>ARISTA NETWORKS, INC. |
| 13 | [*Additional Counsel Listed in Signature Block*] |

Attorneys for Plaintiff
ARISTA NETWORKS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ARISTA NETWORKS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>Defendant. | Case No. 5:16-CV-00923-BLF<br><br>**ARISTA NETWORKS, INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE PURPORTEDLY IRRELEVANT, INFLAMMATORY DOCUMENTS**<br><br>Date: June 14, 2018<br>Time: 1:30 P.M.<br>Judge: Hon. Beth Labson Freeman<br>Dept: Courtroom 3<br><br>**DEMAND FOR JURY TRIAL** |

The documents Cisco's MIL No. 4 (ECF 300, "MIL") seeks to exclude are directly relevant to Arista's claims, and none of Cisco's arguments regarding prejudice justify exclusion because Cisco has failed to identify any *unfair* prejudice—let alone unfair prejudice sufficient to outweigh the documents' high probative value—because the statements Cisco complains of are, in fact, true. Contrary to Cisco's assertions at deposition (and its expected theme at trial) that Arista was just another of many Cisco competitors with whom Cisco competes equally vigorously, Cisco did go to extreme efforts to try to compete with Arista in 2013 and 2014 (including attempting to disrupt Arista's IPO and creating anti-Arista "Tiger" teams that Cisco motivated using images of Arista's CEO on a ▓▓▓ ). When those generally pro-competitive efforts failed to slow Arista's erosion of Cisco's dominant market share, Cisco did in fact turn to an anticompetitive course of conduct including its CLI policy reversal and closure, copyright lawsuit, and the litigation FUD-based sales tactic described in the Competitive Playbook. Cisco's contentions to the contrary in its MIL are belied by the evidence and do not justify exclusion.

**I.   CISCO'S COMPETITIVE PLAYBOOK IS DIRECTLY RELEVANT TO ARISTA'S CLAIMS, IS NOT UNFAIRLY PREJUDICIAL, AND IS NOT MERELY A DRAFT PREPARED BY A ROGUE INDEPENDENT CONTRACTOR AS CISCO SUGGESTS**

Cisco's Competitive Playbook for how to "Beat Arista" (**Ex. 19**, ECF 301-24 at 1-22 footer) is direct and highly probative evidence of Cisco's adoption of precisely the strategy alleged by Arista. After outlining four tactics for competing against Arista using traditional means, the Playbook describes a fifth tactic—"▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" recommending that Cisco's salespeople "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" **Ex. 19** at 2, 22. This is probative of at least the fact that Cisco committed the litigation FUD campaign Arista alleges, that Cisco intended to commit those acts, and that Cisco intended that its FUD campaign have the effect of helping Cisco win customers over Arista (relevant to intent, harm to competition, and damages to Arista). Cisco's MIL asserts this Playbook would be prejudicial because it might lead the jury to conclude "that Cisco engaged in the accused conduct." MIL at 4. However, Cisco's alleged "prejudice" is far from unfair (as required by FRE 403) and certainly does not outweigh the high probative value for the simple reason that ***Cisco did in fact engage in the described "***▓▓▓▓▓▓▓***" litigation FUD-based sales tactic*** and did distribute

