1

2

3

4      **UNITED STATES DISTRICT COURT**

5      **NORTHERN DISTRICT OF CALIFORNIA**

6      **SAN JOSE DIVISION**

7

8    ARISTA NETWORKS, INC.,                    Case No.  16-cv-00923-BLF

9              Plaintiff,

10                                             **ORDER RE MOTIONS *IN LIMINE*;
                                               AND**
       v.
11
                                               **ORDER GRANTING PARTIES'
12   CISCO SYSTEMS INC.,                        MOTIONS FOR LEAVE TO FILE
                                               SUPPLEMENTAL BRIEFING**
13             Defendant.
                                               [Re: ECF 284, 285, 286, 288, 291, 292, 293,
14                                             294, 295, 300, 336, 338]

15

16         Plaintiff Arista Networks, Inc. ("Arista") brings this action against Defendant Cisco

17   Systems Inc. ("Cisco") for allegedly violating § 2 of the Sherman Act, 15 U.S.C § 2 and

18   California's Unfair Competition Law ("UCL"). Arista asserts that Cisco carried out a long-time

19   policy that encouraged customers and competitors to use Cisco's CLI but reversed its policy and

20   engaged in tactics to hinder competition to monopolize the Ethernet switches market.  FAC

21   ¶¶ 119–33, ECF 162.  This Order addresses the parties' motions *in limine*.  For the reasons

22   explained below and on the record at the June 14, 2018 pretrial conference, the motions are

23   decided as follows:

24         Arista's Motion *in Limine* No. 1: GRANTED IN PART and DENIED IN PART.

25         Arista's Motion *in Limine* No. 2: GRANTED IN PART and DENIED IN PART.

26         Arista's Motion *in Limine* No. 3: GRANTED IN PART and DENIED IN PART.

27         Arista's Motion *in Limine* No. 4: GRANTED IN PART and DENIED IN PART.

28         Arista's Motion *in Limine* No. 5: GRANTED IN PART and DENIED IN PART.

United States District Court
Northern District of California

1    Cisco's Motion *in Limine* No. 1: GRANTED IN PART and DENIED IN PART.

2    Cisco's Motion *in Limine* No. 2: GRANTED IN PART and DENIED IN PART.

3    Cisco's Motion *in Limine* No. 3: DENIED.

4    Cisco's Motion *in Limine* No. 4: GRANTED IN PART and DENIED IN PART.

5    Cisco's Motion *in Limine* No. 5: GRANTED IN PART, DENIED IN PART, and

6    DEFERRED IN PART.

7

8    I.    **ARISTA'S MOTIONS *IN LIMINE***

9        A.    **Arista's Motion *in Limine* No. 1 to exclude evidence and arguments on topics for
10             which Cisco asserted privilege during discovery.  GRANTED IN PART and
             DENIED IN PART.**

11       Arista moves to exclude evidence and arguments relating to two topics over which Cisco

12   asserted the attorney-client and work product privileges.  MIL No. 1 at 1, ECF 291.  Specifically,

13   Arista argues that Cisco has claimed privilege regarding "1) what information Cisco had, and

14   when Cisco had it, concerning the extent of adoption of Cisco-like CLIs by other networking

15   companies; and 2) precisely what . . . Cisco's policy [is] toward competitor use of its CLI: for

16   example, how much overlap will Cisco permit, and how . . . that policy changed over time."  *Id.* at

17   1–2.

18       For example, Arista contends that Cisco objected to Arista's first interrogatory which

19   asked Cisco to "[i]dentify every CLI command in which Cisco claims a proprietary interest that is

20   used by any other manufacturer of Ethernet Switch products, the name of each manufacturer using

21   each identified CLI command, and the date on which Cisco learned of such use."  *Id.* at 2 (citing

22   Ex. 1 to Nelson Decl. in Supp. of Arista's MILs, ECF 290-9).  Arista also argues that Cisco's in-

23   house attorney Dan Lang was instructed and thus did not answer questions about how much CLI

24   overlap would a competitor need in order to trigger a lawsuit.  *Id.* at 3.  Similarly, Arista points out

25   that Cisco's general counsel Mark Chandler was instructed and thus did not answer why Cisco has

26   filed no copyright lawsuits against certain competitors.  *Id.* at 4.  On this basis, Arista argues that

27   "Cisco should be precluded from offering evidence or argument that its CLI policy has been

28   consistent, that Cisco has never changed its CLI policy, or explaining what that policy is or how it

2

1   is applied." *Id.*

2        Cisco counters that Arista's arguments are based on the flawed assumption that Cisco has a

3   "policy toward [a] competitor['s] use of its CLI" and that the policy depends on the extent of CLI

4   overlap. Opp'n No. 1 at 1, ECF 309.  According to Cisco, Mr. Lang answered that Cisco does not

5   have a policy and thus it has provided the full extent of information requested by Arista. *Id.* Cisco

6   also states that Arista ignores the fact that Cisco did answer Arista's first interrogatory. *Id.* at 2.

7   Moreover, Cisco argues that Mr. Lang properly addressed Arista's question whether there was a

8   "number" that would "rise to the level of a competitor appropriating Cisco's CLI" by answering

9   that Cisco does not define a "threshold" CLI overlap. *Id.* at 3.  Regarding Mr. Chandler's

10  deposition, Cisco asserts that he was narrowly instructed to not answer "with respect to

11  communications from his legal staff and counsel" which are privileged work product and that

12  nevertheless Arista was able to obtain answers on the topics it now seeks to exclude. *Id.* at 5.

13       The Court has reviewed the evidence submitted by the parties.  As Cisco contends, Mr.

14  Lang testified that Cisco makes a case-by-case decision to litigate and does not have a policy on

15  when to enforce its CLI copyrights against a competitor.  Ex. A in Supp. of Cisco's Opp'n at

16  213:23–214:18, ECF 308-14.  As such, Cisco will be allowed to present evidence to support its

17  contention that it did not have a policy but made a determination to file a lawsuit on an ad hoc

18  basis.  On the other hand, because Cisco refused to provide information on a policy (other than

19  answering that it had no policy), Cisco will not be allowed to provide evidence showing that Cisco

20  implemented some policy (e.g., it evaluated a "threshold" CLI overlap) and whether such a policy

21  was consistent or changed over time.  That said, as requested during the hearing, Cisco will be

22  allowed to represent that it *consistently* did not have a policy and that it *consistently* made ad hoc

23  determinations because such a representation is in accordance with Mr. Lang's testimony.  *Id.*

24       On the second issue, the evidence submitted by Arista shows that Cisco refused to provide

25  information on its knowledge of other competitors' adoption of Cisco-like CLI as well as

26  information regarding the extent of CLI overlap of other competitors in comparison with that of

