United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ARISTA NETWORKS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS INC.,<br><br>Defendant. | Case No.  16-cv-00923-BLF<br><br>**ORDER APPROVING JOINT PRETRIAL STATEMENT AS MODIFIED BY COURT**<br><br>[Re: ECF 298] |

On May 31, 2018, the parties filed a Joint Pretrial Statement (ECF 298), which is attached to this order.  The parties submit several requests concerning trial management.  Section VI, Joint Pretrial Statement.  First, the parties seek to "confirm that witnesses who are called live will be allowed to complete all testimony in one sitting, including a scope of cross-examination (or redirect, as the case may be) that exceeds the scope of the initial examination."  *Id.* at section VI.A.  This request is granted.

Second, the parties seek permission to submit digital versions of all exhibits, rather than hard copies, in advance of trial as well as permission to electronically lodge certain Appendix Materials to their Joint Pretrial Statement.  *Id.* at sections VI.B and C.  The Court previously granted those requests in a prior order.  ECF 327.

The Joint Pretrial Statement also raises several disputes.  In sections VII.A and B, the parties represent that issues regarding "the effect of summary judgment of objective reasonableness" and "the effect of the CLI litigation" are additional disputed issues.  The Court does not rule on those issues by approving their Joint Pretrial Statement in this order.  As stated during the Final Pretrial Conference, the Court defers those issues to the Jury Instructions Conference scheduled for Friday, August 3, 2018.

In section VII.C, the parties disagree on the need for exchanging demonstratives and illustratives for opening statements.  During the Final Pretrial Conference, the Court ruled that the parties shall exchange demonstrative and illustratives for opening statements by 5:00 p.m. on Sunday, August 5, 2018.  The parties are not permitted to modify, add to, update, or otherwise alter their demonstratives and illustratives after the exchange, unless the changes are to address objections.

In section VII.D, the parties raise evidentiary objections to certain exhibits.  As indicated during the Final Pretrial Conference, the Court defers ruling on evidentiary objections to trial.

The parties are further reminded that the Court set the following time limits during the Final Pretrial Conference:

(1) The parties shall have up to twenty (20) hours per side during trial.  The 20 hours include the time for direct and cross-examination.

(2) The parties shall have up to forty five (45) minutes for opening statements and ninety (90) minutes for closing arguments per side.

Subject to the above, the Court approves the parties' stipulated Joint Pretrial Statement (ECF 298).

**IT IS SO ORDERED.**

Dated:  July 31, 2018

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

Matthew D. Powers (SBN 104795)
matthew.powers@tensegritylawgroup.com
William Nelson (SBN 196091)
william.nelson@tensegritylawgroup.com
Robert Gerrity (SBN 268084)
robert.gerrity@tensegritylawgroup.com
Natasha Saputo (SBN 291151)
natasha.saputo@tensegritylawgroup.com
Samantha Jameson (SBN 296411)
samantha.jameson@tensegritylawgroup.com
Jennifer Robinson (SBN 270954)
jen.robinson@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone: (650) 802-6000
Fax: (650) 802-6001

John M. Desmarais (*admitted pro hac vice*)
jdesmarais@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

Sarah E. Piepmeier (SBN 227094)
sarah.piepmeier@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Attorneys for Plaintiff*
*Arista Networks, Inc.*

*Attorneys for Defendant*
*Cisco Systems, Inc.*

[*Additional Counsel Listed in Signature Block*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ARISTA NETWORKS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CISCO SYSTEMS, INC. <br><br> Defendant. | Case No. 5:16-cv-00923-BLF <br><br> **JOIET PRETRIAL STATEMENT AND** ~~**PROPOSED**~~ **ORDER** <br><br> Judge: Hon. Beth Labson Freeman <br> Pretrial Conference: June 14, 2018 <br> Date Filed: May 31, 2018 <br> Trial Date: August 6, 2018 |

I.      THE ACTION ............................................................................................ 1

        A.      The Parties............................................................................................ 1

        B.      Substance of the Action ...................................................................... 1

                1.      Arista's Position........................................................................ 1

                2.      Cisco's Position ........................................................................ 3

        C.      Relief Sought........................................................................................ 9

                1.      Arista ........................................................................................ 9

                2.      Cisco .......................................................................................... 9

        D.      Federal Jurisdiction and Venue ........................................................ 10

II.     FACTUAL BASIS OF THE ACTION .................................................... 10

        A.      Undisputed Facts ................................................................................ 10

        B.      Disputed Facts .................................................................................... 11

III.    DISPUTED LEGAL ISSUES .................................................................. 13

        A.      Arista's Disputed Legal Issues:......................................................... 15

        B.      Cisco's Disputed Legal Issues: ......................................................... 15

IV.     ESTIMATE OF TRIAL TIME ............................................................... 16

V.      TRIAL ALTERNATIVES AND OPTIONS ........................................... 16

        A.      Settlement Discussions ...................................................................... 16

        B.      Amendments or Dismissals................................................................ 16

        C.      Bifurcation or Separate Trial of Issues ............................................. 16

VI.     TRIAL MANAGEMENT ........................................................................ 16

        A.      Witnesses ............................................................................................ 16

        B.      Exhibits .............................................................................................. 16

        C.      Lodging of Certain Appendix Materials with the Court Electronically ............. 17

        D.      Trial Logistics .................................................................................... 17

        E.      Appendices to Pretrial Order............................................................. 21

VII.    ADDITIONAL ISSUES TO BE RESOLVED BY THE COURT ................................... 21

A.      The Effect Of Summary Judgment Of Objective Reasonableness......................21

    1.      Cisco's Position: .....................................................................................21

    2.      Arista's Position:.....................................................................................22

B.      The Effect Of The CLI Litigation .......................................................22

    1.      Cisco's Position ......................................................................................22

    2.      Arista's Position......................................................................................24

C.      Exchange Of Demonstratives/Illustratives ........................................25

    1.      Cisco's Position ......................................................................................25

    2.      Arista's Position......................................................................................26

D.      Cisco's Objections To Certain Exhibits .............................................26

    1.      Arista's Position......................................................................................26

    2.      Cisco's Position ......................................................................................29

VIII.   BINDING EFFECT OF THE JOINT PRETRIAL STATEMENT AND ORDER.........30

Pursuant to the Court's Standing Order re Final Pretrial Conference—Jury Trial, the parties submit the following Joint Pretrial Statement and Proposed Order.

## I.   THE ACTION

### A.   The Parties

The parties to this action are Cisco Systems, Inc. ("Cisco"), a California corporation with its principal place of business at 170 West Tasman Drive, San Jose, California 95134, and Arista Networks, Inc. ("Arista"), a Delaware corporation with its principal place of business at 5453 Great America Parkway, Santa Clara, California 95054.

### B.   Substance of the Action

#### 1.   Arista's Position

Arista asserts claims against Cisco for unlawful monopolization and attempted monopolization under Section 2 of the Sherman Act and violation of Section 17200 of the California Business and Professional Code.

To prove unlawful monopolization, Arista must establish by a preponderance of the evidence that: (1) Cisco had monopoly power in the Ethernet Switch Markets and/or High-Speed Ethernet Switch Markets during the past decade; (2) the Ethernet Switches over which Cisco had monopoly power were goods in interstate or foreign commerce; (3) Cisco knowingly acquired or maintained its monopoly power; (4) Cisco acquired or maintained its monopoly power through anticompetitive conduct; and (5) Arista's business was injured as a result of Cisco's actions. *See Modern Federal Jury Instructions-Civil*, Chapter 80, Instruction 80-3.

To prove attempted monopolization, Arista must establish by a preponderance of the evidence that: (1) Cisco had a specific intent to achieve monopoly in the Ethernet Switch Markets and/or High-Speed Ethernet Switch Markets; (2) the Ethernet Switches over which Cisco attempted to acquire a monopoly were goods in interstate or foreign commerce; (3) Cisco engaged in anticompetitive conduct to accomplish its intended goal of achieving a monopoly; (4) there was a dangerous probability that Cisco would sooner or later achieve its goal of a monopoly; and (5) Arista's business was injured as a result of Cisco's actions. *See Modern Federal Jury Instructions-Civil*, Chapter 80, Instruction 80-4.

To prove a violation of Section 17200 of the California Business and Professional Code, Arista must establish that Cisco's alleged conduct is "unfair" in that it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). The Court recognized that because the three prongs of Section 17200 are disjunctive, the "unfair" prong sweeps more broadly than the federal antitrust laws. *See id.* at 180 ("a practice [can be] prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." (internal quotation and citation omitted)). The Court suggested that federal case law interpreting Section 5 of the FTC Act would provide guidance. *See id*. at 185-87.

