Matthew D. Powers (SBN 104795)
matthew.powers@tensegritylawgroup.com
William Nelson (SBN 196091)
william.nelson@tensegritylawgroup.com
Robert Gerrity (SBN 268084)
robert.gerrity@tensegritylawgroup.com
Natasha Saputo (SBN 291151)
natasha.saputo@tensegritylawgroup.com
Samantha Jameson (SBN 296411)
samantha.jameson@tensegritylawgroup.com
Jennifer Robinson (SBN 270954)
jen.robinson@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone: (650) 802-6000
Fax: (650) 802-6001

*Attorneys for Plaintiff
Arista Networks, Inc.*

[*Additional counsel listed in signature block*]

John M. Desmarais (*admitted pro hac vice*)
jdesmarais@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

Sarah E. Piepmeier (SBN 227094)
sarah.piepmeier@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Attorneys for Defendant
Cisco Systems, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ARISTA NETWORKS, INC.,<br><br>Plaintiff,<br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>Defendant. | Case No. 5:16-CV-00923-BLF<br><br>**APPENDIX D – REVISED JOINT PROPOSED JURY INSTRUCTIONS** |

Pursuant to the Court's Standing Order re Final Pretrial Conference—Jury Trial, the parties, Plaintiff Arista Networks, Inc., and Defendant Cisco Systems, Inc., submit the following Joint Proposed Jury Instructions.

All instructions include the legal authority supporting the instruction immediately following the instruction.  If an instruction is undisputed, the title of the instruction includes "Stipulated Instruction."  If an instruction is disputed, the title of the instruction includes "Disputed Instruction" and identifies the party offering the instruction.  Each party's argument in support for its position regarding a disputed instruction is set forth immediately after the legal authority supporting the instruction.

The parties reserve their rights to amend, supplement, or modify the proposed jury instructions as the case proceeds through trial and based on the parties' ongoing meet and confer, the Court's additional rulings, and other motions that may be made prior to or at trial, and the evidence submitted at trial.

Dated:  August 2, 2018                         Respectfully submitted,

*/s/ Jeffrey S. Seddon, II*                        */s/ Mathew D. Powers*

John M. Desmarais (*admitted pro hac vice*)
jdesmarais@desmaraisllp.com
Paul A. Bondor (*admitted pro hac vice*)
pbondor@desmaraisllp.com
Alan S. Kellman (*admitted pro hac vice*)
akellman@desmaraisllp.com
Andrew G. Heinz (*admitted pro hac vice*)
aheinz@desmaraisllp.com
Tamir Packin (SBN 317249)
tpackin@desmaraisllp.com
Jeffrey S. Seddon II (SBN 297502)
jseddon@desmaraisllp.com
Brian Leary (*admitted pro hac vice*)
bleary@desmaraisllp.com
William D. Findlay (*admitted pro hac vice*)
wfindlay@desmaraisllp.com
Carson Olsheski (*admitted pro hac vice*)
colsheski@desmaraisllp.com
DESMARAIS LLP

MATTHEW D. POWERS (SBN 104795)
WILLIAM NELSON (SBN 196091)
ROBERT GERRITY (SBN 268084)
NATASHA SAPUTO (SBN 291151)
SAMANTHA JAMESON (Bar No. 296411)
JENNIFER ROBINSON (Bar No. 270954)
WANLI CHEN (Bar No. 300254)
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone:     (650) 802-6000
Facsimile:      (650) 802-6001
Email:
matthew.powers@tensegritylawgroup.com
william.nelson@tensegritylawgroup.com
robert.gerrity@tensegritylawgroup.com
natasha.saputo@tensegritylawgroup.com
samantha.jameson@tensegritylawgroup.com
jen.robinson@tensegritylawgroup.com

230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

Sarah E. Piepmeier (SBN 227094)
sarah.piepmeier@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Attorneys for Defendant Cisco Systems, Inc.*

wanli.chen@tensegritylawgroup.com

DAVID H. REICHENBERG (*Pro Hac Vice*)
COZEN O'CONNOR
277 Park Avenue, 19th Floor
New York, NY 10172
Telephone:  (212) 883-4900
Fax:  (646) 461-2091
Email:
dreichenberg@cozen.com

JONATHAN M. JACOBSON (NY SBN 1350495)
CHUL PAK (*Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue Of The Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email:
jjacobson@wsgr.com
cpak@wsgr.com

SUSAN CREIGHTON (SBN 135528)
SCOTT A. SHER (SBN 190053)
BRADLEY T. TENNIS (SBN 281206)
WILSON SONSINI GOODRICH & ROSATI
1700 K Street NW, Fifth Floor
Washington, D.C., 20006
Telephone: (202) 973-8800
Facsimile: (202) 973-8899
Email:
screighton@wsgr.com
ssher@wsgr.com
btennis@wsgr.com

ROBERT A. VAN NEST (SBN 84065)
BRIAN L. FERRALL (SBN 160847)
DAVID J. SILBERT (SBN 173128)
NICHOLAS DAVID MARAIS
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
Email:
rvannest@keker.com
bferrall@keker.com
dsilbert@keker.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

nmarais@keker.com

Attorneys for Plaintiff
ARISTA NETWORKS, INC.

Matthew D. Powers (SBN 104795)
matthew.powers@tensegritylawgroup.com
William Nelson (SBN 196091)
william.nelson@tensegritylawgroup.com
Robert Gerrity (SBN 268084)
robert.gerrity@tensegritylawgroup.com
Natasha Saputo (SBN 291151)
natasha.saputo@tensegritylawgroup.com
Samantha Jameson (SBN 296411)
samantha.jameson@tensegritylawgroup.com
Jennifer Robinson (SBN 270954)
jen.robinson@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone: (650) 802-6000
Fax: (650) 802-6001

*Attorneys for Plaintiff*
*Arista Networks, Inc.*

[*Additional counsel listed in signature block*]

John M. Desmarais (*admitted pro hac vice*)
jdesmarais@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

Sarah E. Piepmeier (SBN 227094)
sarah.piepmeier@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Attorneys for Defendant*
*Cisco Systems, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ARISTA NETWORKS, INC., <br><br> Plaintiff, <br> v. <br><br> CISCO SYSTEMS, INC., <br><br> Defendant. | Case No. 5:16-CV-00923-BLF <br><br> **REVISED JOINT PROPOSED JURY INSTRUCTIONS** <br><br><br> Trial Date: August 6, 2018 |

# GENERAL CIVIL INSTRUCTIONS

GENERAL CIVIL INSTRUCTIONS ..................................................................... 1

STIPULATED INSTRUCTION NO. 1 RE DUTY OF JURY .................................................. 2

STIPULATED INSTRUCTION NO. 2 RE SUMMARY OF THE CASE ................................. 3

STIPULATED INSTRUCTION NO. 3 RE BURDEN OF PROOF –
        PREPONDERANCE OF THE EVIDENCE ..................................................... 4

STIPULATED INSTRUCTION NO. 4 RE WHAT IS EVIDENCE ........................................... 5

STIPULATED INSTRUCTION NO. 5 RE WHAT IS NOT EVIDENCE ................................. 6

STIPULATED INSTRUCTION NO. 6 RE EVIDENCE FOR A LIMITED PURPOSE ............ 7

STIPULATED INSTRUCTION NO. 7 RE DIRECT AND CIRCUMSTANTIAL
        EVIDENCE.......................................................................................................... 8

STIPULATED INSTRUCTION NO. 8 RE RULING ON OBJECTIONS ................................. 9

STIPULATED INSTRUCTION NO. 9 RE CREDIBILITY OF WITNESSES ....................... 10

STIPULATED INSTRUCTION NO. 10 RE CONDUCT OF THE JURY ............................... 11

STIPULATED INSTRUCTION NO. 11 RE NO TRANSCRIPT AVAILABLE TO THE
        JURY ................................................................................................................ 13

STIPULATED INSTRUCTION NO. 12 RE TAKING NOTES ............................................. 14

STIPULATED INSTRUCTION NO. 13 RE BENCH CONFERENCES AND
        RECESSES ....................................................................................................... 15

STIPULATED INSTRUCTION NO. 14 RE OUTLINE OF TRIAL ....................................... 16

STIPULATED INSTRUCTION NO. 15 RE DEPOSITION IN LIEU OF LIVE
        TESTIMONY ................................................................................................... 17

STIPULATED INSTRUCTION NO. 16 RE USE OF INTERROGATORIES........................ 18

STIPULATED INSTRUCTION NO. 17 RE EXPERT OPINION ........................................... 19

STIPULATED INSTRUCTION NO. 17 RE CHARTS AND SUMMARIES .......................... 20

STIPULATED INSTRUCTION NO. 18 RE DUTY TO DELIBERATE/UNANIMOUS
        VERDICT ......................................................................................................... 21

STIPULATED INSTRUCTION NO. 19 RE COMMUNICATIONS WITH THE COURT ...... 22

STIPULATED INSTRUCTION NO. 20 RE RETURN OF VERDICT ....................................23

**ANTITRUST JURY INSTRUCTIONS ...................................................................................24**

DISPUTED INSTRUCTION NO. 21 RE MONOPOLIZATION  OFFERED BY
    ARISTA....................................................................................................................25

DISPUTED INSTRUCTION NO. 22.1 RE PURPOSE OF THE STATUTE OFFERED
    BY ARISTA..............................................................................................................26

DISPUTED INSTRUCTION NO. 22 RE THE SHERMAN ACT  OFFERED BY CISCO ......27

DISPUTED INSTRUCTION NO. 22.1 RE MONOPOLIZATION OFFERED BY
    CISCO .....................................................................................................................29

STIPULATED INSTRUCTION NO. 23 RE MONOPOLIZATION- ELEMENTS OF
    OFFENSE ................................................................................................................30

DISPUTED INSTRUCTION NO. 24 MONOPOLIZATION - RELEVANT MARKET
    OFFERED BY ARISTA............................................................................................31

DISPUTED INSTRUCTION NO. 24.1 RE RELEVANT MARKET – GENERAL
    OFFERED BY CISCO .............................................................................................34

DISPUTED INSTRUCTION NO. 24.1 RE RELEVANT MARKET – GENERAL
    OFFERED BY CISCO .............................................................................................37

DISPUTED INSTRUCTION NO. 24.2 RE RELEVANT MARKET – RELEVANT
    PRODUCT MARKET OFFERED BY CISCO...........................................................38

DISPUTED INSTRUCTION NO. 24.2 RE RELEVANT MARKET – RELEVANT
    PRODUCT MARKET OFFERED BY CISCO...........................................................41

DISPUTED JURY INSTRUCTION NO. 24.3 RE RELEVANT MARKET –
    RELEVANT PRODUCT MARKET – SUPPLY SUBSTITUTABILITY
    OFFERED BY CISCO .............................................................................................42

DISPUTED INSTRUCTION NO. 24.3 RE RELEVANT MARKET – RELEVANT
    PRODUCT MARKET – SUPPLY SUBSTITUTABILITY OFFERED BY
    CISCO .....................................................................................................................44

DISPUTED INSTRUCTION NO. 24.4 RE RELEVANT MARKET – RELEVANT
    GEOGRAPHIC MARKET OFFERED BY CISCO....................................................45

DISPUTED INSTRUCTION NO. 24.4 RE RELEVANT MARKET – RELEVANT
    GEOGRAPHIC MARKET OFFERED BY CISCO....................................................47

DISPUTED INSTRUCTION NO. 25 RE MONOPOLIZATION – MONOPOLY
    POWER OFFERED BY ARISTA ..............................................................................48

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISPUTED INSTRUCTION NO. 25.1 RE MONOPOLY POWER – DEFINED
    OFFERED BY CISCO ...................................................................53

DISPUTED INSTRUCTION NO. 25.1 RE MONOPOLY POWER – DEFINED
    OFFERED BY CISCO ...................................................................55

DISPUTED INSTRUCTION NO. 25.2 RE EXISTENCE OF MONOPOLY POWER –
    INDIRECT PROOF OFFERED BY CISCO ....................................................56

DISPUTED INSTRUCTION NO. 25.2 RE EXISTENCE OF MONOPOLY POWER –
    INDIRECT PROOF OFFERED BY ARISTA ...................................................59

DISPUTED INSTRUCTION NO. 25.3 RE EXISTENCE OF MONOPOLY POWER –
    DIRECT PROOF OFFERED BY CISCO .....................................................60

DISPUTED INSTRUCTION NO. 25.3 RE EXISTENCE OF MONOPOLY POWER –
    DIRECT PROOF OFFERED BY CISCO .....................................................62

DISPUTED INSTRUCTION NO. 26 RE MONOPOLIZATION - WILLFUL
    ACQUISITION OF MONOPOLY POWER THROUGH ANTICOMPETITIVE
    ACTS  OFFERED BY ARISTA ..............................................................63

DISPUTED INSTRUCTION NO. 26 RE MONOPOLIZATION - WILLFUL
    ACQUISITION OF MONOPOLY POWER THROUGH ANTICOMPETITIVE
    ACTS  OFFERED BY CISCO ...............................................................65

DISPUTED INSTRUCTION NO. 27 RE LITIGATION CONDUCT PROTECTED
    OFFERED BY CISCO ...................................................................68

DISPUTED INSTRUCTION NO. 27 RE LITIGATION CONDUCT PROTECTED
    OFFERED BY CISCO ...................................................................70

DISPUTED INSTRUCTION NO. 28 RE COMMERCIAL SPEECH AS
    EXCLUSIONARY CONDUCT OFFERED BY CISCO .............................................71

DISPUTED INSTRUCTION NO. 28 RE COMMERCIAL SPEECH AS
    EXCLUSIONARY CONDUCT OFFERED BY CISCO .............................................73

DISPUTED INSTRUCTION NO. 29 RE MONOPOLIZATION - ANTICOMPETITIVE
    BEHAVIOR REGARDING THE CLI OFFERED BY ARISTA...................................74

DISPUTED INSTRUCTION NO. 29 RE MONOPOLIZATION - ANTICOMPETITIVE
    BEHAVIOR REGARDING THE CLI OFFERED BY CISCO ....................................77

DISPUTED JURY INSTRUCTION NO. 30 RE UNILATERAL REFUSAL TO DEAL
    OFFERED BY CISCO ...................................................................79

DISPUTED JURY INSTRUCTION NO. 30 RE UNILATERAL REFUSAL TO DEAL
    OFFERED BY CISCO ...................................................................82

DISPUTED INSTRUCTION NO. 31 LEGITIMATE BUSINESS JUSTIFICATION – INTELLECTUAL PROPERTY RIGHTS OFFERED BY CISCO .................................83

DISPUTED JURY INSTRUCTION NO. 31 RE LEGITIMATE BUSINESS JUSTIFICATION – INTELLECTUAL PROPERTY RIGHTS OFFERED BY ARISTA .................................................................................................................85

DISPUTED INSTRUCTION NO. 32 RE MONOPOLIZATION – CISCO'S INTENT OFFERED BY ARISTA.................................................................................86

DISPUTED INSTRUCTION NO. 32 RE MONOPOLIZATION – CISCO'S INTENT OFFERED BY CISCO ..................................................................................88

DISPUTED INSTRUCTION NO. 33 RE MONOPOLIZATION – ANTICOMPETITIVE CONDUCT: MIXED COMPETITIVE AND ANTICOMPETITIVE CONDUCT OFFERED BY ARISTA.................................................................................89

DISPUTED INSTRUCTION NO. 33 RE MONOPOLIZATION – ANTICOMPETITIVE CONDUCT: MIXED COMPETITIVE AND ANTICOMPETITIVE CONDUCT OFFERED BY CISCO ..................................................................................91

STIPULATED INSTRUCTION NO. 34 RE ATTEMPTED MONOPOLIZATION – THE COMPLAINT AND THE STATUTE .................................................92

STIPULATED INSTRUCTION NO. 35 ATTEMPTED MONOPOLIZATION – ELEMENTS.......................................................................................93

STIPULATED INSTRUCTION NO. 36 RE ATTEMPTED MONOPOLIZATION – SPECIFIC INTENT TO ACHIEVE MONOPOLY ........................................94

DISPUTED INSTRUCTION NO. 37 RE ATTEMPTED MONOPOLIZATION – MANNER OF PROOF OFFERED BY ARISTA........................................95

DISPUTED INSTRUCTION NO. 37 RE ATTEMPTED MONOPOLIZATION – MANNER OF PROOF  OFFERED BY CISCO ........................................96

STIPULATED INSTRUCTION NO. 38 RE ATTEMPTED MONOPOLIZATION – MONOPOLY DEFINED.......................................................................98

STIPULATED INSTRUCTION NO. 39 RE ATTEMPTED MONOPOLIZATION – RELEVANT MARKET DEFINED.......................................................99

STIPULATED INSTRUCTION NO. 40 RE ATTEMPTED MONOPOLIZATION – ANTICOMPETITIVE CONDUCT ......................................................100

STIPULATED INSTRUCTION NO. 41 RE ATTEMPTED MONOPOLIZATION – ANTICOMPETITIVE CONDUCT DEFINED...........................................101

STIPULATED INSTRUCTION NO. 42 RE ATTEMPTED MONOPOLIZATION – DANGEROUS PROBABILITY OF SUCCESS ......................................102

DISPUTED INSTRUCTION NO. 43 RE ATTEMPTED MONOPOLIZATION –
    FACTORS IN DETERMINING DANGEROUS PROBABILITY OF SUCCESS
    OFFERED BY ARISTA................................................................................103

DISPUTED INSTRUCTION NO. 43 RE ATTEMPTED MONOPOLIZATION –
    FACTORS IN DETERMINING DANGEROUS PROBABILITY OF SUCCESS
    OFFERED BY CISCO .................................................................................104

DISPUTED INSTRUCTION NO. 45 RE INJURY AND DAMAGES OFFERED BY
    ARISTA......................................................................................................106

DISPUTED INSTRUCTION NO. 45 RE INJURY AND CAUSATION OFFERED BY
    CISCO .......................................................................................................109

DISPUTED INSTRUCTION NO. 46 RE  DAMAGES OFFERED BY CISCO ....................112

DISPUTED INSTRUCTION NO. 46 RE  DAMAGES OFFERED BY CISCO ....................113

DISPUTED INSTRUCTION NO. 47 RE BASIS FOR CALCULATING DAMAGES
    OFFERED BY CISCO .................................................................................114

DISPUTED INSTRUCTION NO. 47 RE BASIS FOR CALCULATING DAMAGES
    OFFERED BY CISCO .................................................................................116

DISPUTED INSTRUCTION NO. 48 RE CAUSATION AND DISAGGREGATION
    OFFERED BY CISCO .................................................................................117

DISPUTED INSTRUCTION NO. 48 RE CAUSATION AND DISAGGREGATION
    OFFERED BY CISCO .................................................................................119

DISPUTED INSTRUCTION NO. 49 RE PRELIMINARY INSTRUCTION ON PRIOR
    RULINGS OFFERED BY CISCO ...............................................................121

DISPUTED INSTRUCTION NO. 49 RE PRELIMINARY INSTRUCTION ON PRIOR
    RULINGS OFFERED BY ARISTA..............................................................124

DISPUTED INSTRUCTION NO. 49.1 RE PRELIMINARY INSTRUCTION ON
    PRIOR RULINGS OFFERED BY CISCO ...................................................125

DISPUTED INSTRUCTION NO. 49.1 RE PRELIMINARY INSTRUCTION ON
    PRIOR RULINGS OFFERED BY ARISTA..................................................126

STIPULATED INSTRUCTION NO. 50 RE PRELIMINARY ANTITRUST
    INSTRUCTIONS.........................................................................................127

# GENERAL CIVIL INSTRUCTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STIPULATED INSTRUCTION NO. 1 RE**
**DUTY OF JURY**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 1.3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STIPULATED INSTRUCTION NO. 2 RE
SUMMARY OF THE CASE**

This case involves a part of the antitrust laws involving monopolization and attempted monopolization, under a statute called the Sherman Act. The Act makes it unlawful for a company to acquire or maintain a monopoly, or to attempt to acquire or maintain a monopoly, through anticompetitive conduct. The plaintiff, Arista, claims that Cisco violated the Sherman Act by closing industry access to Cisco's Command Line Interface, also referred to as Cisco's "CLI", following years of permitting and encouraging industry competitors to adopt that CLI in their own products and thereby harmed competition and consumers of Ethernet switches. Cisco denies Arista's claims and contends that the actions it took to protect its intellectual property from Arista's copying were entirely justified and that the markets where it competes with Arista are highly competitive.