1  this Competitive Playbook—including the "[REDACTED]" section—for use in selling against Arista.
2  There is extensive evidence of Cisco's use of this "[REDACTED]" sales tactic, including among
3  the highest levels of Cisco's leadership team. *See, e.g.*, **Exs. P-R** (Chandler Dep. Exs. 186-188) and **Ex.**
4  **S** (CSI-CPT-70033409) ([REDACTED]
5  [REDACTED]); ECF
6  210-21 (Scott Morton Rpt.), ¶ 148 ([REDACTED]
7  [REDACTED]). The evidence also contradict's Cisco's
8  contention that this Playbook was a draft created by a rogue independent contractor. MIL at 3-5.
9  [REDACTED] after Cisco suggests John Hastwell created the purportedly rogue "draft"
10 [REDACTED], Soni Jiandani—the head of Cisco's Insieme datacenter switch business unit—[REDACTED]
11 Yousuf Khan (Cisco's Vice President for Technical Marketing in the data center switches business unit)
12 [REDACTED]
13 [REDACTED] precisely the same version of the
14 Competitive Playbook (complete with the "[REDACTED]" tactic) that Cisco's MIL falsely asserts
15 was an undistributed draft. **Ex. T** (CSI-CPT-00805192, [REDACTED]); **Ex. U** (CSI-CPT-
16 00805194, the attached Competitive Playbook, identical to **Ex. 19** that Cisco asks to exclude).
17 Rajeev Bhardwaj, Cisco's Vice President for Product Management in the datacenter business
18 unit, [REDACTED]
19 [REDACTED]
20 [REDACTED] **Ex. T** (CSI-CPT-00805192) at 2. [REDACTED]
21 [REDACTED]
22 [REDACTED]
23 [REDACTED]
24 [REDACTED] *Id.* at 2.
25 [REDACTED]
26 [REDACTED]
27 [REDACTED] *Id.* at 1.
28

1  ███████████████████████████████████████████████████████████

2  1    U██████████████V███████████████████████████████████

3  ███████████████████████████████████████████████████████████

4  ███████████████████████████████████████████████████████████

5  ████████████████████████████████AA-BB█████████████████████

6  ██████████ Mr. Khan, Ms. Jiandani, or Cisco's 30(b)(6) corporate designee(s) can lay the

7  foundation for admission of the Playbook, including as a party admission and as a business record.

8  Indeed, Cisco produced from its files no fewer than ██ *copies* of this Playbook with the "

9  ████" tactic, belying Cisco's "draft" contention. *See* **Ex. CC** (Summary of metadata for copies of

10 the Playbook and associated parent emails). Cisco also produced █████████████████

11 ███████████████████████████████████████████████████████████

12 █████████████████ *See* **Ex. DD** (Summary of metadata for ████ copies and associated parent

13 emails). █████████████████████████████████████████████████

14 ███████████████████████████████████████████████████████████

15 ████████████████ *See* **Ex. EE** (Excerpts from Cisco's Nov. 22, 2017 Privilege Log).

16 Cisco's contentions in its MIL that Mr. Hastwell was an independent contractor and the asserted

17 "subsequent draft" status of Cisco's **Ex. 23** version of the Playbook (*see* MIL at 4) are similarly belied

18 by the evidence (and are irrelevant in view of the clear, authorized use of the "████████" version

19 of the Playbook by █████████████). For example, Mr. Hastwell ████████████████

20 ████████████. **Ex. FF** (CSI-CPT-00836710) at 1. As to Cisco's asserted "subsequent

21 draft," that version still includes the "██████████" sales tactic, alebit in red strikethrough text. **Ex.**

22 **23**. The metadata produced by Cisco with that document states that it was collected from ██████

23 ███████████████████████████████████████████████████████████

24 ██████████████████████████████. Cisco offers no evidence that **Ex. 23** was available

25 during, *e.g.*, 2015 (when Mr. Khan and Mr. Malik were using and circulating the version without any

26 ─────────────────────────

27 [1] ███████████████████████████████████████████████████████

28 ███████████████████████████████████████ *See* **Exs. W-X** (CSI-CPT-
00825974 and CSI-CPT-00825975) and **Exs. Y-Z** (CSI-CPT-00804800 and CSI-CPT-00804801).