27  Arista and Huawei.  *See, e.g.*, Ex. 3 to Nelson Decl. in Supp. of Arista's MILs ("Lang Dep.")

28  88:17–90:14, 94:22–95:2, ECF 290-12; Ex. 4 to Nelson Decl. in Supp. of Arista's MILs

*United States District Court*
*Northern District of California*

("Chandler Dep.") 99:20–100:1, ECF 290-13.  Therefore, Cisco will be precluded from denying that it was unaware of CLI adoption by other competitors than Arista and Huawei.  Moreover, Cisco will not be allowed to proffer evidence showing that Arista and Huawei adopted more CLI commands than other competitors.  Such information was objected through Cisco's claim of privilege.  "[W]here the party claiming privilege during discovery wants to testify at the time of trial, the court may ban that party from testifying on the matters claimed to be privileged."  *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (quoting William A. Schwarzer, et al., *Federal Civil Procedure Before Trial,* ¶ 11:37 at 11–29 (2000)).  During the hearing, Cisco stated that it has no issue with the restrictions.

Based on the above rulings, Arista's motion *in limine* No. 1. is GRANTED IN PART and DENIED IN PART.

**B.     Arista's Motion *in Limine* No. 2 to exclude evidence and argument that Arista copied Cisco, that Arista has a culture of copying, and similar evidence and argument regarding copying by Arista.  GRANTED IN PART and DENIED IN PART.**

Arista moves to exclude Cisco from presenting evidence and argument regarding "alleged Arista conduct related to copying" Cisco's CLI.  MIL No. 2 at 1, ECF 292.  According to Arista, such evidence and argument are irrelevant because whether Arista copied Cisco and the extent of copying are not probative of any dispute in this case.  *Id.* at 2.  Even if the purported "copying" has some probative value, Arista argues, Cisco's copying evidence and arguments should be excluded pursuant to Fed. R. Evid. 403 due to the risk of prejudice to Arista and the risk of misleading the jury.  *Id.* at 4.  In particular, Arista contends that Cisco's attempt to paint Arista as a bad actor would be prejudicial given that the jury in the CLI case found that Arista was protected under the scènes à faire doctrine.  *Id.*  For these reasons, Arista requests the Court to exclude (1) ITC findings in the '944 and '945 investigations, including the ITC's Opinion in the '944 investigation (Cisco Trial Exhibit 1904) (*see id.* at 2), (2) numerous press articles, including interview excerpts of Arista's CEO Jayshree Ullal (*id.*), (3) "Cisco Confidential" documents produced from Arista's file (*id.* at 5), and (4) witness testimony that disparages Arista as "a copyist, copier, as having a culture of copying, and similar characterizations" (*id.* at 3).

United States District Court
Northern District of California

1    In response, Cisco argues that the ITC findings are highly relevant because the related

2    evidence supports Cisco's basis for enforcing its intellectual property rights.  Opp'n No. 2 at 1–2,

3    ECF 310.  Cisco further asserts that the ITC findings are relevant to apportionment of damages

4    and to whether Cisco's communications were directed to the ITC actions or the CLI litigation.  *Id.*

5    at 2–3.  Regarding press articles and documents from Arista's production, Cisco contends that

6    such evidence is relevant to Cisco's reasons for enforcing intellectual property rights.  *Id.* at 3.  In

7    Cisco's view, not only is the aforementioned evidence relevant, but the probative value of the

8    evidence is significant because it purportedly supports Cisco's legitimate business reasons to sue

9    Arista for infringement.  *Id.* at 4.  Cisco further argues that the verdict on the scènes à faire defense

10   does not make evidence of copying prejudicial.  *Id.* at 5.

11   As a threshold issue, the Court finds that the evidence regarding Arista's "copying" is

12   relevant to damages and whether Arista's allegedly reduced sales were due to factors other than

13   the CLI litigation.  The evidence is also relevant to Cisco's claim as to why it filed the CLI lawsuit

14   and Cisco's rebuttal arguments regarding its blog statements.  The Court next turns to specific

15   categories of evidence.

16   **ITC documents and press releases:**  Arista's argument that it would be unfairly

17   prejudiced by the introduction of those documents is not entirely convincing.  This case is based

18   on Arista's theory that competitors in the market were allowed to copy Cisco's CLI during the

19   "open" period of the alleged "open early, closed late" anticompetitive scheme.  Thus, the premise

20   of Arista's theory significantly reduces any prejudicial effect resulting from the use of the word

21   "copying."  Moreover, the Court finds that the evidence has significant probative value.  For these

22   reasons, the Court concludes that the probative value of the documents outweighs the risk of

23   undue prejudice to Arista.  Accordingly, the Court DENIES Arista's general request to exclude the

24   ITC documents and press releases that reference Arista's copying.

25   Nevertheless, cumulative evidence may increase the risk of prejudice to Arista.  Thus, the

26   Court will allow only a reasonable number of documents to be presented to the jury.  Regarding

27   the ITC documents, the Court will permit the ITC's Opinion in the '944 investigation (Cisco Trial

28   Exhibit 1904) as stated during the hearing.  At this time, the Court will not expressly exclude other

ITC filings.  However, Arista may raise an objection during trial if Cisco proceeds to present needlessly cumulative evidence based on ITC filings as to Arista's copying.  Similarly, the Court expects Cisco to avoid presenting an unnecessary number of press releases.  For instance, a press release that reports on another press may be needlessly cumulative.  As stated during hearing, the Court expects the parties to meet and confer and agree on a reasonable number of documents.

**Documents labeled as "Cisco Confidential":**  Arista  seeks to exclude "Cisco Confidential" documents that were produced from Arista's file.  MIL No. 2 at 5.  Those documents were allowed in the CLI case only for the limited purpose of demonstrating willful patent infringement.  *See* Ex. 9 to Nelson Decl. in Supp. of Arista's MILs ("CLI MIL Order") 12–13, ECF 290-15.  That issue is absent here because this case does not involve the determination of whether Arista infringes Cisco's patents or "stole" other intellectual property rights.  Rather, the premise of this case is that Arista was allowed to use Cisco's CLI.  As such, introduction of "Cisco Confidential" documents would divert the issue and waste time by inviting a mini-trial on how those documents were created or obtained.  The Court therefore GRANTS Arista's request to exclude those documents under Rule 403.  That said, the Court will consider the introduction of those documents if they are otherwise relevant and the "Cisco Confidential" label can be redacted or addressed by a limiting instruction.

Arista further requests the Court to preclude witness testimony that disparages Arista as "a copyist, copier, as having a culture of copying, and similar characterizations."  MIL No. 2 at 3.  For the same reasons discussed for the ITC documents and press releases, the Court will not exclude Cisco's witnesses from testifying about Arista's copying.  However, Arista will have the ability to object to testimony, for example, based on lack of foundation or speculation.