Arista contends that Cisco's "open early, closed late" conduct in connection with its Command Line Interface ("CLI"), used to configure and manage networking equipment including Ethernet Switches, constitutes an antitrust violation. Specifically, Arista contends that Cisco has monopoly power in the U.S. and global markets for Ethernet switches. Ethernet switches are devices that control data flow within a network to enable network components to communicate efficiently. They are the fundamental building blocks of modern local area networks, deployed in virtually every modern business and government office. Arista contends that Cisco has monopoly power in the U.S. and global markets for Ethernet switches. For at least fifteen years, Cisco's share in the Ethernet switch market has substantially exceeded 50% (and has often exceeded 70%). Arista also asserts that Cisco has monopoly power in the U.S. and global markets for high-speed Ethernet switches. Cisco maintained a market share of roughly 70% or more in the United States high-speed Ethernet switch market and at least 65% in the global high-speed Ethernet switch market until 2013, when Cisco's share began to diminish, due to the competitive threat posed by Arista.

Arista contends that for over a decade, Cisco carried out a policy that encouraged customers and competitors to invest in and adopt Cisco's CLI. This policy was effectuated, among other ways, through Cisco's representations that its CLI was an "industry standard," and without independent assertion of copyright or other intellectual property rights in the CLI commands.

Cisco represented to customers that their investments in learning the commands and writing scripts that incorporate them would not lock the customers into using Cisco's products exclusively (or at all) because the same commands could be used to operate other vendors' switches.  Arista further contends that for over a decade, Cisco knew that its representations also had the effect of inducing other Ethernet switch competitors to use these common CLI commands.  Arista contends that despite knowing for years that Arista and other competitors had adopted Cisco-like CLIs, Cisco prior to 2014 made no statements that asserted intellectual property or other proprietary rights in the Cisco CLI itself.

However, Arista contends that in 2014, Cisco reversed its long-standing policy that the Cisco CLI was open and nonproprietary.  Arista, like many other Cisco competitors, had adopted many of Cisco's CLI commands in reliance on Cisco's encouragement and its inaction in the face of widespread industry adoption of a common CLI.  Nevertheless, Cisco closed the CLI by declaring, including in a series of blog posts directed to the industry, including directly to customers, that its CLI was reserved exclusively for use with Cisco's products.  Cisco further acted to close the CLI by filing a copyright infringement lawsuit against Arista based on Arista's use of 514 CLI commands Cisco contended were its copyrighted intellectual property.  Arista contends that it has been harmed as a result of Cisco's actions, including lost switch sales.  Arista further contends that Cisco's actions caused competitive harm by, *inter alia,* reducing consumer welfare and decreasing innovation in the relevant markets.

### 2.   Cisco's Position

Cisco asserts that Arista's claims of unlawful monopolization and attempted monopolization under Section 2 of the Sherman Act and violation of Section 17200 of the California Business and Professional Code are unsupported by law or fact.

Arista cannot sustain its allegations of unlawful monopolization or attempted monopolization for at least the following reasons:  First, Arista cannot show that Cisco possessed or maintained monopoly power in any relevant antitrust market during the time period of the alleged anticompetitive conduct.  Arista cannot show that Cisco had "the power to control prices or exclude competition." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391

1  (1956); *Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1426 (9th Cir. 1993).   Arista

2  cannot show that its alleged "Ethernet Switch" market and "High-Speed Ethernet Switch Markets"

3  are relevant antitrust markets.   *See Olin Corp. v. F.T.C.*, 986 F.2d 1295, 1298 (9th Cir. 1993).

4  Arista's identification of the relevant time period for proving monopoly power—"during the past

5  decade"—is inconsistent with the time period of the alleged anticompetitive conduct, which ran

6  from December 5, 2014, until December 14, 2016, and unsupported by law.   *See McQuillan v.*

7  *Sorbothane, Inc.*, 907 F.2d 154, 1990 WL 92599, at *7 (9th Cir. 1990), *rev'd on other grounds*

8  *sub nom.*, *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993).   Arista cannot show that Cisco

9  possessed a dominant market share in any relevant market during the relevant time period or show

10  the existence of significant barriers to entry and expansion or that competitors lack the capacity to

11  increase output.   *See Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202, 1206

12  (9th Cir. 1997) ("*Kodak II*"); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d

13  1264, 1274 (9th Cir. 1975).   For similar reasons, Arista cannot show that Cisco had a dangerous

14  probability of attaining monopoly power in any relevant market.   *Rebel Oil Co., Inc. v. Atl.*

15  *Richfield Co.*, 51 F.3d 1421, 1441 (9th Cir. 1995).   Nor can Arista show that Cisco had specific

16  intent to monopolize the alleged relevant markets, as opposed to an intent to compete vigorously.

17  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993).

18      Second, Arista cannot show that Cisco maintained or acquired monopoly power through

19  anticompetitive conduct.   Arista cannot show that Cisco's conduct is anticompetitive or that any

20  anticompetitive effects outweigh the procompetitive effects.   *See Eastman Kodak Co. v. Image*

21  *Tech. Servs., Inc.*, 504 U.S. 451, 479 (1992).   Nor can Arista show that Cisco's conduct has

22  anticompetitive results, in contrast to the "higher service prices and market foreclosure" resulting

23  from the conduct at issue in *Kodak.   Id.* at 478.   Cisco's assertion of its intellectual property rights

24  is procompetitive.   *Kodak II*, 125 F.3d at 1218.   Furthermore, Arista cannot show that delay in

25  filing suit or the popularity of Cisco's command line interface vitiated Cisco's intellectual property

26  rights.   *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1975-76 (2014); *Oracle Am.,*

27  *Inc. v. Google LLC*, 886 F.3d 1179, 1206-07 (Fed. Cir. 2018).   Nor can Arista show that Cisco

28  abandoned or licensed its intellectual property rights.   Furthermore, Arista cannot show that any

refusal by Cisco to deal with Arista, with regard to licensing its intellectual property or otherwise, was anticompetitive, in contrast to the conduct addressed in *Kodak* and *Kodak II*. *See Kodak II*, 125 F.3d at 1209-11. Arista cannot show that Cisco unilaterally terminated a voluntary and profitable course of dealing with Arista, refused to license its intellectual property to Arista even if compensated at a retail price, or previously licensed the intellectual property at issue in the market. *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409-411 (2004); *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1131- 34 (9th Cir. 2004). Furthermore, Cisco's desire to preclude others, including Arista, from infringing its intellectual property rights is a presumptively valid business reason for its assertion of its intellectual property rights, and Arista cannot overcome that presumption. *See Kodak II*, 125 F.3d at 1218.

Third, Arista's claim is barred by the *Noerr-Pennington* doctrine and the First Amendment of the United States Constitution. (*See* Dkt. 230 ¶ 134); *see also Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–63 (1993). The Court has found that Cisco's CLI lawsuit was objectively reasonable, and thus, it is "irrefutably" protected by the *Noerr–Pennington* doctrine. *Prof'l Real Estate Inv'rs, Inc.*, 508 U.S. at 62–63. And conduct incidental to Cisco's objectively-reasonable petition, such as Cisco's communications related to the litigation, is also protected under the *Noerr-Pennington* doctrine. *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006). Arista cannot show *Noerr-Pennington* is inapplicable. Arista's allegation of an anticompetitive scheme has not been recognized as an exception to *Noerr-Pennington* by the Ninth Circuit or the Supreme Court. *See Funai Elec. Co. v. LSI Corp.*, No. 16-cv-01210-BLF, 2017 WL 1133513, at *5–6 (N.D. Cal. Mar. 27, 2017). In any case, Arista cannot show the existence of any such anticompetitive scheme or any action that is both not protected by *Noerr* and independently caused anticompetitive harm. *See id.* at *6.

Fourth, Arista cannot show that it suffered injury as a result of Cisco's alleged anticompetitive conduct. (*See* Dkt. 230 ¶¶ 112-125); *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 372 (9th Cir. 2003); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991,

1    1003 (9th Cir. 2008).  Arista cannot show that its business was harmed or that any alleged harm

2    resulted from the allegedly anticompetitive conduct, as opposed to lawful conduct, such as

3    increased competition, decreased prices, new products, or co-pending ITC actions.  *See City of*

4    *Vernon v. Southern California Edison Co.*, 955 F.2d 1361, 1373 (9th Cir. 1992).