Source: Adapted from Final Jury Instructions at 3, *Mathew Enterprise, Inc. v. FCA US, LLC,* No. 13-CV-04236-BLF, (N.D. Cal. Oct. 11, 2016), ECF No. 329; Final Jury Instructions at 29-30, *Apple, Inc. v. Samsung Elecs., LTD*, No. 11-CV-01846, (N.D. Cal. Aug. 21, 2012), ECF No. 1903

**STIPULATED INSTRUCTION NO. 3 RE**
**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

Arista has the burden of proving its claims by a preponderance of the evidence.  When a party has the burden of proving any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Source: *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI, ECF No. 6036 at 2 (June 28, 2012) (Jury Instructions); 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 1.6

## STIPULATED INSTRUCTION NO. 4 RE
## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits that are admitted into evidence;

(3) any facts to which the lawyers have agreed; and

(4) any facts that I may instruct you to accept as proved.


Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 1.9

### STIPULATED INSTRUCTION NO. 5 RE
### WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 1.10

1

2

### STIPULATED INSTRUCTION NO. 6 RE
### EVIDENCE FOR A LIMITED PURPOSE

3

Some evidence may be admitted only for a limited purpose.

4

When I instruct you that an item of evidence has been admitted only for a limited purpose, you

5

must consider it only for that limited purpose and not for any other purpose.

6

7

Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 1.11

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED INSTRUCTION NO. 7 RE**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 1.12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STIPULATED INSTRUCTION NO. 8 RE
## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 1.13

### STIPULATED INSTRUCTION NO. 9 RE
### CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 1.14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STIPULATED INSTRUCTION NO. 10 RE
## CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or other social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

Source: *Matthews Enter., Inc. v. FCA US LLC*, 13-cv-04236, ECF No. 329 at 18-19 (Instruction No. 14) (Freeman, J.)

**STIPULATED INSTRUCTION NO. 11 RE**
**NO TRANSCRIPT AVAILABLE TO THE JURY**

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 1.17

1
2
**STIPULATED INSTRUCTION NO. 12 RE**
**TAKING NOTES**

3
4
You may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the courtroom. No one will read your notes.

5
6
Whether or not you take notes, you should rely on your own memory of the evidence.

7
8
Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

9
10
Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 1.18

**STIPULATED INSTRUCTION NO. 13 RE**
**BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 1.20

### STIPULATED INSTRUCTION NO. 14 RE
### OUTLINE OF TRIAL

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff, Arista, will then present evidence, and counsel for the defendant, Cisco, may cross-examine. Then the defendant, Cisco, may present evidence, and counsel for the plaintiff, Arista, may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 1.21

**STIPULATED INSTRUCTION NO. 15 RE**
**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. The parties may present to you witness testimony from recorded depositions instead of live testimony. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 2.4 as modified by *Matthews Enter., Inc. v. FCA US LLC*, 13-cv-04236, ECF No. 329 at 13 (Instruction No. 34) (Freeman, J.)

**STIPULATED INSTRUCTION NO. 16 RE**
**USE OF INTERROGATORIES**

Evidence may be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

Source: Adapted from 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 2.11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STIPULATED INSTRUCTION NO. 17 RE**
**EXPERT OPINION**

You will hear testimony from experts who provide their opinions and the reasons for those opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 2.13

**STIPULATED INSTRUCTION NO. 17 RE
CHARTS AND SUMMARIES**

Certain charts and summaries may be shown to you or admitted into evidence in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Source: Adapted from 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 2.14-2.15

**STIPULATED INSTRUCTION NO. 18 RE**
**DUTY TO DELIBERATE/UNANIMOUS VERDICT**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 3.1

1
2

## STIPULATED INSTRUCTION NO. 19 RE
## COMMUNICATIONS WITH THE COURT

3

   If it becomes necessary during your deliberations to communicate with me, you may send a note

4

through the clerk, signed by any one or more of you. No member of the jury should ever attempt to

5

communicate with me except by a signed writing. I will not communicate with any member of the jury

6

on anything concerning the case except in writing or here in open court. If you send out a question, I

7

will consult with the lawyers before answering it, which may take some time. You may continue your

8

deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—

9

including the court—how the jury stands, whether in terms of vote count or otherwise, until after you

10

have reached a unanimous verdict or have been discharged.

11
12

Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 3.3

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### STIPULATED INSTRUCTION NO. 20 RE
### RETURN OF VERDICT

A verdict form has been prepared for you. Please read the verdict form carefully, and follow the instructions. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

Source: 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 3.5 as modified by *Matthews Enter., Inc. v. FCA US LLC*, 13-cv-04236, ECF No. 329 at 18 (Instruction No. 33) (Freeman, J.)

**ANTITRUST JURY INSTRUCTIONS**

1

2

**DISPUTED INSTRUCTION NO. 21 RE
MONOPOLIZATION
OFFERED BY ARISTA**

3

4

5

6

     Arista claims that Cisco has engaged in unlawful monopolization. More specifically, Arista claims that Cisco obtained or maintained monopoly power in a relevant market by closing industry access to the Command Line Interface ("CLI") following years of permitting and encouraging such access, and thereby harmed competition and consumers of Ethernet switches.

7

8

9

10

     The law Cisco is charged with violating is called section 2 of the Sherman Antitrust Act. That law, in pertinent part, provides: "Every person who shall monopolize … or conspire with any other person … to monopolize any part of the commerce among the several States, or with foreign nations [has committed an unlawful act]."

11

12

13

Source: 4-80 *Modern Federal Jury Instructions—Civil*, ¶ 80.01, Instruction 80-01 (Matthew Bender)

14

15

**[Arista provides its position regarding Instruction No. 22 below in connection with both
Instruction Nos. 22 and 22.1]**

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DISPUTED INSTRUCTION NO. 22.1 RE**
**PURPOSE OF THE STATUTE**
**OFFERED BY ARISTA**

The purpose of the Sherman Antitrust Act is to preserve and encourage free and open business competition so that the public may receive better goods and services at a lower cost. Congress has determined that monopolies are bad for commerce, and therefore intentionally acquiring or maintaining monopoly power is illegal. Whether or not Cisco actually exercised his monopoly power is not important. To prove its monopolization claim, Arista need only prove that Cisco acquired or maintained monopoly power through anticompetitive behavior.

Source: Adapted from 4-80 *Modern Federal Jury Instructions—Civil*, ¶ 80.01, Instruction 80-02 (Matthew Bender)

**Arista's Position:**

Arista's proposed Instructions Nos. 22 and 22.1 track the Modern Federal Jury Instructions model, both substantively and in their ordering. This model is one of three model antitrust instruction sets suggested by the Ninth Circuit, and these instructions succinctly introduce Arista's monopolization claims and the Sherman Act that are at issue in this case. Cisco proposes a different order for it's proposed Instructions Nos. 22 and 22.1, and its instructions deviate from the models on which Cisco relies. Cisco's proposed Instruction No. 22 begins with the ABA Model instruction but then adds a paragraph of Cisco's own making which does not accurately track the instructions to be provided by the Court (for example, it omits any discussion of Arista's claims under California's Unfair Competition Law). Cisco's Instruction No. 23 also departs from the model instruction on which Cisco relies by rephrasing the language in a way that Cisco believes to be more favorable to its case.

## DISPUTED INSTRUCTION NO. 22 RE
## THE SHERMAN ACT
## OFFERED BY CISCO

This case involves a federal antitrust law called the Sherman Act. The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

Arista brings two claims under Section 2 of the Sherman Act: unlawful monopolization and unlawful attempted monopolization.  First, the Court will summarize the parties' contentions.  Second, the Court will instruct you on the elements of an unlawful monopolization claim. Third, the Court will instruct you on the elements of an unlawful attempted monopolization claim.  Fourth, the Court will instruct you on how to decide if, assuming you find that Cisco has violated Section 2 of the Sherman Act as alleged by Arista, whether Arista was injured by Cisco's conduct.  Finally, the Court will instruct you on how to decide if Arista is entitled to recover any damages from Cisco, and how to calculate those damages.

Source: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Instruction 1: Purpose, at 1; *Novell, Inc. v. Microsoft Corp.*, Case No. 2:04-cv-01045-JVM, ECF No. 388 at 7-8 (D. Utah December 19, 2011) (Jury Instructions), *aff'd Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064 (10th Cir. 2013); *cert. denied*, 134 S. Ct. 1947 (2014).

### Cisco's Position

An introductory instruction on the Sherman Act, which is based on the introductory instruction in the ABA Model Jury Instructions—the first and most recently updated source of antitrust model jury instructions identified by the Ninth Circuit, *see* 2017 Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 14—is appropriate and will provide the jury with context for the remainder of the instructions.  Furthermore, providing the jury a high level outline of the remaining jury instructions will provide context that will help them understand the instructions.  Arista's claim that it does not accurately track the instructions because it does not mention the Unfair Competition claim is

unfounded.  As the Court noted during the June 14, 2018, pretrial conference, the Unfair Competition claim is equitable in nature and will not be submitted to the jury.

Arista's proposal, which contends that "intentionally acquiring or maintaining monopoly power is illegal" is reminiscent of a criminal trial and prejudicial in this civil antitrust suit.  Moreover, the language "Congress has determined that monopolies are bad for commerce" is inaccurate, prejudicial, and potentially confusing in an antitrust case that involves intellectual property.  Copyrights, for instance, confer Congressionally-authorized, statutory monopolies.  *See Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 154 (1975) ("The Copyright Act of 1909, 35 Stat. 1075, as amended, 17 U.S.C. s 1 et seq., gives to a copyright holder a monopoly…").

**DISPUTED INSTRUCTION NO. 22.1 RE**
**MONOPOLIZATION**
**OFFERED BY CISCO**

Arista claims that Cisco has engaged in unlawful monopolization, based on the contentions that I have already summarized. Cisco disputes this claim for the reasons that I previously summarized.

Arista's claim is based on section 2 of the Sherman Antitrust Act. That law, in pertinent part, provides: "Every person who shall monopolize … or conspire with any other person … to monopolize any part of the commerce among the several States, or with foreign nations [has committed an unlawful act]."

Source: Adapted from 4-80 Modern Federal Jury Instructions—Civil, ¶ 80.02, Instruction 80-1 (Matthew Bender)

### Cisco's Position

Arista proposes a summary of its contentions with regard to monopolization in its proposed Instruction No. 22, but objects to including Cisco's contentions.  A one-sided summary of Arista's contentions here would be both prejudicial and duplicative, given that a summary of the parties' contentions is already including in Instruction No. 2.  Accordingly, Cisco proposes that this instruction be limited to referring to the Court's previous summary of the parties' contentions.  Furthermore, Arista's proposal, which contends that "Cisco is charged with violating" the law, is reminiscent of a criminal trial and prejudicial in this civil antitrust suit.  Moreover, Arista will suffer no prejudice in adopting such a proposal, as it has agreed to identical language in Stipulated Instruction No. 34.

**STIPULATED INSTRUCTION NO. 23 RE
MONOPOLIZATION- ELEMENTS OF OFFENSE**

I will now instruct you on how to decide whether Arista has proven that Cisco has violated the federal antitrust laws. First, Arista alleges that it was injured by Cisco's unlawful monopolization of markets relating to network switches, in violation of Section 2 of the Sherman Act. To prevail on its claim, Arista must prove each of the following elements[1] by a preponderance of the evidence:

(1) **First**, that at least one of the alleged markets is a relevant antitrust market;

(2) **Second**, that Cisco possessed monopoly power in that market during the period of the alleged anticompetitive conduct;

(3) **Third**, that Cisco "willfully" acquired its monopoly power in that market by engaging in anticompetitive conduct; and

(4) **Fourth**, that Arista was injured in its business or property because of Cisco's anticompetitive conduct.

If you find that Arista has failed to prove any of these elements, then you must find for Cisco and against Arista. If you find that Arista has proved each of these elements by a preponderance of the evidence, then you must find for Arista and against Cisco.

Source: Adapted from Final Jury Instructions at 101, *Apple, Inc. v. Samsung Elecs., LTD*, No. 11-CV-01846, (N.D. Cal. Aug. 21, 2012), ECF No. 1903

---

[1] NOTE FOR THE COURT: That Cisco's conduct occurred in or affected interstate or foreign commerce is also an element of Arista's monopolization and attempted monopolization claims; however, Cisco does not dispute that this element is satisfied for both of Arista's claims, so the parties agree not to instruct the jury regarding this element.

**DISPUTED INSTRUCTION NO. 24**
**MONOPOLIZATION - RELEVANT MARKET**
**OFFERED BY ARISTA**

Arista must prove by a preponderance of the evidence that Cisco had monopoly power in one or more relevant markets. Defining the relevant market is essential to determining whether Cisco had monopoly power because whether a company has monopoly power depends on the contours of the market.

There are two aspects you must consider in determining whether Arista has met its burden of proving the relevant market or markets. The first is the existence of a relevant product market. The second is the existence of a relevant geographic market.

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the user's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to actual behavior of customers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes.  In this case, Arista alleges two relevant product markets:  all Ethernet switches and high-speed Ethernet switches, Arista alleges that high-speed Ethernet switches are switches with performance speeds greater than 10 Gigabytes, and that these high-speed Ethernet switches are a submarket within the all Ethernet switches market. A submarket that exists within a broader market may be a product market for antitrust purposes. The boundaries of any submarket are determined practically, as already described, based on whether consumers purchasing the goods at issue recognize the products within a given relevant market as reasonably interchangeable. Cisco disputes that these are the relevant product markets.

The relevant geographic market is the area in which the Cisco products face competition from other products to which customers can reasonably turn. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.  In this case, Arista alleges two relevant geographic markets:  the United

States and the World.  Cisco disputes  that these are the  relevant markets.

If, after considering all the evidence, you find that Arista has proven both a relevant product market and a relevant geographic market, then you must find that Arista has met the relevant market requirement and you must consider the remaining elements of its unlawful monopolization claims.

If you find that Arista has failed to prove either a relevant product market or a relevant geographic market, then you must find for Cisco and against Arista's unlawful monopolization claims.

Source: Adapted from Final Jury Instructions at 102, *Apple, Inc. v. Samsung Elecs., LTD*, No. 11-CV-01846, (N.D. Cal. Aug. 21, 2012), ECF No. 1903; *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).

### **Arista's Position:**

Arista's Disputed Instruction No. 24 should be provided to the jury, and Cisco's alternative Disputed Instructions Nos. 24.1-24.4 should not be provided to the jury.

Despite offering four instructions where one would suffice, Cisco's proposed instruction would omit any description of a submarket. Arista disagrees both because the Supreme Court in *Brown Shoe* required considering "each [] economically significant submarket" and because this Court already concluded—following *Brown Shoe*—that, "[a]s a general matter, [it] agrees with Arista that a relevant market definition may include submarkets." Order (1) Denying Plaintiff's Motion for Partial Summary Judgment and (2) Granting in Part and Denying in Part Defendant's Motion for Summary Judgment, ECF No. 281. Without any statement of the law related to submarkets, the jury will not be able to resolve the question of whether a submarket here is a relevant product market.

Arista Instruction No. 24  follows directly from the submarket analysis in Brown Shoe:

However, within this broad market, ***well-defined submarkets*** may exist which, in themselves, constitute product markets for antitrust purposes. *United States v. E. I. du Pont de Nemours & Co.*, 353 U.S. 586, 593-595.The boundaries of such a submarket may be determined by examining such practical indicia as industry or ***public recognition*** of the submarket as a ***separate economic entity, the product's peculiar characteristics and uses,*** unique production facilities, distinct customers,  distinct prices,

sensitivity to price changes, and specialized vendors.

*Brown Shoe*, 370 U.S. at 325 (emphasis added). However, Cisco's Disputed Instruction Nos. 24.1 through 24.4 contain unnecessary multiple instructions that are more likely to confuse the jury than assist them, and they should be rejected. For example, Cisco's Disputed Instruction No. 24.2 explains to the jury how the ***different*** products—aluminum foil, cellophane, and plastic wrap—may be part of the same market. That is not an issue in this case. The question for the jury to resolve here relates to whether there may be a distinct submarket even though the products at issue may initially appear ***similar***. Cisco's proposal to present the jury with an irrelevant instruction relating to broadening the market to include dissimilar products, while at the same time failing to include any instruction relating to narrower submarkets, is likely to confuse the jury about the relevant legal framework.

Cisco's proposed Instruction No. 24.4 also states (for the first time in this case) that Cisco disputes that the United States is a relevant geographic market. For the same reasons articulated in Arista's Motion *In Limine* No. 5, because Cisco's expert Dr. Carlton offered no opinion disputing this highly technical economic element, Cisco should be precluded from disputing it through fact witnesses or through Dr. Carlton at trial.

There is overlap between Cisco's and Arista's proposed instructions, but Arista's instruction includes all of the relevant information, is tailored to the present case, and is limited to providing the jury with only the information necessary to resolve the issues before them. By contrast, Cisco seeks to burden the jury with a lengthy statement including irrelevant information that leads the jury away from the issues actually before them.

For all of these reasons, Arista respectfully requests that the Court adopt Arista's Disputed Instruction No. 24 and reject Cisco's Disputed Instructions Nos. 24.1-24.4.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DISPUTED INSTRUCTION NO. 24.1 RE
RELEVANT MARKET – GENERAL
OFFERED BY CISCO**

Arista must prove by a preponderance of the evidence that Cisco had monopoly power in a relevant market.  Defining the relevant market is essential because you are required to make a judgment about whether Cisco has monopoly power in a properly defined economic market.  To make this judgment, you must be able to determine what, if any, economic forces restrain Cisco's freedom to set prices for or to restrict the production level of Ethernet switches.

The most likely and most important restraining force will be actual and potential competition from other firms and their products.  This includes all firms and products that act or likely could act to limit Cisco's power to set prices as it pleases because customers could switch to them if Cisco sets its own prices too high.  All the firms and products that exert such restraining force are within what is called the relevant market.

There are two aspects you must consider in determining whether Arista has met its burden to prove the relevant market by a preponderance of the evidence.  The first is the relevant product market.  The second is the relevant geographic market.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Instruction 3: Relevant Market, at 106.

**Cisco's Position**

The ABA Model Instruction, which includes an overview of the concept of the relevant market and the burden of proof, is appropriate and should be adopted here.  More generally, the ABA Model Instructions on relevant markets, as set forth in Instructions 24.1 to 24.4, provide a full and accurate discussion of the relevant legal principles and should be adopted rather than Arista's proposed instruction.

Arista's proposed Instruction 24 is not based on any model jury instruction endorsed by the Ninth Circuit[2] and omits key aspects of determining the relevant market, including an explanation of what it means for products to be reasonably interchangeable and the factors that can be considered, *see Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962), a discussion of economic interchangeability and price cross-elasticity of demand, *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1376 (9th Cir. 1989), and supply elasticity, *Calnetics Corp. v. Volkswagen of Am., Inc.*, 532 F.2d 674, 691 (9th Cir. 1976).

Arista criticizes Cisco's proposed instructions for failing to address submarkets, but Arista is incorrect. Cisco's Instruction 24.2 includes both Arista's allegation regarding submarkets and lists the *Brown Shoe* factors used for determining the existence of a submarket. In contrast, Arista's instruction fails to address the *Brown Shoe* factors that are used to determine the existence of a submarket or even to define what it means—a fact which is likely to confuse the jury. *See, e.g.*, ABA Model Jury Instructions in Civil Antitrust Cases at 110 n.6 (noting that "identical criteria are typically used to define both markets and submarkets" and "the term 'submarket' can confuse the jury"). Cisco's proposed instructions, not Arista's, thus properly describe the applicable legal standards on submarkets and should be adopted.