1  strikethrough) and no evidence that the strikethrough was not added, *e.g.*, following Cisco's loss of the
2  copyright trial as a means of notifying the sales force that the litigation FUD-based strategy was no
3  longer applicable.
4        Cisco's arguments regarding the purported "draft" nature of the Playbook and its authorship by
5  an independent contractor—raised for the first time in Cisco's MIL and the Boulton declaration (**Ex.**
6  **36**)—are also contrary to Cisco's 30(b)(6) designee's testimony on the relevant topic. Cisco designated
7  Cesar Obediente to testify regarding Topic 68: "Any strategy or plan developed by you to compete
8  against Arista . . . including . . . any competitive initiatives involving Arista." ECF 290-11 (Arista's
9  30(b)(6) Notice) at 15, **Ex. GG** (Obediente 30(B)(6) Dep. Tr.) at 6:16-7:16. Mr. Obediente did little to
10 prepare, testifying that as Cisco's designee regarding Cisco's efforts to compete with Arista, he was only
11 prepared to testify as to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 7:20-9:9, 13:18-
12 23, 197:15-199:9. He was unable to provide any testimony about whether or not ▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 343:4-345:20, 348:10-18. Tellingly, Mr.
15 Obediente did not speak at all with Mr. Boulton—then still a Cisco employee and the Director of
16 Competitive Intelligence—as part of his preparation, nor did Cisco designate Mr. Boulton for any topics.
17 Arista sought a more pepared witness, but Cisco opposed and the Magistrate held that "the Court deems
18 Mr. Obediente's testimony as testimony on behalf of Cisco, and grants no further relief as to these
19 topics." ECF 174 (Dispute Letter) at 2, 4; ECF 177 (Order) at 3. As Magistrate Van Keulen held, Cisco
20 should now be limited to the testimony it provided. Mr. Boulton's declaration, and related arguments by
21 Cisco that are inconsistent with the limited testimony Cisco's 30(b)(6) designee provided, should be
22 excluded. "Unless it can prove that the information was not known or was inaccessible, a corporation
23 cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6)
24 deposition." *Super Future Equities, Inc. v. WellsFargo Bank Minn.*, No. 3:06-cv-0271, 2007 U.S. Dist.
25 LEXIS 91947, at *27-28 (N.D. Tex. Dec. 14, 2007).[2]

---

26 [2] *See also Strategic Decisions, LLC v. Martin Luther King, Jr. Ctr. For Nonviolent Soc. Change, Inc.*,
27 No. 1:13-cv-2510, 2015 U.S. Dist. LEXIS 58814, at *26 (N.D. Ga. May 5, 2015) (granting MIL precluding evidence that "contradicts, alters, supplements, amends or explains" an unprepared 30(b)(6)
28 witness's testimony); *Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993) (failing to provide a knowledgeable 30(b)(6) designee is "for all practical purposes, no appearance at all.")

## II. THE "STOP ARISTA'S IPO" AND PRESENTATION INCLUDING THE ▮▮▮ IMAGE ARE ALSO RELEVANT AND NOT UNFAIRLY PREJUDICIAL

Evidence that Cisco worked to prevent Arista's IPO and Cisco's anti-Arista competitive team presentations including the image of Arista's CEO Jayshree Ullal's ▮▮▮ are directly relevant to show Cisco's extreme efforts in 2013 and 2014 to slow Arista's erosion of Cisco's dominant market share. The failure of those efforts to slow Arista's growth (and Cisco's losses) set the stage for Cisco's decision to imlement the asserted anticompetitive course of conduct. *See, e.g.*, ECF 210-21 (Scott Morton Rpt.), ¶¶ 108-123 and **Ex. O** (Scott Morton Dep. Tr.) at 112:11-115:21 (discussing Cisco's 2013-2014 failed efforts to compete). This evidence, and the Competitive Playbook, are also directly relevant to rebut Cisco's contention that it viewed Arista just like any other Cisco competitor.[3] *See, e.g.*, **Ex. HH** (D'Agostino Dep. Tr.) at 91:1-9; **Ex. II** (Palumbo Dep. Tr.) at 43:10-44:4.