For the above reasons, the Court GRANTS Arista's motion as to the exclusion of "Cisco Confidential" documents produced by Arista and DENIES as to the remainder.  Accordingly, Arista's motion *in limine* No. 2 is GRANTED IN PART and DENIED IN PART.

**C.**     **Arista's Motion *in Limine* No. 3 to exclude evidence and reference to Arista's cancelled friends and family directed share program.  GRANTED IN PART and DENIED IN PART.**

Arista moves to preclude Cisco from introducing evidence of or making reference to

United States District Court
Northern District of California

1    Arista's cancelled "friends and family" directed share purchase program.  MIL No. 3 at 1, ECF

2    293.  Arista argues that its decisions regarding how to allocate its IPO stock through the directed

3    share purchase program are not relevant to the market definitions or Cisco's purported monopoly

4    power and anticompetitive conduct at issue in this litigation.  *Id.* at 1–2.  On this basis, Arista

5    contends that evidence regarding the directed share program should be excluded under Fed. R.

6    Evid. 402.  *Id.* at 2.  In addition, according to Arista, Cisco claims that "Arista's friends and family

7    / direct[ed] share program" is relevant to Arista's "code of ethics" and "code of business conduct."

8    *Id.* at 2–3.  Arista claims that implying wrongdoing based on the directed share program would be

9    clearly prejudicial and thus evidence relating to the program should be excluded under Fed. R.

10   Evid. 403.  *Id.* at 3–4.

11           Cisco counters that Arista's directed share program "relates to the bias of Arista's trial

12   witnesses who, as a result of the program, have a financial interest in the outcome of Arista's

13   case."  Opp'n No. 3 at 1, ECF 311.  Cisco further argues that the share program is relevant to

14   Arista's narrative that "[Arista] is a smaller, more innovative company attempting to compete

15   ethically on the merits."  *Id.* at 3.  In Cisco's view, it should be permitted to rebut the claim that

16   Arista "threatened Cisco as a more ethical, innovative company" by providing evidence that Arista

17   offered "early adopters and journalist[s]" directed shares and thus a financial stake in order to

18   compete.  See *id.* at 3–4.

19           The Court finds that evidence of Arista's "friends and family" directed share purchase

20   program should generally be excluded.  It offers little probative value to Cisco's contention that

21   Arista's narrative is false but would prejudice Arista by raising issues of corporate misconduct and

22   cause it to spend an undue amount of time addressing Cisco's claim.  As such, the probative value

23   of evidence regarding Arista's "friends and family" directed share program is substantially

24   outweighed by the prejudice to Arista and undue consumption of time.  The Court therefore

25   GRANTS Arista's motion to exclude evidence of Arista's "friends and family" directed share

26   purchase program pursuant to Fed. R. Evid. 403 but with the exception of introducing the

27   evidence for impeachment purposes as discussed below.

28           The parties are entitled to cross-examine witnesses to reveal bias affecting their credibility.

United States District Court
Northern District of California

"Pecuniary interest may be shown to prove bias[,] . . . [including] [t]he amount at issue . . . because the jury may reasonably believe that the willingness of a witness to lie or shade testimony would be affected, not only by whether the result may benefit him, but also by how much." *United States v. Harris*, 185 F.3d 999, 1008 (9th Cir. 1999).  Thus, Cisco will be permitted to reference Arista's directed share program to impeach a witness for bias.  The Court therefore DENIES Arista's motion as to Cisco's ability to cross-examine any witness who owns or did own Arista's stock for the purpose of impeaching the witness.

Accordingly, Arista's motion *in limine* No. 3 is GRANTED IN PART and DENIED IN PART.

### D.   Arista's Motion *in Limine* No. 4 to preclude either party from offering or eliciting evidence of a current or former employee's net worth or compensation testimony.  GRANTED IN PART and DENIED IN PART.

Arista moves to preclude either party from offering or eliciting evidence of the net worth or compensation of witnesses.  MIL No. 4 at 1, ECF 294.  According to Arista, the "personal net worth or compensation, including stock options, of any current or former employee of either party has no relevance to any claim or defense in this case and should be excluded as irrelevant." *Id.* Arista further contends that "any putative probative value of personal net worth or compensation is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay and wasting time." *Id.* at 1–2.

Cisco responds that exclusion of the net worth and compensation of Arista's witnesses would prejudice Cisco because Arista relies on "a characterization of itself as an innovative start-up that is 'dwarf[ed]' by Cisco." Opp'n No. 4 at 1, ECF 312 (citing FAC ¶ 14) (alteration in original).  In Cisco's view, excluding evidence on the net worth and compensation would "obscure the fact that Arista is not a small, struggling startup, bootstrapped by its executives out of a garage." *Id.*  Cisco further argues that the witnesses' financial stake in Arista is admissible to show bias. *Id.* at 2.

For the same reasons discussed for motion *in limine* No. 3, the Court generally GRANTS this motion but DENIES the motion as to the parties' ability to reasonably cross-examine any witness regarding stock ownership at any time and compensation for the purpose of impeachment

8

based on bias.  To be clear, the general net worth of an individual is entirely irrelevant to this case.  Such evidence will not be allowed.

Further, the Court finds that evidence of net worth and stock ownership is only marginally probative of the issue of Arista's ethical business practices or combatting Arista's self-image as a "small struggling startup."  Arista's valuation as a company tells that story far better than net worth and compensation evidence.  Thus, balanced against the inflammatory nature of net worth evidence in general, this evidence will be excluded, except for impeachment purposes regarding witness bias.

During the hearing, Arista requested that any reference to the specific amount of its CEO Jayshree Ullal's Arista stock holdings be excluded.  Specifically, Arista asserted that the introduction of Ms. Ullal's $1 billion worth of Arista's stock holdings would be prejudicial while Cisco could probe her bias through other topics.  Cisco countered that the amount of financial interest is directly relevant to how much a witness would be biased.  As stated on the record, the Court does not find that the prejudice outweighs the probative value on the bias issue, and thus DENIES Arista's request.

Accordingly, Arista's motion *in limine* No. 4 is GRANTED IN PART and DENIED IN PART.

### E.   Arista's Motion *in Limine* No. 5 to preclude Cisco from offering opinions not contained in its expert reports and to preclude Cisco from using fact evidence in place of missing expert opinions.  GRANTED IN PART and DENIED IN PART.

Arista moves to preclude Cisco from (1) offering opinions not contained in Dr. Carlton's expert report regarding the relevant market definitions and monopoly power and (2) using fact evidence as a substitute.  MIL No. 5 at 1, ECF 295.  The Court addresses the relevant market definitions and monopoly power issues separately.