5    Fifth, Arista cannot show that Cisco's conduct harmed competition or harmed customers.

6    (*See* Dkt. 230 ¶¶ 112-125); *see also Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145,

7    1158 (9th Cir. 2003).  Arista cannot show that competition generally or any competitor other than

8    Arista itself was affected by Cisco's alleged conduct.  *Id.*  Arista cannot show that competition has

9    been harmed at all.  *See, e.g., K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123,

10   128 (2d Cir. 1995).  Furthermore, Arista cannot show that Cisco's public comments had more than

11   a *de minimis* effect on competition.  *See Am. Prof'l Testing Serv., Inc. v. Harcourt Brace*

12   *Jovanovich Legal & Prof'l Pub'ns, Inc.*, 108 F.3d 1147, 1151–52 (9th Cir. 1997).  Arista cannot

13   overcome the presumption that Cisco's public statements are *de minimis* because Arista has failed

14   to prove that Cisco's "representations were [1] clearly false, [2] clearly material, [3] clearly likely

15   to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5]

16   continued for prolonged periods, and [6] not readily susceptible of neutralization or other offset

17   by rivals." *Id.* at 1152.  Arista cannot show a "significant and more-than-temporary harmful effects

18   on *competition* (and not merely upon a competitor or customer) before these practices can rise to

19   the level of exclusionary conduct." *Id.* at 1151.

20   For the same reasons, Arista cannot sustain its allegations of any violation of Section 17200

21   of the California Business and Professional Code.  (Dkt. 230 ¶¶ 126-133); *see also City of San*

22   *Jose v. Office of the Comm'r of Baseball*, 776 F.3d 686, 692 (9th Cir. 2015).

23   Cisco disputes Arista's contention that Cisco engaged in any "open early, closed late"

24   conduct in connection with its CLI and disputes Arista's contention that Cisco's conduct—

25   asserting its intellectual property in the face of Arista's undisputed copying—constituted an

26   antitrust violation.  First, Cisco disputes Arista's contention that Cisco has monopoly power in any

27   relevant antitrust market.  Cisco contends that all Ethernet switches is not a viable market because,

28   for example, low-speed and high-speed Ethernet switches are not interchangeable.  Cisco also

contends that Arista's alleged high-speed Ethernet switch market is not a viable market because, for example, campus and data center Ethernet switches are not interchangeable.  Cisco contends that Arista did not compete for sales of low-speed or campus Ethernet switches.  Furthermore, even if the alleged markets were viable, which they are not, Cisco does not have monopoly power in any of those markets.  Cisco contends that the market for Ethernet switches is highly competitive, characterized by expanding competitors, new entrants—including Arista—and no significant barriers to entry.  Cisco contends that competition has been increasing at least since 2010, five years before the alleged anticompetitive conduct began and that Cisco does not possess a dominant share in any alleged market.

Cisco disputes Arista's contention that it "carried out a policy that encouraged customers and competitors to invest in and adopt Cisco's CLI."  Cisco contends that no such policy existed, that Cisco never encouraged competitors to invest in and adopt Cisco's CLI, and that Cisco did not represent to customers that "the same commands could be used to operate other vendors' switches."  Cisco contends that the marketing material describing its CLI as "industry standard" described the quality of its CLI, namely, that it was the "gold standard," and was neither an invitation to competitors to copy its CLI nor recognized as such.  Cisco contends that no standard setting organization has promulgated a standard for Ethernet switch CLI and that it never offered to license its CLI to competitors, much less offered to let them use it for free.  To the contrary, Cisco contends that it sued a competitor, Huawei, for copying its CLI and that the lawsuit resulted in a settlement in which Huawei agreed to change the copied CLI—a result that Cisco publicly announced in 2004, along with the statement that "protecting our intellectual property is of paramount importance to Cisco."  Cisco reasserted its willingness to protect its intellectual property rights in its command line interface in 2012, in another public announcement. Furthermore, Cisco contends that competitors, including, for instance, Juniper, deliberately chose not to copy Cisco's CLI in light of Cisco's intellectual property rights.  Indeed, during the relevant time period, only one of Cisco's four largest switch competitors—Arista—used a copy of Cisco's CLI; the other three—Huawei, Juniper, and white box—did not use Cisco's CLI.  Cisco further denies that there is any recognized set of "common" CLI commands that are free to use.  Cisco

contends that Arista cannot define any set of "common" or "Cisco-like" CLI commands. Furthermore, Cisco contends that Arista—particularly the former Cisco employees—knew that Cisco had intellectual property rights in its CLI.

Cisco disputes Arista's contention that it "reversed its long-standing policy that the Cisco CLI was open and nonproprietary." As discussed above, no such policy existed. And Cisco contends that Arista was not "like many other competitors." To the contrary, Cisco contends that—despite knowing that Cisco had intellectual property in its CLI—Arista decided to copy Cisco's CLI, along with numerous patented inventions, user manuals, and other features of Cisco products and business structures. Arista has, in the words of the U.S. International Trade Commission, a "corporate culture of copying," and engaged in egregious copying of Cisco's intellectual property and, as a result, Cisco sued Arista on numerous grounds in continuation of its longstanding policy of protecting its intellectual property. Furthermore, the Court has found that Cisco's CLI lawsuit was objectively reasonable and substantially justified, and the jury found that Arista had infringed Cisco's interfaces.

Cisco further disputes that the CLI was "closed" as a result of the litigation or Cisco's blog posts. Cisco contends that neither Arista nor any competitor changed their CLI as a result of Cisco's actions and that Arista continues to use Cisco's CLI to this day. Cisco contends that any sales that Arista lost during the period of alleged anticompetitive conduct are the result of other factors, including for example increased competition, aggressive pricing, new Cisco products that outperform Arista's older products, and the ITC actions that resulted in substantial uncertainty, patent infringement findings, import bans, relocation of Arista manufacturing to the United States, and redesign of all Arista products. Cisco further disputes that its conduct reduced consumer welfare or decreased innovation in the relevant markets. To the contrary, Cisco contends that protecting intellectual property motivates innovation and that preventing intellectual property holders from asserting their intellectual property rights would foster inefficiency and hamper innovation. Furthermore, Cisco contends that customer decisions to not purchase products developed with copied intellectual property—if any such customer existed—does not represent reduced consumer welfare.

## C.    Relief Sought

### 1.    Arista

For violation of Section 2 of the Sherman Act (15 U.S.C. § 2), and Section 17200 of the California Business and Professional Code, Arista seeks the following relief:

- An Order directing the termination of the anticompetitive conduct and injunctive relief that restores competition to the markets at issue, including but not limited to restoring Arista to the position it would have occupied before Cisco's unlawful exclusionary conduct;

- Treble damages (including lost profits), in an amount to be determined at trial;

- Arista's costs of suit herein, including its attorneys' fees actually incurred;

- Punitive damages;

- Restitutionary relief; and

- Such other relief as may be proper and just.

### 2.    Cisco

Cisco seeks the following relief:

- Judgment that the alleged conduct does not and has not violated Section 2 of Sherman Act or Section 17200 of the California Business and Professional Code, including:

  - Judgment that Arista has failed to prove a relevant antitrust market;

  - Judgment that Arista's claims are barred, in whole or in part, because Cisco did not have monopoly power in any relevant market or a dangerous probability of attaining monopoly power in any relevant market;

  - Judgment that Cisco's conduct was not anticompetitive;

  - Judgment that Cisco's conduct is protected under the *Noerr-Pennington* doctrine;

  - Judgement that Cisco's conduct had no more than a *de minimis* effect on competition under *Harcourt Brace*;

  - Judgment that Arista's claims are barred, in whole or in part, because the alleged conduct was lawful, justified, constitutes *bona fide* business

competition, was procompetitive, and was carried out in furtherance of legitimate business interests;

- o Judgment that Arista has not suffered injury-in-fact or antitrust injury as a result of Cisco's alleged conduct; and

- o Judgment that Cisco's alleged conduct has not resulted in harm to competition or to customers;

- Dismissal with prejudice of Arista's Complaint in its entirety;

- Denial of all remedies sought by Arista and judgment that Arista takes nothing;

- Judgment that Cisco is entitled to costs and expenses in this action, including reasonable attorneys' fees;

- Such additional relief as this Court deems just and proper.

### D.  Federal Jurisdiction and Venue

This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337.  Venue properly lies in this District under 28 U.S.C. § 1391.  Jurisdiction and venue are not disputed.

## II.  FACTUAL BASIS OF THE ACTION

### A.  Undisputed Facts

1. Cisco is a California corporation with its principal place of business at 170 West Tasman Drive, San Jose, California 95134.

2. Cisco was founded in 1984.

3. Arista is a Delaware corporation with its principal place of business at 5453 Great America Parkway, Santa Clara, California 95054.