Arista also contends that Cisco should be prohibited from disputing Arista's allegation of a United States geographic market. That has no merit. Cisco has never agreed that Arista's alleged market definitions are correct and the Court denied Arista's motion for partial summary judgment on market definition. (*See* Dkt. 270 at 11.) Moreover, as Cisco's forthcoming opposition to Arista's motion *in limine* addresses in more detail, Arista has no basis to preclude Cisco from presenting its position (and evidence) to the jury.

Arista also contends that Cisco's proposals will confuse the jury because they include evidence "that is not currently at issue in the case," such as evidence regarding supply elasticity. Arista's argument is inconsistent with the position it took in its motion for summary judgment, (*see* Dkt. 254 at

---

[2] Arista contends that its proposal is based on the instruction given in *Apple v. Samsung*, but that merits no weight. Arista has omitted large portions of the *Apple v. Samsung* instruction and written in its own language describing the "basic idea" of a relevant market—language that has not been endorsed by the Ninth Circuit or any court in this district.

10 (arguing "Dr. Scott Morton did consider supply-side elasticity")), and the law in the Ninth Circuit, which requires consideration of supply elasticity. *See Calnetics Corp. v. Volkswagen of Am., Inc.*, 532 F.2d 674, 691 (9th Cir. 1976). In any case, Arista's objection is premature—if evidence on these points is not presented during trial, the parties can adjust the instructions accordingly after the close of evidence.

In sum, Arista's ad hoc instruction provides no guidance to the jury on how to decide if products are reasonably interchangeable or the applicable legal standards. The jury should be instructed on these standards, as Cisco has proposed, using the ABA Model Instructions. If, however, the Court adopts Arista's proposals, it should at least be modified to include a statement of the contentions from each party, not just Arista's contentions.

**DISPUTED INSTRUCTION NO. 24.1 RE**
**RELEVANT MARKET – GENERAL**
**OFFERED BY CISCO**

[Arista asserts that Instruction No. 24.1 should not be given the jury and is already addressed by Arista's Instruction No. 24]

**<u>Arista's Position:</u>**

For the same reasons described above in connection with Arista's Position Re Arista's Instruction No. 24, Arista's Disputed Instruction No. 24 should be provided to the jury, and Cisco's alternative Disputed Instructions Nos. 24.1-24.4 should not be provided to the jury.

**DISPUTED INSTRUCTION NO. 24.2 RE**
**RELEVANT MARKET – RELEVANT PRODUCT MARKET**
**OFFERED BY CISCO**

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In order words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other.  This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers.  Products need not be identical or precisely interchangeable as long as they are reasonable substitutes.  Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, cellophane, or even plastic containers—to be reasonable alternatives, then all those products may be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant and non-transitory increase in the price of one product would result in enough customers switching from that product to another product such that the price increase would not be profitable.  In other words, will customers accept the price increase or will so many switch to alternative products that the price increase will be withdrawn?  Generally speaking, a small but significant and non-transitory increase in price is approximately a 5 percent increase in price not due to cost factors. If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the product market.  If, on the other hand, you find that customers would not switch then you must conclude that the products are not in the product market.  In determining whether products are reasonable substitutes for each other, you may consider:

- consumers' views on whether the products are interchangeable;

- the relationship between the price of one product and sales of another;

- the presence or absence of specialized vendors;

- the perceptions of either industry or the public as to whether the products are in separate markets;

- the views of Arista and Cisco regarding who their respective competitors are; and

- the existence or absence of different customer groups or distribution channels.

In this case, Arista contends that the relevant product markets are (1) all Ethernet switches and (2) high-speed Ethernet switches, defined as switches that operate at 10 Gigabits per second or faster, and that high-speed Ethernet switches are a submarket of an all Ethernet switch market. By contrast, Cisco contends that Arista has failed to allege the proper relevant product market. Cisco contends that neither all Ethernet switches nor all high-speed Ethernet switches are interchangeable. If you find that Arista has proven a relevant product market, then you should continue to evaluate the remainder of Arista's claim. However, if you find that Arista has failed to prove such a market, then you must find in Cisco's favor.

Source: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Instruction 4: Relevant Product Market, at 108.

### Cisco's Position

The ABA Model Instruction, which includes an overview of the concept of the relevant product market and explains to the jury an applicable economic test, as well as providing examples of evidence that can be considered, is instructive and should be adopted here. *See Brown Shoe Co. v. United States*, 370 U.S. 294 325 (1962); *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1376 (9th Cir. 1989).

Arista objects to the inclusion of an example regarding "flexible wrapping material," but this example will illustrate the issue for the jury in a concrete, recognizable fashion and comes directly from the Supreme Court's decision in *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 394-400 (1956). And Arista's complaint that "different products" are "not an issue in this case" is not accurate. Cisco contends that different types of Ethernet switches are, in fact, different products, not reasonably interchangeable, and not part of the same market (for instance, a small home office switch is a distinctly different product than a hundred thousand dollar datacenter switch, with different features and different purposes). That is the dispute that the jury will resolve, and thus jury should be instructed

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

on the appropriate legal standards to apply when doing so.  Furthermore, Arista's contention that Cisco is attempting to present the jury with an instruction "relating to broadening the market" makes no sense—Cisco contends that both of Arista's proposed markets are overbroad.  (*See, e.g.*, Dkt. 236 at 1 (arguing Arista alleges "overly broad product markets").)

**DISPUTED INSTRUCTION NO. 24.2 RE
RELEVANT MARKET – RELEVANT PRODUCT MARKET
OFFERED BY CISCO**

[Arista asserts that Instruction No. 24.2 should not be given the jury and is already addressed by Arista's Instruction No. 24]

**<u>Arista's Position:</u>**

For the same reasons described above in connection with Arista's Position Re Arista's Instruction No. 24, Arista's Disputed Instruction No. 24 should be provided to the jury, and Cisco's alternative Disputed Instructions Nos. 24.1-24.4 should not be provided to the jury.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### DISPUTED JURY INSTRUCTION NO. 24.3 RE
### RELEVANT MARKET – RELEVANT PRODUCT MARKET – SUPPLY SUBSTITUTABILITY
### OFFERED BY CISCO

In deciding whether Arista has proven a relevant product market, you may also consider what the law refers to as "the cross-elasticity of supply" or, in other words, the extent to which the producers of one product would be willing to shift their resources, such as intellectual property, manufacturing facilities, or personnel to producing another product in response to an increase in the price of the other product. Such producers, to the extent that they exist, can increase supply and, therefore, drive prices back to competitive levels, defeating any effort by a would-be monopolist to charge significantly higher prices.

Take two shoe manufacturers, for example, the first manufacturer produces shoes for women, while the second manufacturer produces shoes for men. Generally speaking, men's and women's shoes are not reasonably interchangeable and, therefore, might be thought of as being in a separate product markets. However, it is possible that the men's shoe manufacturer could quickly shift its resources to start producing women's shoes if the women's shoe manufacturer raised its prices significantly and vice versa. Although women would not buy men's shoes, nor would men buy women's shoes, the ability of each manufacturer to alter its production could prevent the other manufacturer from raising prices significantly. Thus, in this example, men's and women's shoes would be included in the same market.

If, in determining the products in the relevant product market you find that there are manufacturers that have the ability to alter their production to manufacture products that can reasonably be substituted with Cisco's—even though they do not presently compete with Cisco—you may consider whether the existence of these potential alternative suppliers can influence the prices that Cisco charges for its product and, if so, that amount of the product that these suppliers are likely to produce. However, if you find that there are no others who would switch production to products that would compete with Cisco's, you may define the market solely on your evaluation of whether the existing allegedly competing products are reasonable substitutes for each other.

Source:   ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Instruction 5: Relevant Product Market – Supply Substitutability, at 112.

### Cisco's Position

The ABA Model Instruction, which includes an overview of the mandatory consideration of supply elasticity, is instructive and should be adopted here. *See Calnetics Corp. v. Volkswagen of Am., Inc.*, 532 F.2d 674, 691 (9th Cir. 1976).

**DISPUTED INSTRUCTION NO. 24.3 RE
RELEVANT MARKET – RELEVANT PRODUCT MARKET – SUPPLY SUBSTITUTABILITY
OFFERED BY CISCO**

[Arista asserts that Instruction No. 24.3 should not be given the jury and is already addressed by Arista's Instruction No. 24]

**<u>Arista's Position:</u>**

For the same reasons described above in connection with Arista's Position Re Arista's Instruction No. 24, Arista's Disputed Instruction No. 24 should be provided to the jury, and Cisco's alternative Disputed Instructions Nos. 24.1-24.4 should not be provided to the jury.

## DISPUTED INSTRUCTION NO. 24.4 RE
## RELEVANT MARKET – RELEVANT GEOGRAPHIC MARKET
## OFFERED BY CISCO

The relevant geographic market is the area in which Cisco faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one geographic area have substantial effects on prices or sales in another geographic area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or neighborhood.

Arista has the burden of proving the relevant geographic market by a preponderance of the evidence. In this case, Arista alleges two relevant geographic markets: the United States and the World. By contrast, Cisco denies that the United States is a relevant geographic market and contends that Cisco and Arista compete in a world-wide market. In determining whether Arista met its burden and demonstrated that its proposed geographic market is proper, you may consider several factors, including:

- the geographic area in which Cisco sells and where Cisco's customers are located;

- the geographic area to which customers turn for supply of the product;

- the geographic area to which customers have turned or have seriously considered turning;

- the transportation cost differences between areas;

- the geographic areas that suppliers view as potential sources of competition; and

- whether governmental licensing requirements, taxes, or quotas have the effect of limiting competition in certain areas.

Source: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Instruction 6: Relevant Geographic Market, at 113.

## Cisco's Position

The ABA Model Instruction, which includes an overview of the mandatory consideration of geographic markets and provides examples of evidence that can be considered, is instructive and should be adopted here. *See, e.g.*, *United States v. Grinnell Corp.*, 384 U.S. 563 575 (1966).

**DISPUTED INSTRUCTION NO. 24.4 RE**
**RELEVANT MARKET – RELEVANT GEOGRAPHIC MARKET**
**OFFERED BY CISCO**

[Arista asserts that Instruction No. 24.4 should not be given the jury and is already addressed by Arista's Instruction No. 24]

**<u>Arista's Position:</u>**

For the same reasons described above in connection with Arista's Position Re Arista's Instruction No. 24, Arista's Disputed Instruction No. 24 should be provided to the jury, and Cisco's alternative Disputed Instructions Nos. 24.1-24.4 should not be provided to the jury.

### DISPUTED INSTRUCTION NO. 25 RE
### MONOPOLIZATION – MONOPOLY POWER
### OFFERED BY ARISTA

If you find that plaintiff has proven a relevant market, then you should determine whether defendant has monopoly power in that market. Monopoly power is the power to control prices or exclude competition in a relevant antitrust market. In determining whether Cisco has monopoly power in a relevant market, you may consider whether there is direct or indirect evidence that Cisco has monopoly power.

Arista has not attempted to provide direct proof of monopoly power.  There are a number of factors you may consider as indirect evidence of monopoly power:

**<u>Market Share</u>**

The first factor that you should consider is Cisco's market share. A market share above 50 percent may be sufficient to support an inference that a defendant has monopoly power, but in considering whether a defendant has monopoly power it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors. Along with a defendant's market share, these factors should inform you as to whether the defendant has monopoly power. The likelihood that a company has monopoly power is stronger the higher that company's share is above 50 percent.

A market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power. However, if you find that the other evidence demonstrates that Cisco does, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that Cisco has monopoly power.

**<u>Barriers to Entry</u>**

You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include, among other things, intellectual property rights (such as patents or trade secrets), specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products). Evidence of low or no entry barriers may

be evidence that defendant does not have monopoly power, regardless of defendant's market share, because new competitors could enter easily if the defendant attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that defendant has monopoly power.

## Number and Size of Competitors

You may consider whether Cisco's competitors are capable of effectively competing. In other words, you should consider whether the financial strength, market shares and number of competitors act as a check on the defendant's ability to price its products. If Cisco's competitors are vigorous or have large or increasing market shares, this may be evidence that Cisco lacks monopoly power. On the other hand, if you determine that Cisco's competitors are weak or have small or declining market shares, this may support an inference that Cisco has monopoly power.

## Conclusion

If you find that Cisco has monopoly power in the relevant market, then you must consider the remaining elements of Arista's monopolization claim. If you find that Cisco does not have monopoly power, then you must find for Cisco and against Arista on this claim and consider Arista's attempted monopolization claim.

Source: Adapted from Final Jury Instructions at 103-4, *Apple, Inc. v. Samsung Elecs., LTD*, No. 11-CV-01846, (N.D. Cal. Aug. 21, 2012), ECF No. 1903.

## Arista's Position Re: Instruction No. 25 and
## Cisco's Proposed Additional Instructions Nos. 25.1-25.3:

Arista's proposed Instruction No. 25 closely tracks the indirect proof of monopoly power instruction from Judge Koh's instructions in *Apple v. Samsung* (which itself closely tracks ABA Model Instruction No. 7 from pages 115-117 of the ABA Model Instructions). Cisco's proposed Instructions Nos. 25.1-25.3 introduce unnecessary, inaccurate, and confusing additional instructions on market power that are inappropriate here.

All of Cisco's Instructions Nos. 25.1, 25.2, and 25.3 incorrectly state that "monopoly power is the power to control prices ***and*** exclude competition in a relevant antitrust market" (or, in the case of 26.1, that "Monopoly power is the power to control prices, restrict prices, ***and*** exclude competition in a relevant antitrust market.") These instructions are a misstatement of the law. Settled United States Supreme Court and Ninth Circuit cases make clear that "Monopoly power is the power to control prices or exclude competition" in a relevant antitrust market. *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997) ("Monopoly power is 'the power to control prices or exclude competition.'") (emphasis added) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 571, (1966) (quoting *United States v. E.I. du Pont De Nemours & Co.*, 351 U.S. 377, 391 (1956))). Arista's proposed Instruction No. 25 correctly states that monopoly power is the power to control prices or exclude competition.

Cisco's Instruction No. 25.1 purporting to define market power also is likely to mislead the jury about the law, cumulative of Arista's proposed Instruction No. 25, and unnecessary. No such "definition" was included by Judge Koh in the Apple v. Samsung instructions. Cisco's Instruction No. 25.1 is also misleading and likely to cause confusion to the jury, particularly in light of Cisco's edits to the analogous ABA model instruction—while the model instruction includes the sentence "More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time" (ABA Model Instructions at 104), Cisco's proposed instruction alters that sentence to state that "More precisely, ***a firm is a not monopolist unless*** it can profitably rise prices substantially above the competitive level for a significant period of time." In either form, and particularly as edited by Cisco, such an instruction is likely to confuse the jury by suggesting that indirect proof of monopoly power is insufficient. That would be an incorrect understanding of the law and a particularly harmful confusion in this case where Arista intends to present only indirect proof of monopoly power.

Cisco's Instruction No. 25.2, though it appears similar to Arista's Instruction No. 25, deviates from Arista's proposal (and the *Apple v. Samsung* and ABA model instructions) due to two significant edits by Cisco that are contrary to the law. Cisco has edited the "market share" section of the ABA Model Instruction 7 on which Cisco relies to change the percentage market share that is ordinarily not sufficient to support a conclusion that the defendant has monopoly power from 50% to 65%. Cisco

provides no support for this edit (citing only to the ABA Model Instruction which, like the *Apple v. Samsung* instruction, correctly states 50%). Contrary to Cisco's suggestion, a 65% market share is the share at which a presumption of market power is ordinarily assumed ***against*** the defendant—this does not suggest, contrary to Cisco's instruction, that a share less than 65% should create a presumption of no market power in the defendant's favor. The 50% level is the correct statement of the law.[3]  Cisco's erroneous edit is exacerbated by the incorrect clause Cisco adds to the model instruction at the end of this same paragraph—"if you also conclude that the defendant had the ability to raise prices or exclude competitors." That clause—suggesting that direct proof of monopoly power is necessary even where a plaintiff relies on indirect proof—is contrary to the law permitting proof by either indirect evidence or direct evidence. *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997) ("Market power can be proven by either direct or circumstantial evidence."). Unsurprisingly, Cisco's added clause finds no support in the ABA model on which Cisco relies or in any other jury instructions identified by Cisco.

Cisco's proposal to include Instruction No. 25.3 regarding direct evidence of market power even though Arista does not intend to prove Cisco's market power through direct evidence is likely to confuse the jury, is contrary to law, and is contrary to both the ABA Model Instructions on which Cisco relies and the instructions in Apple v. Samsung. Arista may prove market power by direct evidence or by indirect evidence.  *Image Tech. Servs.*, 125 F.3d 1202 (9th Cir. 1997) ("Market power can be proven by either direct or circumstantial evidence."). Cisco's attempt to suggest otherwise by including an instruction on direct proof of market power even where Arista does not intend to offer direct proof is improper and likely to confuse the jury into thinking direct proof is required. Indeed, the notes to the

---

[3] *See, e.g.*, *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995) ("It is true, as the district court stated, that numerous cases hold that a market share of less than 50 percent is presumptively insufficient to establish market power. *See, e.g.*, *Dimmitt Agri Indus., Inc. v. CPC Int'l, Inc.*, 679 F.2d 516, 528 (5th Cir. 1982), cert. denied, 460 U.S. 1082 (1983); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1274 (9th Cir. 1975). However, these cases and others cited by the district court involve claims [**33] of actual monopolization. When the claim involves attempted monopolization, most cases hold that a market share of 30 percent is presumptively insufficient to establish the power to control price."); *see also Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594, 612-13 n.33 (1953) (suggesting that even a market share less than 40% can produce monopoly power where no competitors hold substantial market share: "And, obviously, if a producer controlling an even lesser share than here is ringed by numerous smaller satellites together accounting for the rest, his mastery of the market is greater than were he facing fierce rivalry of other large sellers.").

ABA Model Instructions on which Cisco relies make clear that where the plaintiff relies only on indirect proof, only the indirect proof instruction (ABA Model Instruction 7) should be given. See ABA Model Instructions at 117, Note 1 re: Instruction 7 ("This instruction is designed for cases in which plaintiff attempts to prove the existence of monopoly power through indirect evidence . . . In cases in which plaintiff has introduced direct evidence of monopoly power sufficient to create an issue for a jury, the instruction at part A.8 (existence of Monopoly Power – Direct Proof) of this chapter should be provided"); see also id. at 122 (similar note re: Instruction 8). Although the Apple v. Samsung instructions included both instructions because Apple offered both direct and indirect proof, they still introduce the indirect proof instruction by explaining that indirect proof may be considered if the Jury "do[es] not find there is direct evidence of monopoly power" (Apple v. Samsung Instructions at 103)— correctly explaining that proof of direct evidence is not required and that a plaintiff may rely solely on indirect proof.

Arista's Instruction No. 25 correctly explains the law while avoiding the above pitfalls and likelihood of confusion. Arista's Instruction No. 25 should be adopted and Cisco's Instructions Nos. 25.1, 25.2, and 25.3 should be omitted.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### DISPUTED INSTRUCTION NO. 25.1 RE
### MONOPOLY POWER – DEFINED
### OFFERED BY CISCO

To prove its monopolization claim, Arista must prove that Cisco has monopoly power in a relevant antitrust market.  Monopoly power is the power to control prices, restrict output, or exclude competition in a relevant antitrust market.  More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time.  Additionally, possession of monopoly power, in and of itself, is not unlawful.

I will provide further instructions about how you may determine whether Arista has met its burden of proving monopoly power in a relevant market.

Source:  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Instruction 2: Monopoly Power Defined, at 104

### Cisco's Position

The ABA Model Instruction, which includes an overview of the concept of monopoly power, will provide the jury with an introduction to the issue and should be adopted here, as should the remaining ABA Model Instructions on monopoly power.