**Exhibit 16** to Cisco's MIL makes clear that Cisco did, in fact, try to thwart Arista's IPO—with Ms. Jiandani stating in April 2013 that "Every week counts here since we want to thwart Arista from filing an IPO." **Ex. 16** at 1. Cisco may dispute that fact at trial, but that does not render it unfairly prejudicial nor would the parties presenting two competing interpretations of the evidence rise to the level of a "mini-trial" to be excluded under Rule 403. *Cf. In re CRT Antitrust Litig.*, 2016 U.S. Dist. LEXIS 166398, at *210-14 (N.D. Cal. Nov. 15, 2016) (relied on by Cisco, excluding evidence of two foreign regulatory bodies' findings of antitrust violations by the defendants). Mr. Obediente similarly confirmed the truth and relevance of **Ex. 18** (the ▮▮▮ document), confirming ▮▮▮ ▮▮▮ ▮▮▮ *See* **Ex. GG** (Obediente 30(b)(6) Dep. Tr.) at 221:16-236:5; **Ex. 18** at 3. Moreover, Cisco raised no objection to the admission of this presentation (and the ▮▮▮ image) in the copyright trial and it was admitted as Exhibit 6082. **Ex. JJ** (Copyright Trial Exhibit 6082); **Ex. B** (Copyright Trial Tr., 12/07/2017) at 2289:16-2293:1.

## III. CONCLUSION

For the above reasons, Cisco's Motion *In Limine* No. 4 should be denied.

---

[3] This evidence is also relevant to witness credibility should Cisco offer testimony at trial, as it has in deposition and suggests it will in its MIL, that it viewed Arista as the same as any other competitor, did not try to stop Arista's IPO, or did not use Cisco's litigation against Arista as a sales tactic.

Dated: June 7, 2018                    Respectfully submitted,

        */s/ Matthew D. Powers*
MATTHEW D. POWERS (SBN 104795)
WILLIAM NELSON (SBN 196091)
ROBERT GERRITY (SBN 268084)
NATASHA SAPUTO (SBN 291151)
SAMANTHA JAMESON (Bar No. 296411)
JENNIFER ROBINSON (Bar No. 270954)
WANLI CHEN (Bar No. 300254)
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone:    (650) 802-6000
Facsimile:    (650) 802-6001
Email:
matthew.powers@tensegritylawgroup.com
william.nelson@tensegritylawgroup.com
robert.gerrity@tensegritylawgroup.com
natasha.saputo@tensegritylawgroup.com
samantha.jameson@tensegritylawgroup.com
jen.robinson@tensegritylawgroup.com
wanli.chen@tensegritylawgroup.com

DAVID H. REICHENBERG (*Pro Hac Vice*)
COZEN O'CONNOR
277 Park Avenue, 19th Floor
New York, NY 10172
Telephone: (212) 883-4900
Fax: (646) 461-2091
Email:
dreichenberg@cozen.com

JONATHAN M. JACOBSON (NY SBN 1350495)
CHUL PAK (*Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email:
jjacobson@wsgr.com
cpak@wsgr.com

SUSAN CREIGHTON (SBN 135528)
SCOTT A. SHER (SBN 190053)
BRADLEY T. TENNIS (SBN 281206)
WILSON SONSINI GOODRICH & ROSATI
1700 K Street NW, Fifth Floor
Washington, D.C., 20006
Telephone: (202) 973-8800
Facsimile: (202) 973-8899
Email:
screighton@wsgr.com
ssher@wsgr.com

btennis@wsgr.com

ROBERT A. VAN NEST (SBN 84065)
BRIAN L. FERRALL (SBN 160847)
DAVID J. SILBERT (SBN 173128)
NICHOLAS DAVID MARAIS
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
Email:
rvannest@keker.com
bferrall@keker.com
dsilbert@keker.com
nmarais@keker.com

Attorneys for Plaintiff
ARISTA NETWORKS, INC.