### i.   Relevant Market Definitions

Arista argues that Cisco should not be permitted to use fact witness testimony and documents (1) to establish relevant antitrust markets different than those defined by Dr. Fiona Scott Morton or (2) to show that the markets defined in Dr. Scott Morton's report are incorrect.  MIL No. 5 at 1.  According to Arista, Cisco cannot rebut Dr. Scott Morton's market definitions or

United States District Court
Northern District of California

establish an alternative market definition using fact witness testimony and documents because Dr. Carlton's report did not do so. *Id.* at 2. Arista asserts that "[f]act witnesses cannot be used to establish or disprove the existence and definition of antitrust markets because this issue constitutes a 'highly technical economic question' for which lay witnesses are not qualified." *Id.* at 3 (citing *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991)).

Cisco responds that fact witness testimony and documents that contradict Arista's alleged markets are both highly relevant and admissible. Opp'n No. 5 at 1, ECF 313. In Cisco's view, fact witnesses can testify to the "practical indicia" of the industry and thus the jury is not limited to considering only expert testimony. *Id.* On this basis, Cisco argues that it should be allowed to proffer evidence that contradicts Arista's alleged markets. *Id.* at 2. Cisco further asserts that it is not required to adopt Arista's definitions for failing to provide an alternative. *Id.* In addition, Cisco contends that "industry or public recognition" is one of the factors used to determine a relevant market and thus Cisco should be allowed to question industry participants on "what markets they recognize and consider in their ordinary course of business." *Id.* at 3.

As a preliminary issue, Dr. Carlton will not be allowed to proffer an alternative market definition because he has not done so in his expert report. During the hearing, Cisco indicated that Dr. Carlton will not proffer an alternative market definition. However, Cisco contended that Dr. Carlton's report contains opinions regarding the underlying factors pertaining to Dr. Scott Morton's market definitions. The Court agrees on this point. While Dr. Carlton will be precluded from offering an alternative market definition, Dr. Carlton will be allowed to rebut Dr. Scott Morton's testimony regarding her relevant market definitions to the extent that he has opined in his report.

The Court next turns to the parties' dispute regarding fact witnesses and documentary evidence. The Court recognizes Arista's concern that the definition of relevant markets constitutes a technical economic question. As such, Cisco's fact witnesses will be precluded from offering lay opinions on the relevant market definitions. However, Cisco may introduce lay testimony on facts that pertain to the *underlying factors* that support a relevant market definition. In other words, the Court will allow fact evidence which Cisco proffers to rebut the underlying factual

10

basis of Arista's alleged market definitions.  For example, Cisco's Senior Vice President of Marketing, Ish Limkakeng, may provide testimony from the marketing perspective regarding market segments, how Cisco evaluates its market share, product characteristics, and his view of the competitive landscape.  In addition, Cisco will be allowed to offer fact evidence to rebut Arista's assertion that the United States is a relevant geographic market.  At this juncture, the Court declines to make a general ruling that excludes evidence in a broad brush because it is unable to determine the admissibility of specific statements.  During trial, the Court may allow the introduction of certain evidence subject to a limiting instruction.

### ii.   Monopoly Power

Arista asserts that Dr. Carlton neither opined whether Cisco has monopoly power nor disagreed with Dr. Scott Morton's opinion that Cisco has monopoly power in the relevant markets. MIL No. 5 at 4.  Based on this assertion, Arista claims that Dr. Carlton should be precluded from testifying that Cisco lacks monopoly power or that Dr. Scott Morton's opinion is incorrect.  *Id.*  In addition, Arista argues that Cisco should be precluded from using fact witness testimony or documents to disprove Cisco's monopoly power because the existence of monopoly power is a technical subject matter.  *Id.* (citing *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1246 (11th Cir. 2002)).

Cisco disputes Arista's assertions and argues that Dr. Carlton "did . . .  opine on the issue of monopoly power."  Opp'n No. 5 at 4.  Cisco contends that, for example, Dr. Carlton analyzed prices and concluded that "[r]eflecting the increasing competition in the industry . . . prices have declined substantially in recent years."  *Id.* (citing Ex. B to Seddon Decl. in Opp'n to Arista's MSJ ¶¶ 44, 92–96 ("Carlton Report."), ECF 235-6).  Cisco further argues that "fact witnesses can address the issue of monopoly power" and that "the existence of monopoly power necessarily depends on numerous factual issues."  *Id.* at 5.  For these reasons, Cisco avers that its fact witness testimony and documentary evidence are relevant and admissible.  *Id.*

The Court disagrees with Arista's view that Dr. Carlton did not opine on monopoly power. As Cisco points out, Dr. Carlton's report contains opinions on relevant factors such as the purported increase of competition and decline of prices.  *See, e.g.*, Ex. B to Seddon Decl. in Opp'n to Arista's MSJ ¶¶ 44, 92–96.  Therefore, Dr. Carlton will be allowed to provide testimony

regarding monopoly power to the extent that his opinions are contained in his report.

Regarding Cisco's fact witnesses and documentary evidence on monopoly power, the Court cannot exclude such evidence at this time because it is unable to determine the content of Cisco's fact evidence.  To be clear, lay opinion on the ultimate question of monopoly power will not be admitted but lay witnesses may testify about factual matters that rebut Arista's expert opinions.

### iii.     Conclusion

For the foregoing reasons, the Court GRANTS the motion to the extent that Arista requests to limit Dr. Carlton's testimony to opinions contain in his expert report.  The Court DENIES the motion as to Arista's request to preclude fact witnesses and documentary evidence so long as the fact evidence is not offered as expert opinions.  This denial is without prejudice to a trial objections.

Accordingly, Arista's motion *in limine* No. 5 is GRANTED IN PART and DENIED IN PART.

## II.     CISCO'S MOTIONS *IN LIMINE*

### A.     Cisco's Motion *in Limine* No. 1 to exclude evidence and arguments related to "Industry Standard."  GRANTED IN PART and DENIED IN PART.

Cisco moves to exclude Arista's evidence and arguments regarding the use of "industry standard," "*de facto* industry standard," "informal industry standard," "attributes of a standard," or industry adoption of a "common" CLI through attorney argument and expert or lay opinions.  MIL No. 1 at 1–3, ECF 284.  First, Cisco argues that the Court precluded Arista from addressing "*de facto* industry standard" in the CLI case and that Arista has already agreed not to proffer expert opinion "whether Cisco's CLI is a 'standard,' *de facto* or otherwise." *Id.* at 2–3.  Second, Cisco contends that language such as "informal industry standard" and "common" CLI is prejudicial and thus should be excluded for the same reasons why "*de facto* industry standard" is not allowed.  *Id.* at 3.