4. Arista was founded in 2004.

5. On December 5, 2014, Cisco filed a copyright and patent lawsuit against Arista relating to Cisco's CLI, *Cisco Systems, Inc., v. Arista Networks, Inc.*, 5:14-cv-5344-BLF (the "CLI lawsuit").

6. On December 5, 2014, Cisco filed a patent infringement lawsuit against Arista on twelve Cisco patents relating to various technologies, *Cisco Systems, Inc. v. Arista Networks, Inc.*, 4:14-cv-05343-JSW (the "patent lawsuit").

7.  Arista never changed its command line interface in response to the CLI litigation.

8.  No standards setting organization has ratified an industry standard for Ethernet switch CLI.

**B.  Disputed Facts**

The parties list, below, "disputed facts" proposed by either side. The parties do not necessarily agree (and each side reserves its right to dispute) that all such "disputes" are relevant to this case, have been preserved and/or that such disputes should be submitted to the jury.

**<u>Arista's Proposed Disputed Facts</u>**

1.  Whether Cisco has monopoly power in the Ethernet Switch and High-speed Ethernet switch markets.

2.  Whether Cisco has a dangerous probability of obtaining monopoly power in the Ethernet Switch and High-speed Ethernet switch markets.

3.  Whether and to what extent networking industry participants have adopted a common or "Cisco-like" CLI.

4.  Whether and to what extent Cisco was aware that other industry participants have adopted a common or "Cisco-like" CLI.

5.  Whether and to what extent Cisco encouraged other industry participants to adopt a common or "Cisco-like" CLI.

6.  Whether Cisco failed in its efforts to compete on the merits with Arista.

7.  Whether in 2014, Cisco changed its policy regarding industry adoption of a common or "Cisco-like" CLI and declaring to the industry that its CLI is no longer open, and is its proprietary intellectual property.

8.  Whether and to what extent Cisco's conduct related to the CLI harmed Arista.

9.  Whether and to what extent Cisco's conduct related to the CLI harmed competition.

10. If Cisco is determined to have violated the antitrust laws, the amount of damages to which Arista is entitled.

11. If Cisco is determined to have violated the antitrust laws, the amount of punitive damages to be awarded.

**Cisco's Proposed Disputed Facts**

1. Whether all U.S. Ethernet switches are a relevant antitrust market.

2. Whether all worldwide Ethernet switches are a relevant antitrust market.

3. Whether all U.S. high-speed Ethernet switches are a relevant antitrust market.

4. Whether all worldwide high-speed Ethernet switches are a relevant antitrust market.

5. Whether Cisco has monopoly power in any relevant antitrust market.

6. Whether Cisco has a dangerous probability of obtaining monopoly power in any relevant antitrust market.

7. What commands are included in the alleged "common" CLI.

8. What commands are included in the alleged "Cisco-like" CLI.

9. Whether and to what extent Cisco encouraged other industry participants to adopt a "common" or "Cisco-like" CLI.

10. Whether and to what extent other industry participants use a CLI different than Cisco's CLI.

11. Whether the copyrighted Cisco CLI commands asserted in the CLI lawsuit are part of the alleged "common" or "Cisco-like" CLI.

12. Whether Cisco ever had a policy regarding industry adoption of its CLI.

13. Whether Cisco previously enforced its intellectual property rights in its CLI.

14. Whether Arista, its officers, directors, or employees, knew or should have known that Cisco previously enforced its intellectual property rights in its CLI.

15. Whether Cisco ever told the industry its CLI was "open" or free to use.

16. Whether and to what extent Cisco's communications to the industry and to customers were incidental to litigation.

17. Whether and to what extent the alleged "common" or "Cisco-like" CLI is "closed" or no longer available for use.

18. Whether and to what extent Arista lost sales for any other reason than the alleged conduct related to the CLI.

19. Whether and to what extent Cisco's communications to the industry and to its customers affected competition.

20. Whether Cisco's communications to the industry and to its customers were clearly false.

21. Whether Cisco's communications to the industry and to its customers were clearly material to any decision to buy Arista switches.

22. Whether Cisco's communications to the industry and to its customers were clearly likely to induce reasonable reliance.

23. Whether Cisco's communications to the industry and to its customers were made to buyers without knowledge of the subject matter of those communications.

24. Whether Cisco's communications to the industry and to its customers were continued for prolonged periods.

25. Whether Cisco's communications to the industry and to its customers were not readily susceptible of neutralization or other offset by rivals.

## III.   DISPUTED LEGAL ISSUES

The parties list, below, "disputed legal issues" proposed by either side. The parties do not necessarily agree (and each side reserves its right to dispute) that all such "disputes" are relevant to this case and/or have been preserved.

1. Whether Arista has met its evidentiary burden of proving unlawful monopolization under Section 2 of the Sherman Act.

2. Whether Arista has met its evidentiary burden of proving attempted monopolization under Section 2 of the Sherman Act.

3. Whether Arista has met its evidentiary burden of proving violation of Section 17200 of the California Business and Professional Code.

4. Whether Arista has met its evidentiary burden of proving any relevant market.

5. Whether Arista has met its evidentiary burden of proving that Cisco had monopoly power in any relevant market.

6. Whether Arista has met its evidentiary burden of proving that Cisco had a dangerous probability of attaining monopoly power in any relevant market.

7. Whether Arista has met its evidentiary burden of proving that Cisco had intent to monopolize any relevant market.

8. Whether Arista has met its evidentiary burden of proving antitrust injury.

9. Whether Arista has met its evidentiary burden of proving damages caused by anticompetitive conduct.

10. Whether Arista has met its evidentiary burden of proving harm to competition.

11. Whether Arista has met its evidentiary burden to show an anticompetitive policy reversal, i.e. a "closed" CLI, under *Kodak*.

12. Whether Arista has met its evidentiary burden to show an anticompetitive refusal to deal under *Trinko*.

13. Whether Arista's claims are barred by the four-year statute of limitations set forth in the U.S. antitrust laws (15 U.S.C. § 15b) and California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17208).

14. Whether Arista's claims are barred in whole or in part because the alleged conduct was lawful, justified, constitutes bona fide business competition, was pro-competitive, and was carried out in furtherance of legitimate business interests.

15. Whether Arista is entitled to treble damages if Cisco is found liable for an antitrust violation.

16. Whether Cisco is entitled to its costs of suit, including its attorneys' fees actually incurred, if Cisco is not found liable for an antitrust violation.

17. Whether Arista is entitled to its costs of suit, including its attorneys' fees actually incurred, if Cisco is found liable for an antitrust violation.

18. Whether Arista is entitled to a permanent injunction barring Cisco from

claiming intellectual property rights in a common CLI, if Cisco is found liable for an antitrust violation.

19. Whether Arista is precluded from contending in this litigation that it did not infringe Cisco's user interfaces, that it did not copy Cisco's CLI, that Cisco's CLI is not original, and that Cisco's CLI is not protectable.

20. The parties incorporate the disputed legal issues raised in their respective motions *in limine* now pending before the Court.

21. The parties also incorporate the disputed facts listed in Section II(b) above to the extent that they involve disputed legal issues and/or mixed questions of law and fact.

A.    **Arista's Disputed Legal Issues:**

22. Whether, given the Court's determination that Arista's claims are not barred in whole or in part by the *Noerr-Pennington* doctrine and the First Amendment of the United States Constitution, any question remains for the Court regarding the applicability of *Noerr-Pennington*.

23. Whether, given the Court's determination that *Harcourt Brace* is inapplicable to Cisco's alleged anticompetitive conduct, Arista must rebut the presumptively *de minimis* impact of Cisco's alleged communications under the *Harcourt Brace* standard.

24. Whether, given Cisco's failure to assert an affirmative defense based on any purported statute of limitations issue, it is barred from raising such a defense now.

B.    **Cisco's Disputed Legal Issues:**

25. Whether Arista's claims are barred in whole or in part by the *Noerr-Pennington* doctrine and the First Amendment of the United States Constitution.

26. Whether Arista has met its evidentiary burden to rebut the presumptively *de minimis* impact of Cisco's alleged communications under the *Harcourt Brace* standard.

## IV.    ESTIMATE OF TRIAL TIME

The parties estimate that trial time will be between 20-22 hours per side.

## V.    TRIAL ALTERNATIVES AND OPTIONS

### A.    Settlement Discussions

The parties have engaged in settlement discussions, but have been unable to reach an agreement.

### B.    Amendments or Dismissals

Neither Arista nor Cisco has any proposed amendments to its pleadings.  Neither Arista nor Cisco is seeking to dismiss any claims.

### C.    Bifurcation or Separate Trial of Issues

The parties agree that that neither bifurcation nor separate trial of any issues is feasible or desired.