Arista's proposed instruction, although purportedly based on the ABA Model Jury Instructions, omits both the instruction on direct proof regarding monopoly power, which is unquestionably relevant and which Cisco intends to offer, *see Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995), and improperly minimizes the instruction on market share trends, which is a significant factor in determining monopoly power in the Ninth Circuit, and a factor on which Cisco intends to offer relevant evidence. *see United States v. Syufy Enters.*, 903 F.2d 659, 665-66 (9th Cir. 1990).

Arista argues that the Model Instruction incorrectly defines monopoly power because it states: "Monopoly power is the power to control prices, restrict output, **and** exclude competition in a relevant antitrust market."  Cisco disagrees that this is an incorrect statement of law—the power to control prices, the power to restrict market output, and the power to exclude competition are all elements of monopoly power.  *See, e.g.*, *Rebel Oil*, 51 F.3d at 1434 ("evidence of restricted output and supracompetitive prices"

is "direct proof" of monopoly power).  Nonetheless, to avoid a dispute, Cisco has amended the model instruction to state "or" rather than "and."  And Arista's allegations that Cisco has incorrectly altered other aspects of the model instruction are also inaccurate.

**DISPUTED INSTRUCTION NO. 25.1 RE**
**MONOPOLY POWER – DEFINED**
**OFFERED BY CISCO**

[Arista asserts that Instruction No. 25.1 should not be given the jury and is already addressed by Arista's Instruction No. 25]

**<u>Arista's Position:</u>**

For the same reasons described above in connection with Arista's Position Re Arista's Instruction No. 25, Arista's Instruction No. 25 should be adopted and Cisco's Instructions Nos. 25.1, 25.2, and 25.3 should be omitted.

**DISPUTED INSTRUCTION NO. 25.2 RE**
**EXISTENCE OF MONOPOLY POWER – INDIRECT PROOF**
**OFFERED BY CISCO**

As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market.  Arista has introduced evidence of the structure of the market to show that Cisco has monopoly power.  The evidence presented by the parties includes evidence of Cisco's market share, market share trends, barriers to entry, entry and exit by other companies, and the number and size of other competitors.  If this evidence establishes that Cisco has the power to control prices and exclude competition in the relevant antitrust market, then you may conclude that Cisco has monopoly power in the market.

**Market Share**

The first factor that you should consider is Cisco's share of the relevant market.  Based on the evidence that you have heard about Cisco's market share, you should determine Cisco's market share as a percentage of total sales in the relevant market.  Cisco must have a significant share of the market in order to possess monopoly power.

In evaluating whether the percentage of market share supports a finding of monopoly power, you also should consider other aspects of the relevant market, including market share trends, the existence of barriers to entry (that is, how difficult is it for other producers to enter the market and begin competing with Cisco for sales), the entry and exit by other companies, and the number and size of competitors. Along with Cisco's market share, these factors should inform you as to whether Cisco has monopoly power.  The higher the company's share, the higher the likelihood that a company has monopoly power.

A market share below 65 percent is ordinarily not sufficient to support a conclusion that Cisco has monopoly power.  However, if you find that the other evidence demonstrates that Cisco does, in fact, have monopoly power despite having a market share below 65 percent, you may conclude that Cisco has monopoly power.

**Market Share Trends**

The trend in Cisco's market share is something you may consider.  An increasing market share

may strengthen an inference that a company has monopoly power, particularly where that company has a high market share, while a decreasing share might show that a company does not have monopoly power.

**Barriers to Entry**

You may also consider whether there are barriers to entry into the relevant market.  Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way.  Barriers to entry might include intellectual property rights (such as patents or trade secrets), specialized marketing practices, and the brand name recognition of companies already participating in the market.

Evidence of low or no entry barriers may be evidence that Cisco does not have monopoly power, regardless of Cisco's market share, because new competitors could enter easily if Cisco attempted to raise prices for a substantial period of time.  By contrast, evidence of high barriers to entry along with high market share may support an inference that Cisco has monopoly power.

**Entry and Exit by Other Companies**

The history of entry and exit in the relevant market may be helpful to consider.  Entry of new competitors or expansion of existing competitors may be evidence that Cisco lacks monopoly power.  On the other hand, departures from the market, or the failure of firms to enter the market, particularly if prices and profit margins are relatively high, may support an inference that Cisco has monopoly power.

**Number and Size of Competitors**

You may consider whether Cisco's competitors are capable of effectively competing. In other words, you should consider whether the financial strength, market shares, and number of competitors act as a check on Cisco's ability to price its products.  If Cisco's competitors are vigorous or have large or increasing market shares this may be evidence that Cisco lacks monopoly power.  On the other hand, if you determine that Cisco's competitors are weak or have small or declining market shares, this may support an inference that Cisco has monopoly power.

Source:  Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Instruction 7: Existence of Monopoly Power – Indirect Proof, at 115.

### Cisco's Position

The ABA Model Instruction addresses the relevant issue of indirect proof of monopoly power, including an instruction on market share trends that properly states the law in the Ninth Circuit, *see United States v. Syufy Enters.*, 903 F.2d 659, 665-66 (9th Cir. 1990), and should be adopted here.

Furthermore, as Arista recognized in its briefing on summary judgment regarding monopoly power, the Ninth Circuit has identified a 65% share of the market, not 50%, as the relevant indicator for determining monopoly power. (*See* Dkt. 213 at 9 (citing *Image Technical Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1206 (9th Cir. 1997)). Indeed, in *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, the Ninth Circuit noted that "courts have considered a 50% share of the market as inadequate to establish a proscribed monopoly" and reminded the trial court that "'it is doubtful whether sixty or sixty-four per cent would be enough'" to constitute a monopoly. 512 F.2d 1264, 1274 (9th Cir. 1975) (citation omitted). Tellingly, Arista identifies no Ninth Circuit or Supreme Court decision finding monopoly power in the context of a monopolization claim below a 50% market share.[4]

---

[4] Arista cites two cases, but neither supports its position. First, the Ninth Circuit in *Rebel Oil* explicitly addressed "an *attempt* to monopolize," not "a claim of *actual* monopolization" and held that " the minimum showing of market share required in an attempt case is a lower quantum than the minimum showing required in an actual monopolization case." *See* 51 F.3d at 1438 (emphasis original). Second, the Supreme Court in *Times-Picayune* explicitly rejected a claim of monopoly power based on a 40% market share. *See Times-Picayune Pub. Co. v. United States*, 345 U.S. 594, 612 (1953).

**DISPUTED INSTRUCTION NO. 25.2 RE**
**EXISTENCE OF MONOPOLY POWER – INDIRECT PROOF**
**OFFERED BY ARISTA**

[Arista asserts that Instruction No. 25.2 should not be given the jury and is already addressed by Arista's Instruction No. 25]

**<u>Arista's Position:</u>**

For the same reasons described above in connection with Arista's Position Re Arista's Instruction No. 25, Arista's Instruction No. 25 should be adopted and Cisco's Instructions Nos. 25.1, 25.2, and 25.3 should be omitted.

1

2

3

**DISPUTED INSTRUCTION NO. 25.3 RE**
**EXISTENCE OF MONOPOLY POWER – DIRECT PROOF**
**OFFERED BY CISCO**

4

5

6

7

8

In addition to evidence of the structure of the market, you may evaluate direct proof of the power to control prices and exclude competition in determining whether Cisco has monopoly power in a relevant market.  Arista has not attempted to provide direct proof of monopoly power.  Cisco, however, contends that evidence of falling prices, increasing output, and increasing competition demonstrates that it lacks monopoly power.

9

10

11

12

Arista has the burden of proving that Cisco has the ability to raise or maintain the prices that it charges for goods or services in the relevant market above competitive levels.  Arista must prove that Cisco has the power to do so by itself—that is, without the assistance of, and despite competition from, any existing or potential competitors.

13

14

15

16

Arista must also prove that Cisco has the power to maintain prices above a competitive level for a significant period of time.  If Cisco attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then Cisco does not have monopoly power.

17

18

19

20

21

Similarly, Arista must prove that Cisco has the ability to exclude competition. For example, if Cisco attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then Cisco does not have monopoly power.

22

23

24

25

26

27

28

The ability to earn high profit margins or a high rate of return does not necessarily mean that Cisco has monopoly power.  Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as superior products or services, low costs, superior advertising or marketing, and superior reputation or goodwill.  However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. By contrast, evidence that Cisco would lose a substantial amount of sales if it raised prices substantially, or that Cisco's profit margins were low

compared to its competitors, or that Cisco's margins go up and down or are steadily decreasing, might be evidence that Cisco does not have monopoly power.

If you find that Cisco has monopoly power in the relevant market, then you must consider the remaining elements of this claim.  If you find that Cisco does not have monopoly power, then you must find for Cisco and against Arista.

Source:  Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Instruction 8: Existence of Monopoly Power – Direct Proof, at 121

### **Cisco's Position**

The ABA Model Instruction addresses direct proof of monopoly power and should be adopted here.  While Arista may not seek to prove monopoly power directly, Cisco contends that the direct evidence shows that it lacks monopoly power, thus the jury should be instructed on this issue.  (*See, e.g.*, Dkt. 221 at 18-20.); *see also Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995).

Arista argues that instructing the jury on direct evidence somehow suggests that Arista may not prove monopoly power through indirect evidence.  That has no merit.  Nothing in the ABA Model Instructions suggests that both instructions cannot be given and Arista's preferred example, *Apple v. Samsung*, provided instructions on both direct and indirect evidence of monopoly power.  Cisco intends to offer direct evidence that it lacks monopoly power and Arista provides no authority for omitting an instruction on direct evidence of monopoly power ***when it is offered***.  The ABA Model Instruction conveys the correct legal standard regarding direct proof (and Arista does not contend otherwise) and the jury should be instructed accordingly.  Furthermore, the jury will be instructed, according to Stipulated Instruction No. 7, that it should consider both direct and indirect evidence and direct evidence is not accorded more weight than circumstantial evidence.

**DISPUTED INSTRUCTION NO. 25.3 RE**
**EXISTENCE OF MONOPOLY POWER – DIRECT PROOF**
**OFFERED BY CISCO**

[Arista asserts that Instruction No. 25.3 should not be given the jury and is already addressed by Arista's Instruction No. 25]

**<u>Arista's Position:</u>**

For the same reasons described above in connection with Arista's Position Re Arista's Instruction No. 25, Arista's Instruction No. 25 should be adopted and Cisco's Instructions Nos. 25.1, 25.2, and 25.3 should be omitted.

1

2

3

### DISPUTED INSTRUCTION NO. 26 RE
### MONOPOLIZATION - WILLFUL ACQUISITION OF MONOPOLY POWER THROUGH
### ANTICOMPETITIVE ACTS
### OFFERED BY ARISTA

The next element Arista must prove is that Cisco willfully acquired or maintained monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. In addition, you should distinguish the acquisition of monopoly power through anticompetitive acts from the acquisition of monopoly power by supplying better technology, possessing superior business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals—or the achievement of these goals—unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether Cisco's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

Source: Final Jury Instructions at 105, *Apple, Inc. v. Samsung Elecs., LTD*, No. 11-CV-01846, (N.D. Cal. Aug. 21, 2012), ECF No. 1903; *see also Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, (N.D. Cal. Mar. 25, 2008) at 31, Jury Instruction No. 25 (similar); ABA Model Instructions at 123-124, Instruction 9 (similar).

### Arista's Position Re: Instruction No. 26 and
### Cisco's Proposed Additional Instructions Nos. 27 and 28

Arista's Instruction No. 26, which tracks with Instruction No. 80 from this District in *Apple v. Samsung*, properly instructs the jury regarding anticompetitive acts and the difference between anticompetitive acts and legitimate business conduct. Cisco's proposed Instruction No. 26, on the other hand, adopts portions of the ABA model instruction which Judge Koh did not choose to include in *Apple v. Samsung*, while Cisco's version still selectively chooses to omit other portions of the ABA model. Cisco then adds to its Instruction No. 26 additional misleading and unnecessary Instructions Nos. 27 and 28 (previously identified by Cisco as sub-instructions .1 and .2 to this instruction).

Cisco's proposed additional instructions regarding Noerr-Pennington litigation conduct (No. 27) and Harcourt Brace disparaging speech (No. 28) are custom instructions that Cisco generated from whole-cloth in an attempt to re-litigate Cisco's loss of its summary judgment motion regarding Noerr-Pennington. This Court already found that Cisco's copyright litigation was part of the overall course of accused anticompetitive conduct, satisfying the Hynix and Funai exception to Noerr-Pennington. Similarly, this Court already distinguished Arista's allegations regarding Cisco's communications from communications disparaging a competitor as in Harcourt Brace and concluded that the Harcourt Brace six-factor test is thus inapplicable here. Cisco has not established that either Noerr-Pennington immunity nor the Harcourt Brace disparaging communications test are appropriate issues to present to the jury— indeed, this Court has already found to the contrary. As a result, Cisco's Instructions Nos. 27 and 28 are improper and should be omitted.

Cisco's Instruction No. 27 also misstates the Hynix/Funai exception to Noerr-Pennington immunity and provides misleading purported "examples" of speech that is incidental to a lawsuit. Cisco's Instruction No. 28 is also similarly flawed in that it does not explain that the six-factor test applies only to situations in which a plaintiff relies solely on disparaging communications as the alleged anticompetitive conduct.

**DISPUTED INSTRUCTION NO. 26 RE**
**MONOPOLIZATION - WILLFUL ACQUISITION OF MONOPOLY POWER THROUGH**
**ANTICOMPETITIVE ACTS**
**OFFERED BY CISCO**

The next element Arista must prove is that Cisco willfully acquired or maintained monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition.  Some examples of harm to competition include increased prices, decreased production levels, and reduced quality.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. The acquisition or maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, which is not unlawful.

A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals—or the achievement of these goals—unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether Cisco's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

The acts or practices that result in the acquisition or maintenance of monopoly power must represent something more than business conduct that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and that was taken for no legitimate business reason.  You may not find that a company willfully acquired (or maintained) monopoly power through anticompetitive means if it has

acquired that power solely through the exercise of superior foresight and skill; or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining lawful intellectual property.

If you find that Arista has proven by a preponderance of the evidence that Cisco willfully maintained monopoly power through anticompetitive acts, then you must consider whether Arista has proved the remaining elements of this claim. If, however, you find that Arista did not prove this element by a preponderance of the evidence, then you must find for Cisco and against Arista.

Source: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Instruction 9: Willful Acquisition or Maintenance of Monopoly Power, at 123.

### Cisco's Position

The ABA Model Instruction correctly describes the standard for willful acquisition of monopoly power and should be adopted here.[5]

Arista's proposal modifies the Model Instruction by omitting instructions making clear that "the acts or practices that result in the acquisition or maintenance of monopoly power must represent something more than business conduct that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and that was taken for no legitimate business reason."  This is a proper statement of the law, *see, e.g.*, *Verizon Commc'ns v. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 407-08 (2004), and the jury should be so instructed.   Furthermore, the jury should be instructed that evidence of a legitimate business justification entitles Cisco to judgment, and that Plaintiff bears the burden of proof on this issue.  *See Image Technical Serv. Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 620 n.9 (9th Cir. 1990) ("The plaintiff also bears the burden of proving lack of legitimate business justifications in a Section 2 claim"); *aff'd sub nom. Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992).

---

[5] Cisco's proposal inserts the names of the parties and omits examples that are not relevant, but does not otherwise change the Model Instruction.

**DISPUTED INSTRUCTION NO. 27 RE
LITIGATION CONDUCT PROTECTED
OFFERED BY CISCO**

The right to bring a lawsuit and to make speech incidental to that lawsuit are freedoms protected by the U.S. Constitution.  Examples of speech incidental to a lawsuit include, but are not limited to:

- Communications between private parties, if sufficiently related to the lawsuit;
- Publicity and threats of litigation; and
- Press releases regarding a competitor's alleged intellectual property infringement.

You may not infer that filing a lawsuit, by itself or in combination with speech incidental to a lawsuit, violates the antitrust laws or other laws.

Before finding that Cisco's lawsuit against Arista and speech incidental to that lawsuit could be anticompetitive, you must first consider whether Arista has proven some other, different Cisco act that was both independently anticompetitive and produced anticompetitive harm.  If you do not find that Arista has proven some other such act that independently produced anticompetitive harm, you must find for Cisco on all of Arista's claims.

If you do find that Arista has proven some other act by Cisco that independently produced anticompetitive harm, you must then consider whether the CLI lawsuit or speech incidental to that lawsuit also caused that anticompetitive harm.  If you do not find that Arista has proven that the CLI lawsuit or speech incidental to that lawsuit also caused that anticompetitive harm, you may not consider the CLI lawsuit or speech incidental to that lawsuit to be anticompetitive or to be have caused Arista any injury or damage.

Source: *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("Those who petition government for redress are generally immune from antitrust liability."); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition."); *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961) ("The right of petition is one of the freedoms protected by the Bill of Rights…."); *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1097 (N.D. Cal. 2007)

### Cisco's Position

The Court found that factual disputes precluded granting summary judgment on *Noerr-Pennington*, (*see, e.g.*, Dkt. 270 at 22 ("a reasonable jury could find that Cisco raised the specter of the CLI lawsuit to persuade customers to abandon Cisco's competitors"); 25 ("there is a material factual dispute over whether Cisco used its CLI litigation to create FUD in an anticompetitive manner"); at 24 ("the CLI lawsuit was arguably causally connected to the harms produced by Cisco's blog posts").) Accordingly, the jury should be instructed on *Noerr-Pennington* and the legal standards for making the requisite determinations. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("Those who petition government for redress are generally immune from antitrust liability."); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition."); *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961) ("The right of petition is one of the freedoms protected by the Bill of Rights…."); *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1097 (N.D. Cal. 2007). Cisco's instruction tracks those standards and should be adopted.

Arista argues that Cisco's examples of speech incidental to litigation are "misleading," but the examples are accurate descriptions of speech found to be "sufficiently related to petitioning activity" to fall "within the protection of the Petition Clause." *See Sosa v. DirectTV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006). For instance, in *Coastal States*, "publicity and threats of litigation" were found to be "protected by petitioning immunity." *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983). In *Kemin Foods*, press releases regarding infringement made during a pending litigation were found to be "protected unless they were undertaken with an improper motive and without probable cause, i.e., objectively baseless." *Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 384 F. Supp. 2d 1334, 1345, 1353 (S.D. Iowa 2005), *aff'd*, 464 F.3d 1339 (Fed. Cir. 2006). And the court in *Aircapital Cablevision* found "Multimedia's conduct in bringing suit against Starlink and publicizing the same was activity protected under the First Amendment by the *Noerr-Pennington* doctrine." *Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp., Inc.*, 634 F. Supp. 316, 326 (D. Kan. 1986). Accordingly, Cisco's proposed examples provide useful guidance to the jury and its proposed instruction should be adopted.

**DISPUTED INSTRUCTION NO. 27 RE**
**LITIGATION CONDUCT PROTECTED**
**OFFERED BY CISCO**

[Arista asserts that Instruction No. 27 should not be given.]

**<u>Arista's Position:</u>**

For the same reasons described above in connection with Arista's Position Re Arista's Instruction No. 26, Arista's Instruction No. 26 should be adopted and Cisco's Instructions Nos. 26, 27, and 28 should be omitted.

**DISPUTED INSTRUCTION NO. 28 RE**
**COMMERCIAL SPEECH AS EXCLUSIONARY CONDUCT**
**OFFERED BY CISCO**

Before finding that Cisco's public or private statements regarding the CLI litigation are anticompetitive, you must find that Arista has proven by a preponderance of the evidence that Cisco's statements were:

(1) clearly false;

(2) clearly material;

(3) clearly likely to induce reasonable reliance;

(4) made to buyers without knowledge of the subject matter;

(5) continued for prolonged periods; and

(6) not readily susceptible of neutralization or other offset by rivals.