In response, Arista acknowledges that it has agreed that its experts will not opine whether

United States District Court
Northern District of California

the CLI is a "*de facto* industry standard." Opp'n No. 1 at 1, ECF 315. However, Arista argues that the remainder of Cisco's motion should be denied because it seeks to preclude both lay and expert testimony concerning Cisco's marketing of the CLI as an "industry standard," including as a "*de facto* industry standard," and how industry participants perceived and reacted to that marketing. *Id.* Arista further contends that lay testimony on "industry standards" is admissible because such evidence is relevant to whether Cisco's CLI conduct constituted the "open early" behavior. *Id.* at 2. Finally, Arista asserts that testimony about "common" CLI usage should be allowed because the Court's *Daubert* Order permits Arista's expert Dr. Black to "opine on the common or frequent use of CLI by others in the industry based on his analysis of evidence." *Id.* at 3 (citing "*Daubert* Order," ECF 303). In Arista's view, there is no risk of prejudice resulting from the use of the word "common." *Id.* at 4.

Most of the issues presented in Cisco's motion have been previously addressed by the Court's June 1, 2018 *Daubert* Order. As such, the Court GRANTS the motion as set forth in the *Daubert* Order. Arista's experts will not be allowed to testify that Cisco's CLI is a *de facto* standard, informal industry standard, or has attributes of a standard. On the issue of the experts' use of the word "common," the *Daubert* Order states that Dr. Black "will be permitted to opine on the common or frequent use of CLI by others in the industry based on his analysis of evidence as permitted in the CLI *Daubert* Motions Order." *Daubert* Order 3. Therefore, Arista's experts— Dr. Black and Dr. Scott Morton—may reference the "common" use of CLI to the extent that their opinions are tied to Dr. Black's analysis of evidence or other fact evidence. Arista's experts will be precluded from opining that the *industry adopted* a "common" CLI because such an opinion raises the same concerns that accompanies the use "*de facto* standard" as a term of art. Attorney argument and lay opinions will likewise be restricted (or permitted) on the use of the terms discussed above.

On the other hand, the Court DENIES the motion as to attorney argument and evidence regarding Cisco's marketing campaign and the effect of the campaign on market participants. In fact, Cisco states that it does not seek to exclude testimony regarding third-party adoption and overlap of specific commands or Cisco documents describing its CLI as a "standard." MIL No. 1

United States District Court
Northern District of California

13

1    at 4 n.1.  Accordingly, reference to the phrase such as "*de facto* industry standard" and "common

2    CLI" as used in marketing will be allowed.

3         As set forth above, Cisco's motion *in limine* No. 1 is GRANTED IN PART and DENIED

4    IN PART.

5    **B.    Cisco's Motion *in Limine* No. 2 to enforce Judge van Keulen's November 21, 2017
          order.  GRANTED IN PART and DENIED IN PART.**

6         Cisco seeks to enforce Judge van Keulen's November 21, 2017 order.  MIL No. 2 at 1,

7    ECF 285.  Cisco argues that Arista has refused to provide details on allegedly lost sales due to

8    Cisco's conduct.  *Id.*  According to Cisco, Arista's responses to interrogatories merely listed

9    names of customers without supporting facts except as to three sales: a 2016 sale to ███████, a

10   2016 sale to ██████, and a 2015 sale to the ██████████████.  *Id.* at 1–3.

11   Cisco states that it moved to compel Arista to identify any alleged lost sales.  Judge van Keulen

12   ruled as the following:

13        The parties agree Arista has identified customers that it believes
          represent sales lost to Cisco and provided a witness on lost sales. . . .

14        Arista will either be limited by its discovery responses or Arista may
          make a witness available in response to Cisco's Rule 30(b)(6) Topic

15        No. 1.  In the first instance, Arista will be unable to refer to any
          additional customers or any specific circumstances that it . . . has not

16        already identified.

17   November 21, 2017 Order, ECF 177.  On this basis, Cisco argues that Arista should be precluded

18   from offering evidence regarding "any specific circumstances" of alleged lost sales other than the

19   three sales regarding Wells Fargo, Sutter Health, and the California Department of Justice.  *Id.* at

20   4.  Cisco further contends that undisclosed evidence of lost sales should be excluded under Fed. R.

21   Civ. P. 37(c) due to Arista's purported failure to supplement its responses.  *Id.* at 4–5.

22        Arista counters that Judge van Keulen's order permits Arista to refer to previously

23   identified information in its interrogatory responses.  Opp'n No. 2 at 1–2, ECF 316.  Specifically,

24   Arista argues that its response to Interrogatory No. 6 includes "(1) a list of customers contacted by

25   Cisco and Cisco individuals knowledgeable about those contacts, (2) a list of customers for which

26   Arista 'believes it lost sales to Cisco as a result of Cisco's strategy of intimidation,' (3) three pages

27   of supporting documents identified by production number pursuant to Rule 33(d), and (4) the

28

14

1 testimony of individuals with relevant knowledge regarding lost sales." *Id.* at 2.  In Arista's view,

2 it has adequately identified documents pursuant to Fed. R. Civ. P. 33(d).  *Id.*  Arista further asserts

3 that Cisco had the opportunity to depose Arista's Chief Customer Officer, Anshul Sadana, who

4 allegedly has knowledge about Arista's lost sales.  *Id.* at 3–4.  According to Arista, Cisco did ask

5 questions about lost sales and thus Cisco has no basis to preclude Arista from presenting evidence

6 on that issue.  *Id.*

7      The Court GRANTS Cisco's motion to enforce Judge van Keulen's November 21, 2017

8 order.  However, the Court DENIES Cisco's request to limit Arista to offering evidence only on

9 three sales regarding ████████████████████████████████████.  Judge

10 van Keulen's order is not so limited.  As Arista argues, it has disclosed abundant information

11 through its interrogatory responses.  Thus, Arista will not be limited to only the three sales

12 referenced by Cisco.

13      To be clear, Arista will be allowed to introduce evidence of lost sales so long as that

14 evidence was previously disclosed to Cisco.  In other words, the Court will allow Arista to proffer

15 evidence of lost sales based on its disclosed exhibits, companies, and circumstances that were

16 discussed in the responses to interrogatories.  Arista will not be allowed to rely on an undisclosed

17 exhibit or explanation untied to the disclosed information.  The Court cannot make a more specific

18 determination at this time.