## VI.    TRIAL MANAGEMENT

### A.    Witnesses

The parties wish to confirm that witnesses who are called live will be allowed to complete all testimony in one sitting, including a scope of cross-examination (or redirect, as the case may be) that exceeds the scope of the initial examination.

The parties also agree that the parties will not play or read designated deposition or other prior testimony for witnesses who are called live at trial (other than for use as impeachment).

### B.    Exhibits

The parties respectfully request certain amendments to the Court's Standing Order re Final Pretrial Conference—Jury Trial regarding trial exhibits.

First, the Court's Standing Order specifies that the exhibits should be pre-marked for identification with numbers by means of exhibit tags affixed to the back of the last page of each exhibit, and that the plaintiff's tags should be yellow and the defendant's tags shall be green.

Second, the Court's Standing Order specifies that the parties shall submit two complete copies of the original set of exhibits for use by the Judge and chambers staff.  If it is acceptable to the Court, the parties request permission to submit digital versions of all exhibits, rather than hard

copies, in advance of trial.  To the extent either party intends to use any exhibit at trial, the party seeking to use the exhibit will provide 2 complete copies of the exhibit for use by the Judge and chambers staff.  As specified by the Court's Standing Order, such copies will be in three-ring binders with the exhibits separated by tabs denoting the exhibit numbers. These exhibit binders will be provided prior to the relevant witness's testimony.

Finally, the parties will lodge with their exhibit lists a key indicating the exhibits that both parties have placed on their lists.  The parties hereby reserve all objections to exhibits, whether or not they appear as duplicates on the duplicate key.

### C.   Lodging of Certain Appendix Materials with the Court Electronically

Part C of the Court's Standing Order re Final Pretrial Conference—Jury Trial provides for the filing of certain materials as appendices to this Joint Pretrial Statement.  Because of the considerable size of the following items, and the confidential nature of many of these documents, the parties will deliver a USB flash drive containing the following materials, with the Court's chambers copy of this Joint Pretrial Statement:

- Expert witness CVs and expert reports
- Deposition transcripts
- Discovery response excerpts

If the Court would prefer that these materials be filed in the public docket (subject to any motion to seal), or lodged with the Court in a different manner, the parties are happy to do so.

### D.   Trial Logistics

1.   The parties agree that a single version of duplicate exhibits (including both substantively identical documents produced by a party or parties under different production numbers and a single document marked in one or more depositions) may be used. The parties further agree that more legible copies of a marked deposition exhibit may be substituted for a marked deposition exhibit, and that the parties may affix the deposition exhibit number to the front of the more legible version of the document.

2.      Legible copies of documents may be offered and received into evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the copy in lieu of the original.

3.      Unless otherwise agreed to by the parties during trial, the following procedures shall apply to the identification of witnesses and exhibits for a party's direct examination prior to the witness's testimony and/or use of exhibits at trial, deposition or other prior testimony that will be played or read prior to reading or playing a video of the deposition or other prior testimony at trial (other than for impeachment of a witness), and demonstrative and illustrative exhibits that will be used at trial:

a)  The parties will identify specific witnesses that they intend to call on direct via email, and the order in which they will be called, by 7:00 p.m. Pacific Time two calendar days before the direct examination is expected to take place, including whether they will testify live or by deposition (e.g., if a party intends to call a witness on Monday, the witness must be disclosed to the other party by 7 p.m. on the preceding Saturday);

b)  By no later than 7:00 p.m. Pacific Time two calendar days before the offering party intends to offer an exhibit through that party's direct examination of a witness, the offering party will identify that exhibit and the intended sponsoring witness to the other party via email (e.g., if a party intends to call a witness on Monday, any exhibits intended to be offered through that witness must be disclosed to the other party by 7 p.m. on the preceding Saturday);

c)  By no later than 7:00 p.m. Pacific Time two calendar days before the offering party intends to read or play a video of a deposition or other prior testimony at trial (other than for impeachment of a witness), the offering party will provide to the other party via email a list of the specific lines and pages of each transcript (e.g., if a party intends to call a witness via prior testimony on Monday, the testimony must be disclosed to the other party by 7 p.m. on the preceding Saturday);

d)  By no later than 6:00 p.m. Pacific Time one calendar day before a witness is expected to testify using demonstrative or illustrative exhibits, the offering party shall provide a color

PDF or PowerPoint copy of any demonstrative and illustrative exhibits to be used for the first time in connection with the witness;

e)  By no later than 7:00 p.m. Pacific Time one calendar day before the witnesses are expected to first testify, the trial exhibits are expected to first be used, or the depositions are expected to be first read or played, the party receiving the identifications of the witnesses, exhibits, or deposition designations shall inform the offering party of any objections, and specifically in response to deposition designations, the party receiving the deposition designations shall inform the offering party of any specific pages and lines from depositions to counter-designate (e.g., for a witness disclosed to testify on Monday, objections and counter-designations must be disclosed to the offering party by 7 p.m. on the preceding Sunday);

f)  By no later than 9:00 p.m. Pacific Time (or such later time agreed upon by the parties) one calendar day before the witnesses are expected to first testify, the exhibits (or demonstratives/illustratives) are expected to first be used, or the depositions are expected to first be read or played, the parties shall meet and confer to resolve any objections, including objections to counter-designations and/or counter-counter designations (e.g., for a witness disclosed to testify on Monday, the meet and confer shall take place by 9 p.m. on the preceding Sunday);

g)  The parties agree that any unobjected-to exhibits on their final exhibit lists may be used during opening statements;

h)  The parties shall identify by email any objected-to trial exhibits on their final exhibit lists that they intend to use in their respective opening statements by 2:00 pm Pacific Time one calendar day before opening statements.  The parties shall make objections, if any, to the disclosed trial exhibits by 5:00 p.m. Pacific Time that day and shall promptly meet and confer on any such objections by 6:00 p.m. Pacific Time that day.  The parties dispute whether demonstratives to be used in their respective opening statements shall be disclosed, as addressed in § VII(C) below;

i)   Any continuing disputes shall be raised with the Court as appropriate before each trial day commences.

4.   The above notice provisions shall not apply to any illustrative or demonstrative exhibits created live at trial while the witness is testifying. The notice provisions of the immediately preceding paragraph shall also not apply to an illustrative or demonstrative exhibit prepared in advance of the witness examination that consists only of the enlargement, highlighting, ballooning, or excerption of trial exhibits, demonstratives, or testimony. However, the underlying trial exhibit, demonstrative, or testimony itself must still be disclosed in accord with the above notice provisions and no such enlargement, highlighting, ballooning, or exception shall be permitted to be shown to the jury until after the underlying trial exhibits have been admitted, the underlying demonstratives have been used, or the underlying testimony has been heard by the jury.

5.   The parties agree that any deposition testimony to be used at trial may be used whether or not transcripts of such deposition have been signed and filed.

6.   The parties have exchanged designations, counter-designations, and objections for depositions and other prior testimony. The parties have met and conferred on the objections to these designations and counter-designations. If a party presents a witness by deposition or other prior testimony at trial, the party offering the testimony will play or read both the designated portion of the testimony and the opposing party's counter-designations, omitting (as agreed upon in advance by the parties) objections or colloquy where appropriate. The time for such designations shall be allocated to each party accordingly (time for counter-designations charged to the opposing party).

7.   By 9:00 a.m. Pacific Time two calendar days before it intends to rest its case-in-chief, the resting party shall give the other party notice of its intention to rest (e.g. a party intending to rest its case-in-chief on Friday shall give the other party notice of its intention to rest by 9 a.m. on Wednesday), so that the parties have an opportunity to comply with the other notice provisions of this Order.

8.   At the conclusion of each party's case-in-chief and/or at the close of evidence, any party may present to the Court any motions for judgment as a matter of law (JMOL). The parties

agree that identification of issues for JMOL shall suffice to preserve those issues post trial pursuant to Rule 50(b). The party making any such motion has the option, but is not required, to file written motions within 48 hours of making such a motion in the courtroom.