If you find that Arista has failed to prove any one, two, or more of these elements, you may not find Cisco's public or private statements regarding the CLI litigation to be anticompetitive, or to be grounds for any injury or damage to Arista.


Source: Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Pub'ns, Inc., 108 F.3d 1147, 1152 (9th Cir. 1997)


**Cisco's Position**

Arista has contended that Cisco engaged in a campaign of commercial speech and the Court has found that there is "a material dispute of fact whether Cisco engaged in sales tactics that amounted to exclusionary conduct." In the Ninth Circuit, when evaluating anticompetitive conduct, commercial speech is subject to the *Harcourt Brace* test, and the jury should be instructed on its factors. *See Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Pub'ns, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997).

Arista argues that *Harcourt Brace* is inapplicable because it "applies only to situations in which a plaintiff relies solely on disparaging communications as the alleged anticompetitive conduct." But *Harcourt Brace* is not so limited. First, in *Harcourt Brace*, the plaintiff relied on more than just disparaging communications; there were also allegations of "predatory hiring." *See Harcourt Brace*, 108 F.3d at 1151. Second, although it was analyzing disparaging content in that case, the Ninth Circuit does not limit the test to disparaging content—rather, its reasoning addresses "false or misleading advertising" in general. *See id.* at 1152 ("While false or misleading advertising directed solely at a single competitor may not be competition on the merits, the fliers in question must have a significant and enduring adverse impact on competition itself in the relevant markets to rise to the level of an antitrust violation."). And, under any rubric, at least some of Arista's claims should be subject to the *Harcourt Brace* test. Dr. Scott Morton, Arista's expert, contended at her deposition that Cisco's alleged "FUD campaign" is a campaign of disparagement. (*See* Dkt. 209, Ex. B at 326:1-4 (identifying the alleged anticompetitive conduct as "the general FUD campaign that Cisco's carrying out which has – in which they broadly disparage Arista"); *id.* at 327:21-23 ("What I'm describing is a purposeful campaign by Cisco to disparage Arista…").) Indeed, Dr. Scott Morton was abundantly clear that the statements in Cisco's blogs were inaccurate and that was important to her analysis. (*See id.* at 297:12-13 ("Because they are inaccurate, they're part of the attempt to close the CLI…"); 297:19-24 ("Q. Is the – one of the factors that they're inaccurate in other words, does it matter whether they were accurate or not in your view? A. Oh, I think it does matter that they're inaccurate, yes.").) Accordingly, *Harcourt Brace* applies and the jury should be instructed on the applicable test to determine if allegedly "false or misleading advertising" rises to the level of an antitrust violation.

**DISPUTED INSTRUCTION NO. 28 RE**
**COMMERCIAL SPEECH AS EXCLUSIONARY CONDUCT**
**OFFERED BY CISCO**

[Arista asserts that Instruction No. 28 should not be given.]

**<u>Arista's Position</u>**

For the same reasons described above in connection with Arista's Position Re Arista's Instruction No. 26, Arista's Instruction No. 26 should be adopted and Cisco's Instructions Nos. 26, 27, and 28 should be omitted.

**DISPUTED INSTRUCTION NO. 29 RE**
**MONOPOLIZATION - ANTICOMPETITIVE BEHAVIOR REGARDING THE CLI**
**OFFERED BY ARISTA**

Arista alleges that Cisco willfully acquired or maintained monopoly power based on anticompetitive behavior in connection with the Command Line Interface ("CLI") used to configure and manage the operation of a switch.  Under many circumstances, businesses are free to change their policies toward competitors, customers, and other market participants, including deciding to stop selling or licensing a product or technology, or asserting ownership of technology as a proprietary intellectual property right.

Such changes in policy toward competitors, customers, and other market participants, however, may also be anticompetitive when taken by a business with market power following a long course of inconsistent conduct under a prior policy. As to Arista's claims that Cisco changed from an "open" policy regarding the CLI to a "closed" policy regarding the CLI by claiming ownership of the CLI, you may find that Cisco willfully acquired or maintained monopoly power through anticompetitive acts if: Cisco promoted or allowed industry adoption of the CLI, including, *e.g.*, by marketing the CLI as an "industry standard"; Arista and others adopted the CLI; CLI adoption led to network effects, such as entrenched customer preferences, that make changing to a different CLI more difficult and costly; and after this "open" course of conduct, Cisco "closed" the CLI by informing the industry that the CLI was proprietary.

In determining whether Arista has proved that Cisco willfully acquired or maintained monopoly power, you may consider Cisco's course of conduct as a whole and its overall effect, rather than focusing on a particular aspect of Cisco's conduct in isolation.

Source:  Adapted from *Apple, Inc. v. Samsung Elecs., LTD*, No. 11-CV-01846, (N.D. Cal. Aug. 21, 2012), ECF No. 1903 Final Jury Instructions at 106, Instruction No., 81; *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, (N.D. Cal. Mar. 25, 2008) at 33, Jury Instruction No. 26; and *Image Technical Servs., Inc. v. Eastman Kodak Co.*, No. C-87-1686 (N.D. Cal Aug. 14, 1995), ECF No. 463 at Instruction No. 29; *see also* ECF No. 243-14 in this case (*United States v. Borland Int'l Inc.*, No. C 91 3666 MHP, Competitive Impact Statement (N.D. Cal. Oct. 22, 1991)); *United States v. Borland Int'l, Inc.*, No. 91-3666, 1992 U.S. Dist. LEXIS 5095 (N.D. Cal. March 13, 1992).

**Arista's Position Re: Instruction No. 29 and**
**Cisco's Additional Proposed Instructions Nos. 30 and 31**

Each of Kodak, Apple v. Samsung, and Hynix v. Rambus included a jury instruction explaining how the alleged conduct—the open early, closed late policy reversal in Kodak, and the standards hold up in Apple v. Samsung and Hynix v. Rambus—could be anticompetitive. *Image Technical Servs., Inc. v. Eastman Kodak Co.*, No. C-87-1684 (N.D. Cal Aug. 14, 1995), ECF No. 463 at Instruction No. 29; *Apple, Inc. v. Samsung Elecs., LTD*, No. 11-CV-01846, (N.D. Cal. Aug. 21, 2012), ECF No. 1903 Final Jury Instructions at 106, Instruction No., 81; Hynix Semiconductor Inc., v. Rambus Inc., No. 5:06-CV-00244-RMW, Dkt. No. 1254, (N.D. Cal. Mar. 25, 2008) at 33, Jury Instruction No. 26. Arista's instruction No. 29 similarly outlines the open early, closed late conduct that is alleged here that the jury could find to be anticompetitive. It should be adopted.

Cisco's Instruction No. 30 is improper because Arista does not contend that Cisco's anticompetitive conduct included a "refusal to deal." Arista's contention is that Cisco's anticompetitive conduct was a reversal in policy. Reference to "refusal to deal" is not included in the jury instructions from either *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-01846, Dkt. 1883 or *Hynix Semiconductor Inc. v. Rambus Inc.*, No. 05-00334, Dkt. 1254—the cases and instructions from this district that are most analogous to the present litigation. Even assuming, arguendo, that there is some element of overlap between these two types of anticompetitive conduct, the inclusion of an instruction that is explicitly about a theory not asserted in this case would confuse the issues and mislead the jury. Finally, Arista's proposed Instruction No. 29 already includes the general substance of Cisco's proposed jury instruction 30 (and 31) without the same risk of confusing the issues and misleading the jury. Specifically, Arista's proposed Instruction No. 29 provides: "Under many circumstances, businesses are free to change their policies toward competitors, customers, and other market participants, including deciding to stop selling or licensing a product or technology, or asserting ownership of technology as a proprietary intellectual property right."

Cisco's Instruction No. 31, in contrast to Arista's Instruction No. 29 outlining the conduct actually alleged in this case, states a variety of unsupported, irrelevant, and prejudicial language about the purpose and use of intellectual property "in general." Cisco's Instruction No. 31 fails to provide any

guidance to the jury about the anticompetitive conduct that is alleged here, and instead provides highly prejudicial language analogous to the bombastic assertions made by Cisco's expert Dr. Carlton in his report—language that this Court already excluded as prejudicial and unsupported in this Court's *Daubert* decision. Such language would be even more harmful if presented by the Court as a jury instruction and should be excluded.

### DISPUTED INSTRUCTION NO. 29 RE
### MONOPOLIZATION - ANTICOMPETITIVE BEHAVIOR REGARDING THE CLI
### OFFERED BY CISCO

[Cisco opposes this instruction in its entirety.]

### <u>Cisco's Position</u>

Arista's proposed instruction is a one-sided statement of its contentions that would be incredibly prejudicial if given by the Court. Moreover, Arista's instruction is not based upon the law of the Northern District of California as it stands today; rather, it is based upon Arista's unsubstantiated interpretation of the law, which forms the substance of their argument in this case, but is improper as an instruction for the jury. *See Services Employees v. Union of Healthcare Workers*, 718 F.3d 1036, (9th Cir. May 22, 2013). ; *see Daubert* Hr'g Tr., at 30, lines 1-3 ("And you know, none of us actually knows whether *Kodak* can be stretched in a way that Arista's whole case is built on."). Indeed, Arista fails to identify even a single jury instruction that informs the theory that "open early, closed late" is anticompetitive conduct as a matter of law.[6]  The Court should not give Arista's novel legal theory the imprimatur of law through a jury instruction.

Arista's proposed instruction is also improper because it substantially contradicts the Court's rulings in the recent *Daubert* hearing and Order. Instead of addressing Cisco's marketing statement regarding the Cisco CLI, Arista refers generically to "the CLI," treating it as if it were a common industry standard despite the Court's prohibition on testimony regarding de facto or informal industry standards. Furthermore, Arista draws its instruction from *Apple* and *Rambus*—cases that, in Arista's own words, address "standards hold up"—an issues that the Court has explicitly described as "not relevant to this case." (*See* May 10, 2018, *Daubert* Hr'g Tr. at 37:6-8.) *See also See Apple, Inc. v. Samsung Elecs., LTD*, No. 11-CV-01846, (N.D. Cal. Aug. 21, 2012), ECF No. 1903 Final Jury Instructions at 106, Instruction No., 81; *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, (N.D. Cal. Mar. 25, 2008) at 33, Jury Instruction No. 26.

---

[6] Such an instruction would be inaccurate, since—as describe in more detail with regard to Disputed Instruction 30—"reversal of policy" theories are a species of "refusal to deal" claims, *see Image Technical Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1209 (9th Cir. 1997), and viable only in a limited number of circumstances under the current law. *See MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1131-34 (9th Cir. 2004).

Arista's proposed instruction should be rejected in its entirety.  Instruction 26 provides the legal standard applicable to anticompetitive conduct generally while Instruction 30 provides the legal standard applicable to "refusal to deal" claims.  Accordingly, Arista's proposed Instruction 29 is not only highly prejudicial and contrary to law, it is entirely superfluous.

**DISPUTED JURY INSTRUCTION NO. 30 RE**
**UNILATERAL REFUSAL TO DEAL**
**OFFERED BY CISCO**

As stated before, one of the elements Arista must prove is that Cisco engaged in anticompetitive conduct.  Arista claims that this element is satisfied in this case because Cisco unlawfully refused to deal with Arista, a competitor.

Ordinarily, a company may deal or refuse to deal with whomever it pleases, as long as it acts independently.  Even a company with monopoly power in a relevant market has no general duty to cooperate with its business rivals and ordinarily may refuse to deal with them.

Considering all of the facts and circumstances, you must decide whether Cisco's refusal to deal was motivated solely by an anticompetitive intent.  A refusal to deal with a competitor constitutes anticompetitive conduct only where the refusal is contrary to the short-run best interest of Cisco, and where it makes sense for Cisco only because it harms competitors and helps Cisco achieve or maintain monopoly power in the long run.

Cisco has introduced evidence that its refusal to deal was based on legitimate business purposes.  A refusal to deal that is based in part on legitimate business reasons does not violate the antitrust laws, even if it is also motivated by the desire to harm competitors or does in fact harm competitors.  In general, the desire to maintain monopoly power or to block entry of competitors is not a legitimate business purpose.  A legitimate business purpose is one that benefits the actor regardless of any harmful effect on competitors, such as a purpose to promote efficiency or quality, offer a better product or service, or increase short-run profits.  In other words, if the refusal to deal results in or is expected to result in short-run or long-run benefits to Cisco—such as more profits, reduction of costs, a higher market share, or avoiding the loss of customers—then it is not anticompetitive and you must find for Cisco on this element.  On the other hand, if the refusal to deal hurts Cisco in the short-run and was expected to hurt Cisco in the short run, and is undertaken only because Cisco expects it to harm competitors and enhance its monopoly power in the long run, then you must find for Arista on this element.

Source: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) ("Instruction: Unilateral Refusal to Deal") at 129

### Cisco's Position

The ABA Model Instruction appropriately instructs the jury on the lack of an obligation to deal with competitors, which is relevant to Cisco's refusal to allow Arista to use Cisco's copyrighted CLI or other intellectual property.  Furthermore, it properly instructs the jury on relevance of a legitimate business purpose and how that should be considered in determining whether conduct is anticompetitive. *See Verizon Commc'ns v. Law Offices of Curtis v. Trinko*, 450 U.S. 398, 406-11 (2004); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 483 (1992) ("liability turns, then, on whether 'valid business reasons' can explain Kodak's conduct"); *Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1218 (9th Cir. 1997).  The jury should be instructed that evidence of a legitimate business justification entitles Cisco to judgment, and that Plaintiff bears the burden of proof on this issue. *See Image Technical Serv. Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 620 n.9 (9th Cir. 1990) ("The plaintiff also bears the burden of proving lack of legitimate business justifications in a Section 2 claim"); *aff'd sub nom. Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992).

Arista argues that it does not contend that Cisco's anticompetitive conduce included a "refusal to deal," but that cannot be reconciled with Arista's actual contentions.  Throughout this litigation, Arista has repeatedly described itself as offering a theory of an anticompetitive "policy reversal" based on *Kodak*.  (*See, e.g.*, Sept. 7, 2017, Motion to Dismiss Hr'g Tr. at 55:16-21 ("The *Kodak* case was about changing the policy.  And we don't ever plead a misrepresentation."); Apr. 19, 2018, Summary Judgment Hr'g Tr. at 31:16-19 ("What our argument is, is that there is an anti-competitive anti-trust violation with an 'open early, closed late.'  That's established by *Kodak*.").  The policy reversal allegations in *Kodak* are, as the Ninth Circuit recognized, a species of "refusal to deal" claim.  *See Image Technical Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1209 (9th Cir. 1997) ("Section 2 of the Sherman Act prohibits a monopolist's unilateral action, like Kodak's refusal to deal, if that conduct harms the competitive process in the absence of a legitimate business justification.").  Indeed, the instructions in *Kodak* instructed the jury on the then-applicable law on refusal to deal.  *See, e.g.*, *Image Technical*

*Servs., Inc. v. Eastman Kodak Co.*, No. C-87-1684 (N.D. Cal Aug. 14, 1995), ECF No. 463, Instruction No. 29.  And Arista's claim that its conduct is more analogous to the *Apple, Inc. v. Samsung Elecs., Co.* or *Hynix Semiconductor Inc. v. Rambus Inc.* cases has no merit—those cases both involved allegations of fraudulent failure to disclose intellectual property to a standards body.  *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-01846, Dkt. 1883 at 106 (considering whether "Samsung made an intentionally false promise" and "knowingly failed to disclose" its intellectual property rights); *Hynix Semiconductor Inc. v. Rambus Inc.*, No. 05-00334, Dkt. 1254, Instruction 9 (Rambus "amended its patent applications to cover certain features that JEDEC was discussing" and "deliberately failed to tell JEDEC").  In contrast, Arista has taken the position that "whether the CLI is a standard is irrelevant to whether Cisco committed an antitrust violation," (*see* Dkt. 241 at 3), and that it makes no allegation of misrepresentation or fraud.  (*See* Sept. 7, 2017, Motion to Dismiss Hr'g Tr. at 55:16-21 ("[W]e don't ever plead a misrepresentation.").)  Accordingly, the standard for "refusal to deal" applies and the jury should be instructed on the current law applicable to "refusal to deal" claims.  *See Verizon Commc'ns v. Law Offices of Curtis v. Trinko*, 450 U.S. 398, 406-11 (2004); *see also MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1131-34 (9th Cir. 2004) (applying *Trinko* to refusal to deal claim).

**DISPUTED JURY INSTRUCTION NO. 30 RE**
**UNILATERAL REFUSAL TO DEAL**
**OFFERED BY CISCO**

[Arista asserts that Instruction No. 30 should not be given.]

## Arista's Position

For the same reasons described above in connection with Arista's Position Re Arista's Instruction No. 29, Arista's Instruction No. 29 should be adopted and Cisco's Instructions Nos. 30 and 31 should be omitted.

**DISPUTED INSTRUCTION NO. 31**
**LEGITIMATE BUSINESS JUSTIFICATION – INTELLECTUAL PROPERTY RIGHTS**
**OFFERED BY CISCO**

This case involves Cisco's assertion of intellectual property rights in its CLI.  The basic purpose of the intellectual property and antitrust laws is to promote innovation and industry. In general, the antitrust laws seek to promote innovation and industry by maintaining competitive markets. The intellectual property laws seek to promote the progress of useful arts and sciences by protecting the exclusive right of authors and inventors to benefit from their work. These investments can lead to new and better products and better ways of making things.  In this way, an intellectual property holder's exercise of its right to exclude others from using its intellectual property can be reconciled with antitrust policy.

Thus, so long as an intellectual property owner acts only to take advantage of the right to exclude created by its intellectual property, it does not violate the antitrust laws.  If, on the other hand, the intellectual property holder seeks to restrain trade beyond the right to exclude conferred by the intellectual property rights, his or her conduct may be an antitrust violation.  Here, Cisco's lawsuit against Arista was objectively reasonable and the jury found that Cisco's copyrights were valid copyrights that Arista infringed.   The enforcement of valid intellectual property rights is not anticompetitive, and you may not find that Cisco engaged in anticompetitive conduct by enforcing its copyrights in its command line interface.

Antitrust law does not impose a general duty on a monopolist to cooperate with a competitor or to share its intellectual property with a competitor, even if having that intellectual property might be useful to the competitor in developing its products or competing.  A refusal to deal with a competitor that is based in part on legitimate business reasons does not violate the antitrust laws, even if it is also motivated by the desire to harm competitors or does in fact harm competitors.  Here, Cisco's desire to prevent others from using its intellectual property is presumed to be a legitimate business reason for its conduct.  Arista has the burden of proving by a preponderance of the evidence that Cisco had no legitimate business reason for its conduct.  If you find that Arista has not proven that Cisco had no legitimate business reason for its conduct, you must find for Cisco and against Arista on all of Arista's

claims.

Source: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) A-179, B-129; *Novell, Inc. v. Microsoft Corp.*, No. 2:04-cv-01045-JVM, ECF 388 at 9 (D. Utah Dec. 19, 2011) (Jury Instructions), *aff'd Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064 (10th Cir. 2013); *cert. denied*, 134 S. Ct. 1947 (2014); *Image Technical Servs., Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 620 n.9 (9th Cir. 1990); *Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1218 (9th Cir. 1997)

### Cisco's Position

The jury should be instructed on the relationship between the intellectual property laws and the antitrust laws and Cisco's proposed instruction, adapted from the ABA Model Jury Instruction regarding the relationship between the patent laws and the antitrust laws, does so.  Furthermore, the jury should be instructed on the presumption in the Ninth Circuit that enforcement of intellectual property is a legitimate business justification and that the CLI litigation was objectively reasonable.  *See Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1218 (9th Cir. 1997); *see also Novell, Inc. v. Microsoft Corp.*, No. 2:04-cv-01045-JVM, ECF 388 at 9 (D. Utah Dec. 19, 2011) (Jury Instructions), *aff'd Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064 (10th Cir. 2013); *cert. denied*, 134 S. Ct. 1947 (2014); *Image Technical Servs., Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 620 n.9 (9th Cir. 1990).