19      During the hearing, the parties disputed whether Arista provided a Rule 30(b)(6) witness

20 on its alleged lost sales.  Arista admitted that it did not designate a witness on Cisco's Topic No. 1

21 which covered "[a]ll sales of Ethernet switches that Arista lost to Cisco" (Ex. 10 to Leary Decl. in

22 Supp. of Cisco's MILs, ECF 289-10).  However, the parties acknowledged that Cisco deposed Mr.

23 Sadana on another topic presumably related to Arista's lost sales.  Cisco stated that Mr. Sadana

24 was designated as a witness for an initial list of customers.  However, according to Cisco, Arista

25 provided a new list of customers prior to the deposition date but did not designate Mr. Sadana as a

26 witness.

27      As stated during the hearing, Mr. Sadana will be allowed to provide testimony regarding

28 customers for whom he was specifically designated as a witness.  But Mr. Sadana will be

United States District Court
Northern District of California

precluded from testifying about customers for whom he was not designated unless Cisco questioned him about those customers at his deposition.  In other words, if Cisco asked about certain customers during Mr. Sadana's deposition, he may testify about those customers.

For the foregoing reasons, Cisco's motion *in limine* No. 2 is GRANTED IN PART and DENIED IN PART.

### C.   Cisco's Motion *in Limine* No. 3 to exclude untimely disclosed evidence of harm to innovation.  DENIED.

Cisco moves to exclude any argument, evidence, or testimony regarding Arista's purported harm to innovation as being untimely disclosed.  MIL No. 3 at 1, ECF 286.  According to Cisco, after fact discovery closed, Arista disclosed for the first time that Arista suffered harm to its ability to innovate new technology.  *Id.* at 2.  Specifically, Cisco points to Dr. Scott Morton's report that contains opinions on harm to innovation based on a conversation with Arista's Chief Customer Officer, Anshul Sadana.  *Id.*  Cisco also asserts that it served interrogatories that sought information on Arista's injury but Arista failed to disclose any evidence of harm based on delayed innovation.  *Id.* at 2–3.  In Cisco's view, one of Arista's interrogatory responses mentions slowed innovation but only as boilerplate assertions.  *Id.* at 3.  Cisco concludes that Arista's evidence on purported harm to innovation should be excluded pursuant to Fed. R. Civ. P. 37(c).  *Id.* at 4.

Arista counters that it timely responded to Cisco's Interrogatory No. 16, expressly disclosed harm to innovation, and produced supporting evidence including corporate testimony on the issue.  Opp'n No. 3 at 1, ECF 317.  Specifically, Arista argues that its November 9, 2017 supplemental response to Cisco's Interrogatory No. 16 incorporates Arista's responses to Interrogatories Nos. 1, 2, 5, 6, 12, 13, 15, 17, 22, 24, and 25, and that those responses disclosed "Arista's contention that Cisco's conduct harmed innovation."  *Id.*  For example, Arista points out that it responded by stating that the "purpose and effect of [Cisco's] anticompetitive scheme was to, at the least, slow the adoption of superior technology by customers, and thus constrain Arista's ability to expand and further innovate for all of its current customers and prospective customers."  Ex. K to Nelson Decl. in Opp'n to Cisco's MILs ("11/9/2017 Arista's Responses to Cisco's Fifth Set of Interrogatories") 11, ECF 314-13.  Moreover, Arista contends that its responses disclose

Arista's lost sales as a basis of its theory of harm to innovation and that it produced financial statements showing billing and revenue information.  Arista also states that its Rule 30(b)(6) witness testified about Arista's long-term R&D spending, which is a factor considered by Dr. Scott Morton.  *Id.* at 3.

The Court DENIES this motion.  The Court is satisfied that Arista adequately disclosed its contentions based on harm to innovation and lost sales through its responses to interrogatories. Arista also timely produced supporting documents including its financial statements that purportedly demonstrate decrease in R&D expenditures.  In addition, Arista's Rule 30(b)(6) witness, Ita Brennan, testified about Arista's R&D expenditures.  *See, e.g.*, Ex. M to Nelson Decl. in Opp'n to Cisco's MILs at 221:19–222:11, ECF 314-13.  Such evidence presumably supports Dr. Scott Morton's opinion that "since R&D budgets are influenced by current sales, drops in sales can impact the absolute amount spent on R&D."  Ex. 14 to Nelson Decl. in Supp. of Arista's Mot. ¶ 247 ("Scott Morton Report"), ECF 210-21.

To the extent that Mr. Sadana's statements serve as a basis for Dr. Scott Morton's opinions regarding harm to innovation, the Court will allow a further deposition of Mr. Sadana. Specifically, if Cisco wishes, it may depose Mr. Sadana on issues regarding (██████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████.  Cisco objects to those factual underpinnings in Dr. Scott Morton's report, and any prejudice will be mitigated by allowing a further deposition of Mr. Scott Morton's report, and any prejudice will be mitigated by allowing a further deposition of Mr. Sadana.  Arista shall make Mr. Sadana available for deposition at a reasonable time.  The deposition shall be limited to two hours unless the parties agree otherwise.

Accordingly, Cisco's motion *in limine* No. 3 is DENIED.

### D.   Cisco's Motion *in Limine* No. 4 to exclude irrelevant and inflammatory documents.   GRANTED IN PART and DENIED IN PART.

Cisco seeks to preclude Arista from introducing certain allegedly irrelevant and inflammatory documents.   MIL No. 4 at 1, ECF 300.  First, Cisco argues that documents suggesting that Cisco sought to ████████████████ lack material relevance and would unfairly

prejudice Cisco by inviting mini-trials about the meaning of that phrase.  *Id.* at 1–2 (citing Exs. 15–16 to Leary Decl. in Supp. of Cisco's MILs, ECF 301-20 to -22).  Second, Cisco asserts that internal Cisco competitive team presentations that include a graphic of Arista's CEO's face on a bullseye is irrelevant to Arista's claims but would unduly influence the jury's decision whether Cisco engaged in anticompetitive conduct.  *Id.* at 2–3 (citing Ex. 18 to Leary Decl. in Supp. of Cisco's MILs, ECF 301-23).  In Cisco's view, the ███████████ and "bullseye" documents are unnecessarily cumulative evidence of Cisco's intent to compete.  *Id.* at 3.  Third, Cisco contends that a draft of Cisco's ███████████ competitive playbook should be excluded as irrelevant, severely prejudicial, and inadmissible.  *Id.* at 3–4 (citing Ex. 19 to Leary Decl. in Supp. of Cisco's MILs, ECF 301-24).  According to Cisco, the draft competitive playbook at issue was created by an independent contractor and the passages with "inflammatory headings" were removed by Cisco before circulation to its sales teams and thus introduction of that document would be prejudicial.  *Id.* at 4.  Cisco further asserts that Arista lacks foundation to introduce the document given that "[n]ot a single deposed Cisco witness remembered the particular draft, much less testified that sales personnel received it."  *Id.*  As a final point, Cisco argues that the document is inadmissible hearsay because it is an out-of-court statement which Arista intends to offer to prove that ██████████████████████████████[1]  *Id.* at 5 (alteration in original).