**E.    Appendices to Pretrial Order**

| | |
|---|---|
| Appendix A | Arista's Witness List |
| Appendix B | Cisco's Witness List |
| Appendix C | Arista's Exhibit List |
| Appendix D | Cisco's Exhibit List |
| Appendix E | Duplicates Exhibit List |
| Appendix F | Arista's Deposition Designations |
| Appendix G | Cisco's Deposition Designations |
| Appendix H | Arista's Discovery Designations (Responses themselves to be lodged separately with the court by USB) |
| Appendix I | Cisco's Discovery Designations (Responses themselves to be lodged separately with the court by USB) |

**VII.    ADDITIONAL ISSUES TO BE RESOLVED BY THE COURT**

**A.    The Effect Of Summary Judgment Of Objective Reasonableness**

**1.    Cisco's Position**

At summary judgment, Arista took the position that "[o]ur theory has never been that the [CLI] litigation was a sham," (Apr. 19, 2018, Hr'g Tr. at 31:11-12), and the Court granted summary judgment in Cisco's favor that "the CLI lawsuit was objectively reasonable."  (Dkt. 270 at 16.) Furthermore, at the *Daubert* hearing, the Court told Cisco that "you will be able to tell the jury that the Court has determined that the litigation ... was substantially justified."  (Dkt. 280, May 10, 2018, Hr'g Tr. at 33:16-20.)   Nonetheless, Arista now contends that this is a disputed issue,

specifically disputing that "the CLI litigation was objectively reasonable and substantially justified," one of the facts that Cisco identified as undisputed.  And, notwithstanding Arista's claims of irrelevance, the reasonableness of the CLI litigation is directly relevant to and supports Cisco's legitimate rationale for its conduct—Cisco's interest in protecting its intellectual property. Cisco therefore respectfully requests that the Court instruct the jury that the CLI litigation was objectively reasonable and substantially justified at the outset of this trial, in accordance with the summary judgment Order.

### 2.      Arista's Position

Cisco's proposed undisputed fact concerning the Court's summary judgment ruling that Cisco's "CLI lawsuit was objectively reasonable" has no relevance to any issue in dispute, and as such, Arista objects to presenting it as a party-binding undisputed fact in the Pretrial Statement. Arista has not contended that Cisco's CLI lawsuit was baseless; Arista instead contends that Cisco's filing and prosecution of the CLI lawsuit was an anticompetitive act that was part of, and in furtherance of, Cisco's closure of the CLI.  The fact that summary judgment has been granted on a contention Arista has not made does not make it relevant for presentation to the jury. It is not[1], and Cisco has articulated no reason why this finding is relevant to the claims at issue.

### B.      The Effect Of The CLI Litigation

#### 1.      Cisco's Position

During the CLI litigation, the Court engaged in analytic dissection of Cisco's copyright claims and found that the compilation of Cisco's multiword command line expressions is protectable, (Dkt.[2] 719 at 11), the compilation of modes and prompts is protectable, (*id.* at 14), the compilation of command responses is protectable, (*id.* at 15), and the collection of help

---

[1] Nor did the Court inform Cisco at the *Daubert* hearing that "you will be able to tell the jury that the Court has determined that the litigation ... was substantially justified," as Cisco contends.  In fact, the Court stated, "But you will be able to tell the jury that the Court has determined that the litigation ***I think there was language, I can't remember, I didn't say it wasn't sham, we won't use that word, but that it was*** substantially justified ***or something, I can't remember what you asked for.***"  (Dkt. 280, May 10, 2018, Hr'g Tr. at 33:16-20.)

[2] For this section, citations to the docket refer to the docket in the CLI litigation, *Cisco Systems, Inc. v. Arista Networks, Inc.*, No. 5:14-cv-5344-BLF (N.D. Cal.).

1   descriptions is protectable, (*id.* at 16), and therefore found that "each of Cisco's user interfaces,"

2   i.e. the command line interfaces, are thus "subject to protection as a compilation of those building

3   blocks." (*Id.* at 17-18.) Furthermore, the jury found that Cisco had "proven that Arista infringed

4   ... Cisco's user interfaces." (Dkt. 749 at 2.) Accordingly, the jury necessarily found that Cisco

5   owned a valid copyright in its user interfaces, i.e. its CLI, and that Arista copied original elements

6   of those user interfaces. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361

7   (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid

8   copyright, and (2) copying of constituent elements of the work that are original."). Cisco put forth

9   substantial evidence, including numerous admissions from Arista's witnesses, to Arista's copying

10  of Cisco's CLI. (*See, e.g.*, Testimony of Kenneth Duda, Arista CTO, Nov. 29, 2016, Tr. at 781:21-

11  23 ("Q. Isn't it true, sir, that Arista copied some of Cisco's CLI commands from Cisco sources

12  and put it into Arista's products? A. Yes, that's right.").) Accordingly, while Arista prevailed at

13  trial on its affirmative defense of scènes à faire, the CLI litigation finally resolved the question of

14  whether Cisco's CLI was original and protectable and also finally resolved the question of whether

15  Arista copied Cisco's CLI.[3]

16         Notwithstanding that result, Arista now contends that these are disputed issues and has

17  contested the originality and protectability of Cisco's CLI and also contested that it copied Cisco's

18  CLI. Arista appears intent on forcing the Court to retry the CLI litigation all over again in an

19  attempt to buttress its allegations of anticompetitive conduct. The Court should not permit Arista

20  to create a mini-trial on copyright infringement in the middle of an antitrust case. Those issues

21  were necessarily decided through the Court's analytic dissection order and the jury's infringement

22  finding in the CLI litigation, which involved the same parties and resulted in a judgment on the

23  merits, and thus Arista should be barred from relitigating them here. *See, e.g.*, *Reyn's Pasta Bella,*

24  *LLC v. Vista USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (barring antitrust plaintiffs from

25  contesting issues raised in a prior litigation under the doctrine of issue preclusion). Furthermore,

---

[3] Arista argues that Cisco mischaracterizes the jury verdict because it could have found just one command infringed. In fact, the jury was explicitly instructed to consider a compilation of protectable elements and not to consider single commands, or other unprotectable elements. (*See* Dec. 12, 2016, Trial Tr. at 2673:4-20.)

1   any attempt by Arista to relitigate the merits of the CLI litigation—which the Court has already

2   found to be objectively reasonable—will be highly prejudicial and an undue waste of time.

3   Accordingly, Cisco respectfully requests that the Court instruct the jury that Cisco's copyrights in

4   its CLI were original and protectable and that Arista copied Cisco's CLI.  At the very least, Arista

5   should be barred from contesting the originality and protectability of Cisco's CLI and that it copied

6   Cisco's CLI—disputes that it lost in the CLI litigation.[4]

### 2.   Arista's Position

8       Arista does not seek to relitigate the copyright trial in this case.  Instead, Cisco's

9   characterizations of the Court's analytic dissection order and the jury's verdict in the copyright

10  trial – a verdict whose components are currently under appeal by one or the other party – should

11  have no relevance to any issue in dispute.  As such, Arista objects to presenting them as party-

12  binding undisputed facts in the Pretrial Statement.  This case is not about the validity or

13  enforceability of Cisco's copyrights, or whether Arista infringed any Cisco copyrights, and Arista

14  will make no contentions as to either issue.  This case is not even about the fact that the jury found

15  Arista had no liability for copyright infringement – an undisputed fact that Cisco has ***rejected*** for

16  inclusion in the Pretrial Statement. [5]     Instead, Arista's claims concern Cisco's filing and

17  prosecution of its copyright claims as part of a broader set of anticompetitive conduct to close the

---

[4] Arista's claim that Cisco rejected including the outcome of the CLI litigation in the Pretrial Statement is inaccurate.  Cisco proposed an "undisputed fact" that described the results of the jury verdict—"On December 14, 2016, a jury returned a verdict in the CLI litigation finding that Arista infringed Cisco's copyrights in its CLI but that Arista prevailed on its affirmative defense of scènes à faire"—but Arista rejected the proposal and the parties could not reach an alternative agreement.  Arista's complaint regarding its PTAB proposal is similarly inaccurate:  the parties simply have not reached an agreement on an undisputed description of all of the judicial decisions—in the ITC, the PTAB, and the Federal Circuit—regarding the validity and infringement of the patents-in-suit and have omitted them.

[5] Similarly, while Cisco insists that the statement of undisputed facts include numerous details about the International Trade Commission's findings in Investigation No. 337-TA-945, it has rejected Arista's proposal to include the indisputable fact that "[t]he Patent Trial and Appeals Board, a division of the United States Patent Office, found both Cisco patents determined to be infringed in the '945 Investigation were invalid and obvious in light of the prior art.  The Federal Circuit Court of Appeals has affirmed the invalidity of one of those two patents, and Cisco continues to appeal the invalidity ruling as to the second patent."

---

CLI after years of encouraging its adoption in the industry.  Cisco has articulated no reason why its characterizations[6] of the jury verdict should be provided to the jury as an undisputed fact, and there is no reason to do so.