1
2

### DISPUTED JURY INSTRUCTION NO. 31 RE
### LEGITIMATE BUSINESS JUSTIFICATION – INTELLECTUAL PROPERTY RIGHTS
### OFFERED BY ARISTA

3
4
5

[Arista asserts that Instruction No. 31 should not be given.]

6
7

### Arista's Position

8
9
10

    For the same reasons described above in connection with Arista's Position Re Arista's Instruction No. 29, Arista's Instruction No. 29 should be adopted and Cisco's Instructions Nos. 30 and 31 should be omitted.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### DISPUTED INSTRUCTION NO. 32 RE
### MONOPOLIZATION – CISCO'S INTENT
### OFFERED BY ARISTA

In determining whether or not Cisco willfully acquired monopoly power in a relevant market, specific intent to monopolize, is not required for one to be liable for monopolization; only the intent to commit the acts that resulted in monopolization.

Source:  Adapted from Final Jury Instructions at 107, *Apple, Inc. v. Samsung Elecs., LTD*, No. 11-CV-01846, (N.D. Cal. Aug. 21, 2012), ECF No. 1903

### Arista's Position

Arista's instruction should be adopted because it accurately reflects the law regarding the type of intent required for actual monopolization and more clearly explains this law, while Cisco's proposed instruction does not.  *Am. Pro. Testing Serv. v. Harcourt Brace Jovanovich Legal & Pro. Publs.*, 108 F.3d 1147 (9th Cir. 1997) ("To succeed on its claim for actual monopolization under § 2, America must prove Harcourt: . . . willfully acquired or maintained its monopoly power through exclusionary conduct . . . ."); *Dooley v. Crab Boat Owners Ass'n*, No. 02-0676, 2004 U.S. Dist. LEXIS 7117 (N.D. Cal. Apr. 26, 2004) (Patel, C.J.) ("In order to succeed on a claim of monopolization, a plaintiff must demonstrate that the defendant willfully acquired or maintained monopoly power in the relevant market through anticompetitive conduct.").

Additionally, Arista's proposed instruction is consistent with the distinction in the intent requirement between a claim of actual monopolization and attempted monopolization.  *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985) ("In *Lorain Journal*, the violation of § 2 was an 'attempt to monopolize,' rather than monopolization, but the question of intent is relevant to both offenses.  In the former case, it is necessary to prove a 'specific intent' to accomplish the forbidden objective . . . .  In the latter case evidence of intent is merely relevant to the question whether the challenged conduct is fairly characterized as 'exclusionary' or 'anticompetitive' – to use the words of the courts instructions – or 'predatory, to use a word that scholars seem to favor.  Whichever label is

used, there is agreement on the proposition that 'no monopolist monopolizes unconscious of what he is doing.'") ; *Elec. for Imaging, Inc. v. Coyle*, No. 01-4853, 2005 U.S. Dist. LEXIS 50212 (N.D. Cal. July 14, 2005) (Jenkins, J.) ("Thus, the requirements for attempted monopolization are similar to the requirements for a monopolization claim, 'differing primarily in the requisite intent and the necessary level of monopoly power.'") (quoting *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997). In contrast, Cisco's proposed instruction, which would require a finding of an "intent to dominate the relevant market," improperly seeks to import the specific intent requirement from an attempted monopolization claim.

Although Cisco's position statement cites *Aspen Skiing*'s language regarding the potential relevance of intent to the inquiry of whether conduct is anticompetitive, neither *Aspen Skiing* nor any of the authorities cited by Cisco establish that proof of specific intent is ***required***. Because Cisco's instruction is phrased as a burden of proof requirement, not a statement of factors that may be relevant to consider, it is contrary to law and should not be adopted.

**DISPUTED INSTRUCTION NO. 32 RE**
**MONOPOLIZATION – CISCO'S INTENT**
**OFFERED BY CISCO**

In determining whether or not Cisco willfully acquired monopoly power in the relevant market(s), Arista must prove, by a preponderance of the evidence, that Cisco willfully acquired or maintained monopoly power by means other than competition on the merits.  To prove unlawful monopolization, Arista must prove that Cisco engaged in anticompetitive practices either with the intent to dominate the relevant market, or knowing that such conduct would probably secure (or maintain) monopoly power and that it succeeded in doing so.

Source: 4-80 Adapted from *Modern Federal Jury Instructions—Civil*, ¶ 80.01, Instruction 80.11 (Matthew Bender)


**<u>Cisco's Position</u>**

Arista's proposed instruction deviates from the model instruction and suggests that intent is not a relevant consideration in determining whether the actions are anticompetitive.  In fact, the Supreme Court has held that, in monopolization cases, evidence of intent is "relevant to the question whether the challenged conduct is fairly characterized as 'exclusionary' or 'anticompetitive.'"  *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 603 (1985).  Moreover, while with classic predatory conduct, the Supreme Court has stated, "there is agreement on the proposition that 'no monopolist monopolizes unconscious of what he is doing,'" *id.*, that does not apply here, where Arista has advanced a novel theory of anticompetitive conduct.  (*See, e.g.*, May 10, 2018, Hr'g Tr. at 30:1-5 (The Court: "And you know, none of us actually knows whether *Kodak* can be stretched in a way that Arista's whole case is built on.  I agree with you, this is not a *Kodak* situation…").)  Accordingly, the model instruction's explicit instruction regarding knowledge is appropriate and should be given to the jury to clarify the issue of general intent.

### DISPUTED INSTRUCTION NO. 33 RE
### MONOPOLIZATION – ANTICOMPETITIVE CONDUCT: MIXED COMPETITIVE AND
### ANTICOMPETITIVE CONDUCT
### OFFERED BY ARISTA

In order to prove that Cisco achieved or maintained its monopoly through anticompetitive conduct, Arista does not have to show that the monopoly was gained (or maintained) solely by anticompetitive conduct. Arista may meet its burden by proving, by a preponderance of the evidence, that the anticompetitive conduct played a significant or substantial role in obtaining or maintaining the monopoly.

In other words, an isolated or trivial anticompetitive episode will not make Cisco liable for monopolization if any monopoly power that Cisco possessed was otherwise gained, retained and used in a "good business" fashion. On the other hand, Arista is not required to prove every one of its specific allegations of anticompetitive behavior. Once again, you have a problem which requires your exercise of judgment and a thorough and sensitive weighing of the evidence. In the end, you must decide whether Arista has carried its burden of proving not merely an isolated or occasional anticompetitive act, but that Cisco engaged in a substantial or significant amount of anticompetitive conduct.

Source: 4-80 Modern Federal Jury Instructions—Civil, ¶ 80.01, Instruction 80.13 (Matthew Bender)

### Arista's Position

Arista's instruction should be adopted because it appropriately and clearly states the law with respect to proof of the elements of a monopolization claim, as described in the preceding instructions. The anticompetitive conduct alleged must be viewed in the aggregate.  See *Free Freehand Corp. v. Adobe Sys.*, 852 F. Supp. 2d 1171 (N.D. Cal. 2012) (Koh, J.) ("Thus, the Court analyzes the alleged anticompetitive practices below to determine whether, in the aggregate, they tend to reduce competition and maintain Adobe's monopoly power."); *Anaheim v. So. Cal. Edison Co.*, 955 F.2d 1373 (9th Cir. 1992) ("In so doing, we agree that it would not be proper to focus on specific individual acts of an accused monopolist while refusing to consider their overall combined effect. At the same time, if all we are shown is a number of perfectly legal acts, it becomes much more difficult to find overall wrongdoing.

Similarly, a finding of some slight wrongdoing in certain areas need not by itself add up to a violation. We are not dealing with a mathematical equation. We are dealing with what has been called the 'synergistic effect' of the mixture of the elements.").

Cisco claims that Arista's proposed instruction is unnecessary and prejudicial because "Arista's allegations are based on a so-called 'policy reversal,' not multiple allegedly anticompetitive acts or ***mixed anticompetitive and competitive conduct,"*** but Cisco has insisted throughout this case that any injury to Arista was from its lawful conduct, not the conduct alleged to be anticompetitive, and there is no proof of one over the other.  The jury should be instructed with a correct statement of Arista's burden here, which is proving, "by a preponderance of the evidence, that the anticompetitive conduct played a significant or substantial role in obtaining or maintaining the monopoly."

**DISPUTED INSTRUCTION NO. 33 RE**
**MONOPOLIZATION – ANTICOMPETITIVE CONDUCT: MIXED COMPETITIVE AND**
**ANTICOMPETITIVE CONDUCT**
**OFFERED BY CISCO**

[Cisco opposes this instruction in its entirety]

**<u>Cisco's Position</u>**

Arista's proposed instruction is prejudicial and likely to confuse the jury.  Arista's allegations are based on a so-called "policy reversal," not multiple allegedly anticompetitive acts or mixed anticompetitive and competitive conduct.  Furthermore, Cisco has not contended that its conduct was "merely an isolated or occasional anticompetitive act," but that its conduct was not anticompetitive at all.  Accordingly, the instruction that "Arista is not required to prove every one of its specific allegations of anticompetitive behavior" is likely to mislead the jury as to Arista's burden of proof.  Furthermore, while an instruction to consider Cisco's conduct as a whole may be supported, *see Free Freehand Corp. v. Adobe Sys.*, 852 F. Supp. 2d 1171 (N.D. Cal. 2012); *Anaheim v. So. Cal. Edison Co.*, 955 F.2d 1373 (9th Cir. 1992), Arista fails to identify even a single court in the Ninth Circuit that has actually adopted the confusing language it now proposes.  Accordingly, Arista's proposed instruction is unsupported by authority and should be rejected.

Arista argues that the instruction is justified because of Cisco's position that any injury has resulted from legal conduct, but that issue is addressed by the proposed instructions regarding injury and causation and damages.  An additional instruction regarding anticompetitive conduct does not address Cisco's contentions regarding injury or damages.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STIPULATED INSTRUCTION NO. 34 RE
ATTEMPTED MONOPOLIZATION – THE COMPLAINT AND THE STATUTE**

Arista claims that Cisco has attempted to monopolize a relevant market, based on the contentions that I have already summarized. Cisco disputes this claim for the reasons that I previously summarized.

Arista's claim is based on section 2 of the Sherman Antitrust Act. That law, in pertinent part, provides: "Every person who shall … attempt to monopolize part of the commerce among the several states, or with foreign nations [has committed an unlawful act]."

Source: Adapted from 4-80 Modern Federal Jury Instructions—Civil, ¶ 80.02, Instruction 80-16 (Matthew Bender)

**STIPULATED INSTRUCTION NO. 35**
**ATTEMPTED MONOPOLIZATION – ELEMENTS**

Arista also alleges that it was injured by Cisco's unlawful attempted monopolization of markets consisting of network switches, in violation of Section 2 of the Sherman Act. To prevail on this claim, Arista must prove each of the following elements[7] by a preponderance of the evidence:

(1) **First**, that Cisco had a specific intent to achieve a monopoly in a relevant market;

(2) **Second**, that Cisco engaged in anticompetitive conduct to accomplish its intended goal of achieving a monopoly;

(3) **Third**, that there was a dangerous probability that Cisco would sooner or later achieve its goal of a monopoly; and

(4) **Fourth**, that Arista was injured in its business or property as a result of Cisco's actions.

If you find that Arista has failed to prove any of these elements, then you must find for Cisco and against Arista. If you find that Arista has proved each of these elements by a preponderance of the evidence, then you must find for Arista and against Cisco.

Source: Adapted from Final Jury Instructions at 101, *Apple, Inc. v. Samsung Elecs., LTD*, No. 11-CV-01846, (N.D. Cal. Aug. 21, 2012), ECF No. 1903; 4-80 *Modern Federal Jury Instructions—Civil*, ¶ 80.02, Instruction 80-18 (Matthew Bender)

---

[7] NOTE FOR THE COURT: That Cisco's conduct occurred in or affected interstate or foreign commerce is also an element of Arista's monopolization and attempted monopolization claims; however, Cisco does not dispute that this element is satisfied for both of Arista's claims, so the parties agree not to instruct the jury regarding this element.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STIPULATED INSTRUCTION NO. 36 RE**
**ATTEMPTED MONOPOLIZATION –**
**SPECIFIC INTENT TO ACHIEVE MONOPOLY**

The first element Arista must prove by a preponderance of the evidence is that Cisco acted with the intention of achieving a monopoly in a relevant market. I have explained what a monopoly is, in some detail. Essentially, what Arista must prove to meet its burden on the first element, is that Cisco acted with the purpose or conscious object of acquiring the power to control prices or to exclude competition in a relevant market.

Source: 4-80 Modern Federal Jury Instructions—Civil, ¶ 80.02, Instruction 80-19 (Matthew Bender)

### DISPUTED INSTRUCTION NO. 37 RE
### ATTEMPTED MONOPOLIZATION – MANNER OF PROOF
### OFFERED BY ARISTA

Arista may prove that Cisco had the specific intent to monopolize by presenting evidence of direct statements of Cisco's intent to obtain a monopoly in a relevant market. Such proof of specific intent may consist of documents prepared by responsible officers or employees of Cisco at or about the time in question, or of statements made by responsible officers or employees of Cisco.

Arista may also prove that Cisco had the specific intent to monopolize through evidence of its actions. For example, if the evidence shows that the natural and predictable result of Cisco's conduct in a relevant market was to give Cisco control over prices or to exclude or destroy competition, and that this outcome was so plainly predictable that Cisco must have had that as its purpose, then you may find that Cisco specifically intended to acquire monopoly power.

Source: 4-80 *Modern Federal Jury Instructions—Civil*, ¶ 80.02, Instructions 80-20, 80-21 (Matthew Bender)

### Arista's Position

Cisco's proposed additional instructions in service of a purported need "to caution the jury to distinguish between aggressive language in service of a lawful intent to compete aggressively and true intent to acquire monopoly power" is unnecessary and confusing.  It is also misleading, because it suggests to the jury that it may not infer from evidence of "aggressive language" a specific intent to monopolize.  The opposite is true:  such language is highly probative of intent to monopolize, where it is not plainly related to a "lawful intent to compete aggressively."  *See_William Inglis & Sons Baking Co. v. Itt Cont'l Baking Co.,* 668 F.2d 1014, 1027 (9th Cir. 1981) ("the existence of specific intent may be established not only by direct evidence of unlawful design, but by circumstantial evidence, principally of illegal conduct." The Court should reject Cisco's attempt to immunize the jury from some of the most probative evidence in the case:  Cisco's own documents.

**DISPUTED INSTRUCTION NO. 37 RE**
**ATTEMPTED MONOPOLIZATION – MANNER OF PROOF**
**OFFERED BY CISCO**

There are several ways in which Arista may prove that Cisco had the specific intent to monopolize. There may be evidence of direct statements of Cisco's intent to obtain a monopoly in the relevant market. Such proof of specific intent may be established by documents prepared by responsible officers or employees of Cisco at or about the time of the conduct in question or by testimony concerning statements made by responsible officers or employees of Cisco. You must be careful, however, to distinguish between Cisco's lawful intent to compete aggressively, which may be accompanied by aggressive language, and a true intent to acquire monopoly power by using anticompetitive means.

Even if you decide that the evidence does not prove directly that Cisco actually intended to obtain a monopoly, specific intent may be inferred from what Cisco did. For example, if the evidence shows that Cisco lacked a legitimate business justification and the natural and probable consequence of Cisco's conduct in the relevant market was to give Cisco control over prices and to exclude or destroy competition, and that this was plainly foreseeable by Cisco, then you may (but are not required to) infer that Cisco specifically intended to acquire monopoly power.

Source: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) at 160

**Cisco's Position**

Arista's proposed instruction fails to caution the jury to distinguish between aggressive language in services of a lawful intent to compete aggressively and true intent to acquire monopoly power. The Supreme Court has noted that "[i]t is sometimes difficult to distinguish robust competition from conduct with long-term anticompetitive effects" and that specific intent requires "something more than an intent to compete vigorously." *See Spectrum Sports v. McQuillan*, 506 U.S. 447, 458-59 (1993). Accordingly, the jury should be cautioned to be careful when evaluating aggressive statements in determining specific intent to monopolize. *See, e.g.*, *Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 914 F.2d 1256 (9th Cir. 1990) (finding statement "we wound [plaintiff] again" insufficient to show specific intent); *Ocean State Physicians Health Plan v. Blue Cross & Blue Shield of R.I.*, 883 F.2d 1101, 113 (1st Cir.

1989) ("the desire to crush a competitor, standing alone is insufficient to make out a violation of the antitrust laws…").   The ABA Model Instruction properly instructs the jury to distinguish between statements regarding aggressive competition and those concerning specific intent to monopolize and should be adopted here.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STIPULATED INSTRUCTION NO. 38 RE**
**ATTEMPTED MONOPOLIZATION – MONOPOLY DEFINED**

To prove the charge of attempted monopolization, Arista does not have to show that Cisco achieved a monopoly. That is, Arista does not have to prove that Cisco actually gained the power to control prices or exclude competition. Instead, Arista must show, by a preponderance of the evidence, that Cisco purposefully attempted to gain such power.

Source: 4-80 *Modern Federal Jury Instructions—Civil*, ¶ 80.02, Instruction 80-22 (Matthew Bender)

**STIPULATED INSTRUCTION NO. 39 RE**
**ATTEMPTED MONOPOLIZATION – RELEVANT MARKET DEFINED**

As I have told you, Arista must prove that Cisco acted with the purpose of acquiring the power to control prices or exclude competition in a relevant market. I have previously instructed you on the law regarding the alleged relevant markets.

Source: Adapted from 4-80 *Modern Federal Jury Instructions—Civil*, ¶ 80.02, Instruction 80-23 (Matthew Bender)

**STIPULATED INSTRUCTION NO. 40 RE**
**ATTEMPTED MONOPOLIZATION – ANTICOMPETITIVE CONDUCT**

The second element Arista must prove, by a preponderance of the evidence, is that Cisco engaged in anticompetitive conduct to accomplish its goal of obtaining a monopoly.

Attempt to monopolize violations are not designed to regulate every act that might be considered unfair competition. There are other laws that deal directly with unfair means of competition. Attempt to monopolize violations are concerned only with unfair or unreasonable practices that have the actual or reasonably foreseeable effect of substantially impairing or destroying competition in a relevant market. It is not sufficient for Arista to prove that Cisco intended to monopolize the relevant market. Arista must also show that Cisco engaged in anticompetitive conduct, coupled with an intent to monopolize and a dangerous probability that Cisco would succeed. Generally, a firm engages in anticompetitive conduct when it attempts to exclude rivals without a legitimate business justification.

As I have told you, the reason Congress passed the antitrust laws was to encourage honest and vigorous competition. The fact that one company is successful does not mean that its conduct is anticompetitive.

Source: 4-80 *Modern Federal Jury Instructions—Civil*, ¶ 80.02, Instruction 80-27 (Matthew Bender); ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) D-158

1
2

### STIPULATED INSTRUCTION NO. 41 RE
### ATTEMPTED MONOPOLIZATION – ANTICOMPETITIVE CONDUCT DEFINED

3

Anticompetitive conduct is conduct that has the effect of preventing or excluding competition or

4

frustrating or hurting the efforts of other firms to compete for customers within the relevant market. I

5

have previously instructed you on the law relevant to anticompetitive conduct.

6

Source: Adapted from 4-80 *Modern Federal Jury Instructions—Civil*, ¶ 80.02, Instruction 80-28

7

(Matthew Bender)

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STIPULATED INSTRUCTION NO. 42 RE**
**ATTEMPTED MONOPOLIZATION – DANGEROUS PROBABILITY OF SUCCESS**

The third element that Arista must prove under this claim, by a preponderance of the evidence, is that there was a dangerous probability that Cisco would sooner or later succeed in achieving its intended monopoly if it continued to engage in anticompetitive conduct that is the same or similar to that charged.