Arista responds that the ███████████ and "bullseye" documents are relevant to Cisco's "extreme efforts in 2013 and 2014 to slow Arista's erosion of Cisco's dominant market share."  Opp'n No. 4 at 5, ECF 318.  Arista asserts that the failure of those efforts set the stage for Cisco's decision to implement the purported anticompetitive scheme.  *Id.*  In Arista's view, Cisco may dispute whether it ███████████████████ during trial and would not be prejudiced.  *Id.*

Regarding Cisco's competitive playbook, Arista argues that the document is highly probative on whether Cisco engaged in the alleged litigation FUD campaign.  Opp'n No. 4 at 1.

---

[1] FUD is an acronym for "fear, uncertainty and doubt."

1    Moreover, Arista contends that evidence shows that Cisco circulated the draft competitive

2    playbook to Cisco employees who were working to compete with Arista.  *Id.* at 2–3.  Arista

3    further challenges Cisco's contention that the competitive playbook  was prepared by an

4    independent contractor and that the document was merely a draft.  *See id.* at 3–4.

5         The Court first addresses Cisco's ▮▮▮▮▮▮▮▮▮▮ documents.  While those documents

6    have little probative value, the documents pose a risk of prejudice to Cisco because they suggest

7    potential unlawful conduct by Cisco and would require wasteful time for Cisco to explain the

8    meaning of the documents to the jury.  The Court therefore GRANTS Cisco's request to exclude

9    the ▮▮▮▮▮▮▮▮ documents pursuant to Rule 403.

10        Regarding Cisco's internal "bullseye" documents,[2] the Court finds that such documents are

11   relevant to Cisco's efforts to compete in the market and constitute evidence of normal competitive

12   business practice.  In fact, the parties do not dispute that the documents were created during the

13   procompetitive period.  Because the "bullseye" graphic is part of normal business practice, the

14   Court concludes that Cisco will not be unfairly prejudiced.  The Court therefore DENIES Cisco's

15   request to exclude the "bullseye" documents.

16        The Court turns to the draft competitive playbook that Cisco seeks to exclude.  That

17   document is highly probative because it pertains to Arista's theory that Cisco engaged in a ▮▮▮▮

18   ▮▮▮▮▮ FUD-based campaign.  Moreover, the Court rejects Cisco's argument that the document

19   cannot be authenticated.  Arista has submitted evidence that supports its contention that the draft

20   competitive playbook at issue was circulated to Cisco employees, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See, e.g.*, Ex. AA to Nelson Decl. in

22   Opp'n to Cisco's MILs, ECF 314-31.  For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24   *Id.*  According to Arista, that email attaches the draft competitive playbook.  Opp'n No. 4 at 3

25   (citing Ex. AA to Nelson Decl. in Opp'n to Cisco's MILs; Ex. BB to Nelson Decl. in Opp'n to

26   Cisco's MILs, ECF 314-32).  As such, the draft competitive playbook was circulated among Cisco

27   ─────────────────

28   [2] It is unclear whether there is more than one "bullseye" document.  The Court assumes that there
     are multiple internal Cisco presentations containing the "bullseye" graphic.

United States District Court
Northern District of California

1  employees and thus the Court does not see why that document cannot be authenticated.  In

2  addition, the Court is unpersuaded by Cisco's arguments that the draft competitive playbook is

3  inadmissible as hearsay.  To the extent that the document has been circulated to Cisco's

4  employees, it may be admissible as a party admission under Fed. R. Evid. 801(d)(2).  Further, the

5  document may be offered to explain the conduct of Cisco employees who engaged in sales efforts

6  directed to promoting Cisco products over Arista products.

7      Based on the above reasons, the Court finds that Cisco has not shown prejudice that

8  substantially outweighs the high probative value of the draft competitive playbook.  As mentioned

9  above, Arista has submitted evidence supporting its contention that the document was circulated ██

10 ██████████████████████████████████████████████████████  The fact that

11 this evidence inconveniences Cisco does not mean it unfairly prejudices Cisco.  Insofar as Cisco

12 claims that the draft competitive playbook was circulated to only a small number of employees,

13 that issue is more properly addressed by witness testimony.  The Court therefore DENIES Cisco's

14 request to exclude its ██████████ competitive playbook.

15     Accordingly, Cisco's motion *in limine* No. 4 is GRANTED IN PART and DENIED IN

16 PART.

**E.  Cisco's Motion *in Limine* No. 5 to exclude hearsay concerning Arista sales allegedly lost due to Cisco's CLI conduct.  GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.**

19     Cisco moves to preclude hearsay evidence of sales allegedly lost as a result of Cisco's

20 CLI-related conduct.  MIL No. 5 at 1, ECF 288.  According to Cisco, Arista failed to pursue third-

21 party discovery from customers to support the allegation that customers decided not to buy

22 Arista's Ethernet switches due to Cisco's CLI-related conduct.  *Id.*  Instead, Cisco argues, Arista

23 attempts to prove its allegations through statements made by customers to Arista's employees.  *Id.*

24 at 1–3.  Cisco asserts that the customer statements are inadmissible hearsay.  Moreover, Cisco

25 contends that Arista's trial witnesses rely on statements from less senior employees and that such

26 statements constitute "hearsay stacked on hearsay."  *Id.* at 4.  Cisco also claims that some

27 customer statements often restate what Cisco allegedly said and thus those statements are "hearsay

28 within hearsay."  *Id.*  In Cisco's view, no hearsay exception applies and the hearsay statements are

United States District Court
Northern District of California

untrustworthy and prejudicial.  *Id.* at 4–5.

Arista disagrees.  First, insofar as expert opinions are concerned, Arista argues that Dr. Scott Morton may rely on hearsay evidence and testify about such evidence in explaining the bases for her opinion.  Opp'n No. 5 at 1–3, ECF 319.  Second, Arista asserts that customer statements to Arista's employees regarding reasons for not purchasing Arista's switches fall within the "state of mind" hearsay exception.  *Id.* at 3–5 (citing Fed. R. Evid. 803(3)).  Arista further contends that the Court should deny the motion to the extent that Cisco seeks to preclude evidence not specifically identified in the motion.  *Id.* at 5.

Regarding the issue of expert opinions, the Court agrees with Arista's arguments that experts may generally rely on hearsay evidence.  Indeed, "[a]n expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his expert opinion, Fed. R. Evid. 703, but not as general proof of the truth of the underlying matter, Fed. R. Evid. 802."  *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261–62 (9th Cir. 1984) (quoting *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir.1983)).  Therefore, Dr. Scott Morton may base her opinion on evidence that is otherwise inadmissible.  However, the Court reminds the parties that experts may not merely act as a conduit for inadmissible evidence.  *See Williams v. Illinois*, 567 U.S. 50, 80 (2012).  The Court will consider giving a limiting instruction to the jury when this issue arises during trial.  Cisco's motion as to Arista's expert opinions is DENIED.