### C.    Exchange Of Demonstratives/Illustratives

#### 1.    Cisco's Position

The parties have agreed to identify the exhibits and demonstratives (or illustratives) that may be used with each witness in advance and to meet and confer so as to narrow any objections before submitting any disputes to the Court.  For opening argument, however, Arista contends that the parties should neither exchange demonstratives nor meet and confer to address objections; instead Arista contends that the parties should raise objections with the Court without making any attempt to resolve them in advance.  Cisco disagrees.  Arista's proposal is likely to result in unnecessary disputes before the Court and tactical disruption during opening argument, without any additional benefit.  Given the opportunity to meet and confer, the parties are likely to resolve most objections—particularly with regard to demonstratives, which can be amended to address objections raised sufficiently in advance of use.  And without prior disclosure and the opportunity to meet-and-confer, any disputes will necessarily be addressed on the fly without the opportunity to consider positions beforehand.  And Arista's claim that such an exchange prejudices Arista and benefits Cisco because of the order of the arguments has no merit.  Both parties will be able to see the other's demonstratives and will have equal insight into the other side's position.  Moreover, Cisco is willing to meet and confer with Arista in order to address Arista's concerns that there will be significant modifications of the demonstratives after exchange (as opposed to limited modifications in order to address objections from the other side).  Accordingly, Cisco respectfully requests that the Court order the parties to follow the same schedule for demonstrative exchanges

---

[6] Cisco has also mischaracterized the jury's verdict as: "Arista infringed Cisco's user interfaces and copied Cisco's CLI".  That is not what the jury found. The verdict form asks the copyright jury: "Has Cisco proven that Arista infringed **any** of Cisco's user interfaces?", to which the jury answered "yes." Dkt. No. 749 at 2.  That verdict demonstrates no more than that the jury found at least one CLI command, or perhaps some other element of the CLI, to be infringed; it does not demonstrate either that Arista infringed Cisco's "user interfaces" or that Arista "copied Cisco's CLI."

1   and meet and confers as for exhibits (set forth in section § VI(D)(3)(h) above).

2          **2.     Arista's Position**

3          Cisco's request for an advance exchange of opening statement illustrative slides at noon

4   the day before opening statements is not necessary and, indeed, courts often do not require it. The

5   parties have already agreed to a procedure to disclose and meet and confer about the exhibits to be

6   used in opening statements, and Arista has further proposed a procedure for both parties to resolve

7   objections to 50 high priority exhibits for each party in advance of trial (presumably, both parties

8   will use this process to pre-clear exhibits for use in their respective opening statements). The

9   combination of these procedures will already resolve (or frame for resolution by the Court)

10   objections to the use of any particular exhibits in opening statements in advance. As such, Cisco's

11   request that the parties additionally exchange opening illustratives by noon the day before opening

12   statements is a purely tactical one. Exchange of opening illustrative slides—particularly as far in

13   advance as Cisco suggests—inherently favors Cisco and prejudices Arista. Because Cisco, as the

14   defendant, presents its opening statement after Arista, an advance exchange of illustrative slides

15   gives Cisco the one-sided advantage of substantial additional time to adjust its opening statement

16   in response to Arista's illustratives. To mitigate this advantage to Cisco, if the Court does decide

17   to require an exchange of opening illustratives prior to the morning of opening statements, Arista

18   respectfully requests that the exchange occur later in the day (e.g. by 6 p.m.) and that the parties

19   not be permitted to modify, add to, update, or otherwise alter their illustratives after the exchange

20   (*i.e.,* that Cisco be prevented from altering its opening illustratives in response to what it sees from

21   Arista). This would still address Cisco's stated concern about "disruption" during oral argument

22   by allowing objections to be raised between the parties and, if necessary, with the Court prior to

23   opening statements.

24          **D.     Cisco's Objections To Certain Exhibits**

25          **1.     Arista's Position**

26          While Arista and Cisco generally agree that many objections the parties have lodged to

27   exhibits may properly be resolved once they are exchanged for use in connection with specific

28   witnesses pursuant to the procedure set out in Section VI(D), above, Arista contends that two

categories of objections lodged by Cisco to Arista's trial exhibits are improper, suitable for resolution now, and that resolution now will greatly streamline the parties' trial preparations going forward.[7] Arista respectfully asks to address these two categories of objections at the June 14 pretrial conference.

Arista also proposes below a procedure for the parties to resolve objections to 50 high priority exhibits from each party in advance of trial. Arista expects this "pre-clearance" procedure, together with the procedures in Section VI(D) for disclosing exhibits to be used with each witness and meeting and conferring about objections, can resolve the parties' remaining exhibit objections.

### a.    Arista's Position Re: Exhibits Previously Admitted and Used In The Copyright Trial

Cisco has lodged objections to at least 178 exhibits on Arista's list that were ***both previously admitted and used at trial in the copyright case.[8]*** Nor are Cisco's objections limited to FRE 402 or 403, which are at least conceivable objections to admitted exhibits from a trial with non-overlapping issues. Instead, Cisco has objected to each of these on other grounds, such as FRE 802 (hearsay) and FRE 901 (authenticity). For example, Cisco has objected to Arista's Exhibit No. 4183, a Cisco-produced presentation regarding competitive training to sell against Arista, on relevance, authenticity, and hearsay grounds. But Exhibit 4183 was admitted and used at the copyright trial which was admitted and used at the copyright trial as Exhibit No. 5297. For

---

[7] Cisco is incorrect that Arista delayed in raising these categories of exhibit objections. Arista stated precisely these same positions regarding Cisco's improper objections to these categories of exhibits (and the parties discussed both of these categories) during the parties' in person meet and confer regarding exhibits on May 24, 2018 (a week before the filing of this Joint Statement).

[8] Exhibit Nos. 0135, 0153, 0165, 0179, 0430, 0442, 0520, 0522, 0528, 0529, 0530, 0532, 0536, 0537, 0538, 0541, 0547, 0548, 0549, 0669, 0670, 0675, 0676, 0682, 0683, 0684, 0685, 0686, 0690, 0691, 0693, 0695, 0698, 0699, 0701, 0704, 0705, 0706, 0707, 0709, 0715, 0716, 0717, 0720, 0721, 0722, 0773, 0778, 0784, 0878, 0879, 0884, 0885, 0886, 0888, 0889, 0890, 0893, 0895, 0896, 0904, 0908, 0909, 0918, 0921, 0922, 0925, 0927, 0938, 0963, 0964, 0965, 0966, 0971, 0972, 0982, 0986, 0989, 0990, 4002, 4068, 4069, 4070, 4071, 4072, 4087, 4096, 4107, 4114, 4115, 4129, 4132, 4133, 4135, 4136, 4140, 4143, 4144, 4145, 4148, 4150, 4151, 4152, 4159, 4160, 4169, 4170, 4171, 4176, 4183, 4187, 4188, 4194, 4197, 4198, 4200, 4201, 4208, 4209, 4224, 4226, 4242, 4254, 4255, 4256, 4259, 4262, 4263, 4267, 4268, 4269, 4270, 4272, 4273, 4281, 4282, 4283, 4296, 4298, 4303, 4316, 4322, 4323, 4341, 4347, 4349, 4350, 4351, 4352, 4354, 4402, 4403, 4404, 4413, 4457, 4610, 4611, 4618, 4619, 4620, 4621, 4622, 4623, 4624, 4625, 4626, 4627, 4628, 4629, 4631, 4632, 4633, 4634, 4635, 4636, 4678, 4680, 4682

1   that document, and every other objected-to document previously used as an exhibit, it is

2   indisputably the case that counsel for Cisco either agreed to the admissibility of the exhibit, or

3   disputed it, and lost.  In either case, it is improper for Cisco to seek to relitigate admissibility of

4   these exhibits on grounds other than FRE 402 or 403.

**b.      Arista's Position Re: Cisco's Authenticity and Hearsay**

**Objections to Cisco's Own Business Records**

Despite the Court's instructions in its standing order regarding the final Pretrial Conference

that "the parties shall make every effort to stipulate to authenticity and foundation absent a

legitimate (not tactical) objection, Cisco has lodged authenticity and hearsay objections to at least

454 exhibits on Arista's list that are business records produced by Cisco from its own files during

discovery.[9]  For example, Cisco has objected on hearsay and authenticity grounds to Arista's

Exhibit 4266, a Cisco presentation regarding industry standards, that Cisco collected from its own

files and produced in discovery.  Such documents are indisputably business records that are not

hearsay under FRE 803(6), and the fact that it was collected from Cisco's own custodial files and

produced by Cisco in discovery is more than sufficient evidence of the document's authenticity.

Cisco's authenticity and hearsay objections to its own business records should be stricken.