In order to prove this element, Arista does not have to prove that success was nearly certain. What Arista must prove is that the chance of success was substantial and real; in other words, that there was a reasonable likelihood that Cisco would ultimately achieve its goal of monopoly power. Thus, even if you find that Cisco intended to create a monopoly, you may not find that Cisco attempted to monopolize if you find that it was not possible for Cisco to achieve its goal.

Source: Adapted from 4-80 *Modern Federal Jury Instructions—Civil*, ¶ 80.02, Instruction 80-29 (Matthew Bender)

**DISPUTED INSTRUCTION NO. 43 RE**
**ATTEMPTED MONOPOLIZATION –**
**FACTORS IN DETERMINING DANGEROUS PROBABILITY OF SUCCESS**
**OFFERED BY ARISTA**

In determining whether there was a dangerous probability of success, you should consider the following factors:

(1) The size and power of the defendant in the market as compared with its competitors: While size does not indicate whether the defendant is likely to attempt to monopolize, a large company may have a greater dangerous probability of success in achieving monopoly power than a small competitor;

(2) The size and number of competitors in the market: A defendant is more likely to present a dangerous probability of monopolizing a small market than a large market;

(3) The defendant's share of a relevant market and whether it was increasing or decreasing: Generally, where a defendant's market share is declining, that defendant's dangerous probability of success is also declining; a market share below 30% is ordinarily not sufficient to support a conclusion that a defendant has a dangerous probability of success; and

(4) The impact on competition of the defendant's anticompetitive act or practice: Where the defendant's activities have begun to control prices or exclude competition, that may indicate that the defendant has a dangerous probability of achieving its goal of monopolization.

Source: 4-80 *Modern Federal Jury Instructions—Civil*, ¶ 80.02, Instruction 80-30 (Matthew Bender);
*Rebel Oil Co. v. Atl. Richfield Co.,* 51 F.3d 1421, 1438 (9th Cir. 1995)

**Arista's Position**

Arista's proposed instruction correctly instructs the jury on the Ninth Circuit law that "the minimum showing of market share required in an attempt case is a lower quantum than the minimum showing required in an actual monopolization case," and "[w]hen the claim involves attempted monopolization, most cases hold that a market share of 30 percent is presumptively insufficient to establish the power to control price." *Rebel Oil Co. v. Atl. Richfield Co.,* 51 F.3d 1421, 1438 (9th Cir. 1995). Absent such an instruction the jury will be left with the understanding that the market share thresholds do differ from those they were instructed on in connection with Arista's monopolization claim.

### DISPUTED INSTRUCTION NO. 43 RE
### ATTEMPTED MONOPOLIZATION –
### FACTORS IN DETERMINING DANGEROUS PROBABILITY OF SUCCESS
### OFFERED BY CISCO

In determining whether there was a dangerous probability of success, you should consider the following factors:

(5) The size and power of the defendant in the market as compared with its competitors: While size does not indicate whether the defendant is likely to attempt to monopolize, a large company may have a greater dangerous probability of success in achieving monopoly power than a small competitor;

(6) The size and number of competitors in the market: A defendant is more likely to present a dangerous probability of monopolizing a small market than a large market;

(7) The defendant's share of a relevant market and whether it was increasing or decreasing: Generally, where a defendant's market share is declining, that defendant's dangerous probability of success is also declining; and

(8) The impact on competition of the defendant's anticompetitive act or practice: Where the defendant's activities have begun to control prices or exclude competition, that may indicate that the defendant has a dangerous probability of achieving its goal of monopolization.

Source: 4-80 *Modern Federal Jury Instructions—Civil*, ¶ 80.02, Instruction 80-30 (Matthew Bender)

### <u>Cisco's Position</u>

Arista's proposed instruction adds a statement regarding the minimum level of market share that may be sufficient to show a dangerous probability of monopoly power to the model instruction, but that addition is likely to confuse the jury by suggesting that any share greater than 30 percent is sufficient to establish a dangerous probability of success, which is not an accurate statement of law.  In fact, the Ninth Circuit in *Rebel Oil* found that a defendant with 44 percent market share did not have a dangerous probability of market power as a matter of law where competitors had the ability to increase output.  *See Rebel Oil Co. v. Atl. Richfield Co.,* 51 F.3d 1421, 1443 (9th Cir. 1995).  Other courts have found even a 50 percent market share to be insufficient to show a dangerous probability of success as a matter of law. *See, e.g., U.S. Anchor Mfg. v. Rule Indus.*, 7 F.3d 986, 1000 (11th Cir. 1973); *M & M Med. Supplies & Serv. v. Pleasant Valley Hosp.*, 981 F.2d 160, 168 (4th Cir. 1992) (en banc) (finding a 50 percent market

share sufficient *if* the other factors are satisfied).  Accordingly, Arista's instruction is likely to confuse the jury as to the legal requirements for market share and should be rejected.

**DISPUTED INSTRUCTION NO. 45 RE
INJURY AND DAMAGES
OFFERED BY ARISTA**

If you find that Cisco has violated the federal antitrust laws as alleged by Arista, you must then decide if Arista is entitled to recover damages from Cisco.

Arista is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation.

**First**, Arista must prove that it was in fact injured as a result of Cisco's alleged violation of the antitrust laws.

**Second**, Arista must prove that Cisco's alleged illegal conduct was a material cause of Arista's injury. This means that Arista must prove that some damages occurred as a result of Cisco's alleged antitrust violation, and not some other cause. Arista is not required to prove that Cisco's alleged antitrust violation was the sole cause of its injury; nor need Arista eliminate all other possible causes of injury.

**Third**, Arista must prove that its injury is the type of injury that the antitrust laws were intended to prevent. If Arista's injury was caused by a reduction in competition or acts that would otherwise harm consumers, then Arista's injury is an "antitrust injury." The costs and expenses Arista incurred in counteracting Cisco's alleged policy change may be antitrust injury. On the other hand, if Arista's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Arista's injuries are not antitrust injuries, and Arista may not recover damages for those injuries under the antitrust laws.

If you find that Arista has suffered injury to its business or property, you must determine whether Arista has proven that it is entitled to damages for such injury. In arriving at the amount of the award, you should include any damages suffered by Arista because of lost profits—profits that Arista would have made, but for the unlawful conduct of Cisco.

If you find that damage to Arista's business or property, such as a loss in profits, was caused by Cisco's unlawful conduct, then difficulty in determining the precise amount of Arista's damages should not affect Arista's recovery. This is particularly true if Cisco's wrongdoings have caused the difficulty in determining the precise amount.

You are not to award Arista purely speculative damages. An allowance for lost profits may be included in the damages awarded only when there is some reasonable basis in the evidence in the case for determining that Arista has in fact suffered a loss of profits, even though the amount of such loss is difficult to ascertain.

In arriving at the amount of any loss of profits sustained by Arista, you are entitled to consider any past earnings of Arista in the business in question, as well as any other evidence in the case bearing upon the issue.

Source: Adapted from Final Jury Instructions at 109, *Apple, Inc. v. Samsung Elecs., LTD*, No. 11-CV-01846, (N.D. Cal. Aug. 21, 2012), ECF No. 1903 and from Kevin F. O'Malley, et al., 3A Federal Jury Practice and Instructions, ch. 150 Antitrust—Private Action (6th ed. 2012) at § 150:90 Compensatory damages

### Arista's Position

Cisco's proposal to replace Arista's single instruction with four separate instructions (45-48) is unnecessary and confusing.  Moreover, Cisco's proposed instructions misstate the law of the Ninth Circuit on injury and damages.

Arista's proposed instruction, which is adapted from Judge Koh's injury and damages instruction from *Apple v. Samsung* and from a leading handbook on federal jury practice (one of the three suggested as a reference by the Ninth Circuit), concisely and clearly states the relevant law in a single instruction. Cisco's proposal to replace this instruction with *four* verbose instructions would add no additional clarity and in fact will serve only to confuse the jury.

Moreover, Cisco's proposed instructions 47 and 48 misstate both the required level of proof of damages, and the requirements of disaggregation of damages under the law of the Ninth Circuit and the Supreme Court.  First, Cisco's proposed instruction 47 fails to instruct the jury regarding the degree of approximation and inference permitted the jury in calculating damages. "The Supreme Court has [] established a *relaxed standard* for proving the amount of damages in an antitrust case once the fact of damage has been shown. . . . 'It will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.'" *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 836 (9th Cir. 1982).  "Where . . . defendants have acted with intent to eliminate competition, the proof of resulting injury need not be overwhelming." *D & S Redi-Mix v.*

*Sierra Redi-Mix & Contracting Co.,* 692 F.2d 1245, 1249 (9th Cir. 1982)/. *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566, 101 S. Ct. 1923, 68 L. Ed. 2d 442 (1981) (expressing "willingness to accept a degree of uncertainty" in antitrust damage proof given that "[t]he vagaries of the marketplace usually  deny us sure knowledge of what plaintiff's situation would have been in the absence of the defendant's antitrust violation"). Only Arista's proposed instruction, which instructs the jury that it may not award "purely speculative damages," tracks this relaxed standard of proof.  Cisco's instruction, which allows only that "mathematical certainty or precision" is not required, does not.

Second, Cisco's proposed instruction 48 fails to instruct the jury on how this relaxed standard for proving damages affects the jury's disaggregation of damages between anticompetitive conduct and conduct not found anticompetitive.  Cisco's instruction states that "Plaintiff bears the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes," and that if "apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all," but like the rest of proof of damages in antitrust law, Arista's burden is not so stringent.  Particularly where the defendant's own conduct has made disaggregation impossible, "an antitrust plaintiff is only obligated to provide the trier-of-fact with *some basis* from which to estimate reasonably, and without *undue speculation*, the damages flowing from the antitrust violations. *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 836 (9th Cir. 1982).  In calculating damages, "[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created. *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946) (citations omitted).  Only Arista's instruction No. 45, which instructs the jury that "[i]f you find that damage to Arista's business or property, such as a loss in profits, was caused by Cisco's unlawful conduct, then difficulty in determining the precise amount of Arista's damages should not affect Arista's recovery. This is particularly true if Cisco's wrongdoings have caused the difficulty in determining the precise amount."  It may be in Cisco's strategic interest to omit this instruction, but that is not the law.

**DISPUTED INSTRUCTION NO. 45 RE**
**INJURY AND CAUSATION**
**OFFERED BY CISCO**

If you find that Cisco has violated Section 2 of the Sherman Act, then you must decide if Arista is entitled to recover damages from Cisco.

Arista is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation:

(1) Arista was in fact injured as a result of Cisco's alleged violation of the antitrust laws;

(2) Cisco's alleged illegal conduct was a material cause of Arista's injury; and

(3) Arista's injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Arista to establish that it is entitled to recover damages, it must prove that it was injured as a result of Cisco's alleged violation of the antitrust laws. Proving the fact of damage does not require Arista to prove the dollar value of its injury. It requires only that Arista prove that it was in fact injured by Cisco's alleged antitrust violation. If you find that Arista has established that it was in fact injured, you may then consider the amount of Arista's damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Arista has established that it was in fact injured.

Arista must also offer evidence that establishes by a preponderance of the evidence that Cisco's alleged illegal conduct was a material cause of Arista's injury. This means that Arista must have proved that some damage occurred to it as a result of Cisco's alleged antitrust violation, and not some other cause. Arista is not required to prove that Cisco's alleged antitrust violation was the sole cause of its injury; nor need Arista eliminate all other possible causes of injury. Nonetheless, Arista must prove that the alleged antitrust violation was a material cause of its injury.

Finally, Arista must establish that its injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If Arista's injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then Arista's injuries are antitrust injuries. On the other hand, if Arista's

injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Arista's injuries are not antitrust injuries and Arista may not recover damages for those injuries under the antitrust laws.

You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against—such as where a competitor offers better products or services, or where a competitor is more efficient and can charge lower prices and still earn a profit. The antitrust laws do not permit a Arista to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

In summary, if Arista can establish that it was in fact injured by Cisco's conduct, that Cisco's conduct was a material cause of Arista's injury, and that Cisco's injury was the type that the antitrust laws were intended to prevent, then Arista is entitled to recover damages for the injury to its business or property.

Source: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Instruction 1: Injury and Causation, at 300

### **Cisco's Position**

The ABA Model Instructions properly instruct the jury on the three elements of injury and causation, *see, e.g.*, 15 U.S.C. § 15; *Atl. Richfield Co. v. USA Petrol Co.*, 495 U.S. 328, 334-46 (1990), and provide an explanation of antitrust injury, a required element of Arista's claim. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977).

Arista's proposed jury instruction combines a number of different issues (injury-in-fact, antitrust injury, causation, and damages) and fails to account for specific considerations in determining damages in an antitrust case, e.g. the requirement to apportion damages from lawful conduct. *See, e.g.*, *City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1372 (9th Cir. 1992); *see also Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1352 (9th Cir. 1985).  Accordingly, it should be rejected.

Arista argues that replacing a single instruction with four separate instructions is unnecessary and confusing, but the opposite is true.  Separating the issues of injury and causation from damages

allows the Court and the parties to more clearly identify the legal issues.  Moreover, separate model jury instructions that have been extensively reviewed by the ABA Section on Antitrust Law provide significantly more certainty that the instructions are in accordance with the law, as opposed to a combined instruction created by Arista for this case and never vetted by any party outside this litigation or approved by any court.  Finally, the separation will likely make the instructions more comprehendible, not less, to the jury, since they will be able to look at issues individually and more quickly identify relevant portions of the instructions.

**DISPUTED INSTRUCTION NO. 46 RE**
**DAMAGES**
**OFFERED BY CISCO**

If you find that Cisco violated the antitrust laws and that this violation caused injury to Arista, then you must determine the amount of damages, if any, Arista is entitled to recover.  The fact that I am giving you instructions concerning the issue of Arista's damages does not mean that I believe Arista should, or should not prevail in this case.  If you reach a verdict for Cisco on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.

The law provides that Arista should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured Arista as near as possible in the position in which it would have been had the alleged antitrust violation not occurred.  The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages—or to deter particular conduct in the future.  Furthermore, you are not permitted to award to Arista an amount for attorneys' fees or the costs of maintaining this lawsuit.

Source: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Instruction 1: Damages, at 304

### Cisco's Position

The ABA Model Instruction provides the jury an introduction to the issues of damages and address the requirement that damages be only compensatory, not punitive, both of which will provide context to the jury in its decision and should be adopted.

**DISPUTED INSTRUCTION NO. 46 RE
DAMAGES
OFFERED BY CISCO**

[Arista opposes this instruction in its entirety.]

<u>**Arista's Position**</u>

Cisco's proposal to replace Arista's single instruction No. 45 with four separate instructions (45-48) is unnecessary and confusing.   The content of Cisco's proposed instruction No. 46 is already included in Arista's instruction No. 45.

### DISPUTED INSTRUCTION NO. 47 RE
### BASIS FOR CALCULATING DAMAGES
### OFFERED BY CISCO

You are permitted to make just and reasonable estimates in calculating Arista's damages.  You are not required to calculate damages with mathematical certainty or precision.  However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates.  Damages may not be based on guesswork or speculation.  Arista must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that Arista has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that Arista has failed to carry its burden of providing a reasonable basis for determining damages, then you may not award damages.

Source: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Instruction 3: Basis for Calculating Damages, at 307

### Cisco's Position

The ABA Model Instruction takes into account the flexibility allowed to plaintiffs in proving damages, but also properly instructs the jury that Arista must provide a reasonable basis for determining damages and that damages may not be based on speculation.  *See Bigelow v. RKO Radio Pictures*, 372 U.S. 251, 264 (1946) ("[E]ven where defendant by his own wrong has prevented a more precise computation, the jury may not render a verdict based on speculation or guesswork."); *Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1350-51 (9th Cir. 1985) (no damages awarded on the basis of speculation).  The instruction is particularly important given Arista's failure to provide an economic model that allows for apportionment, (*see, e.g.*, Dkt. 303 at 18 ("Dr. Scott Morton's opinions raise an issue due to her model's inability to quantitatively separate out the effects of Cisco's purported anticompetitive conduct and the ITC actions")), which weighs against the imposition of any relaxed standard.  *See J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 565-68 (1981) (declining to apply relaxed standards where "[e]ven construed most favorably to petitioner, the evidence of injury is weak").

Although Arista contends that this instruction misstates the level of proof, it instructs the jury to make "just and reasonable estimates" in calculating damages—the same standard applied by the Ninth Circuit. *See Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 836 (9th Cir. 1982) ("It will be enough if the evidence shows the extent of the damages as a matter of ***just and reasonable*** inference, although the result be only approximate.")  Moreover, the instruction specifically informs the jury that it need not calculate damages with "mathematical certainty or precision."  *See J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566 (1981) (allowing "a degree of uncertainty" in antitrust damages). Accordingly, the instruction states the proper standard for calculating damages.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED INSTRUCTION NO. 47 RE**
**BASIS FOR CALCULATING DAMAGES**
**OFFERED BY CISCO**

[Arista opposes this instruction in its entirety.]

**<u>Arista's Position</u>**

Cisco's proposal to replace Arista's single instruction No. 45 with four separate instructions (45-48) is unnecessary and confusing.  Moreover, Cisco's proposed instructions misstate the law of the Ninth Circuit on injury and damages.

Moreover, Cisco's proposed instructions 47 and 48 misstate both the required level of proof of damages, and the requirements of disaggregation of damages under the law of the Ninth Circuit and the Supreme Court.  Cisco's proposed instruction 47 fails to instruct the jury regarding the degree of approximation and inference permitted the jury in calculating damages. "The Supreme Court has [] established a *relaxed standard* for proving the amount of damages in an antitrust case once the fact of damage has been shown. . . . 'It will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.'" *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 836 (9th Cir. 1982). "Where . . . defendants have acted with intent to eliminate competition, the proof of resulting injury need not be overwhelming." *D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co.,* 692 F.2d 1245, 1249 (9th Cir. 1982)/. *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566, 101 S. Ct. CISCO1923, 68 L. Ed. 2d 442 (1981) (expressing "willingness to accept a degree of uncertainty" in antitrust damage proof given that "[t]he vagaries of the marketplace usually  deny us sure knowledge of what plaintiff's situation would have been in the absence of the defendant's antitrust violation"). Only Arista's proposed instruction, which instructs the jury that it may not award "purely speculative damages," tracks this relaxed standard of proof.  Cisco's instruction, which allows only that "mathematical certainty or precision" is not required, does not.

**DISPUTED INSTRUCTION NO. 48 RE**
**CAUSATION AND DISAGGREGATION**
**OFFERED BY CISCO**

If you find that Cisco violated the antitrust laws and that Arista was injured by that violation, Arista is entitled to recover for such injury that was the direct result or likely consequence of the unlawful acts of Cisco.  Arista bears the burden of showing that its injuries were caused by Cisco's antitrust violation, as opposed to any other factors.  If you find that Arista's alleged injuries were caused in part by Cisco's alleged antitrust violation and in part by other factors, then you may award damages only for that portion of Arista's alleged injuries that was caused by Cisco's alleged antitrust violation.

Arista claims that it suffered injury because it lost sales and profits as a result of Cisco's anticompetitive conduct.  Cisco claims that any profits or sales lost by Arista occurred as a result of other factors that have nothing to do with the alleged antitrust violation.  These include the investigations instituted against Arista by the United States International Trade Commission to investigate Arista's patent infringement, the ITC's findings of patent infringement, the ITC's limited exclusion orders and cease and desist orders, a contemporaneous earthquake in Taiwan affecting Arista's ability to have products manufactured, increasing price competition from Cisco, the release of new competing products form Cisco, and increased competition from other Ethernet switch sellers and "white box" switch manufacturers.  Arista is not entitled to recover for damages that resulted from these or other causes arising from the normal course of business activity.  The presence of these factors does not mean Arista did not suffer antitrust injury, but Arista is not entitled to recovery for damages caused by them.  Arista only may recover for damages caused by the alleged antitrust violation.

Arista bears the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes.  If you find that Arista was injured by Cisco's alleged antitrust violation, and there is a reasonable basis to apportion Arista's alleged injury between lawful and unlawful causes, then you may award damages.