The Court next turns to Arista's arguments based on the "state of the mind" exception regarding customer statements.  After the hearing, Arista filed a motion for leave to respond to cases raised by Cisco for the first time (ECF 336) and thereafter Cisco filed a motion for leave to respond to Arista's supplemental briefing (ECF 338).  The Court GRANTS the parties' motions at ECF 336 and 338.

As stated during the hearing, the Court generally DEFERS deciding whether Arista's customer statements fall under a hearsay exception because a ruling would require evaluation of the specific content of a statement and the reason why Arista intends to offer that statement.  Nevertheless, the Court provides guidance to the parties as follows.

Federal Rule of Evidence 803(3) excepts from the hearsay rule "[a] statement of the

United States District Court
Northern District of California

declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but *not including a statement of memory or belief to prove the fact remembered or believed. . . .*" Fed. R. Evid. 803(3) (emphasis added). The limiting language "not including a statement of memory or belief to prove the fact remembered or believed" bars "statements as to why [the declarant] held the particular state of mind, or what he might have believed that would have induced the state of mind" when the "statements are offered to prove the truth of the fact underlying the memory or belief." *United States v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987) (quoting *United States v. Cohen*, 631 F.2d 1223, 1225 (5th Cir. 1980)). This limiting language "is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind." Fed. R. Evid. 803 advisory committee notes (citing *Shepard v. United States*, 290 U.S. 96 (1933)). In addition, the "state of mind" exception requires that: (1) the statement was made contemporaneously with the mental state to be proven; (2) circumstances do not suggest a motive for the declarant to fabricate or misrepresent his or her thoughts; and (3) the declarant's state of mind is relevant to an issue in the case." *Consol. Credit Agency v. Equifax, Inc.*, No. CV-03-1229, 2005 WL 6218038, at *2 (C.D. Cal. Jan. 26, 2005).

Against this backdrop, the Court rejects Arista's arguments that Cisco's motion should be outright denied on the grounds that Arisa relies on the "state of mind" exception. To be sure, statements revealing a customer's state of mind may be relevant to the "customer's reason for refusing to deal with a supplier or dealer." *Id.* However, the fact that statements may be relevant is insufficient to qualify as an exception under Rule 803(3). Indeed, *Consolidated Credit* recognized that although customers' statements regarding their reasons for not dealing "are admissible for the limited purpose of proving customer motive, but *not as evidence of facts recited as furnishing the motives* in antitrust cases." *Id.* (emphasis added).

Here, Arista appears to represent that it will show lost sales by proffering customer statements that reveal their "motive" for rejecting Arista's switches due to "litigation concerns." Opp'n No. 5 at 3–5. For example, those litigation concerns may be based on Cisco's alleged

United States District Court
Northern District of California

communications with customers about the parties' litigation.  *See, e.g.*, Ex. 31 to Leary Decl. in Supp. of Cisco's MILs at 251:19–252:1, ECF 301-36 (Mr. Anshul Sadana testifying that a customer's procurement team informed him that the "Cisco team had sent them updates on the lawsuit").  To the extent that Arista intends to offer evidence to prove that it had lost sales based on customer statements regarding Cisco's conduct, Arista would be providing the statements to show that Cisco indeed contacted and influenced the customer.  In this situation, Arista would be necessarily offering the statements to prove the fact of Cisco's communication as the truth because it must prove that the lost sale was *caused* by Cisco.  In other words, the customer's statements as to why it had the motive to reject Arista's product would be offered for the truth of the fact that Cisco's conduct affected the customer.  Thus, the customer's statements would constitute "a statement of memory or belief to prove the fact remembered or believed."  Rule 803(3).  Those statements therefore would not fall within the Rule 803(3) exception and, therefore, would be excluded.  *See Emmert*, 829 F.2d at 810.

For the above reasons, the Court is unpersuaded by Arista's arguments to the extent that it is asking for a blanket hearsay exception for all customers' statements regarding the reasons why they decided not to deal with Arista.  In fact, the cases cited by Arista support the conclusion that there is no such blanket hearsay exception.  For example, the court in *Consolidated Credit* recognized that "statements of reasons for refusing to do business" may be excluded when those "statements were proffered for the truth of the matter."  2005 WL 6218038, at *2 (characterizing *Buckeye Powder Co. v. E.I. Dupont de Nemours Powder Co.*, 248 U.S. 55, 65 (1918)).  Moreover, the court did not make a determination without "knowing the precise statements plaintiff seeks to have admitted."  *Id.*  As another example, the court in *Oracle* indicated that out-of-court statements could not be "offered for the truth of the matter being asserted — that [the customer] in fact cancelled its support contract with Oracle *for a particular reason*."  *Oracle U.S.A. v. SAP AG*, 2012 U.S. Dist. LEXIS 107147, *24 (N.D. Cal. July 31, 2012) (emphasis added).

As mentioned above, the Court defers ruling on specific customer statements because it cannot evaluate the content of those statements without knowing the context and Arista's purpose for introducing them.  The Court will consider three factors "contemporaneousness, chance for

reflection, and relevance" to evaluate whether Arista's customer statements are admissible under Rule 803(3), *Emmert*, 829 F.2d at 810, and ensure that the statements are limited to permissible state of mind evidence, not crossing over to impermissible evidence of why the customer held the belief.

As to Cisco's second issue, the Court agrees with Cisco's argument that "hearsay within hearsay" is not allowed.  Arista has not shown that there is an exception allowing multiple layers of hearsay.  Therefore, Arista's witnesses such as Mr. Sadana may not testify about statements that other Arista's sales representatives heard from customers.  Accordingly, the Court GRANTS Cisco's motion as to Arista's employees' testimony on what he or she heard from other employees regarding customer statements.

Base on the foregoing reasons, Cisco's motion *in limine* No. 5 is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

## III.    OTHER ORDERS

Following discussion with the parties at the June 14, 2018 hearing, the Court orders as follows:

(1) Arista shall submit a profer regarding its evidence on apportionment of damages **on or before June 28, 2018**.

(2) Cisco may file a response **on or before July 6, 2018**.

(3) The parties shall indicate in their papers whether a telephonic or in-person hearing is necessary **on July 13, 2018 at 10:00 a.m.**  The Court expects the parties to meet and confer on the apportionment of damages issue.

**IT IS SO ORDERED.**

Dated: June 20, 2018

BETH LABSON FREEMAN
United States District Judge