**c.      Arista's Position Re: A Procedure For Addressing Objections**

**To High Priority Exhibits In Advance Of Trial**

To streamline the parties' trial preparations and to reduce the burden on the Court and on

the parties of addressing the remaining exhibit objections during trial, Arista respectfully proposes

the following procedure for the parties and the Court to resolve objections to 50 high-priority

exhibits per-side in advance of trial.

---

[9] This includes Exhibit Nos. 2, 7, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 31, 35, 36, 37, 38, 39, 40, 41, 43, 44, 45, 46, 47, 48, 49, 50, 51, 54, 55, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 100, 101, 102, 103, 105, 106, 111, 115, 118, 119, 122, 125, 126, 127, 128, 129, 132, 133, 134, 135, 136, 137, 141, 144, 152, 154, 155, 157, 159, 164, 166, 167, 168, 169, 170, 171, 172, 178, 179, 191, 194, 198, 199, 200, 203, 204, 205, 206, 207, 213, 214, 215, 216, 217, 218, 219, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 235, 243, 244, 250, 253, 258, 259, 260, 265, 303, 307, 307.4, 308, 310, 402, 403, 404, 405, 406, 407, 423, 426, 429, 433, 434.13, 438, 4121, 4122, 4123, and 4124

On July 23, 2018 (two weeks before trial), each party provides the opposing party with a list of 50 exhibits for which that party would like to resolve the opposing party's objections in advance of trial.

By July 26, 2018, the parties will meet and confer in a good faith attempt to resolve the objections for the listed high-priority exhibits.

On Friday, August 3 (the Friday before trial), or on such other day in advance of trial as would be convenient for the Court, the parties will present and argue the remaining objections for the listed high-priority exhibits to the Court for resolution.

### 2.     Cisco's Position

As an initial matter, Cisco objects to Arista's unwarranted delay in adding this issue to the pretrial order.  Arista waited until after the close of business on the East Coast to add this issue to pretrial order or to provide its full position to Cisco.  Arista's delay thus denied Cisco time to consider its proposals and precluded any meaningful meet-and-confer or discussion of the positions.  Accordingly, while Cisco provides a preliminary response here, Cisco expects to continue to investigate these issues.

### a.     Exhibits From The CLI Litigation:

Arista contends that all exhibits admitted in the CLI litigation should be admitted, subject only to relevance and Rule 403 objections, without regard to foundation, purpose, or sponsoring witness.  But Arista has not contended that it is offering these exhibits in the same way that they were used in the CLI litigation—indeed, as of 11 p.m. PT on the day that the pretrial order is due, Arista has yet to disclose the purpose and sponsoring witness for any of its exhibits.  Without some identification of how Arista intends to use those exhibits (or if it even has a witness to sponsor its exhibits), neither Cisco nor the Court can fairly evaluate whether these exhibits are admissible.  Nor is the fact that an exhibit admitted in one trial dispositive of whether it should be admitted in another—the context and purpose is highly relevant.  Cisco is, however, willing to review its objections and expects to continue to meet and confer with Arista regarding exhibits, a process that it expects to be more fruitful once Arista is prepared to discuss who will be sponsoring its exhibits and how they will be offered.

### b.   Exhibits Produced By Cisco:

Arista apparently contends that all documents that are produced by Cisco are business records and are "authentic"—apparently meaning that they are whatever Arista contends them to be.  But that simply is not the case.  Cisco produced an enormous number of documents in this case and the previous case using broad search terms, without attempting to limit its production to official business records.  Moreover, Cisco's search and production included emails—a process that inherently sweeps in emails from third-parties that include documents and statements that are definitively **not** Cisco business records.  Nor does the fact that a document was produced by Cisco force Cisco to acquiesce to Arista's characterization of the document—it may very well not be what Arista claims it is, and thus not be "authentic."  Indeed, Arista's example, Exhibit 4266, is case-in-point: the Cisco employee who was questioned about the document, Mr. Dan Lang, did not even recognize it, much less testify that it was a business record.  Arista thus does not show that the document was made contemporaneously by a knowledgeable person, made in the regular course of business, and kept in the regular course of business, thus cannot show it is admissible under Rule 803(6).  Contrary to Arista's argument, it is not indisputably a business record, nor are the other 453 exhibits Arista attempts to address in a single pass.  Accordingly, Arista's exhibits (and Cisco's objections) should be evaluated individually, based upon the foundation and specific facts regarding each exhibit.  And Cisco is prepared to continue to meet and confer to address Arista's exhibits and its objections on that basis.

### c.   Arista's Proposal Regarding "High Priority" Exhibits:

Cisco will consider Arista's proposal and expects to provide a more fulsome response once it has had an opportunity to evaluate it.

## VIII.   BINDING EFFECT OF THE JOINT PRETRIAL STATEMENT AND ORDER

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of trial of this action, unless modified to prevent manifest injustice.

1

2

3 Dated:  May 31, 2018                     Respectfully submitted,

4

5

6 */s/  John M. Desmarais*                  */s/        Matthew D. Powers*

7 John M. Desmarais (*admitted pro hac vice*)    MATTHEW D. POWERS (SBN 104795)
jdesmarais@desmaraisllp.com            WILLIAM NELSON (SBN 196091)
8 Paul A. Bondor (*admitted pro hac vice*)      ROBERT GERRITY (SBN 268084)
pbondor@desmaraisllp.com               NATASHA SAPUTO (SBN 291151)
9 Alan S. Kellman (*admitted pro hac vice*)     SAMANTHA JAMESON (Bar No. 296411)
akellman@desmaraisllp.com              JENNIFER ROBINSON (Bar No. 270954)
10 Andrew G. Heinz (*admitted pro hac vice*)     WANLI CHEN (Bar No. 300254)
aheinz@desmaraisllp.com                TENSEGRITY LAW GROUP, LLP
11 Tamir Packin (SBN 317249)              555 Twin Dolphin Drive, Suite 650
tpackin@desmaraisllp.com               Redwood Shores, CA 94065
12 Jeffrey S. Seddon II (SBN 297502)          Telephone:     (650) 802-6000
jseddon@desmaraisllp.com               Facsimile:     (650) 802-6001
13 Brian Leary (*admitted pro hac vice*)        Email:
bleary@desmaraisllp.com                matthew.powers@tensegritylawgroup.com
14 William D. Findlay (*admitted pro hac vice*)   william.nelson@tensegritylawgroup.com
wfindlay@desmaraisllp.com              robert.gerrity@tensegritylawgroup.com
15 Carson Olsheski (*admitted pro hac vice*)     natasha.saputo@tensegritylawgroup.com
colsheski@desmaraisllp.com             samantha.jameson@tensegritylawgroup.com
16 DESMARAIS LLP                       jen.robinson@tensegritylawgroup.com
230 Park Avenue                      wanli.chen@tensegritylawgroup.com
17 New York, NY 10169
Telephone: (212) 351-3400
18 Facsimile: (212) 351-3401             DAVID H. REICHENBERG (*Pro Hac Vice*)
COZEN O'CONNOR
19                                 277 Park Avenue, 19th Floor
Sarah E. Piepmeier (SBN 227094)        New York, NY 10172
20 sarah.piepmeier@kirkland.com           Telephone:  (212) 883-4900
KIRKLAND & ELLIS LLP                Fax:  (646) 461-2091
21 555 California Street, 27th Floor        Email:
San Francisco, CA 94104               dreichenberg@cozen.com
22 Telephone: (415) 439-1400
Facsimile: (415) 439-1500
23                                 JONATHAN M. JACOBSON (NY SBN
*Attorneys for Defendant Cisco Systems, Inc.*    1350495)
24                                 CHUL PAK (*Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
25                                 1301 Avenue Of The Americas, 40th Floor
New York, NY 10019
26                                 Telephone: (212) 999-5800
Facsimile: (212) 999-5899
27                                 Email:
jjacobson@wsgr.com
28                                 cpak@wsgr.com

SUSAN CREIGHTON (SBN 135528)

SCOTT A. SHER (SBN 190053)
BRADLEY T. TENNIS (SBN 281206)
WILSON SONSINI GOODRICH & ROSATI
1700 K Street NW, Fifth Floor
Washington, D.C., 20006
Telephone: (202) 973-8800
Facsimile: (202) 973-8899
Email:
screighton@wsgr.com
ssher@wsgr.com
btennis@wsgr.com

ROBERT A. VAN NEST (SBN 84065)
BRIAN L. FERRALL (SBN 160847)
DAVID J. SILBERT (SBN 173128)
NICHOLAS DAVID MARAIS
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
Email:
rvannest@keker.com
bferrall@keker.com
dsilbert@keker.com
nmarais@keker.com

Attorneys for Plaintiff
ARISTA NETWORKS, INC.