If you find that Arista's alleged injuries were caused by factors other than Cisco's alleged antitrust violation, then you must return a verdict for Cisco.  If you find that there is no reasonable basis to apportion Arista's alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all.

Source: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Instruction 4: Causation and Disaggregation, at 310

### Cisco's Position

The ABA Model Instruction properly instructs the jury that Arista must provide apportion between damages caused by the alleged anticompetitive conduct and lawful conduct. *See, e.g. Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1433 (2013); *City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1372 (9th Cir. 1992; *Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1350-51 (9th Cir. 1985). The instruction is particularly important given Arista's failure to provide an economic model that allows for apportionment, (*see, e.g.*, Dkt. 303 at 18 ("Dr. Scott Morton's opinions raise an issue due to her model's inability to quantitatively separate out the effects of Cisco's purported anticompetitive conduct and the ITC actions")), and Cisco's contention that any alleged damages were caused by the ITC actions or other lawful competition. (*See, e.g.*, Dkt. 209 at 6-9.) Arista completely fails to address the Ninth Circuit requirement that damages due to lawful conduct be apportioned from damages due to unlawful conduct—a requirement that the Ninth Circuit applied in *City of Vernon* and *Farley* even though the "relaxed" standard for antitrust damages applied, *see City of Vernon*, 955 F.2d at 1371 (applying a "just and reasonable estimate" standard); *Farley*, 786 F.2d at 1350-51 (applying "a more lenient amount of damage standard"). Accordingly, the Court should adopt the Model Instruction, which properly instructs the jury on the Ninth Circuit requirement to separate damages from lawful conduct and damages from unlawful conduct.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DISPUTED INSTRUCTION NO. 48 RE
## CAUSATION AND DISAGGREGATION
## OFFERED BY CISCO

[Arista opposes this instruction in its entirety.]

**Arista's Position**

Cisco's proposal to replace Arista's single instruction No. 45 with four separate instructions (45-48) is unnecessary and confusing.  Moreover, Cisco's proposed instructions misstate the law of the Ninth Circuit on injury and damages.

"The Supreme Court has [] established a *relaxed standard* for proving the amount of damages in an antitrust case once the fact of damage has been shown. . . . 'It will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.'" *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 836 (9th Cir. 1982).  "Where . . . defendants have acted with intent to eliminate competition, the proof of resulting injury need not be overwhelming." *D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co.,* 692 F.2d 1245, 1249 (9th Cir. 1982)/. *J. Truett Payne Co. v. Chrysler Motors Corp*., 451 U.S. 557, 566, 101 S. Ct. CISCO1923, 68 L. Ed. 2d 442 (1981) (expressing "willingness to accept a degree of uncertainty" in antitrust damage proof given that "[t]he vagaries of the marketplace usually  deny us sure knowledge of what plaintiff's situation would have been in the absence of the defendant's antitrust violation").

Cisco's proposed instruction 48 fails to instruct the jury on how this relaxed standard for proving damages affects the jury's disaggregation of damages between anticompetitive conduct and conduct not found anticompetitive.  Cisco's instruction states that "Arista bears the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes," and that if "apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all," but like the rest of proof of damages in antitrust law, Arista's burden is not so stringent.  Particularly where the defendant's own conduct has made disaggregation impossible, "an antitrust plaintiff is only obligated to provide the trier-of-fact with *some basis* from which to estimate reasonably, and without *undue speculation*, the damages flowing from the antitrust violations. *Moore v. Jas. H. Matthews & Co*., 682 F.2d 830, 836 (9th Cir. 1982).  In calculating damages, "[t]he most

elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created. *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946) (citations omitted).  Only Arista's instruction No. 45, which instructs the jury that "[i]f you find that damage to Arista's business or property, such as a loss in profits, was caused by Cisco's unlawful conduct, then difficulty in determining the precise amount of Arista's damages should not affect Arista's recovery. This is particularly true if Cisco's wrongdoings have caused the difficulty in determining the precise amount."  It may be in Cisco's strategic interest to omit this instruction, but that is not the law.

**DISPUTED INSTRUCTION NO. 49 RE**
**PRELIMINARY INSTRUCTION ON PRIOR RULINGS**
**OFFERED BY CISCO**

The Court has previously ruled on several issues, which you must accept as being correct.  You must ignore any contrary argument from witnesses, including expert witnesses, or the attorneys.  You are advised that:

(1) Cisco has valid copyrights in its CLI;

(2) Arista copied Cisco's CLI; and

(3) Arista was found not liable for its copying as a result of its scènes à faire defense.

Source: June 14, 2018, Pretrial Conference Transcript, at 29:1-23; *Int'l Business Machines, Corp. v. Groupon, Inc.*, No. 1:16-cv-122-LPS, Final Jury Instructions, Dkt. 386 at 20 (D. Del. July 25, 2018).

**Cisco's Position**

During the CLI litigation, the Court engaged in analytic dissection of Cisco's copyright claims and found that the compilation of Cisco's multiword command line expressions is protectable, (Dkt.[8] 719 at 11), the compilation of modes and prompts is protectable, (*id.* at 14), the compilation of command responses is protectable, (*id.* at 15), and the collection of help descriptions is protectable, (*id.* at 16), and therefore found that "each of Cisco's user interfaces," i.e. the command line interfaces, are thus "subject to protection as a compilation of those building blocks."  (*Id.* at 17-18.)  Furthermore, the jury found that Cisco had "proven that Arista infringed ... Cisco's user interfaces."  (Dkt. 749 at 2.)  Accordingly, the jury necessarily found that Cisco owned a valid copyright in its user interfaces, i.e. its CLI, and that Arista copied original elements of those user interfaces.  *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.").  Cisco put forth substantial evidence, including numerous admissions from Arista's witnesses, to Arista's copying of Cisco's CLI.  (*See, e.g.*, Testimony of Kenneth Duda, Arista CTO, Nov. 29, 2016, Tr. at 781:21-23 ("Q. Isn't it true, sir, that Arista copied some of Cisco's CLI commands from Cisco sources and put it

---

[8] For this paragraph, citations to the docket refer to the docket in the CLI litigation, *Cisco Systems, Inc. v. Arista Networks, Inc.*, No. 5:14-cv-5344-BLF (N.D. Cal.).

into Arista's products? A. Yes, that's right.").)    Accordingly, while Arista prevailed at trial on its affirmative defense of scènes à faire, the CLI litigation finally resolved the question of whether Cisco's has valid copyrights in its CLI and also finally resolved the question of whether Arista copied Cisco's CLI.  The answer to both was "Yes."

Notwithstanding that result, Arista now contends that these are disputed issues and has contested the originality of Cisco's CLI and also contested that it copied Cisco's CLI.  Arista appears intent on forcing the Court to retry the CLI litigation all over again in an attempt to buttress its allegations of anticompetitive conduct.  The Court should not permit Arista to create a mini-trial on copyright infringement in the middle of an antitrust case.  Those issues were necessarily decided through the Court's analytic dissection order and the jury's infringement finding in the CLI litigation, which involved the same parties and resulted in a judgment on the merits, and thus Arista should be barred from relitigating them here.  *See, e.g.*, *Reyn's Pasta Bella, LLC v. Vista USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (barring antitrust plaintiffs from contesting issues raised in a prior litigation under the doctrine of issue preclusion).  Furthermore, any attempt by Arista to relitigate the merits of the CLI litigation—which the Court has already found to be objectively reasonable—will be highly prejudicial and an undue waste of time.  Accordingly, Cisco respectfully requests that the Court instruct the jury that Cisco's copyrights in its CLI were original and protectable and that Arista copied Cisco's CLI.  At the very least, Arista should be barred from contesting the validity of Cisco's copyrights in its CLI and that it copied Cisco's CLI—disputes that it lost in the CLI litigation.

Arista objects to Cisco's use of the term "its CLI," but that CLI, Cisco's command line *interface*, was precisely the intellectual property in front of the jury and addressed in the jury's verdict.  *See* (Dkt. 749 at 2 (finding that Cisco has "proven that Arista infringed … Cisco's user interfaces")).)  Arista's claim that Cisco's proposed instruction is irrelevant is similarly unfounded.  The validity of Cisco's copyrights, as well as the fact of Arista's copying, and the objective reasonableness of the litigation are directly relevant to the issue of whether Cisco was enforcing its intellectual property rights—which is a legitimate business justification for its conduct and a defense to Arista's allegations of monopolization.  *See Image Technical Serv. Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 620 n.9 (9th Cir. 1990) ("The

plaintiff also bears the burden of proving lack of legitimate business justifications in a Section 2 claim");

*aff'd sub nom. Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992).

1
2

### DISPUTED INSTRUCTION NO. 49 RE
### PRELIMINARY INSTRUCTION ON PRIOR RULINGS
### OFFERED BY ARISTA

3

[Arista opposes this instruction in its entirety.]

4
5

### Arista's Position

6

Arista objects to Cisco's proposal to provide the jury with inaccurate, incomplete, and (more fundamentally) irrelevant information.  In so doing, Arista does not seek to "to retry the CLI litigation all over again," but to prevent Cisco from rewriting history.  As an initial matter, the Court has not made any of the rulings Cisco says it has; instead, they characterize the jury verdict in the copyright trial.  Their substance is no more accurate.  The jury in the copyright case did not find that "Cisco has valid copyrights *in its CLI*" or that Arista "copied Cisco's CLI."  The jury verdict says neither of those things.  The verdict form in the copyright case asks, "Has Cisco proven that Arista infringed ***any*** of Cisco's user interfaces" (Cisco ellipses the "any") to which the jury marked "Yes."  No. 5:14-cv-5344, ECF No. 749.  As such, the most that can be said is that the jury found that Cisco had a valid copyright in at least one (but not more than 506) command line expressions, and Arista had copied at least one of them. Or it found Cisco had no valid copyright in any of those command line expressions, but found a valid copyright in at least one command mode, command prompt, or help string, and found that Arista copied at least one of those. None of those possibilities support the assertions that "Cisco has valid copyrights in its CLI" and  "Arista copied Cisco's CLI"; it does not even support that Arista copied more than one of the limited set of elements Cisco asserted at trial, let alone the 15,000+ additional CLI elements Cisco never asserted.

### DISPUTED INSTRUCTION NO. 49.1 RE
### PRELIMINARY INSTRUCTION ON PRIOR RULINGS
### OFFERED BY CISCO

The Court has previously ruled on several issues, which you must accept as being correct.  You must ignore any contrary argument from witnesses, including expert witnesses, or the attorneys.  You are further advised that:

(1) Cisco's CLI litigation against Arista was objectively reasonable.

Source: June 14, 2018, Pretrial Conference Transcript, at 29:1-23; *Int'l Business Machines, Corp. v. Groupon, Inc.*, No. 1:16-cv-122-LPS, Final Jury Instructions, Dkt. 386 at 20 (D. Del. July 25, 2018).

### <u>Cisco's Position</u>

At summary judgment, Arista took the position that "[o]ur theory has never been that the [CLI] litigation was a sham," (Apr. 19, 2018, Hr'g Tr. at 31:11-12), and the Court granted summary judgment in Cisco's favor that "the CLI lawsuit was objectively reasonable."  (Dkt. 270 at 16.)  Furthermore, at the *Daubert* hearing, the Court told Cisco that "you will be able to tell the jury that the Court has determined that the litigation ... was substantially justified." (Dkt. 280, May 10, 2018, Hr'g Tr. at 33:16-20.)  Furthermore, at the June 14, 2018, pretrial conference, the Court stated that "I do think that should be in a jury instruction."  (Dkt. 333, June 14, 2018, Hr'g Tr. at 29:1-17.)

Arista argues that the reasonableness of the CLI litigation is irrelevant, but provides neither rationale nor law in support of its claim that the reasonableness of the CLI litigation is irrelevant.  In fact, the reasonableness of the CLI litigation is directly relevant to the issue of whether Cisco's conduct (including its blogs) was directed to protecting its intellectual property—which is a legitimate business justification for its conduct and a defense to Arista's allegations of monopolization.  *See Image Technical Serv. Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 620 n.9 (9th Cir. 1990) ("The plaintiff also bears the burden of proving lack of legitimate business justifications in a Section 2 claim"); *aff'd sub nom. Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992).  Accordingly, the jury should be instructed that Cisco's CLI litigation against Arista was objectively reasonable.

**DISPUTED INSTRUCTION NO. 49.1 RE
PRELIMINARY INSTRUCTION ON PRIOR RULINGS
OFFERED BY ARISTA**

[Arista opposes this instruction in its entirety.]


**<u>Arista's Position</u>**

Cisco's proposal to tell the jury that "Cisco's CLI litigation against Arista was objectively reasonable" has no relevance to any issue in dispute in this trial.  As Arista has repeatedly confirmed, it does not contend that Cisco's CLI litigation was a "sham" that would except it from the *Noerr-Pennington* doctrine; as such, there is no jury instruction whatsoever on the "sham" exception to *Noerr*. Instead, Arista has shown that Cisco engaged in a separate independent act (the closure of the CLI) that warrants inclusion of Cisco's CLI litigation (whether objectively reasonable or not) as part of the overall anticompetitive scheme.   Cisco's proposal to tell the Court that its litigation was "objectively reasonable" would prejudice Arista, because it suggests to the jury that the Court has already found that Cisco had a legitimate business justification for filing its copyright suit. There is no basis for such a prejudicial instruction.

**STIPULATED INSTRUCTION NO. 50 RE**
**PRELIMINARY ANTITRUST INSTRUCTIONS**

Before you hear the evidence, I will provide you with the following preliminary instructions regarding the antitrust laws for guidance on your decision in this case.  These instructions are intended to introduce you to the law that you will apply to the evidence that you will hear.  I will give you more detailed instructions on the antitrust law at the end of the trial.

You will be asked to decide if Cisco has committed unlawful monopolization of certain markets, in violation of Section 2 of the Sherman Act.  I will explain the requirements for monopolization in detail at the conclusion of the case.  In general, however, Arista must prove all of the following elements by a preponderance of the evidence:

(2) **First**, that at least one of the alleged markets is a relevant antitrust market;

(3) **Second**, that Cisco possessed monopoly power in that market during the period of the alleged anticompetitive conduct;

(4) **Third**, that Cisco "willfully" acquired its monopoly power in that market by engaging in anticompetitive conduct; and

(5) **Fourth**, that Arista was injured in its business or property because of Cisco's anticompetitive conduct.

With respect to the first requirement, proving a relevant market requires proving the relevant product market and the relevant geographic market.  There are many factors that can go into proving the relevant product and geographic markets.  In general, however, a relevant product market consists of the products that a customer believes are reasonably interchangeable or reasonable substitutes for each other.   A relevant geographic market is the area in which Cisco faces competition from alternate suppliers that compete in the relevant product market.

If you find that Arista has proven a relevant market, you will be asked to decide if Arista has proven Cisco has monopoly power in that market.  Monopoly power is the power to control prices or exclude competition in a relevant antitrust market. In determining whether Cisco has monopoly power in a relevant market, you may consider whether there is direct or indirect evidence that Cisco has monopoly power.

If you find that Arista has proven the existence of at least one relevant market, and that Cisco

has monopoly power in that relevant market, you will be asked to determine if Cisco's conduct was anticompetitive.  Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition. Harm to competition is to be distinguished from harm to a single competitor or group of competitors.

If you find that Arista has proven each of the first three requirements, then you will be asked to determine whether Arista proved that it experienced injury as a result of the anticompetitive conduct, and if so the amount of any such injury as distinguished from injury caused by other sources beneficial of neutral to competition.

These are an overview of some of the specific legal standards that you will be asked to consider at the end of this case.  I will review these legal standards and other relevant law in more detail before the case is submitted to you for your verdict.

1

2

3  Dated: August 2, 2018                    By:    */s/ Matthew D. Powers*

4                                                  MATTHEW D. POWERS (SBN 104795)
                                                   WILLIAM NELSON (SBN 196091)
5                                                  ROBERT GERRITY (SBN 268084)
                                                   NATASHA SAPUTO (SBN 291151)
6                                                  SAMANTHA JAMESON (Bar No. 296411)
                                                   JENNIFER ROBINSON (Bar No. 270954)
7                                                  WANLI CHEN (Bar No. 300254)
                                                   TENSEGRITY LAW GROUP, LLP
8                                                  555 Twin Dolphin Drive, Suite 650
                                                   Redwood Shores, CA 94065
9                                                  Telephone:    (650) 802-6000
                                                   Facsimile:    (650) 802-6001
10                                                 Email:
11                                                 matthew.powers@tensegritylawgroup.com
                                                   william.nelson@tensegritylawgroup.com
12                                                 robert.gerrity@tensegritylawgroup.com
                                                   natasha.saputo@tensegritylawgroup.com
13                                                 samantha.jameson@tensegritylawgroup.com
                                                   jen.robinson@tensegritylawgroup.com
14                                                 wanli.chen@tensegritylawgroup.com

15
                                                   DAVID H. REICHENBERG (*Pro Hac Vice*)
16                                                 COZEN O'CONNOR
                                                   277 Park Avenue, 19th Floor
17                                                 New York, NY 10172
                                                   Telephone:  (212) 883-4900
18                                                 Fax:  (646) 461-2091
                                                   Email:
19                                                 dreichenberg@cozen.com
20
                                                   JONATHAN M. JACOBSON (NY SBN 1350495)
21                                                 CHUL PAK (*Pro Hac Vice*)
                                                   WILSON SONSINI GOODRICH & ROSATI
22                                                 1301 Avenue Of The Americas, 40th Floor
                                                   New York, NY 10019
23                                                 Telephone: (212) 999-5800
                                                   Facsimile: (212) 999-5899
24                                                 Email:
25                                                 jjacobson@wsgr.com
                                                   cpak@wsgr.com
26

27                                                 SUSAN CREIGHTON (SBN 135528)
                                                   SCOTT A. SHER (SBN 190053)
28

BRADLEY T. TENNIS (SBN 281206)
WILSON SONSINI GOODRICH & ROSATI
1700 K Street NW, Fifth Floor
Washington, D.C., 20006
Telephone: (202) 973-8800
Facsimile: (202) 973-8899
Email:
screighton@wsgr.com
ssher@wsgr.com
btennis@wsgr.com

ROBERT A. VAN NEST (SBN 84065)
BRIAN L. FERRALL (SBN 160847)
DAVID J. SILBERT (SBN 173128)
NICHOLAS DAVID MARAIS
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
Email:
rvannest@keker.com
bferrall@keker.com
dsilbert@keker.com
nmarais@keker.com

Attorneys for Plaintiff
ARISTA NETWORKS, INC.

Dated: August 2, 2018          By:     */s/ Jeffrey S. Seddon, II*

John M. Desmarais (*admitted pro hac vice*)
jdesmarais@desmaraisllp.com
Paul A. Bondor (*admitted pro hac vice*)
pbondor@desmaraisllp.com
Alan S. Kellman (*admitted pro hac vice*)
akellman@desmaraisllp.com
Tamir Packin (SBN 317249)
tpackin@desmaraisllp.com
Andrew G. Heinz (*admitted pro hac vice*)
aheinz@desmaraisllp.com
Jeffrey S. Seddon, II (SBN 297502)
jseddon@desmaraisllp.com
Brian Leary (*admitted pro hac vice*)
bleary@desmaraisllp.com
William D. Findlay (*admitted pro hac vice*)
wfindlay@desmaraisllp.com
Tom BenGera (*admitted pro hac vice*)
tbengera@desmaraisllp.com
Michael R. Rhodes (*admitted pro hac vice*)
mrhodes@desmaraisllp.com

Carson Olsheski (*admitted pro hac vice*)
colsheski@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

Christopher G. Renner (*admitted pro hac vice*)
crenner@bsfllp.com
Richard A. Feinstein (*admitted pro hac vice*)
rfeinstein@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

Sarah E. Piepmeier (SBN 227094)
sarah.piepmeier@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Attorneys for Defendant Cisco Systems, Inc.*